DANIEL G. BOGDEN
United States Attorney
District of Nevada
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar. No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone:  (702) 388-6336
Facsimile:  (702) 388-6787
Email:  Blaine.Welsh@usdoj.gov

WILLARD K. TOM
General Counsel
NIKHIL SINGHVI*
JULIE G. BUSH*
JASON D. SCHALL*
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop NJ-3158
Washington, D.C. 20580
Phone:  (202) 326-3480 (Singhvi)
Facsimile:  (202) 326-3629
Email:  nsinghvi@ftc.gov; jbush@ftc.gov;
jschall@ftc.gov
(*Motion to permit appearance pending)

*Attorneys for Plaintiff Federal Trade Commission*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMG SERVICES, INC., an Oklahoma Tribal Entity; RED CEDAR SERVICES, INC., an Oklahoma Tribal Entity, also dba 500FastCash; SFS, INC., a Nebraska Tribal Entity, also dba OneClickCash; TRIBAL FINANCIAL SERVICES, an Oklahoma Tribal Entity, also dba Ameriloan, UnitedCashLoans, USFastCash, and Miami Nation Enterprises; AMG CAPITAL MANAGEMENT, | Case No.<br><br>**COMPLAINT FOR INJUNCTION AND OTHER EQUITABLE RELIEF** |

LLC, a Nevada Limited Liability Company; LEVEL 5
MOTORSPORTS, LLC, a Nevada Limited Liability Company;
LEADFLASH CONSULTING, LLC, a Nevada Limited Liability
Company; PARTNER WEEKLY, LLC, a Nevada Limited Liability
Company; BLACK CREEK CAPITAL CORPORATION, a
Nevada Corporation; BROADMOOR CAPITAL PARTNERS,
LLC, a Nevada Limited Liability Company; THE MUIR LAW
FIRM, LLC, a Kansas Limited Liability Company; SCOTT A.
TUCKER, in his individual and corporate capacity; BLAINE A.
TUCKER, in his individual and corporate capacity; TIMOTHY J.
MUIR, in his individual and corporate capacity; DON E. BRADY,
in his individual and corporate capacity; ROBERT D. CAMPBELL,
in his individual and corporate capacity; and TROY L.
LITTLEAXE, in his individual and corporate capacity,

Defendants, and

PARK 269 LLC, a Kansas Limited Liability Company; and KIM C.
TUCKER, in her individual and corporate capacity,

Relief Defendants.

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its

Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. § 53(b); the Truth in Lending Act ("TILA"), 15

U.S.C. §§ 1601-1666j; and the Electronic Fund Transfer Act ("EFTA"),

15 U.S.C. §§ 1693-1693r; to obtain preliminary and permanent injunctive relief,

rescission or reformation of contracts, restitution, the refund of monies paid,

disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or

practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); TILA and its

implementing Regulation Z, 12 C.F.R. § 1026; and EFTA and its implementing

Regulation E, 12 C.F.R. § 1005.10; in connection with the offering and extension of

credit in the form of high-fee, short-term "payday" loans and the collection of those

loans.[1]

---

[1]      Regulation Z and Regulation E were recently renumbered in the CFR pursuant to the Consumer
Financial Protection Bureau's assumption of responsibility for enforcement of TILA and EFTA.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1607(c).

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. §§ 53(a) and (b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces TILA, 15 U.S.C. §§ 1601-1666j, which establishes, *inter alia*, disclosure and calculation requirements for consumer credit transactions and advertisements, and EFTA, 15 U.S.C. §§ 1693-1693r, which provides individual consumer rights to participants in electronic fund transfer systems.

5.      The FTC is authorized to initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act, TILA, and EFTA, and to secure such equitable relief as may be appropriate in each case, including injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 1607(c); 1693o(c).

## DEFENDANTS

6.      Defendant **AMG Services, Inc.** is a corporation chartered under the laws of the Miami Tribe of Oklahoma with its principal place of business at 10895 Lowell Avenue, Overland Park, Kansas. Pursuant to a court order, AMG Services, Inc. is the surviving entity resulting from its merger with CLK Management, LLC, a Kansas limited liability company, as of June 24, 2008. AMG Services, Inc. transacts or has transacted business in this district and throughout the United States. At all times material to this

---

*See* Truth in Lending, 76 Fed. Reg. 79768 (Dec. 22, 2011); Electronic Fund Transfers, 76 Fed. Reg. 81020 (Dec. 27, 2011). The current citations are used here although Defendants' violations for the most part predate the renumbering.

