DANIEL G. BOGDEN
United States Attorney
District of Nevada
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar. No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone:  (702) 388-6336
Facsimile:  (702) 388-6787
Email:  Blaine.Welsh@usdoj.gov

WILLARD K. TOM
General Counsel
NIKHIL SINGHVI
JASON D. SCHALL
HELEN P. WONG
JULIE G. BUSH
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop NJ-3158
Washington, D.C. 20580
Phone:  (202) 326-3480 (Singhvi)
Facsimile:  (202) 326-3629
Email:  nsinghvi@ftc.gov; jbush@ftc.gov;
hwong@ftc.gov; jschall@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>          Plaintiff,<br>       v.<br><br>AMG Services, Inc., et al.,<br><br>         Defendants, and<br><br>Park 269 LLC, et al.,<br><br>        Relief Defendants. | Case No. 2:12-cv-536<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ....................................................................................................2

      A.     The Complaint States Claims Under The FTC Act, TILA,
           And EFTA Based On Defendants' Unlawful Lending And
           Collections Activities .................................................................................. 3

           1.     The Complaint States Claims For Deception Under
                 The FTC Act .................................................................................. 4

                 a)     The Rule 8(a) Pleading Standard, Not The Rule 9(b)
                        Pleading Standard, Applies To The FTC's Deception
                        Claims .................................................................................. 4

                 b)     Under Either Pleading Standard, The Complaint Describes
                        In Detail Deceptive Lending And Debt Collection
                        Practices That Violate The FTC Act.................................... 7

                     (1)   Deceptive Lending Practices ......................................... 8

                     (2)   Deceptive Debt Collection Practices ........................... 11

                 c)     The FTC May Prosecute Its Claims Against These
                        Defendants Under The FTC Act......................................... 13

               2.     The Complaint States A Claim Under TILA ................................ 16

                 a)     The Complaint Describes In Detail Defendants'
                        Inaccurate TILA Disclosures ............................................... 16

                 b)     The FTC Was Not Required To Consult With Defendants
                        Before Bringing This Action ............................................... 17

               3.     The Complaint States A Claim That Defendants
                 Condition Credit Upon The Consumer's Agreement
                 To Repay By Electronic Funds Transfer In
                 Violation Of EFTA, And Defendants Have Already
                 Admitted The Violation ................................................................. 18

      B.     The Complaint Alleges A Common Enterprise Of
            Corporate Defendants Supporting The Unlawful Activities,
            Along With Individuals Participating In Or With
            Knowledge Of The Wrongdoing ............................................................. 20

ii

1.  The Common Enterprise Standard And Individual
    Liability Standards In FTC Actions Are Not Altered
    By Rule 9(b) ................................................................................. 21

    a)  Common Enterprise Corporate Liability ............................ 21

    b)  Individual Liability ............................................................ 22

    c)  Rule 9(b) Does Not Affect The Common Enterprise Or
        Individual Liability Standards ............................................ 23

2.  The Complaint Adequately Alleges Facts Against
    The Corporate Defendants ............................................................ 26

3.  The Complaint Adequately Alleges Facts Against
    The Individual Defendants ............................................................ 27

III.  CONCLUSION ........................................................................................ 29

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ackerman v. Northwestern Mut. Life Ins. Co.,*
172 F.3d 467 (7th Cir. 1999) ...............................................................................7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................... *passim*

*Barnes v. Yahoo! Inc.,*
No. 05-926-AA, 2009 WL 4823840 (D. Or. Dec. 11, 2009)................................10

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................... *passim*

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585, 594 (8th Cir. 2009)………………………………………………..9

*Donovan v. Coeur d'Alene Tribal Farm,*
751 F.2d 1113 (9th Cir. 1985) ...........................................................................13

*Erickson v. Pardus,*
551 U.S. 89 (2007).............................................................................................12

*Fed. Power Comm'n. v. Tuscarora Indian Nation,*
362 U.S. 99 (1960) ...............................................................................13, 14

*FTC v 30 Minute Mortgage, Inc.,*
Civ. No. 03-60021 (S.D. Fla. Nov. 26, 2003).......................................................17

*FTC v Benning,*
No. C09-03814 RS, 2010 WL 2605178 (N.D. Cal. June 28, 2010) ....................23

*FTC v BlueHippo Funding, LLC,*
Civ. No. 08-CV-1819 (S.D.N.Y. Apr. 10, 2008).................................................17

*FTC v Cantkier,*
767 F. Supp.2d 147, 155 (D.D.C. 2011).................................................................6

iv

*FTC v. Capital City Mortgage Co.*,

    No. CIV. A. 98–237(JHG), 1998 WL 1469619 (D.D.C. 1998) ...........................17

*FTC v. Cash Today, Ltd.*,

    Civ. No. 08-cv-590-BES-VPC (D. Nev. Oct. 27, 2009)..................................17, 18

*FTC v. Check Investors, Inc.*,

    2:03-cv-02115-KSH-PS (D.N.J. May 12, 2003) ..................................................12

*FTC v. Consumer Health Benefits Ass'n*,

    No. 10–CV–3551 (ILG), 2011 WL 3652248............................................................6

*FTC v. Consumer Money Markets, Inc.*,

    Civ No. CVS001071-PMP-RJJ (D. Nev. Aug. 30, 2000) ....................................17

*FTC v. Datacom Marketing Inc.*,

    1:06-cv-2574 (N.D. Ill. Nov. 11, 2006) ................................................................12

*FTC v. EMC Mortgage Co.*,

    Civ No. 08-cv-338 (E.D. Tex. Sept. 9, 2008) ......................................................17

*FTC v. Figgie Int'l*,

    994 F.2d 595 (9th Cir. 1993) ............................................................................5, 6

*FTC v. Five-Star Auto Club*,

    97 F. Supp. 2d 502 (S.D.N.Y. 2000).....................................................................8

*FTC v. Freecom Comm'ns, Inc.*,

    401 F.3d 1192 (10th Cir. 2005) .......................................................................5, 6

*FTC v. Grant Connect, LLC*,

    No. 09-CV-01349-RLH-RJJ, 2011 U.S. Dist. LEXIS 123792

    (D. Nev. Oct. 25, 2011) ..............................................................................18, 22

*FTC v. Innovative Mktg., Inc.*,

    654 F. Supp. 2d 378 (D. Md. 2009) ......................................................................6

*FTC v. Ivy Capital*,

    2:11-cv-00283-JCM, 2011 WL 2118626 (D. Nev. May 25, 2011) .............. *passim*

*FTC v. J.K. Publs., Inc.*,

    99 F. Supp. 2d 1176 (C.D. Cal. 2000) ..................................................................21

*FTC v. John Beck Amazing Profits, LLC*,

    No. 2:09–cv–4719–FMC–FFMx, 2009 WL 7844076 (C.D. Cal. 2009) .............21

*FTC v. Lights of America, Inc.*,

    760 F. Supp.2d 848, 854-55 (C.D. Cal. 2010) ........................................................6

*FTC v. Medical Billers Network, Inc*.,

    543 F. Supp. 2d 283 (S.D.N.Y. 2008) ...................................................................6

*FTC v. Morton Salt Co.*,

    334 U.S. 37 (1948) ...............................................................................................15

*FTC v. Nat'l Testing Servs., LLC*,

    No. 3:05-0613, 2005 U.S. Dist. LEXIS 46485 (M.D. Tenn. Aug. 18, 2005) .........6

*FTC v. Nat'l Urological Group, Inc.*,

    645 F. Supp. 2d 1167 (N.D. Ga. 2008) ................................................................22

*FTC v. Network Servs. Depot, Inc.*,

    617 F.3d 1127 (9th Cir. 2010) .....................................................................21, 22

*FTC v. Pantron I Corp.*,

    33 F.3d 1088 (9th Cir. 1994) .................................................................................7

*FTC v. Publishing Clearing House, Inc.*,

    104 F.3d 1168 (9th Cir. 1997) .................................................................5, 22, 23

*FTC v. Skybiz.com, Inc.*,

    No. 01-396, 2001 U.S. Dist. LEXIS 26314 (N.D. Okla. Aug. 2, 2001) ................6

*FTC v. SlimAmerica, Inc*.,

    77 F. Supp. 2d 1263 (S.D. Fla. 1999) ...................................................................7

vi

*FTC v. Stefanchik*,

    559 F.3d 924 (9th Cir. 2009) ................................................................5

*FTC v. Stewart Fin. Co. Holdings, Inc.*,

    Civ. No. 1:03CV-2648 (N.D. Ga. Nov. 4, 2005)...................................17

