UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | Case No.: 2:12-cv-536-GMN-VCF |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| AMG SERVICES, INC., et al, | ) | |
| | ) | |
| Defendants, and | ) | |
| | ) | |
| PARK 269 LLC, et al., | ) | |
| | ) | |
| Relief Defendants. | ) | |
| | ) | |

## INTRODUCTION

Before the Court is Defendants Scott Tucker, Blaine Tucker, AMG Capital Management LLC, Level 5 Motorsports, LeadFlash Consulting LLC, Blackcreek Capital Corporation, and Broadmoor Capital Partners' (hereinafter "the Tucker Defendants") Motion to Strike or in the alternative to seal certain documents (ECF No. 60).

Also before the Court is Defendants The Muir Law Firm LLC and Timothy J. Muir, Esq.'s (hereinafter "the Muir Defendants") Motion to Strike the Declaration of Victoria M.L. Budich (ECF No. 68). Plaintiff Federal Trade Commission (hereinafter "FTC" or "Commission") filed a Response to both motions (ECF No. 95). The Tucker Defendants filed a Reply (ECF No. 114) as did the Muir Defendants (ECF No. 118).

## BACKGROUND

The FTC brings the instant action to halt a web of Internet-based payday lenders that allegedly deceive consumers about the costs of their loans and engage in unlawful debt collection practices. The FTC is currently seeking a preliminary injunction to enjoin

Defendants' alleged violation of the Federal Trade Commission Act, the Truth in Lending Act and the Electronic Fund Transfer Act.

The instant motions seek to strike the Plaintiff's Motion for Preliminary Injunction, including its Memorandum of Points and Authorities (ECF Nos. 4 & 5), the Declaration of Victoria M. L. Budich (attached as Ex. 22 to Plaintiff's Memorandum of Points and Authorities, ECF No. 5–23), and Defendants' financial documents which are attached to Victoria M. L. Budich's Declaration (including, but not limited to Exs. CB–EP, filed at ECF No. 5–37 through 5–46.)  The financial documents that the parties wish to strike were obtained by the FTC pursuant to civil investigative demands ("CID") directed to U.S. Bank compelling production of bank records pertinent to the Defendants.  The FTC relies on these financial documents in its lawsuit to support its allegations against defendants.

## DISCUSSION

### A. Legal Standard

Documents and information obtained as part of a non-public investigation, utilizing the compulsory process of a CID, federal law requires that confidentiality must be maintained. *See* 15 U.S.C. §§ 57b-1(c); 57b-2(b)(3)(C).  Regulations promulgated by the FTC require that before such information can be used or disclosed in a proceeding, the submitter must be afforded the opportunity to obtain a protective or *in camera* order. *See* 16 C.F.R. §4.10(g).  Rule 4.10(g) reads, in its relevant part:

> (g) Material obtained by the Commission:
>
> (1) Through compulsory process and protected by section 21(b) of the Federal Trade Commission Act, 15 U.S.C. 57b–2(b) or voluntarily in lieu thereof and designated **by the submitter** as confidential and protected by section 21(f) of the Federal Trade Commission Act, 15 U.S.C. 57b–2(f), and § 4.10(d) of this part; or . . .
>
> (2) That is designated **by the submitter** as confidential, and protected by section 21(c) of the Federal Trade Commission Act, 15 U.S.C. 57b-2(c), and §4.10(e) of this part; or

> (3) That is confidential commercial or financial information protected by section 6(f) of the Federal Trade Commission Act, 15 U.S.C. 46(f), and §4.10(a)(2) of this part, may be disclosed in Commission administrative or court proceedings subject to Commission or court protective or in camera orders as appropriate. See §§ 1.18(b) and 3.45.
>
> Prior to disclosure of such material in a proceeding, **the submitter will be afforded an opportunity to seek an appropriate protective or in camera order.** All other material obtained by the Commission may be disclosed in Commission administrative or court proceedings at the discretion of the Commission except where prohibited by law. (emphasis added)

16 C.F.R. §4.10(g).

**B.    Analysis**

Defendants contend that the FTC violated §4.10(g) because they were never given the opportunity to seek an appropriate protective or *in camera* order. Whether or not Defendants had a right to an opportunity to seek an appropriate protective or *in camera* order turns on the definition of "submitter."