complaint, acting alone or in concert with others, AMG Services, Inc. advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

7.     Defendant **Red Cedar Services**, **Inc.**, also doing business as 500FastCash, is a corporation chartered under the laws of the Modoc Tribe of Oklahoma with an address at 515 G Street SE, Miami, Oklahoma and with an as-yet undetermined principal place of business.  Red Cedar Services, Inc. transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, Red Cedar Services, Inc. advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

8.     Defendant **SFS, Inc.**, also doing business as OneClickCash, is a corporation chartered under the laws of the Santee Sioux Nation of Nebraska with an address at 52946 Highway 12, Suite 3, Niobrara, Nebraska, and its principal place of business at an as-yet undetermined address.  SFS, Inc. transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, SFS, Inc. advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

9.     Defendant **Tribal Financial Services ("TFS")**, also doing business as UnitedCashLoans, USFastCash, Ameriloan, and Miami Nation Enterprises, is a corporation chartered under the laws of the Miami Tribe of Oklahoma with an address at 3531 P Street NW, Miami, Oklahoma.  TFS transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, TFS advertised, marketed, distributed, or sold the

extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

10.     Defendant **AMG Capital Management, LLC** is a Nevada limited liability company with an address at 871 Coronado Center Drive, Suite 200, Henderson, Nevada, and its principal place of business at an as-yet undetermined address.  AMG Capital Management, LLC transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, AMG Capital Management, LLC advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

11.     Defendant **Level 5 Motorsports, LLC** is a Nevada limited liability company with an address at 871 Coronado Center Drive, Suite 200, Henderson, Nevada, and its principal place of business at an as-yet undetermined address.   Level 5 Motorsports, LLC transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, Level 5 Motorsports, LLC advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

12.     Defendant **LeadFlash Consulting, LLC** is a Nevada limited liability company with an address at 871 Coronado Center Drive, Suite 200, Henderson, Nevada, and its principal place of business at an as-yet undetermined address.  LeadFlash Consulting, LLC transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, LeadFlash Consulting, LLC advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

13.     Defendant **Partner Weekly, LLC** is a Nevada limited liability company with an address at 325 East Warm Springs Road, Suite 200, Las Vegas, Nevada, and its principal place of business at an as-yet undetermined address.  Partner Weekly, LLC transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, Partner Weekly, LLC advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

14.     Defendant **Black Creek Capital Corporation** is a Nevada corporation with an address at 289 Manzanita Ranch Lane, Henderson, Nevada, and its principal place of business at an as-yet undetermined address.  Black Creek Capital Corporation transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, Black Creek Capital Corporation advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

15.     Defendant **Broadmoor Capital Partners, LLC** is a Nevada limited liability company with addresses at 10895 Lowell Avenue, Overland Park, Kansas and 871 Coronado Center Drive, Suite 200, Henderson, Nevada, and its principal place of business at an as-yet undetermined address.  Broadmoor Capital Partners, LLC transacts or has transacted business in this district and throughout the United States.  At all times material to this complaint, acting alone or in concert with others, Broadmoor Capital Partners, LLC advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

16.     Defendant **The Muir Law Firm, LLC** is a Kansas limited liability company with its principal place of business at 10895 Lowell Avenue, Overland Park,

Kansas.  At all times material to this complaint, acting alone or in concert with others, The Muir Law Firm, LLC advertised, marketed, distributed, or sold the extension of credit in the form of high-fee, short-term "payday" loans to consumers throughout the United States and participated in the collection of those loans.

17.     Defendant **Scott A. Tucker** is a signatory on the accounts of every corporate defendant (except The Muir Law Firm, LLC and LeadFlash Consulting, Inc.) and an employee of AMG Services, Inc.  He is the secretary/manager of Broadmoor Capital Partners, LLC and was the manager of Level 5 Motorsports, LLC on its formation.  At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of all the corporate defendants including the acts and practices set forth in this complaint.  Scott Tucker resides in the State of Kansas and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

18.     Defendant **Blaine A. Tucker** is a signatory on the accounts of every corporate defendant (except The Muir Law Firm, LLC) and an employee of AMG Services, Inc.  He is the secretary/manager of AMG Services, Inc., TFS Corp., and Black Creek Capital Corporation, and a member of LeadFlash Consulting, LLC.  At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of all the corporate defendants including the acts and practices set forth in this complaint.  Blaine Tucker resides in the State of Kansas and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19.     Defendant **Timothy J. Muir** founded The Muir Law Firm, LLC, is the President of Black Creek Capital Corporation, and, through The Muir Law Firm, LLC, pays for the domain name registrations and other fees of multiple websites used by the