*FTC v. Swish Marketing*

    C09-03814 RS, 2010 WL 653486 (N.D. Cal Feb. 22. 2010)……………...... 6, 25

*FTC v. Think Achievement Corp.*,

    144 F. Supp. 2d 993 (N.D. Ind. 2000) ..................................................21

*FTC v. Wellness Support Network, Inc.*,

    No. C-10-04879 JCS, 2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) ......................6

*FTC v. World Travel Vacation Brokers*,

    861 F.2d 1020, 1029 (7th Cir. 1988) ....................................................8

*Gentry v. Carnival Corp.*,

    No. 11-21580-CIV, 2011 WL 4737062 (S.D. Fla. Oct. 5, 2011) .........................10

*In re Thompson Medical Co.*,

    104 F.T.C. 648, 788-89 (1984) ............................................................7

*Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*,

    538 U.S. 701 (2003) ............................................................................14

*Kraft, Inc. v. FTC*,

    970 F.2d 311, 314 (7th Cir. 1992) ........................................................7

*Liguori v. Hansen*,

    No. 2:11–cv–0492–GMN–CWH, 2012 WL 786263,

    (D. Nev. Mar. 9, 2012)...................................................................4, 20

*Meacham v. Knolls Atomic Power Lab.*,

    554 U.S. 84 (2008)..............................................................................15

*Moore v. Kayport Package Express*,

    885 F.2d 531 (9th Cir. 1989) ..................................................................7

*N.L.R.B. v. Chapa De Indian Health Program, Inc.*,

    316 F.3d 995 (9th Cir. 2003) ..............................................................13

*New York Civil Liberties Union. v. New York City Transit Authority*,

    675 F.Supp. 2d 411 (S.D.N.Y. 2009)......................................................2

*Ohio Christian College*,

    80 FTC 815 (1972) ..............................................................................15

*Removatron Int'l v. FTC*,

    884 F.2d 1489 (1st Cir. 1989).................................................................8

*Swartz v. KPMG, LLP*,

    476 F.3d 756 (9th Cir. 2007) ........................................................23, 24

*Swierkiewicz v. Sorema N.A.*,

    534 U.S. 506 (2002) ..............................................................................5

*Vila  v. Inter-Am. Inv. Corp.*,

    570 F.3d 274, 285 (D.C.Cir.2009).........................................................9

**Statutes, Regulations, and Rules**

15 U.S.C. § 1607(c) .................................................................................................17, 18

15 U.S.C. § 1607(e)(1) ..................................................................................................18

15 U.S.C. § 1607(e)(4)(A) ...........................................................................................18

15 U.S.C. § 1693(k)(1) .................................................................................................18

15 U.S.C. § 1693o(c) ....................................................................................................18

15 U.S.C. § 45(a)(2) .....................................................................................................13

15 U.S.C. § 53 ..............................................................................................................17

Fed. R. Civ. P. 8(a) ................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ............................................................................................... *passim*

**Other Authorities**

37 Am. Jur. 2d Fraud and Deceit § 23 (2010) ..................................................................5

## I.      INTRODUCTION

On April 2, 2012, the Federal Trade Commission ("FTC") filed a complaint and motion for preliminary injunction to halt Defendants' violations of the FTC Act, Truth in Lending Act ("TILA"), and Electronic Fund Transfers Act ("EFTA").  (Docket Nos. 1, 4.)  The motion for preliminary injunction is fully briefed.  In this memorandum, the FTC opposes Defendants' motions to dismiss the complaint (Docket Nos. 100, 103, 104, 105, 107, 108, and 109).

This matter concerns unlawful lending and collections practices used to prey on financially distressed consumers throughout the country.  As detailed in the FTC's complaint, Defendants offer short-term, high-interest loans to those consumers, prominently tout a defined "Total of Payments" and "FINANCE CHARGE" that consumers will repay, but then charge consumers amounts much higher than those represented.  (Compl. ¶¶ 1, 27-30, 33-41, 47-49, 58-60.)  The complaint also alleges that Defendants unlawfully condition the extension of credit on a consumers' agreement to preauthorize electronic fund transfers from their bank accounts, which makes matters even worse by ceding control of those bank accounts to Defendants.  (*Id.* at ¶¶ 31, 42, 66-67.)  Further, the complaint alleges that when consumers cannot pay Defendants' inflated charges, Defendants make false threats in their collection efforts, specifically that Defendants will sue consumers or have them arrested.  (*Id.* at ¶¶ 1, 32, 43-45, 50-52.)

The complaint identifies those entities and individuals responsible for the foregoing law violations.  Defendants AMG Services, Inc., Red Cedar Services, Inc., SFS, Inc., Tribal Financial Services, AMG Capital Management, LLC, Level 5 Motorsports, LLC, LeadFlash Consulting, LLC, BlackCreek Capital Corporation, Broadmoor Capital Partners, LLC, and The Muir Law Firm (collectively, the "Corporate Defendants") participate in the unlawful lending and collections activities as a common

1

enterprise and commingle funds from the enterprise.  (Compl. ¶¶ 6-12, 14-16, 25.[1])

Individuals Scott Tucker, Blaine Tucker, Timothy Muir, Don Brady, Robert Campbell,

and Troy LittleAxe are all officers of one or more Corporate Defendants who have

formulated, participated in, and/or had knowledge of the unlawful business activities

discussed above.  (*Id.* at ¶¶ 17-22, 25.)

## II.    ARGUMENT

Defendants' arguments for dismissing Plaintiff's complaint largely fall into two

categories.  First, Defendants argue that the underlying violations of law are insufficiently

pleaded.  Next, a subset of the Defendants (not including the Lending Defendants[2]) argue

that the underlying claims, even if adequately alleged, cannot reach them.  Because the

complaint sets forth facts that, taken as true, would establish each of the law violations

and the culpability of the various Defendant entities and individuals responsible for those

violations, Defendants' motions to dismiss should be denied.

Defendants' motions to dismiss may be mooted in light of Plaintiff's earlier-filed

motion for preliminary injunction.  The preliminary injunction motion requires a finding,

among other things, that the FTC has a likelihood of success on the merits of its three

statutory claims against the named Defendants.  Assuming the FTC has met that

threshold and the motion for preliminary injunction is granted, then Defendants' motions

to dismiss, which would examine the same three statutory claims as against the same

Defendants under a lower threshold, would be moot.[3]  *See, e.g., New York Civil Liberties*

---

[1]    The FTC is in the process of moving to dismiss, without prejudice, Partner Weekly, LLC.  (*See* Docket No. 113.)

[2]    AMG Services, Inc., Red Cedar Services, Inc., SFS, Inc., and Tribal Financial Services are sometimes referred to herein as the Lending Defendants.

[3]    Indeed, the allegations in the complaint, including those related to the underlying violations of law and identifying the network of entities and individuals culpable for those violations, are fully supported by the volumes of evidence (including, *inter alia*, consumer declarations, former employee declarations,

2

*Union v. New York City Transit Authority*, 675 F. Supp. 2d 411, 423, 439-440 (S.D.N.Y. 2009) (where plaintiff brought motion for preliminary injunction and defendant brought motion to dismiss, Court first considered motion for preliminary injunction and granting the former motion necessitated denying the latter).

### A.     The Complaint States Claims Under The FTC Act, TILA, And EFTA Based On Defendants' Unlawful Lending And Collections Activities

Defendants contend that the FTC failed to allege violations of the FTC Act, TILA, and EFTA.  Critically, this argument disputes only the style of the FTC's pleading and not its substance – that Defendants represented to consumers that loans would cost a certain, prominently defined amount and then charged those consumers several multiples of that amount.  *The Lending Defendants nowhere discuss paragraphs 27-41 of the complaint, wherein the FTC describes in detail Defendants' lending misrepresentations.*[4]

The Lending Defendants evidently believe that the FTC's complaint must be evaluated solely on the handful of paragraphs they selectively reprint at various points in their memorandum, following each passage with the catch-phrase, "That is it."  Although the Lending Defendants' briefing gimmick depends on the notion that only those specific paragraphs that appear directly below a particular claim heading can support that claim, the Lending Defendants cite no authority for such an absurdly narrow reading of a complaint.  When the entire complaint is considered, a clear picture of the three statutory violations is apparent.