Defendants argue that a "submitter" is not limited to the person or entity that physically delivered the banking documents to the FTC. Rather, they assert, the term "submitter" includes those with a "commercial or proprietary interest in information which is within the commercial, research, financial or trade secret categories" citing to a 1983 Senate Report. *See* Sen. Judiciary Comm., Freedom of Information Reform Act, S. Rep. No. 221, 98th Cong., 1st Sess. 32 (1983); 1 Fed. Info. Discl. § 10.2, Submitters' rights within the agency (2011).

The FTC argues that Defendants merely rely on an old Senate report and a treatise section citing that report discussing a proposed amendment to the statue that was never actually enacted (i.e. the proposed provision – defining "submitter" is not found in the current Freedom of Information Act ("FOIA") or any amendments to the Act.)  Instead, the FTC argues that, although the FOIA does not use the term "submitter," Executive Order 12600, 52 Fed. Reg. 23781 (June 25, 1987) relies on the term in setting forth requirements that executive

federal agencies notify "submitters" of confidential commercial information before disclosing that information publicly in response to a FOIA request. This Executive Order specifically defines "submitter" to mean "any person or entity who provides confidential commercial information to the government." *Id.* § 2(b).

In this case, the FTC asserts that the only submitter is U.S. Bank. The FTC claims that it notified U.S. Bank regarding the public filing of the material on May 9, 2012, and has received no objections or request for a protective order from it. However, the FTC admits that this notification took place after they filed the Budich Declaration in this case.

The FTC argues that to expand the definition of "submitter" to include all entities and individuals with a "commercial or proprietary interest" in the banking information at issue would impose a crippling burden on the FTC's law enforcement efforts. The FTC explains that in connection with even a single bank account held by a business, an in exhaustible number of entities and individuals could claim to have a commercial or proprietary interest, including not only the account holder but every other party with whom the holder has engaged in financial transactions. In this case, that would mean that the FTC would have to notify all such parties in connection with the 57 accounts at issue, likely requiring hundreds or even thousands of notices. The FTC claims that it routinely files banking information gathered through CIDs in cases where it seeks preliminary injunctions. However, the FTC fails to cite to a single example for the Court to examine.

Defendants reply that the FTC's extreme scenario does not have to necessarily occur under Defendants' interpretation. Defendants argue that at a minimum the FTC would only have to provide notice to the account holders and not to every entity or person that has transactions with the account holder. Defendants indicate that the FTC produced account information sheets that contain balance information, related customers, remarks, account signatory information and checks issued to or by an account holder. Therefore, Defendants

conclude that it would not have been a burden on the FTC to notice all the account holders in this case before they published the information.

A review of the relevant case law reveals no cases on point within the Ninth Circuit or any other jurisdiction. "As a general interpretive principle, the Court looks to the plain meaning of the regulation and ends its inquiry there if the language is clear." *F.T.C. v. Publishers Business Services, Inc.*, 821 F. Supp. 2d 1205, 1220 (D.Nev. 2010)(citing *Safe Air for Everyone v. U.S. E. P.A.*, 488 F.3d 1088, 1097 (9th Cir. 2007). "A regulation should be construed to give effect to the natural and plain meaning of its words." *Bayview Hunters Point Comm. Advocates v. Metro. Trans. Comm'n*, 366 F.3d 692, 698 (9th Cir.2004) (quotation omitted). "The plain language of a regulation, however, will not control if clearly expressed administrative intent is to the contrary or if such plain meaning would lead to absurd results." *Safe Air*, 488 F.3d at 1097 (quotation and alteration omitted). Administrative intent is determined by looking to the published notices of the administrative agency. *Id.* at 1097–98.

The plain language of the regulation lends support to the FTC's interpretation of the word "submitter." Subsection 4.10(g)(1) states: Material obtained by the Commission: Through compulsory process . . . or voluntarily . . . *designated by the submitter as confidential*." (emphasis added.) Subsection 4.10(g)(2) reads: "Material obtained by the Commission: That is *designated by the submitter as confidential*." (emphasis added.) Both these subsections make it clear that the submitter has the opportunity to mark the material given to the commission as confidential.

If the Court were to accept Defendants' interpretation of the term submitter, the FTC would have to notify anyone with a commercial or proprietary interest in the information every time it sought information from a bank regarding an account for investigative purposes to make sure that the "submitter" would have the opportunity to mark the material confidential. This would be an absurd result.