Defendants to market payday loans (including www.500fastcash.com, www.ameriloan.com, www.oneclickcash.com, www.unitedcashloans.com, and www.usfastcash.com).  At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of all the corporate defendants including the acts and practices set forth in this complaint.  Timothy Muir resides in the State of Kansas and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

20.    Defendant **Don E. Brady** is the administrator of websites used by TFS, including www.ameriloan.com, www.unitedcashloans.com, and www.usfastcash.com. He is a signatory on all TFS accounts and the chief executive officer of AMG Services, Inc.  At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of all the corporate defendants including the acts and practices set forth in this complaint.  Don Brady, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

21.    Defendant **Robert D. Campbell** is an officer of SFS, Inc. and the administrator of the website www.oneclickcash.com.  He is a signatory on the SFS, Inc. bank account.  At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of all the corporate defendants including the acts and practices set forth in this complaint.  Robert Campbell, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

22.    Defendant **Troy L. LittleAxe** is the registered agent of Red Cedar Services, Inc., and the administrator of the website www.500fastcash.com.  He is a signatory on the Red Cedar Services bank account.  At all times material to this

complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of all the corporate defendants including the acts and practices set forth in this complaint.  Troy LittleAxe, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

23.     Relief Defendant **Park 269 LLC** is a Kansas limited liability company with a registered office at 5600 West 97th Street, Overland Park, Kansas.  Park 269 LLC has received funds that can be traced directly to Defendants' unlawful acts or practices alleged below, and it has no legitimate claim to those funds.

24.     Relief Defendant **Kim C. Tucker** is an individual who has received funds that can be traced directly to Defendants' unlawful acts or practices alleged below, and she has no legitimate claim to those funds.  Kim Tucker is a member of Park 269 LLC. She resides in the State of Kansas.

<u>**COMMON ENTERPRISE**</u>

25.     Defendants AMG Services, Inc., Red Cedar Services, Inc., SFS, Inc., TFS, AMG Capital Management, LLC, Level 5 Motorsports, LLC, LeadFlash Consulting, LLC, Partner Weekly, LLC, Black Creek Capital Corporation, Broadmoor Capital Partners, LLC, and The Muir Law Firm, LLC (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.  Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, business functions, and employees and have commingled funds.  Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Scott A. Tucker, Blaine A. Tucker, Timothy J. Muir, Don E. Brady, Robert D. Campbell, and Troy L. LittleAxe have formulated, directed, controlled, had the

1    authority to control, had knowledge of, or participated in the acts and practices of the

2    Corporate Defendants that constitute the common enterprise.

3                                              **COMMERCE**

4            26.     At all times relevant to this Complaint, Defendants have maintained a

5    substantial course of trade in or affecting commerce, as "commerce" is defined in Section

6    4 of the FTC Act, 15 U.S.C. § 44.

7                          **DEFENDANTS' BUSINESS PRACTICES**

8            27.     Since at least 2002, Defendants have offered consumers payday loans.

9    "Payday loan" is the common name for a short-term, high-fee, unsecured loan, often

10   made to consumers to provide funds in anticipation of an upcoming paycheck.

11           28.     Defendants offer payday loans through a series of websites owned,

12   operated, and controlled by entities that are part of the common enterprise.  Among the

13   websites through which Defendants offer payday loans are 500fastcash.com,

14   ameriloan.com, oneclickcash.com, unitedcashloans.com, and usfastcash.com.

15           29.     On their websites, Defendants represent that they will withdraw the

16   consumer's scheduled payment from the consumer's bank account when the consumer's

17   loan is due.  In Defendants' loan contracts, they state that the total payment for satisfying

18   the payday loan is the sum of the principal borrowed plus a stated finance charge.

19           30.     Defendants' actual practice, however, contradicts those representations.

20   Rather than withdraw the scheduled payment on one specific date, Defendants typically

21   initiate withdrawals on multiple occasions, assessing multiple finance charges to the

22   consumer.   Thus, in numerous instances a consumer ends up paying significantly more to

23   satisfy his loan than the "Total of Payments" that Defendants conspicuously represent

24   and in their loan disclosures.