---

and bank account information) submitted in connection with the motion for preliminary injunction. (*See generally* Docket Nos. 5 & 84 and exhibits cited therein.)

[4]     In Defendants' six separate motions to dismiss, only the Tucker Defendants and Troy LittleAxe address these allegations, and they do so only in a limited and cursory fashion.

3

1

2

        **1.**        **The Complaint States Claims For Deception Under The FTC Act**

3

        **a)**        **The Rule 8(a) Pleading Standard, Not The Rule 9(b) Pleading Standard, Applies To The FTC's Deception Claims**

4

5

To survive a motion to dismiss, a complaint need only allege "enough facts to

6

state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

7

U.S. 544, 570 (2007). In deciding a motion to dismiss, the court "must take all of the

8

factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

9

(2009). The court may also consider documents referenced in the complaint whose

10

authenticity is not challenged. *See Liguori v. Hansen*, No. 2:11–cv–0492–GMN–CWH,

11

2012 WL 786263 at *1, (D. Nev. Mar. 9, 2012) (Navarro, J).

12

Rule 8(a), the general rule of pleading, states that a pleading must contain "a short

13

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

14

Civ. P. 8(a)(2). While Rule 8 "demands more than an unadorned, the-defendant-

15

unlawfully-harmed-me accusation," it "does not require 'detailed factual allegations.'"

16

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A plaintiff need not make a

17

"heightened fact pleading of specifics, but only enough facts to state a claim to relief that

18

is plausible on its face." *Twombly*, 550 U.S. at 570. The two-part test established in

19

*Twombly* requires that: (1) a court not presume the truth of allegations that are merely

20

legal conclusions, and (2) "only a complaint that states a plausible claim for relief

21

survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at

22

555-56). The plausibility standard is not a "probability requirement" and a plaintiff need

23

only "plea[d] factual content that allows the court to draw the reasonable inference that

24

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

25

Defendants acknowledge the Rule 8(a) pleading standard but, as to the FTC Act

26

deception claims, also try to invoke the Rule 9(b) fraud pleading standard. Rule 9(b),

which applies in special matters, states that "[i]n alleging *fraud* or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b) (emphasis added).  Rule 9(b) has limited application, and the Supreme Court has declined to extend Rule 9(b) to other causes of action.[5]

There are critical differences between an FTC Act deception claim and a common law private-action fraud claim.  For the former, the FTC must show that a defendant made a material representation or omission that is likely to mislead consumers acting reasonably; the claim does not require scienter or subjective reliance.[6]  By contrast, fraud requires proof of a false representation of a material fact, made with knowledge of its falsity and an intent to deceive, and upon which an action is taken in justifiable reliance.[7]  In holding that Rule 9(b) does not apply to deception under Section 5 of the FTC Act, the Tenth Circuit explained, "A § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)  . . .  Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation."  *FTC v. Freecom Comm'ns, Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005).[8]

Although a Nevada district court recently held that Rule 9(b) does apply to FTC Act deception claims, *FTC v. Ivy Capital*, 2:11-cv-00283-JCM -GWF, 2011 WL 2118626

---

[5]   *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) ("Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake.  This Court, however, has declined to extend such exceptions to other contexts.") (footnote omitted).

[6]   *See, e.g., FTC v. Stefanchik*, 559 F.3d 924, 928-30 (9th Cir. 2008).

[7]   37 Am. Jur. 2d Fraud and Deceit § 23 (2010).

[8]   *See also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("[T]he FTC is not required to show that a defendant *intended* to defraud consumers . . . .") (emphasis in original); *FTC v. Figgie Int'l*, 994 F.2d 595, 605-06 (9th Cir. 1993) (unlike common law fraud, proof of subjective reliance by individual consumers is not required in FTC enforcement actions).

at *3 (D. Nev. May 25, 2011),[9] the court *denied* the defendants' motion to dismiss under the Rule; and most courts that have weighed in on the issue, including the only circuit court to have done so, have concluded that allegations of deceptive acts or practices under the FTC Act are properly pleaded pursuant to Rule 8(a), not Rule 9(b).  *Freecom Comm'ns*, 401 F.3d at 1204 n.7 (citations omitted).[10]  These cases have not only relied on the fundamental differences between the elements of an FTC Act deception claim and a common law fraud claim, but also the broad, public-serving remedial purpose of an FTC deception claim.  *See Freecom Comm'ns*, 401 F.3d at 1204 n.7 (an FTC deception claim is "not a private or common law fraud action designed to remedy a singular harm, but a government action brought to deter deceptive acts and practices aimed at the public and to obtain redress on behalf of a large class of third-party consumers") (citations omitted); *see also Figgie*, 994 F.2d at 605 ("Section 13 of the FTC Act differs from a private suit for fraud, however.  Section 13 serves a public purpose by authorizing the Commission to seek redress on behalf of injured consumers.") (quotation omitted).[11]

---

[9]   *See also FTC v. Lights of America, Inc.*, 760 F. Supp. 2d 848, 854-55 (C.D. Cal. 2010) (applying Rule 9(b) and granting FTC leave to replead complaint).

     Other cases cited by Defendants for this proposition, however, do not support application of Rule 9(b).  *See FTC v. Wellness Support Network, Inc.*, No. C-10-04879 JCS, 2011 WL 1303419 at *9 (N.D. Cal. Apr. 4, 2011) ("the Court … need not decide whether or not Rule 9(b) applies here"); *FTC v. Swish Marketing*, No. C 09-03841 RS, 2010 WL 653486 at *4 (N.D. Cal. Feb. 22, 2010) (outcome of individual's motion to dismiss did not depend on application of Rule 9(b)); *FTC v. Cantkier*, 767 F. Supp.2d 147, 155 (D.D.C. 2011) ("the Court does not need to rule on the applicability of Rule 9(b) to Section 5 actions").

[10]   *See FTC v. Consumer Health Benefits Ass'n*, No. 10–CV–3551 (ILG), 2011 WL 3652248 at *9 n.6 ("[T]he heightened standard under Rule 9(b) of the Federal Rules of Civil Procedure . . . does not apply here.") (E.D.N.Y. 2011); *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 388-89 (D. Md. 2009); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008); *FTC v. Nat'l Testing Servs., LLC*, No. 3:05-0613, 2005 U.S. Dist. LEXIS 46485 at *4-5 (M.D. Tenn. Aug. 18, 2005); *FTC v. Skybiz.com, Inc.*, No. 01-396, 2001 U.S. Dist. LEXIS 26314 at *11 (N.D. Okla. Aug. 2, 2001).

[11]   The difference between the elements of a fraud claim and a Section 5 claim is fundamental in light of the purpose of Rule 9(b).  A primary purpose of Rule 9(b) is to require greater pre-complaint investigation and serve as an obstacle to fraud claims becoming the default consequence of soured

In any event, even if the minority view prevailed and Rule 9(b) applied, the complaint meets Rule 9(b) standards as demonstrated below. A pleading is sufficient under Rule 9(b) "if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). Only complaints that contain "[m]ere conclusory allegations of fraud are insufficient." *Moore,* 885 F.2d at 540. Indeed, *Ivy Capital*, which applied Rule 9(b) to FTC Act deception claims, dictates that Defendants' motion to dismiss be denied.[12]

> **b)** **Under Either Pleading Standard, The Complaint Describes In Detail Deceptive Lending And Debt Collection Practices That Violate The FTC Act**

To state claims that Defendants engaged in deceptive acts or practices in violation of Section 5(a) of the FTC Act, the FTC must allege that Defendants made material representations likely to mislead consumers acting reasonably under the circumstances. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994); *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992). Express and deliberate claims are presumed material. *FTC v. SlimAmerica,* 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999); *In re Thompson Medical Co.*, 104 F.T.C. 648, 788-89 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986). The FTC need not allege that defendants' misrepresentations were made with an intent to defraud or deceive

---

business relationships. *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) ("The purpose (the defensible purpose, anyway) of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint."). A Section 5 complaint filed by the FTC does not carry this risk. The FTC only brings actions to protect the public's interest and uphold the laws Congress instructed it to enforce. Such actions must be approved by a panel of five presidential appointees, each of whom has been confirmed by the U.S. Senate. Thus, the risk of a "defamatory and extortionate" complaint filed after a cursory, slipshod investigation is minimal in the context of a Section 5 violation. *See id*.