Thus in this case, it appears the law only requires that U.S. Bank must be afforded the opportunity to seek an appropriate protective or *in camera* order.  This means that *if* U.S. Bank marked the specific information at issue in this motion as "confidential," then it should have been afforded the opportunity to seek a protective or *in camera* order.  The Court cannot find any evidence that U.S. Bank marked the bank account information at issue as being confidential.  Accordingly, it does not appear that the FTC did anything wrong with filing the disputed exhibits in this case under these subsections.

Defendants also argue that subsection 4.10(g)(3) which states: "[m]aterial obtained by the Commission [t]hat is confidential commercial or financial information protected by section 6(f) of the Federal Trade Commission Act, 15 U.S.C. 46(f), and §4.10(a)(2) of this part . . ." includes Defendants' confidential banking information.  Section 6(f) of the Federal Trade Commission Act, 15 U.S.C. 46(f) disallows the disclosure of "any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential."  Section 4.10(a)(2) protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential. 16 C.F.R. § 4.10(a)(2).  The section goes on to explain that "this exemption applies to competitively sensitive information, such as costs or various types of sales statistics and inventories.  It includes trade secrets in the nature of formulas, patterns, devices and processes of manufacture, as well as names of customers in which there is a proprietary or highly competitive interest." *Id.*

Defendants fail to demonstrate that their bank account information is confidential such that it is protected from disclosure in a civil case.  Furthermore, even if Defendants can demonstrate that the information is confidential, 15 U.S.C. § 57b-2(d)(1)(C) allows disclosure of relevant and material information in judicial proceedings to which the Commission is a party.  In this case, the bank account information is relevant and material information

1 regarding whether or not a preliminary injunction should issue.

2 Defendants also argue that this Court's Special Order 108 requires certain personal data identifiers contained in documents and exhibits filed with the court to either be omitted or redacted and claim that the FTC violated this Special Order. *See* District of Nevada, Special Order 108.  These personal identifiers include: social security numbers, names of minor children, dates of birth, financial account numbers and home addresses. *Id.*  A document containing unredacted personal data identifiers must be filed under seal. *Id.*  Special Order 108 states that it is the responsibility of counsel and the parties to redact the personal identifiers and that the Clerk will not review each pleading for compliance. *Id.*  Documents which do not comply with Special Orders are subject to being stricken. *Id.*  However, Defendants do not identify which exhibits contain the protected information because they claim it would provide a roadmap to anyone who wants to review the unprotected information.  This Court refuses to make a blanket ruling on the redaction claims without being provided the specific violations.  Therefore, Defendants are given leave to file a new motion under seal to strike or redact the specific exhibits that they claim have been filed in violation of Special Order 108 so long as they note with specificity the information to be redacted.

The Defendants also make a number of evidentiary objections to the Budich Declaration: that the statements are not relevant, are unauthenticated, are hearsay, are unduly prejudicial and are conclusory.  The court finds some of these to be baseless while others are proper evidentiary objections.  However, a "trial court may give inadmissible evidence some weight when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  Therefore, the Court will not strike the declaration of Ms. Budich from the record.  The Court will consider the Defendants' arguments when deciding how much weight to give the Budich Declaration and

/ / /

accompanying exhibits.[1]

Accordingly, the Court does not find that Defendants have demonstrated that the motion for preliminary injunction, Budich Declaration and specified exhibits should be stricken.

Defendants ask that, in the alternative, the Court seal the pleadings and filings immediately. The court will grant this request and seal the Budich Declaration which is Ex. 22 located at ECF No. 5–23 and the associated financial documents which are Exs. CB–EP, located at ECF No. 5–37 through 5–43.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Scott Tucker, Blaine Tucker, AMG Capital Management LLC, Level 5 Motorsports, LeadFlash Consulting LLC, Blackcreek Capital Corporation, and Broadmoor Capital Partners' Motion to Strike or in the alternative to seal certain documents (ECF No. 60) is **DENIED in part and GRANTED in part**. **The Budich Declaration (ECF No. ECF No. 5–23) and the associated financial documents (ECF No. 5–37 through 5–46) shall be SEALED.**

**IT IS FURTHER ORDERED** that Defendants The Muir Law Firm LLC and Timothy J. Muir, Esq.'s Motion to Strike the Declaration of Victoria M. L. Budich (ECF No. 68) is **DENIED**.

DATED this 15th day of August, 2012.

_____
Gloria M. Navarro
United States District Judge

---

[1] In their Reply, the Muir Defendants make a new argument that the FTC also violated Kansas law by filing confidential documents. The Court does not consider this new legal argument that did not appear in the moving papers. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)("district court need not consider arguments raised for the first time in a reply brief.")