25           31.     In addition to making the foregoing representations in Defendants'

26   websites and loan documents, Defendants condition their extension of credit to a

27   consumer upon a consumer's pre-authorization of electronic fund transfers on successive

paydates.  This allows Defendants to automatically initiate fund withdrawals from the consumer's bank account.

32.     Defendants also engage in debt collection activities.  In numerous cases, Defendants threaten consumers with arrest or legal action if consumers' alleged debts are not paid.

### Defendants' Representations Regarding the Cost of their Loans

33.     Through various websites, Defendants offer payday loans in amounts up to $1,500.  On their websites, Defendants inform potential borrowers that "When your loan is due, we automatically deduct your scheduled payment from your bank account along with any applicable fees."

34.     After a consumer applies for a loan from Defendants, Defendants typically provide the consumer a document entitled "Loan Note and Disclosure" ("Loan Disclosure").  The Loan Disclosure states that the consumer's "**Total of Payments**" will be "[t]he amount you will have paid after you have made the scheduled payment," and constitutes the sum of a stated "**FINANCE CHARGE**" and the "**Amount Financed**."  It also states the "**ANNUAL PERCENTAGE RATE**" ("APR") for the loan.  These statements appear in bold and prominent text in a box set apart from the rest of the text of the Loan Disclosure.

35.     For example, Defendants told a consumer who borrowed $300 from Defendants on or about September 7, 2010 that her loan would be due on September 24, 2010, her finance charge would be $90, her APR would be 684.38%, and her "Total of Payments" would be $390 (the amount borrowed plus the finance charge).  In that instance, the Loan Disclosure prominently stated:

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made the scheduled payment. |
| **684.38%** | **$90.00** | **$300.00** | **$390.00** |

(emphasis in original, footnote regarding APR omitted.)

36.    The box reprinted above was followed by a statement of the loan's

due date and additional, less prominent, and confusing terms:

> Your **Payment Schedule** will be: 1 payment of **$390.00** due on
> **2010-09-24**, if you decline* [t]he option of renewing your loan.  If
> your pay date falls on a weekend or holiday and you have direct
> deposit, your account will be debited on [t]he business day prior to
> your normal pay date.  If renewal is accepted you will pay the
> finance charge of $90.00 only, on 2010-09-24[.]  You will accrue
> new finance charges with every renewal of your loan.  On the due
> date resulting from a four[t]h renewal and every renewal due date
> thereafter, your loan must be paid down by $50.00.  This means
> your Account will be debited the finance charge plus $50.00 on
> the due date.  This will continue until your loan is paid in full.  *To
> decline the option of renewal, you must select your payment
> options using the Account Summary link sent to your email at
> least three business days before your loan is due.

(emphasis in original.)

## **The Actual Cost of Defendants' Loans**

37.    Rather than withdrawing the "Total of Payments" from the consumer on

one specific date and charging one finance charge, Defendants typically withdraw partial

payments on multiple days, assessing a finance charge each time.

38.    Defendants, in numerous instances, withdraw only the finance charge

from a consumer's bank account on the specified due date for the loan (usually, the first

payday after the loan) and upon each of the consumer's next three paydays.  The

consumer's outstanding principal does not decrease during this time.  On the fifth

payday, Defendants withdraw a fifth finance charge and, for the first time, an additional

$50 sum to be applied toward principal.  On successive paydays thereafter, Defendants continue to withdraw principal in $50 increments, along with additional finance charges, until the principal is paid in full.  The result of this process is that Defendants withdraw from the consumer significantly more than they represent on their website and in the prominent terms in their Loan Disclosure, and do so automatically via electronic fund transfers.

39.     In the example referenced above, in which the consumer borrowed $300, Defendants did not disclose the complete payment schedule to the consumer. Nevertheless, the complete payment schedule for this consumer would have been the following:

| Payday | Payment | Finance Charge (30% of remaining principal balance) | Amount Applied To Principal | Remaining Principal Balance | Total Paid To Date |
|--------|---------|-----------------------------------------------------|------------------------------|------------------------------|--------------------|
| 1 | $90 | $90 | $0 | $300 | $90 |
| 2 | $90 | $90 | $0 | $300 | $180 |
| 3 | $90 | $90 | $0 | $300 | $270 |
| 4 | $90 | $90 | $0 | $300 | $360 |
| 5 | $140 | $90 | $50 | $250 | $500 |
| 6 | $125 | $75 | $50 | $200 | $625 |
| 7 | $110 | $60 | $50 | $150 | $735 |
| 8 | $95 | $45 | $50 | $100 | $830 |
| 9 | $80 | $30 | $50 | $50 | $910 |
| 10 | $65 | $15 | $50 | $0 | $975 |
| **TOTAL** | **$975** | **$675** | **$300** | | **$975** |