[12] As demonstrated below, the court in *Ivy Capital*, reviewing an FTC complaint against 22 corporate defendants, eight individual defendants, and ten relief defendants, and of nearly identical detail and organization as the instant complaint, denied the defendants' motions to dismiss even after applying Rule 9(b). *See Ivy Capital*, 2011 WL 2118626 at *4.

or were made in bad faith.  *See*, *e.g.*, *Removatron Int'l v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 202, 526 (S.D.N.Y. 2000).

Whether judged under Rule 8(a) or Rule 9(b), the complaint alleges facts sufficient to allege Defendants' deception in respect of their lending and debt collection practices.

### (1)      Deceptive Lending Practices

The complaint describes in detail how Defendants deceive consumers about the cost of their payday loans by prominently touting a "Total of Payments" and "FINANCE CHARGE" but then assessing much more costly totals of payments and finance charges.

In the "Business Practices" section of the complaint (Compl. ¶¶ 27-41), the FTC alleges that Defendants make representations on their website that, when a consumer's loan is due, Defendants will "withdraw the consumer's scheduled payment from the consumer's bank account."  (*Id.* ¶ 29).  In their loan contracts, Defendants state that the total payment required to repay the loan is the sum of the principal borrowed plus a one-time finance charge.  (*Id.*)  These representations are conveyed in bold and prominent text defining the "Total of Payments" as the sum of the "Amount Financed" and a "FINANCE CHARGE."  (*Id.* ¶¶ 34-35; *see also* Docket No. 5-11 at 25 (PX10 at 343) (image of loan contract).)  But, in practice, "[r]ather than withdraw the scheduled payment on a specific date, Defendants typically initiate withdrawals on multiple occasions, assessing multiple finance charges to the consumer."  (Compl. ¶ 30).  The complaint describes in detail how consumers' repayments are actually assessed under Defendants' loan, how the actual terms of the loan differ markedly from Defendants' representations, and that Defendants never disclose to consumers the true schedule and cost of their loans.  (*Id.* ¶¶ 39-41.)  "[T]he result of this process is that Defendants

withdraw from the consumer significantly more than they represent on their website and in the prominent terms in their Loan Disclosure …"  (*Id.* ¶ 38).  These allegations plausibly show how consumers, acting reasonably, would be misled by Defendants' material representations, *see Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S. at 678, and, assuming Rule 9(b) applies, adequately put Defendants on notice of the allegations they are called to answer, *see Moore,* 885 F.2d at 540.

Defendants ignore the whole "Business Practices" section of the complaint, quote only the three paragraphs of the FTC's deception claim appearing directly below the Count I heading, and, based on that self-selected snapshot, argue that the deception claim is not sufficiently pleaded.[13]  Not only is Defendants' argument disingenuous, it is against established case law stating that courts will look at a complaint in its *entirety*.  *See, e.g., Vila v. Inter–Am. Inv. Corp.,* 570 F.3d 274, 285 (D.C. Cir. 2009) (holding that factual allegations should be "viewed in their totality"); *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009)  (instructing that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible").  Defendants' approach of *deliberately ignoring an entire section of the complaint*, and then arguing that the rest of the complaint is deficient, defies common sense.[14]

Defendants further argue that the FTC's deception claim is deficient because the FTC did not include specific paragraphs stating that Defendants' misrepresentations were material and would mislead consumers acting reasonably.[15]  But whether consumers

---

[13]   Lending Defs.' Mem. at 10-11.

[14]   It is also noteworthy that Defendants offer only an oblique criticism of the FTC's pleading style rather than any direct argument that their representations and materials are not actually deceptive.

[15]   Lending Defs.' Mem. at 11.

reasonably relied on Defendants' material representations need not be pleaded in so many words.[16]  Defendants also argue that the FTC did not plead facts upon which those conclusions could be based.[17]  But this argument presupposes that only paragraphs 47-49 of the complaint can be considered to support the FTC's deceptive lending claim.  That notion is disposed with above.  When the entire complaint is considered, Defendants' representations as to the "Total of Payments" and "FINANCE CHARGE" in Defendants' loan contract are no doubt material to consumers determining whether to borrow from them, and they mislead consumers acting reasonably in reliance on the accuracy of those prominent terms. (Compl. ¶¶ 34-35; *see also* Docket No. 5-11 at 25 (PX10 at 343) (image of loan contract).)

While Defendants' failure to cite any cases supporting their absurd method of reading FTC's complaint is telling enough, their arguments regarding the sufficiency of the FTC's pleading are further put to rest by courts, including the Nevada federal court in *Ivy Capital*, that have examined similar FTC complaints.  In *Ivy Capital*, the FTC similarly detailed the deceptive acts in a "Business Practices" section preceding the count headings, and the FTC did not allege in separate paragraphs for their deception counts that the defendants' representations were material and would mislead consumers acting reasonably.[18]  Yet the court, citing not only the paragraphs below the count headings but also the "Business Practices" section, had no difficulty sustaining the deception

---

[16]  *Cf. Barnes v. Yahoo!, Inc.*, No. 05-926-AA, 2009 WL 4823840 at *4 (D. Or. Dec. 11, 2009) ("Although plaintiff does not specifically use the term 'reliance' … [t]aken as true, the allegations lead to the reasonable and plausible inference that plaintiff relied on defendant's promise"); *Gentry v. Carnival Corp.*, No. 11-21580-CIV, 2011 WL 4737062 at *4 (S.D. Fla. Oct. 5, 2011) ("Requiring Gentry to also allege that her reliance was reasonable would serve no practical purpose because reasonableness is a question of fact which cannot be decided on a motion to dismiss.").

[17]  Lending Defs.' Mem. at 11.

[18]  *See* FTC Request for Judicial Notice Ex. A (*Ivy Capital* Compl. ¶¶ 48-73, 76-78, 79-81, 82-84, 85-87). (The *Ivy Capital* complaint was originally filed under seal but the seal was later lifted.)

allegations, even under Rule 9(b).  2011 WL 2118626 at *4 ("the FTC also describes the nature of the scheme in detail").  The court in *Commerce Planet*, another case from this Circuit, also sustained the FTC's similarly styled deception allegations.[19]

### (2)    Deceptive Debt Collection Practices

The FTC also alleges that Defendants engage in deception with false threats in connection with debt collection.  Specifically, the complaint alleges that "Defendants represent that they can and will cause consumers to be arrested, criminally prosecuted, or imprisoned for not paying debts claimed by Defendants." (Compl. ¶ 44.)  The complaint then explains how such threats are false because "Defendants do not and could not cause consumers to be arrested, criminally prosecuted, or imprisoned for not paying such debts."  (*Id.*)   The complaint also states that "Defendants threaten to file suit against consumers who fail to pay the debts Defendants attempt to collect" and how those threats are false because  "Defendants do not file lawsuits against consumers."  (*Id.*)  As with the lending claims, these allegations plausibly show how consumers, acting reasonably, would be misled by Defendants' material representations, *see Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S. at 678, and adequately put Defendants on notice of the allegations they are called to answer, *see Moore,* 885 F.2d at 540.

As noted in the preceding section, Defendants' arguments regarding these deception claims, insofar as they rely on Defendants' invalid method of reading the complaint,[20] are deficient.

Defendants raise additional arguments specifically as to the collections claims, including that the FTC has not provided numerous additional details regarding

---

[19]    *See* FTC Request for Judicial Notice Ex. B (*Commerce Planet* Compl. ¶¶ 14-19, 21-23) (deception allegations pleaded in "Business Practices" section and no specific paragraphs relating to materiality or reasonable reliance) and Ex. C (*Commerce Planet* Order) (sustaining FTC's deception allegations).

[20]    Lending Defs.' Mem. at 10-11.