40.     In this example, Defendants' Loan Disclosure represented to the consumer borrowing $300 that her "**FINANCE CHARGE**" would be "**$90.00**," and that her "**Total of Payments**" would be "**$390.00**."  In fact, the consumer borrowing $300 with a

stated $90 finance charge would have to pay a total finance charge of $675 and a total of payments of $975 to satisfy the loan under Defendants' multi-part payment plan.  In addition, the consumer in the example above would make payments on 10 successive paydays, contrary to Defendants' initial representation that there would be a single repayment.

41.      Defendants nowhere disclose the APR, finance charge, total of payments, and payment schedule that result from the multiple payments, *i.e.*, the terms of the loan as actually structured by Defendants.

**Defendants' Requirement That Consumers Authorize**
**Repayment Via Electronic Fund Transfers**

42.      Defendants' loan application also contains a provision that requires the consumer to authorize Defendants to initiate electronic fund transfers for withdrawal of the consumer's recurring loan payments as a condition of obtaining credit from Defendants.  Furthermore, in numerous instances, Defendants have refused consumers' attempts to repay their loans by means other than electronic fund transfers, such as by cashier's check, bank check, wire transfer, money order, or credit card.

**Defendants' Collection Practices**

43.      Defendants engage in debt collection efforts to obtain payments from consumers.

44.      In numerous instances, Defendants represent that they can and will cause consumers to be arrested, criminally prosecuted, or imprisoned for not paying debts claimed by Defendants.  In fact, Defendants do not and could not cause consumers to be arrested, criminally prosecuted, or imprisoned for not paying such debts.

45.      In numerous instances, Defendants threaten to file suit against consumers who fail to pay the debts Defendants attempt to collect.  In fact, Defendants do not file lawsuits against consumers.

14

## **VIOLATIONS OF SECTION FIVE OF THE FTC ACT**

46.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair and deceptive acts or practices in or affecting commerce.  Misrepresentations or omissions of material facts necessary to prevent misleading consumers constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### **COUNT ONE**

### **(Deceptive Acts and Practices)**

47.     In numerous instances in connection with the marketing or offering of payday loans, Defendants have represented, directly or indirectly, expressly or by implication, that:

    a.     Defendants will automatically withdraw the full amount owed, including applicable fees, from a consumer's bank account on a single date; and

    b.     A consumer's total of payments will be equal to the amount financed plus a stated finance charge.

48.     In truth and in fact, in numerous instances where Defendants have made the representations discussed in paragraph 47 above:

    a.     Defendants have not automatically withdrawn the full amount owed from the consumer's bank account on a single date; and

    b.     The consumer's total of payments has been greater than the amount financed plus the stated finance charge.

49.     Therefore, Defendants' representations are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT TWO

### (Deceptive Collection Practices)

50.     In numerous instances, in connection with collecting loans from consumers, Defendants have represented to consumers, expressly or by implication, that:

      a.     Consumers can be arrested, prosecuted, or imprisoned for failing to pay Defendants; and

      b.     If consumers do not pay Defendants, Defendants will file lawsuits against consumers.

51.     In truth and in fact, in numerous instances where Defendants have made the representations discussed in paragraph 50 above:

      a.     Consumers could not be arrested, prosecuted, or imprisoned for failing to pay Defendants; and

      b.     Defendants do not file lawsuits against consumers who do not pay Defendants.

52.     Defendants' representations, as described above, are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### VIOLATIONS OF TILA AND REGULATION Z

53.     Under TILA, 15 U.S.C. §§ 1601-1666j, and its implementing Regulation Z, 12 C.F.R. § 1026, creditors who extend "closed-end credit," as defined in 12 C.F.R. § 1026.2(a)(10), must comply with the applicable disclosure provisions of TILA and Regulation Z, including, but not limited to, Sections 1026.17 and 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

54.     "Creditor" means a person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no

contract.  12 C.F.R. §1026.2 (a)(17).  Defendants are creditors under TILA and Regulation Z because they extend consumer credit subject to a finance charge and the obligation is initially payable to them.