11

Defendants' false and threatening phone calls.[21]  In a claim involving telephone calls to
numerous consumers, Defendants' expectation that the FTC allege further details
regarding the precise language used in the conversations, the dates and times of the calls,
the originating phone numbers, etc.,[22] defies common sense and attempts to impose a
threshold far beyond that which the pleading rules require.  Indeed, the Supreme Court
has been clear that "[s]pecific facts are not necessary; the statement [in the complaint]
need only give the defendant[s] fair notice of what the ... claim is and the grounds upon
which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).   Previous FTC complaints
regarding debt collection clearly show that such level of detail is not necessary.  *See*, *e.g.*,
*FTC v. Datacom Marketing Inc.,* 1:06-cv-2574 (N.D. Ill. May 9, 2006) (complaint) (May
24, 2006 (memorandum opinion and order)) (finding likelihood of success on merits
where complaint provided general details regarding defendants' debt collection activities,
stating, "[i]n numerous instances, consumers ignore or otherwise refuse to pay
defendants' invoices typically because no one in the consumer's organization ordered a
business directory or authorized the purchase of a business directory or listing…
Defendants make numerous collection calls and send facsimiles seeking payment of the
invoices…"); *FTC v. Check Investors, Inc.*, 2:03-cv-02115-KSH-PS (D.N.J. May 12,
2003) (complaint) (July 18, 2005 (opinion)) (granting summary judgment for FTC where
complaint provided general details regarding defendants' debt collection activities,
stating, "[o]n numerous occasions, in dunning telephone calls to consumers or third
parties, NCC represents that the consumers will be arrested imminently for check fraud if
the consumers or third parties fail to submit immediate payment to NCC for the full
amount that NCC demands.").  Because Defendants' false and threatening calls were

---

[21]   Lending Defs.' Mem. at 13.

[22]   *Id.*

made to consumers, and not to the FTC itself, the FTC could not plausibly record the details Defendants demand their attempt to create a new rule of pleading would make it nearly impossible for the FTC to bring any debt collection claim involving telephone calls.

### c) The FTC May Prosecute Its Claims Against These Defendants Under The FTC Act

Under the FTC Act, the FTC has broad authority to bring cases against "persons, partnerships, or corporations" using "deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(2). The Lending Defendants now repeat their desperate argument that they do not fall within that authority because of their claimed affiliations with Indian tribes and their supposed non-profit purposes.[23] (Defendants do not argue that they are immune from prosecution under TILA or EFTA.) As previously addressed in the FTC's reply memorandum in support of its motion for preliminary injunction[24] and as summarized here, these arguments are without merit because there is no exemption in the FTC Act for tribal entities and because the Lending Defendants themselves admit that they operate for profit.

It is "well settled by many decisions of this Court that a general statute in terms applying to all *persons* includes Indians and their property interests." *Fed. Power Comm'n. v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960) (emphasis added).[25] Statutes such as the FTC Act that do not expressly mention tribes may exclude tribes only

---

[23]   Lending Defs.' Mem. at 6-9.

[24]   Docket No. 84 at 45-48.

[25]   *See also N.L.R.B. v. Chapa De Indian Health Program, Inc.*, 316 F.3d 995, 998-99 (9th Cir. 2003) ("[W]e have explicitly adhered to the *Tuscarora* rule"); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985) ("Many of our decisions have upheld the application of general federal laws to Indian tribes; not one has held that an otherwise applicable statute should be interpreted to exclude Indians.").

13

when narrow exceptions exist,[26] and Defendants make no effort to invoke any of those exceptions.  Indeed, Defendants and their counsel have admitted that they are subject to federal laws.[27]  Despite the Supreme Court rule in *Tuscarora* that federal statutes applying to all *persons* include Indian tribes, the Lending Defendants argue that somehow the term "persons" in the FTC Act does not apply to sovereign Indian tribes and subdivisions and instrumentalities thereof.[28]  The principal case cited by Defendants, *Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701 (2003), has nothing to do with this analysis and merely examined whether a tribe could sue a state.  That case did not overturn *Tuscarora* or otherwise change its well-established rule that "a general statute in terms applying to all *persons* includes Indians."  Defendants' related argument that the term "corporation" in the FTC Act does not specifically apply to tribal corporations[29] is likewise inapt.  Because general statues such as the FTC Act apply to Indians in the absence of provisions to the contrary, *see Coeur d'Alene*, 751 F.2d at 1116, Defendants' suggestion that the Court needs to search the FTC Act for specific references to Indian tribes and corporations turns the analysis on its head.

---

[26] The exceptions, which are not present here, are the following: "(1) the law touches exclusive rights of self-governance in purely intramural matters; (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof by legislative history or some other means that Congress intended the law not to apply to Indians on their reservations."  *Coeur d'Alene*, 751 F.2d at 1116 (internal quotations and citations omitted).

[27] *See* Docket No. 5 at 36 n.123 and accompanying text.  The FTC first brought these statements to the Court's and Defendants' attention on April 2, 2012 (*id.*), and in the following two months and two separate memoranda the Lending Defendants have filed since, Defendants have made no effort to recant or explain their numerous admissions that federal laws apply to them.

[28] Lending Defs.' Mem. at 6-7.

[29] *Id.* at 8.

14

The Lending Defendants also try to argue that they are somehow "nonprofit" corporations, and therefore exempt from FTC Act jurisdiction.[30]  Defendants bear the burden of proving that they fit within this exemption,[31] and they have failed to do so. Defendants do not support their contention that they are nonprofits; to the contrary, Defendants' own submissions affirm that Defendants exist to "generate profits."[32]  And although the state court immunity decisions submitted by Defendants are entirely irrelevant to the federal government's ability to bring this action, evidence submitted in those proceedings showed that the Tuckers have received 99% of the gross revenues from the operations, leaving 1% to the tribes.[33]  Indeed, though Plaintiff had no burden to allege in its complaint that the Defendant corporations operate for profit, the complaint in any event alleges, and evidence submitted in connection with Plaintiff's motion for preliminary injunction confirms, that Defendants' finances are controlled by and principally serve Scott Tucker, Blaine Tucker, and their personal interests.[34]  *See Ohio Christian College*, 80 FTC 815, 847-48 (1972) (finding that the FTC has jurisdiction over a purported nonprofit that pays for the "subsistence and shelter" and "expensive automobiles" of the controlling individuals).

---

[30]   Lending Defs.' Mem. at 8-9.

[31]   *See FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) ("[T]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits."); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 92 (2008) (same).

[32]   Defs.' Ex. L at II.B (articles of incorporation indicating purpose of corporation to "generate profits"); Exs. N, O at II.B (same); Ex. R at III.B (same).

[33]   Defs.' Ex. A at 20-21; Ex. B at 14.

[34]   Compl. ¶¶ 17-18, 23-24; Docket No. 84 at 47 and exhibits cited therein.

### 2.     The Complaint States A Claim Under TILA

#### a)     The Complaint Describes In Detail Defendants' Inaccurate TILA Disclosures

Defendants' motions to dismiss the FTC's TILA claim are, by Defendants' admission, subject to the Rule 8(a) standard as articulated in *Twombly* and *Iqbal*.[35]  The parties further agree that TILA requires Defendants to disclose the finance charge, annual percentage rate, payment schedule, and total of payments for their loans.  *See* 15 U.S.C. §§ 1631(a), 1631(b)(1).[36]

The complaint describes how Defendants fail to accurately disclose the finance charge, annual percentage rate, payment schedule, and total of payments and therefore contains allegations (Compl. ¶¶ 34-41), which, taken as true, render it plausible that Defendants have violated TILA.

Contrary to Defendants' assertion that the Complaint "nowhere states" the actual legal obligation of the parties,[37] the complaint includes an entire section titled "The Actual Cost of Defendants' Loans" (Compl. ¶¶ 37-41), which includes a recitation of the complete payment schedule that the consumer is automatically obliged to follow once the loan contract is executed (*id.* ¶ 39).  In other words, the complaint explains how Defendants disclose certain loan terms to consumers (*id.* ¶ 34-35) and then enroll consumers into loans that actually have markedly different and more costly terms (*id.* ¶¶ 39-41).

And, as with their discussion of the FTC's deception claim, Defendants avoid a substantive discussion of the accuracy of their lending disclosures and attempt to argue

---

[35]   Lending Defs.' Mem. at 5, 16.

[36]   *Id.* at 16.

[37]   Lending Defs.' Mem. at 16.

16

that the sufficiency of the TILA claim depends only on the two specific paragraphs that appear under the TILA claim heading in the complaint.  As noted above, courts do not engage in this narrow approach to reading a complaint.

        **b)**        **The FTC Was Not Required To Consult With Defendants Before Bringing This Action**

Defendants' argument that the FTC has no authority to allege TILA claims in federal court[38] is based on a complete misreading of the statute.  TILA expressly provides, "All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with the requirements under [TILA]."[39]  Section 13(b) of the FTC Act, in turn, authorizes the Commission to bring actions in federal district courts.  15 U.S.C. § 53; *see also FTC v. Capital City Mortgage Corp*., No. 98-237 (J.H.G.), slip op. (D.D.C. Oct. 10, 2003) (in a district court action under TILA, "the FTC may seek any relief that it is permitted to pursue under section 13(b)" of the FTC Act).[40]

Defendants ignore this provision, instead focusing on the entirely separate process under which *an agency itself* orders a defendant to comply with TILA.  This is clear from the very portion of the statute that Defendants reprint in their memorandum.[41]  15 U.S.C.