55.     "Closed-end credit" means consumer credit other than open-end credit, and "[o]pen-end credit" is defined as "consumer credit extended by a creditor under a plan in which: (i) the creditor reasonably contemplates repeated transactions; (ii) the creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) the amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. §§ 1026.2(a)(10) and (a)(20). Defendants extend closed-end credit (as opposed to open-end credit) to consumers under TILA and Regulation Z because the loans do not meet all three criteria for open-end credit.

56.     Sections 121(a) and 128(b)(1) of TILA, 15 U.S.C. §§ 1631(a) and 1638(b), and Sections 1026.17(a) and (b) and Section 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17(a) and (b) and 1026.18, require creditors of closed-end consumer credit transactions to disclose, before the credit is extended, *inter alia*, the following with respect to the loan:  finance charge; annual percentage rate; number, amount, and due dates or period of payments scheduled to repay the total of payments (*i.e.*, the "scheduled payment(s)"); and total of payments.  These disclosures must reflect the terms of the legal obligation between the parties.  12 C.F.R. § 1026.17(c).

57.     Pursuant to Section 108(c) of TILA, 15 U.S.C. § 1607(c), every violation of TILA and Regulation Z constitutes a violation of the FTC Act.

## COUNT THREE

### (Violations of TILA and Regulation Z)

58.     In numerous instances, Defendants have violated the requirements of TILA and Regulation Z by failing to disclose in writing before extending credit the

following information in a manner reflecting the terms of the legal obligation between the parties:

        a.     the finance charge;

        b.     the annual percentage rate;

        c.     the payment schedule; and

        d.     the total of payments.

59.    Therefore, Defendants' practices set forth in Paragraph 58 of this complaint violate Sections 121 and 128 of TILA, 15 U.S.C. §§ 1631, 1638, and Sections 1026.17 and 1026.18 of Regulation Z, 12 C.F.R. §§ 1026.17 and 1026.18.

60.    By engaging in the violations of TILA and Regulation Z set forth in Paragraph 59 of this Complaint, Defendants have violated the FTC Act.

## **VIOLATIONS OF EFTA AND REGULATION E**

61.    Defendants are "persons" as this term is defined in Section 1005.2(j) of Regulation E, 12 C.F.R. § 1005.2(j).

62.    Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

63.    Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account."

64.    The Official Interpretation of Regulation E, Section 1005.10(e)(1), 12 C.F.R § 1005.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

65.    Under Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), every violation of EFTA and Regulation E constitutes a violation of the FTC Act.

**COUNT FOUR**

**(Violations of EFTA and Regulation E)**

66.     In numerous instances, in connection with offering payday loans to consumers,  Defendants have conditioned the extension of credit on recurring preauthorized electronic fund transfers, thereby violating Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section 1005.10(e)(1) of Regulation E, 12 C.F.R § 1005.10(e)(1).

67.     By engaging in the violations of EFTA and Regulation E set forth in Paragraph 66 of this Complaint, Defendants have violated the FTC Act.

**COUNT FIVE**

**(Relief Defendants)**

68.     Relief Defendants, Park 269 LLC, and Kim Tucker, have received, directly or indirectly, funds and other assets from Defendants that are traceable to funds obtained from Defendants' customers through the unlawful acts or practices described herein.

69.     Relief Defendants are not bona fide purchasers with legal and equitable title to Defendants' customers' funds and other assets, and Relief Defendants will be unjustly enriched if they are not required to disgorge the funds or the value of the benefit they received as a result of Defendants' unlawful acts or practices.

70.     By reason of the foregoing, Relief Defendants hold funds and assets in constructive trust for the benefit of Defendants' customers.

**<u>CONSUMER INJURY</u>**

71.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, TILA and Regulation Z, and EFTA and Regulation E.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

72.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

1.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, a preliminary injunction;

2.     Enter a permanent injunction to prevent future violations of the FTC Act; TILA and its implementing Regulation Z; and EFTA and its implementing Regulation E by Defendants;

3.     Award such relief as the Court finds necessary and appropriate, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

4.     Enter an order requiring Relief Defendants to disgorge all funds and assets, or the value of the benefit they received from the funds and assets, which are traceable to Defendants' unlawful acts or practices; and

5.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: April 2, 2012                    Respectfully submitted,

                                        WILLARD K. TOM
                                        General Counsel

                                        */s/ Nikhil Singhvi*
                                        Nikhil Singhvi
                                        Julie G. Bush
                                        Jason D. Schall

                                        ***Attorneys for Plaintiff***
                                        ***FEDERAL TRADE COMMISSION***