---

[38]   Lending Defs.' Mem. at 14.

[39]   15 U.S.C. § 1607(c).  Notably, this is true "irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests of the Federal Trade Commission Act."  *Id.*

[40]   The FTC has brought numerous other cases in federal courts for violating TILA and Regulation Z, including against payday lenders, and was not required to consult with those defendants in advance. *See, e.g.*, *FTC v. Cash Today, Ltd*., Civ. No. 08-cv-590-BES-VPC (D. Nev. Oct. 27, 2009); *FTC v. Consumer Money Markets, Inc*., Civ No. CVS001071-PMP-RJJ (D. Nev. Aug. 30, 2000); *FTC v. EMC Mortgage Co*., Civ No. 08-cv-338 (E.D. Tex. Sept. 9, 2008); *FTC v. BlueHippo Funding, LLC*, Civ. No. 08-CV-1819 (S.D.N.Y. Apr. 10, 2008); *FTC v. Stewart Fin. Co. Holdings, Inc*., Civ. No. 1:03CV-2648 (N.D. Ga. Nov. 4, 2005); *FTC v. 30 Minute Mortgage, Inc*., Civ. No. 03-60021 (S.D. Fla. Nov. 26, 2003).

[41]   Lending Defs.' Mem. at 14-15.

17

§§ 1607(e)(1), (e)(4)(A) ("[A]n adjustment under this subsection *may be required by an agency* . . . only by an order issued in accordance with cease and desist procedures.") (emphasis added).  The administrative cease and desist process is irrelevant here, given that the FTC is not issuing an order against Defendants; rather, the FTC is requesting that *this Court* issue an order.[42]

> ### 3.     The Complaint States A Claim That Defendants Condition Credit Upon The Consumer's Agreement To Repay By Electronic Funds Transfer In Violation Of EFTA, And Defendants Have Already Admitted The Violation

Defendants' motions to dismiss the FTC's EFTA claim are, by Defendants' admission, subject to the Rule 8(a) standard as articulated in *Twombly* and *Iqbal*.[43]  The parties further agree that EFTA makes it unlawful for Defendants to condition the extension of credit on a consumer's repayment by electronic funds transfer.  *See* 15 U.S.C. §§ 1693(k)(1).[44]

The complaint alleges that Defendants condition the extension of credit on a consumer's repayment by electronic funds transfer (Compl. ¶¶ 42, 66) and therefore contains allegations, which, taken as true, render it plausible that Defendants have violated EFTA.  In fact, Defendants have already admitted this violation.

---

[42] One individual Defendant, Timothy Muir, suggests in a footnote that TILA and EFTA violations cannot be brought against individuals who are not themselves creditors.  (Muir Defs.' Mem. at 9 n.1.) But, as noted above, under TILA and EFTA, all functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person, 15 U.S.C. § 1607(c) (TILA); 15 U.S.C. 1693o(c) (EFTA), including the power to seek relief under TILA and EFTA against individuals who control or participate in a common enterprise.  *See FTC v. Cash Today, Ltd.*, Civ. No. 08-cv-590-BES-VPC (D. Nev. Oct. 27, 2009) (enforcing TILA and Regulation Z claims against individuals participating in common enterprise; *FTC v. Grant Connect, LLC*, No. 09-CV-01349-RLH-RJJ, 2011 U.S. Dist. LEXIS 123792 (D. Nev. Oct. 25, 2011) (individuals participating in common enterprise held jointly liable for EFTA violations); *see also* Part II.B, *infra*.

[43] Lending Defs.' Mem. at 5-6, 17.

[44] *Id*. at 17.

18

1  Defendants argue that the complaint's EFTA allegations are insufficient and

2  merely recite the elements of the violation, an argument that rests exclusively on

3  Defendants' reading of paragraph 66 of the complaint.[45]  While paragraph 66 alleges

4  Defendants violated EFTA, paragraph 42 of the Complaint, wholly ignored by

5  Defendants, pleads the facts on which the EFTA violation is based:  "Defendants' loan

6  application also contains a provision that requires the consumer to authorize Defendants

7  to initiate electronic fund transfers . . . as a condition of obtaining credit . . ."  (Compl. ¶

8  42.)  And, contrary to Defendants' assertion that the complaint "nowhere" describes the

9  document or language containing the EFTA violation,[46] the FTC specifies both clearly.

10  The complaint clearly identifies "Defendants' loan application" as containing the

11  applicable provision.  (*Id.*)

12  Of course, Defendants cannot possibly misunderstand this clear reference to the

13  loan application, drafted by and used by Defendants in the regular course of business.

14  Indeed, Defendants' loan application is replete with language requiring the consumer, as

15  a condition of obtaining a loan from Defendants, to repay by preauthorized electronic

16  fund transfers.

17  > Any payment due on [t]he Note shall be made by us effecting one
> or more ACH[47] debit entries to your Account at the Bank.  You

18  > authorize us to effect this payment by these ACH debit entries.

19  > 6.  You authorize us . . . to initiate one or more ACH debit entries .

20  > . . to your Deposit Account indicated below for the payments that

21

22

23  _____

24  [45]  Lending Defs.' Mem. at 17.

25  [46]  *Id*. at 17.

26  [47]  ACH (automatic clearinghouse) is a type of electronic fund transfer.

come due each pay period and/or each due date concerning every renewal, with regard to the loan for which you are applying.[48]

And Defendants readily admit that consumers must agree to electronic fund transfer repayment provisions in order to receive their loans.[49]

In fact, Defendants' violation of EFTA is so plain that the only argument they could muster in the preliminary injunction briefing is that consumers supposedly have the right to revoke the electronic funds transfer authorization at a later time.[50]  But, not surprisingly, Defendants cannot simply "undo" the EFTA violation after it has already occurred.  *See O'Donovan v. Cashcall, Inc.*, 2009 U.S. Dist. LEXIS 53895, *7-*8 (N.D. Cal. Jun. 24, 2009) ( "[T]he right to later cancel EFT payments does not allow a lender who conditions the initial extension of credit on such payments to avoid liability.").

**B.**   **The Complaint Alleges A Common Enterprise Of Corporate Defendants Supporting The Unlawful Activities, Along With Individuals Participating In Or With Knowledge Of The Wrongdoing**

As demonstrated in Part II.A, the complaint sufficiently states causes of action for violations of the FTC Act, TILA, and EFTA.  The next issue raised by the motions to dismiss is which Defendants may be culpable for those violations.  As is routine in FTC matters, the FTC alleged the existence of a common enterprise of entities participating in the violations, along with participating individuals associated with one or more of the common enterprise entities.  (Compl. ¶¶ 6-12, 14-22, 25.)

The four Lending Defendants – AMG Services, Inc., Red Cedar Services, Inc., SFS, Inc., and Tribal Financial Services – do not argue that they are not responsible for

---

[48]   Docket No. 5-11 at 26, 27 (PX10 at 344, 345).  As noted above, Defendants' loan application is specifically referenced in the complaint and the Court may consider its entire contents in resolving Defendants' motions to dismiss.  *See Liguori*, 2012 WL 786263 at *1.

[49]   Lending Defs.' 5/4/12 Preliminary Injunction Opposition Memo. at 12 (stating that consumer must agree to, *inter alia*, ACH authorization, to have loan application processed).

[50]   *Id.* at 37-38.

20

their own lending and collections activities.  But the remaining six Corporate Defendants, and all six Individual Defendants, argue that the violations in the complaint cannot reach them.[51]

Notwithstanding Defendants' repeated complaints about having been "lumped" together, there are, as described in Part II.B.1 below, straightforward standards for pleading corporate entities' common enterprise liability and individuals' liability in FTC matters, and those standards remain unaltered even in instances where courts have applied Rule 9(b).  In other words, because the FTC has detailed the underlying allegations regarding the deceptive conduct, there is no pleading defect posed by certain of Plaintiff's allegations referring to Defendants collectively or using similar language. As shown in Parts II.B.2 and II.B.3, the allegations in the complaint regarding these six corporate and six individual Defendants, taken as true, readily meet those standards.

### 1. The Common Enterprise Standard And Individual Liability Standards In FTC Actions Are Not Altered By Rule 9(b)

#### a) Common Enterprise Corporate Liability

Where corporate entities operate together and act as a common enterprise, each may be held liable for the deceptive acts and practices of the others.  *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010); *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000), *aff'd* 312 F.3d 259 (7th Cir. 2002); *see also FTC v. John Beck Amazing Profits, LLC*, 2009 U.S. Dist. LEXIS 130923 at *40 (C.D. Cal. Nov. 17, 2009) (citing same; other citations omitted); *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000).

---

[51]   The Relief Defendants merely join in the motions to dismiss of other Defendants and do not assert any independent grounds for dismissal as to them.  (Docket No. 108.)

"[E]ntities constitute a common enterprise when they exhibit either vertical or horizontal commonality—qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *Network Servs. Depot, Inc.*, 617 F.3d at 1142-43.  Courts consider the following when determining whether a common enterprise exists:  "common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; and evidence that reveals that no real distinction exists between the corporate defendants."  *FTC v. Grant Connect, LLC*, No. 09-CV-01349-RLH-RJJ, 2011 U.S. Dist. LEXIS 123792, *36-37 (D. Nev. Oct. 25, 2011) (citations omitted).

### b)   Individual Liability

Individuals may be held liable for injunctive relief based on corporate entities' violations if (1) the corporation committed misrepresentations of a kind usually relied on by a reasonably prudent person and resulting in consumer injury and (2) individuals participated directly in the violations or had authority to control the entities and had some knowledge of the deceptive acts or practices.  *Affordable Media*, 179 F.3d at 1234; *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997).  The first element of this test as to the corporations' conduct has been met as discussed in Part II.A *supra*, and the second element of this test is met as discussed in Part II.B.3, *infra*. Where a common enterprise is present, an individual defendant's liability for monetary relief is joint and several with all entities participating in the enterprise.  *See FTC v. Nat'l Urological Group, Inc.*, 645 F.Supp. 2d 1167, 1213-14 (N.D. Ga. 2008).

Requisite control is present where the individual has a position of authority with one or more entities and the authority to sign documents on their behalf.  *See Publ'g Clearing House*, 104 F.3d at 1170.  Requisite knowledge for individuals is defined as

actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of a representation, or an awareness of a high probability of fraud along with an intentional avoidance of the truth. *Affordable Media*, 179 F.3d at 1234 n.4; *see also Publ'g Clearing House*, 104 F.3d at 1171 (citations omitted). The FTC need not show that the individual defendant intended to defraud consumers. *Affordable Media*, 179 F.3d at 1234.

**c)**           **Rule 9(b) Does Not Affect The Common Enterprise Or Individual Liability Standards**

In an effort to avoid application of the long-standing principles for common enterprise and individual liability articulated above, Defendants' memoranda are replete with inapt arguments regarding Rule 9(b) and the supposed "lumping" together of Defendants.

Rule 9(b) does not at apply at all in this action for the reasons stated in Part II.A.1.a. Even if Rule 9(b) did apply, courts have made it clear that the Rule would apply to the underlying deception claim only and not to the allegations regarding common enterprise and individuals' liability. In *Ivy Capital*, the court applied Rule 9(b) to the FTC's underlying deception claim, but applied a lower threshold "to identify the specific actions that a corporate officer took." 2011 WL 2118626 at *4. In *FTC v. Benning*, the court likewise held that "Rule 9(b)'s particularity requirement does not extend to the elements of knowledge and authority to control. These may be averred generally in a manner akin to Rule 8 requirements." No. C09-03814 RS, 2010 WL 2605178 at *4 (N.D. Cal. June 28, 2010) (denying defendant's motion to dismiss); *see also Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (applying 9(b) to common law fraud claim: "there is no absolute requirement that where several defendants are sued in

1   connection with an alleged fraudulent scheme, the complaint must identify false

2   statements made by each and every defendant.").[52]

3       For those reasons, courts considering motions to dismiss FTC complaints have

4   upheld general allegations regarding entities' involvement in a common enterprise and

5   individuals' control or participation in unlawful activities, even when those allegations

6   are repeated verbatim, stated collectively, or stated in the disjunctive.  The *Ivy Capital*

7   complaint, as here, presented biographical data regarding 22 separate corporate

8   defendants, a repeated, verbatim, and disjunctive allegation that each of the 8 individual

9   defendants was associated with a particular defendant and "formulated, directed,

10  controlled, had the authority to control, or participated in" the acts alleged in the

11  complaint, and a single "common enterprise" paragraph alleging that the entities operated

12  together and that the individuals controlled or participated in the wrongdoing.[53]  In a

13  decision cited by nearly all parties (including the Lending Defendants, the Tucker

14  Defendants, and the Muir Defendants),[54] the Nevada district court upheld that complaint

15

16  [52]  The Tucker Defendants criticize the FTC for citing *Swartz* in an earlier memorandum.  (Tucker Defs.'

17  Mem. at 18 n.22.)  In affirming dismissal of a complaint against certain defendants but remanding for
    leave to replead, *Swartz* held that there is no requirement that a complaint allege false statements made

18  by each defendant, and also that a complaint cannot lump multiple defendants together.  476 F.3d at
    764-65.  The Court resolved the tension posed by those two principles – in a portion of the Rule 9(b)

19  discussion not mentioned in the Tucker Defendants' fiery footnote – by stating that a "plaintiff must, at
    a minimum, identify the role of each defendant in the alleged fraudulent scheme."  *Id.* at 765 (internal

20  punctuation and citation omitted).  As demonstrated below, the complaint at issue here accomplishes
    this (*see* Compl. ¶¶ 6-12, 14-25), and similarly detailed and organized FTC complaints within this

21  Circuit have survived motions to dismiss.

22  [53]  *See* FTC Request for Judicial Notice Ex. A (*Ivy Capital* Compl. ¶¶ 6-35, 46).

23  [54]  In their earlier memorandum to the Court, the Tucker Defendants repeatedly relied on *Ivy Capital*

24  (Docket No. 74 at 11, 12, 13) even arguing, incorrectly, that the court in *Ivy Capital* dismissed the
    FTC's complaint (*id.* at 13).  Now, incredulously, the Tucker Defendants devote a significant portion

25  of their memorandum to arguing that *Ivy Capital* should be distinguished.  (Tucker Defs.' Mem. at 20-
    22.)  This curious backtracking aside, Defendants cannot escape application of *Ivy Capital* to this case

26  by relying on the outcomes in other, non-FTC cases involving materially different circumstances and
    legal claims.

in the face of a motion to dismiss, doing so even under Rule 9(b) and even after noting, as Defendants do incessantly, that a complaint may not "lump" defendants together.  2011 WL 2118626 at *3-4.[55]  In *Commerce Planet*, similar near-verbatim FTC allegations regarding individuals' liability (and similar collective allegations against entities)[56] were also sustained on a motion to dismiss, with another court in this Circuit holding, "Whether [the individual defendant's] practices were deceptive is a question that must be decided on the facts, not in a motion to dismiss for failure to state a claim."[57]  In both cases the FTC pleaded the underlying deceptive acts with requisite detail and the general allegations against various entities and individuals for their control of and participation in those acts were sufficiently alleged.

For these reasons, assuming that the three statutory claims are sufficiently alleged as demonstrated in Part II.A, *supra*, the Court need only examine whether the complaint alleges facts regarding the Corporate Defendants which, if true, would place each Defendant in the common enterprise and facts regarding the Individual Defendants, which, if true, would establish, for each individual, participation in and knowledge of the wrongdoing.  As shown in the two sections below, the complaint accomplishes both tasks.

---

[55]  The Tucker Defendants (Tucker Defs.' Mem. at 8 n.11) analogize to *Swish Marketing*, a decision that dismissed deception allegations against a single individual defendant.  2010 WL 653486 at *5.  The allegations against the Individual Defendants here are more detailed than the single paragraph criticized in *Swish*, and, in any event, the FTC in *Swish* promptly and satisfactorily repleaded the complaint by more clearly illustrating the defendant's ownership of the entities, control of relevant bank accounts, and involvement in the wrongdoing.  2010 WL 2605178 at *2.  As demonstrated in Part II.B.3 *infra*, such facts are present here as to the Individual Defendants.

[56]  *See* FTC Request for Judicial Notice Ex. B (*Commerce Planet* Compl. ¶¶ 6-12).

[57]  *See* FTC Request for Judicial Notice Ex. C (*Commerce Planet* Order at 3-4).

25

### 2.      The Complaint Adequately Alleges Facts Against The Corporate Defendants

The complaint alleges that each of AMG Capital Management, LLC, Level 5 Motorsports, LLC, LeadFlash Consulting, LLC, Black Creek Capital Corporation, Broadmoor Capital Partners, LLC, and The Muir Law Firm, LLC acted in concert with others in connection with the alleged unlawful lending and collection activities.  (Compl. ¶¶ 5-12, 14-16, 25.)  Defendants' memoranda make it appear that the FTC haphazardly included these Corporate Defendants in the complaint, but the complaint also alleges that subsets of these Corporate Defendants share addresses with other Defendants (*id.* ¶¶ 10-12, ¶¶ 15-16), and, critically, that they have common ownership and commingle funds (*id.* ¶ 25.)  As noted in the preceding section, such allegations (even allegations repeated verbatim or stated collectively against multiple defendants) are sufficient to plead common enterprise liability and withstand a motion to dismiss, *even under Rule 9(b)*.

And, although a further showing is not necessary at this stage, the FTC's common enterprise factual allegations are far more than plausible.  In fact, they are borne out in the preliminary injunction briefing, wherein the FTC provided evidence of, among other things, commingling of funds via the extraordinary sums of money siphoned from the Lending Defendants to the six other Corporate Defendants listed above.[58]  Moreover, Defendants themselves admit that four of these six Defendants are wholly-owned by Scott Tucker, and one each is wholly-owned by Blaine Tucker and Timothy Muir.[59]

Here, the FTC has done all that is required at the pleadings stage to allege the Corporate Defendants' liability:  it has pleaded that each of the Corporate Defendants

---

[58]   The FTC has also shown in the separate preliminary injunction briefing volumes of evidence demonstrating the Corporate Defendants' common ownership, common management, sharing offices, etc.  (Docket No. 5 at 6-8, 30-31 & Docket No. 84 at 28-30, 36-41, and exhibits cited therein.)

[59]   Docket No. 58; 5/4/12 Decl. of Timothy Muir ¶ 6.

participated in the unlawful lending and collections activities and otherwise exhibits characteristics consistent with a common enterprise.  Assuming, as the Court must, that those allegations are true, the complaint adequately states a claim for injunctive and monetary relief as to each of the Corporate Defendants.

### 3.    The Complaint Adequately Alleges Facts Against The Individual Defendants

The complaint alleges that each of Scott Tucker, Blaine Tucker, Timothy Muir, Don Brady, Robert Campbell, and Troy LittleAxe held one or more management positions with one or more of the Corporate Defendants, as follows:

- Scott Tucker is an officer or member of Broadmoor Capital Partners, LLC and Level 5 Motorsports, LLC, and is a signatory on the bank accounts on all but two Corporate Defendants (Compl. ¶ 17);[60]

- Blaine Tucker is an officer or member of AMG Services, Inc., Tribal Financial Services, Black Creek Capital Corporation, and LeadFlash Consulting, LLC, and is a signatory on the bank accounts on all but one Corporate Defendant (*id.* ¶ 18);[61]

- Timothy Muir is the founder of The Muir Law Firm and president of Black Creek Capital Corporation, and through his firm pays for the domain registration fees for the Lending Defendants' websites (*id.* ¶ 19);

- Don Brady is the chief executive officer of AMG Services, Inc., signatory on the Tribal Financial Services bank account, and administrator of the websites operated by Tribal Financial Services (*id.* ¶ 20);

- Robert Campbell is an officer of SFS, Inc., signatory on its bank account, and administrator of its website (*id.* ¶ 21); and

- Troy LittleAxe is the registered agent of Red Cedar Services, Inc., signatory on its bank account, and administrator of its website (*id.* ¶ 22).

---

[60]    Scott Tucker further admits that he is the sole owner of AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creed Capital Corporation, and Broadmoor Capital Partners, LLC.  Docket No. 58.

[61]    Blaine Tucker further admits that he is the sole owner of LeadFlash Consulting, LLC.  Docket No. 58.

The complaint further alleges that, by virtue of those positions and otherwise, each Individual Defendant controlled one or more Corporate Defendants in the common enterprise and participated in, and had knowledge of, the unlawful lending and collections activities alleged.  (Compl. ¶¶ 17-22, 25.)  As noted in Part II.B.1.c, *supra*, such allegations (even allegations repeated verbatim or stated collectively against multiple defendants) are sufficient to plead individual liability and withstand a motion to dismiss, *even under Rule 9(b)*.

And, although a further showing is not necessary at this stage, the FTC's allegations regarding the Individual Defendants' liability are far more than plausible.  In fact, they are borne out in the preliminary injunction briefing, wherein the FTC provided evidence of, among other things, the involvement of the Individual Defendants in the lending activities of the Corporate Defendants (including their admissions to that involvement), thousands of consumer complaints and dozens of state and private lawsuits against Defendants (putting the Individual Defendants on notice of their loans' tendency to deceive consumers), and the control by the Individual Defendants of the Corporate Defendants' bank accounts (including summaries of thousands of checks transferring millions of dollars between and among Defendants).[62]

As with the Corporate Defendants, the FTC has done all that is required at the pleadings stage to allege the Individual Defendants' liability:  it has pleaded that each of the Individual Defendants controls one or more of the Corporate Defendants in the common enterprise with participation in and knowledge of the wrongdoing.  Assuming, as the Court must, that those allegations are true, the complaint adequately states a claim for injunctive and monetary relief as to each of the Individual Defendants.

---

[62]   Docket No. 5 at 8-12, 31-34 & No. 84 at 28-41, and exhibits cited therein.

**III.    CONCLUSION**

For all the foregoing reasons, the FTC respectfully requests that this Court deny Defendants' motions to dismiss the complaint (Docket Nos. 100, 103, 104, 105, 107, 108, and 109).


Dated:  June 11, 2012

Respectfully submitted,

*/s/ Nikhil Singhvi*
Nikhil Singhvi
Jason D. Schall
Helen P. Wong
Julie G. Bush

***Attorneys for Plaintiff***
***Federal Trade Commission***

29

**CERTIFICATE OF SERVICE**

I, Nikhil Singhvi, certify that the following individuals were served with
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** by electronic case filing:

David J. Merrill (david@djmerrillpc.com),
Adam S. Hoffinger (ahoffinger@mofo.com)
Andrew MacGregor Smith (asmith@mofo.com)
Nicholas Miranda (nmiranda@mofo.com)
Conly J. Schulte (hphelps@ndnlaw.com)
Francis J. Nyhan (jnyhan@ndnlaw.com)
*Attorneys for Defendants AMG Services, Inc.; Red Cedar Services, Inc. dba 500FastCash; SFS, Inc. dba OneClickCash; Tribal Financial Services, dba Ameriloan, UnitedCashLoans, USFastCash, and Miami Nation Enterprises*

Von S. Heinz (vheinz@lrlaw.com)
Darren J. Lemieux (dlemieux@lrlaw.com)
E. Leif Reid (lreid@lrlaw.com)
Jeffrey D. Morris (jmorris@berkowitzoliver.com)
*Attorneys for Defendants AMG Capital Management, LLC; Level 5 Motorsports, LLC; LeadFlash Consulting, LLC; Black Creek Capital Corporation; Broadmoor Capital Partners, LLC; Scott A. Tucker; Blaine A. Tucker*

Andrew P. Gordon (agordon@mcdonaldcarano.com)
*Attorney for Defendant Partner Weekly, LLC*

L. Christopher Rose (lcr@juww.com)
*Attorney for Defendants The Muir Law Firm, LLC and Timothy J. Muir*

Jay Young (j@marquisaurbach.com)
*Attorney Defendant for Robert D. Campbell*

Paul C. Ray (paulcraylaw@aol.com)
*Attorney for Defendant Troy L. LittleAxe*

Patrick J. Reilly (preilly@hollandhart.com)
*Attorney for Defendants Kim C. Tucker and Park 269 LLC*

Brian R. Reeve (breeve@swlaw.com)
Nathan F. Garrett (ngarrett@gbmglaw.com)
Whitney P. Strack (pstrack@gbmglaw.com)
*Attorneys for Defendant Don E. Brady*

_/s/ Nikhil Singhvi_____

Dated this 11th day of June 2012.                                  Nikhil Singhvi