DANIEL G. BOGDEN
United States Attorney
District of Nevada
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar. No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone:  (702) 388-6336
Facsimile:  (702) 388-6787
Email:  Blaine.Welsh@usdoj.gov

DAVID SHONKA
Acting General Counsel
NIKHIL SINGHVI
JASON D. SCHALL
JULIE G. BUSH
HELEN P. WONG
IOANA RUSU
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop NJ-3158
Washington, D.C. 20580
Phone:  (202) 326-3480 (Singhvi)
Facsimile:  (202) 326-3629
Email:  nsinghvi@ftc.gov; jschall@ftc.gov;
jbush@ftc.gov; hwong@ftc.gov; irusu@ftc.gov

*Attorneys for Plaintiff Federal Trade Commission*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                    Plaintiff,<br>         v.<br><br>AMG Services, Inc. et al.,<br><br>                    Defendants, and<br>Park 269 LLC, et al.,<br><br>                    Relief Defendants. | Case No. 2:12-cv-536<br><br>**PLAINTIFF'S POINTS AND AUTHORITIES OPPOSING DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S NOVEMBER 1, 2012 ORDER** |

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................. 4

I.    THE FTC'S COMPLAINT MEETS APPLICABLE PLEADING
      REQUIREMENTS, AS THE MAGISTRATE JUDGE FOUND ...................................... 6

      A.  The Recommendation Properly Interpreted The Requirements Of Rule 9(b) In The Same
          Manner As Previous Decisions Of This And Other Courts ................................ 6

      B.  The FTC's Complaint Adequately Pleads Each FTC Act, TILA, And EFTA Violations .......... 12

          1.  Counts One And Two Of The Complaint State A Claim For Deception
              Under The FTC Act ................................................................ 12

              a)   Count One: Deceptive Lending Practices ........................................ 13

              b)   Count Two: Deceptive Debt Collection Practices ................................ 15

          2.  Count Three Of The Complaint States A Claim Under TILA ............................. 15

          3.  Count Four Of The Complaint States A Claim, As Defendants Have Admitted, That
              Defendants Condition Credit Upon The Consumer's Agreement To Repay By Electronic
              Funds Transfer In Violation Of EFTA .............................................. 16

II.   THE FTC HAS AUTHORITY TO ALLEGE TILA CLAIMS IN FEDERAL COURT . 18

CONCLUSION ............................................................................................................. 19

1

**PRELIMINARY STATEMENT**

The Magistrate Judge correctly ruled that Defendants' motions to dismiss were without merit and recommended that they be denied (the "Recommendation," Docket No. 226). Nonetheless, Defendants seek to overturn the Recommendation, along with the order (*id.*) declining to hear further oral argument on Defendants' motions to dismiss.  Defendants attempt to argue that the Magistrate Judge did not adequately consider their arguments.  In truth, the parties submitted no less than *20* memoranda regarding the motions to dismiss,[1] followed by two hours of oral argument,[2] before the Magistrate Judge issued a preliminary finding that the motions to dismiss were without merit.  (Docket No. 153.)  That determination generated a *further* round of briefing[3] before the Magistrate Judge issued the Recommendation now under attack.  Now, Defendants' latest objections (Docket Nos. 247, 248, 250, 251, and 252) – their fourth bite at the apple – simply retread the same arguments.

Put simply, the FTC's complaint more than adequately describes the unlawful conduct at issue, along with each Defendant's role in the common enterprise responsible for that conduct.

**PROCEDURAL HISTORY**

In April 2012, the Federal Trade Commission ("FTC") filed a complaint and motion for preliminary injunction to stop Defendants' unlawful lending and collection practices, which include charging borrowers several multiples of the stated costs of their loans and falsely threatening consumers with arrest and litigation.  (Docket No. 1 at ¶¶ 26-45; Docket Nos. 4, 5.) Defendants constitute a number of entities that, acting together, conduct the unlawful activities, and the individuals who control those entities.  (Docket No. 1 at ¶¶ 6-12, 14-25.)

Defendants moved to dismiss (Docket Nos. 100, 103, 104, 105, 107, 108, and 109) and to stay all discovery and quash all FTC subpoenas (Docket Nos. 134, 136), arguing that, because

---

[1]   Docket Nos. 101, 103, 104, 105, 107, 109, 120, 123, 124, 125, 128, 134, 136, 138, 139, 141, 143, 148, 149, 150.

[2]   Docket No. 211.

[3]   Docket Nos. 165, 166, 167, 168, 185.

their motions to dismiss were "likely to dispose of the entire case", discovery should be stayed. (Docket No. 134 at 11; *see also* Docket No. 136.)  The Court on August 3, 2012 referred the dismissal and stay motions to Magistrate Judge Cam Ferenbach.

Defendants' motions to dismiss (and attendant request to stay all discovery) heavily depended on their contention that four Defendants' purported tribal affiliations shielded all Defendants from federal law enforcement.  After seeking immunity from state oversight by reassuring state courts that they were subject to federal law and not immune "from any sort of federal action",[4] after arguing to this Court that the FTC and all other federal agencies are powerless to regulate them and that only the tribes themselves may enforce federal law,[5] and after extensive briefing and oral argument on the issue, Defendants suddenly withdrew their tribal immunity argument from their motions to dismiss.[6]  As a result, what principally remains of Defendants' motions to dismiss are their run-of-the-mill arguments that the FTC's complaint does not comply with Rule 8(a) and Rule 9(b) and fails to state a claim upon which relief can be granted.  (*See* Docket Nos. 100, 103, 104, 105, 107, 108, and 109.)

The Magistrate Judge has already issued two opinions dispensing with Defendants' pleading arguments.  First, his August 28 Order (Docket No. 153) denied the Defendants' motions to stay discovery and quash all subpoenas, concluding that the underlying motions to dismiss likely would not prevail.  Specifically, the Magistrate Judge found that the FTC's complaint satisfies Rules 8(a) and 9(b) because, "like in *Ivy Capital*, . . . the FTC has categorized

---

[4]    Docket No. 185-1 at 102 (Defendants' counsel stating to Colorado state court:  "Tribes are subject to *all* Federal laws, of course, and so that would not immunize the tribes from *any* sort of federal action.") (emphasis added); *see also* Decl. of Don Brady, (Docket No. 5-32 at 12-13 ¶ 9) (Defendant stating to California state court that Ameriloan, US Fast Cash and United Cash Loans are "strictly regulated by and adhere[] to … *all* federal laws") (emphasis added)).

[5]    8/23/12 Tr. at 86 (in response to Magistrate Judge's question regarding who, if not the FTC, had authority to regulate the tribes' businesses, Defendants' counsel stated that the tribes might enforce federal laws against themselves).

[6]    Docket No. 214.

the defendants based on their function in the alleged scheme (#1 page 3, ¶ 6 – page 9, ¶ 24) and has described the nature of the alleged scheme in detail (#1 page 9, ¶ 25 – page 14, ¶ 45)." (Docket No. 153 at 12.)

The Magistrate judge confirmed this finding in the Recommendation, again determining that Defendants' motions to dismiss should be denied for the following reasons:

- The FTC's complaint complies with Rules 8(a) and 9(b) as to defendants AMG Services, Inc., Red Cedar Services, Inc., SFS, Inc., and Tribal Financial Services (sometimes referred to herein as the "Lending Defendants").  The Magistrate Judge found that the FTC (a) categorized the Lending Defendants based on their "function in the alleged scheme" and (b) "described the alleged scheme in detail."  (Docket No. 226 at 4.)

- The FTC's complaint complies with Rules 8(a) and 9(b) as to the remaining defendants. The Magistrate Judge found that the FTC (a) categorized the remaining defendants based on their function in the alleged scheme and (b) described that scheme in detail.  The Magistrate Judge also found that the FTC explained how the remaining defendants participated in the scheme and how they are connected to each other and the Lending Defendants.  (Docket No. 226 at 11.)

- The FTC's complaint states a claim upon which relief can be granted, and should not be dismissed under Rule 12(b)(6).  (Docket No. 226 at 12.)

Defendants have now objected to this ruling (as they did his first), rehashing many of the dismissal arguments they have now raised and repeated in dozens of filings with the Court.

**ARGUMENT**

In deciding a motion to dismiss, the court must, pursuant to Rule 8(a), "take all of the factual allegations in the complaint as true," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and decide whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard is not a "probability requirement," *Iqbal*, 556 U.S. at 678, and it does not, as at least one Defendant contends,[7] require that the FTC show that its claims are the "most" plausible of all possibilities. *See*, *e.g.*, *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 189 (2d Cir. 2012) ("The question at the pleading stage is not whether there is a plausible alternative to the plaintiff's

---

[7]     *See* Docket No. 251 at 3.

4

theory; the question is whether there are sufficient factual allegations to make the complaint's claim plausible."). This Court only need ask whether the FTC's complaint "pleads factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In making this determination, courts may consider documents referenced in the complaint whose authenticity is not challenged. *See Liguori v. Hansen*, No. 2:11–cv–0492–GMN–CWH, 2012 WL 786263, at *1 (D. Nev. Mar. 9, 2012) (Navarro, J).

Rule 9(b) states that "[i]n alleging *fraud or mistake*, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). A pleading is sufficient under Rule 9(b) "if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). Only complaints that contain "[m]ere conclusory allegations of fraud are insufficient." *Id.* In fact, the Court should not even apply Rule 9(b) here. Most courts that have weighed in on the issue, including the only circuit court to have done so, have concluded that allegations of deceptive acts or practices under the FTC Act are properly pled pursuant to Rule 8(a), not Rule 9(b). *FTC v. Freecom Comm'ns*, 401 F.3d 1192, 1204 n.7 (citations omitted).[8]

In support of their argument that Rule 9(b) applies, Defendants cited—and the Magistrate Judge ultimately relied on—a recent Nevada district court decision finding FTC Act deception claims subject to Rule 9(b). In that decision, *FTC v. Ivy Capital*, 2:11-cv-00283-JCM -GWF,

---

[8] *See FTC v. Consumer Health Benefits Ass'n*, No. 10–CV–3551 (ILG), 2011 WL 3652248 at *9 n.6 ("[T]he heightened standard under Rule 9(b) of the Federal Rules of Civil Procedure . . . does not apply here.") (E.D.N.Y. 2011); *FTC v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 388-89 (D. Md. 2009); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008); *FTC v. Nat'l Testing Servs., LLC*, No. 3:05-0613, 2005 U.S. Dist. LEXIS 46485, at *4-5 (M.D. Tenn. Aug. 18, 2005); *FTC v. Skybiz.com, Inc.*, No. 01-396, 2001 U.S. Dist. LEXIS 26314, at *11 (N.D. Okla. Aug. 2, 2001).

2011 WL 2118626, at *4 (D. Nev. May 25, 2011),[9] the court *denied* defendants' motions to dismiss an FTC complaint against 22 corporate defendants, eight individual defendants, and ten relief defendants, which was of nearly identical detail and organization as the instant complaint. Defendants assail the Magistrate Judge's analysis as clearly erroneous (Docket No. 247 at 3-4), and characterize Judge Mahan's *Ivy Capital* opinion as drawing conclusions "out of thin air" (*id.* at 9), but the Magistrate Judge correctly followed this precedent and the above principles in analyzing Defendants' motions and recommending that they be denied.  (Recommendation at 3-13.)  For those reasons and the reasons stated below, Defendants' motions to dismiss are without merit, and the Magistrate Judge properly recommended their denial.

## I.   THE FTC'S COMPLAINT MEETS APPLICABLE PLEADING REQUIREMENTS, AS THE MAGISTRATE JUDGE FOUND

Under the familiar pleading standards and precedent of this Court, the FTC's complaint both addresses the role of each of the Defendants and describes the unlawful conduct in sufficient detail.

### A.   The Recommendation Properly Interpreted The Requirements Of Rule 9(b) In The Same Manner As Previous Decisions Of This And Other Courts

Even assuming the Rule 9(b) standard applies, courts applying Rule 9(b) to complaints alleging violations of the FTC Act generally hold that the nature of the deceptive conduct must be pled with specificity, but the particular role of each defendant in carrying out the deceptive

---

[9]     *See also FTC v. Lights of America, Inc.*, 760 F. Supp. 2d 848, 854-55 (C.D. Cal. 2010) (applying Rule 9(b) and granting FTC leave to replead complaint).

Other cases cited by Defendants for this proposition, however, do not support application of Rule 9(b).  *See FTC v. Wellness Support Network, Inc.*, No. C-10-04879 JCS, 2011 WL 1303419, at *9 (N.D. Cal. Apr. 4, 2011) ("the Court … need not decide whether or not Rule 9(b) applies here"); *FTC v. Swish Marketing*, No. C 09-03841 RS, 2010 WL 653486, at *4 (N.D. Cal. Feb. 22, 2010) (outcome of individual's motion to dismiss did not depend on application of Rule 9(b)); *FTC v. Cankier*, 767 F. Supp.2d 147, 155 (D.D.C. 2011) ("the Court does not need to rule on the applicability of Rule 9(b) to Section 5 actions").  Indeed, the court in *Cankier*, denying the defendant's motion to dismiss, specifically considered evidence presented in connection with the FTC's motion for preliminary injunction as supporting the allegations in the complaint.  *See* 767 F. Supp. at 155 & n.10.

conduct may be pled more generally in accordance with Rule 8(a).  This practice is consistent with Ninth Circuit's acknowledgment that "[i]nstances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual."  *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).  The Magistrate Judge's recommendation to follow the precedent in this Court to relax the Rule 9(b) pleading requirement with respect to pleading the role each defendant played in the scheme at issue comports with applicable law.

Courts have long recognized that the FTC may allege a common enterprise including multiple entities and their individual officers and managers as defendants.  *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010); *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1234 (9th Cir. 1999); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997); *FTC v. John Beck Amazing Profits, LLC*, 2009 U.S. Dist. LEXIS 130923, at *40 (C.D. Cal. Nov. 17, 2009); *FTC v. J.K. Publ'ns, Inc*., 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000).

In this case, the FTC alleges that the corporate Defendants act together in a common enterprise and that the individual Defendants, principals and officers of those entities, participate in or have knowledge of their respective entities' involvement in the wrongdoing.  (Docket No. 1 at ¶¶ 6-25.)  Although Defendants complain that the FTC's allegations against the various corporate and individual Defendants[10] use similar language and are stated collectively, and that the common enterprise allegations regarding the entities' shared offices and management and commingling of funds are contained in a single paragraph (Docket No. 247 at 6-8, 14-17), Defendants' argument overstates the requirements of Rule 9(b).

Several cases from this Court and other courts within the Ninth Circuit establish that while Rule 9(b) requires the plaintiff to plead the *conduct* constituting fraud with particularity,

---

[10]     This portion of Defendants' dismissal argument does not apply to all Defendants.  The four Lending Defendants – AMG Services, Inc., Tribal Financial Services, Red Cedar Services, and SFS, Inc. – admit that they lend to consumers and admit that they use the loan documents alleged by the FTC to be deceptive.

this requirement is relaxed as to the roles of entities and individuals participating in an alleged

corporate fraud.  This precept recognizes that it is difficult for a plaintiff "to identify the specific

actions that a corporate officer took in causing the harm." (Recommendation at 4 (citing *Moore*

*v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) and *Ivy Capital*, 2011 WL

2118626, at *3).)  And, as the Ninth Circuit has previously observed, far different policy

considerations apply in this case involving *public* victims of *deception* than apply in cases

involving *private* suits for *fraud*.  *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993)

(holding that requiring proof of elements of fraud would "thwart effective prosecution of large

consumer redress actions and frustrate the statutory goals" of the FTC Act).

In *FTC v. Ivy Capital*, No. 2:11-cv-00283-JCM-GWF, 2011 WL 2118626 (D. Nev. May

25, 2011), Judge Mahan determined that an FTC complaint of nearly identical organization and

detail to the Complaint here complied with Rule 8(a) and Rule 9(b).  The *Ivy Capital* complaint,

as here, presented biographical data regarding 22 separate corporate defendants, an allegation

that each of the 8 individual defendants was associated with a particular corporate defendant and

"formulated, directed, controlled, had the authority to control, or participated in" the acts alleged

in the complaint, and a single "common enterprise" paragraph alleging that the entities operated

together and that the individuals controlled or participated in the wrongdoing.[11]  This Court in

*Ivy Capital* upheld that complaint in the face of a Rule 9(b) motion to dismiss, even after

acknowledging—as Defendants incessantly complain—that a pleading may not "lump"

defendants together.  2011 WL 2118626, at *3-4.

In *FTC v. Commerce Planet, Inc.*, No.8:09-cv-01324-CJC, 2012 WL 2930418 (C.D. Cal.

June 22, 2012), similar near-verbatim FTC allegations about individuals' liability (and similar

collective allegations against entities) were also sustained on a motion to dismiss, with the court

holding:  "Whether [the individual defendant's] practices were deceptive is a question that must

---

[11]  *See* Docket No. 121-1, Ex. A (*Ivy Capital* Compl. ¶¶ 6-35, 46).  (The *Ivy Capital*
complaint was originally filed under seal but the seal was later lifted.)

be decided on the facts, not in a motion to dismiss for failure to state a claim."[12]   In *FTC v. Benning*, the court likewise held that "Rule 9(b)'s particularity requirement does not extend to the elements of knowledge and authority to control.  These may be averred generally in a manner akin to Rule 8 requirements."  No. C09-03814 RS, 2010 WL 2605178, at *4 (N.D. Cal. June 28, 2010) (denying defendant's motion to dismiss).[13]

In *Ivy Capital*, *Commerce Planet*, and *Benning*, the FTC pled the underlying deceptive acts in detail, and the general allegations against various entities and individuals regarding their control of and participation in those acts were sufficient.  Here, the FTC similarly alleges that each corporate defendant participated in the payday lending and collection scheme described in the complaint (Docket No. 1 at ¶¶ 6-12, 14-16, 25), and that each individual defendant controlled or participated in the conduct or had authority to do so.  (*Id.* ¶¶ 17-22, 25.)  This is what Rule 9(b) requires.  Upon reviewing the claims and finding the heightened pleading standard of Rule 9(b) satisfied, the Magistrate Judge found, consistent with *Ivy Capital*, that Rule 8(a) was satisfied as well.  (Recommendation at 5, Docket No. 226.)  *See also Ivy Capital*, 2011 WL 2118626, at *4 n.1; *Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1200, 1209 n.1 (D.N.M. 2011).  The Magistrate Judge's conclusion that the FTC's complaint satisfies the applicable pleading requirements is firmly based on the applicable case law.  (*Id.* at 3-4.)

Defendants' only recourse is to lambast Judge Mahan's decision in *Ivy Capital* as "unpublished," "tersely reasoned," and drawing conclusions "out of thin air."  (Docket No. 247 at 9.)  But Defendants have previously and prominently relied on *Ivy Capital* themselves, *including during oral argument before the Magistrate Judge*.  (8/23/12 Tr. at 29, 35; *see also*

---

[12]   *See* Docket No. 121-2, Ex. B (*Commerce Planet* Compl. ¶¶ 6-12); 121-3 (*Commerce Planet* Order at 3-4).

[13]   Defendants incorrectly state that in *FTC v. Swish Marketing,* No. C 09–03814 RS, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010), the court rejected this notion, when in fact that court agreed with the proposition.  The *Swish Marketing* decision did not address *at all* the application of Rule 9(b) to allegations of defendants' separate roles in the fraud alleged.  The same judge, in resolving a later motion to dismiss *sub nom FTC v. Benning*, determined, as noted above, that Rule 9(b) is relaxed under such circumstances.

Docket No. 69 at 8; Docket No. 74 at 11, 12, 13; Docket No. 101 at 12; Docket No. 104 at 6, 7; Docket No. 107 at 15 n.16.[14])  Defendants make a convoluted argument to avoid relaxing the Rule 9(b) standard pursuant to the Ninth Circuit's decisions in *Moore* and *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), apparently contending that *Moore* and *Wool* apply to private federal securities claims only.  (Docket No. 247 at 10-11.)  The Ninth Circuit has never held that *Moore* and *Wool* only apply to private securities claims.  And defendants provide no reason why the Ninth Circuit would apply a different procedural standard to private security claims than it does to every other claim it hears; if the Ninth Circuit intended such an irregular result, it would have explicitly said so.  Indeed, this Court, even in non-securities law cases, has relaxed the Rule 9(b) standard in precisely the way that *Ivy Capital* and *Benning* did:  to acknowledge that some particular facts supporting a fraud claim are exclusively within a corporate party's knowledge.  *See, e.g., Aloua v. Auroa Loan Services, LLC*, No. 2:09–CV–00207–KJD–RJJ, 2010 WL 2555648, at *2-3 (D. Nev. Jun 23, 2010); *Nevada ex rel. Steinke v. Merck & Co., Inc.*, 432 F. Supp. 2d 1082, 1089 (D. Nev. 2006).  Thus, *Ivy Capital* did not misstate the law and the Magistrate Judge properly followed *Moore* and *Ivy Capital*.

Defendants' invocation of *Wong v. BAC Home Loans Servicing, LP*, No. 2:11–cv–01608–GMN–CWH , 2012 WL 4868085 (D. Nev. Oct. 11, 2012) to claim that the FTC must allege not only the fraudulent conduct with particularity, but also delineate who pulled which lever with precision, rings hollow.  In *Wong*, a *pro se* plaintiff who did not speak English filed "a form complaint that has come before this Court in other cases."  *Id.* at *1 n. 1 & 2.  This Court held that plaintiff's allegation that the Mortgage Electronic Registration Systems system is a fraudulent venture and bare statement that defendants "conspire[d] and agree[d] . . . to engage in a conspiracy to promote, encourage, facilitate and actively engage in fraudulent and predatory lending practices" did not sufficiently plead the elements of a conspiracy to commit fraud.  *Id.* at

---

[14]     In an earlier memorandum, the Tucker Defendants falsely reported to this Court that *Ivy Capital* dismissed the FTC's complaint.  (*See* Docket No. 74 at 13.)

1     *4.  In other words, the complaint in *Wong* did not sufficiently articulate the underlying

2     fraudulent conduct alleged, much less particular actions by particular actors.

3          By contrast, the FTC devotes about a quarter of its complaint to explaining Defendants'

4     deception of consumers via materially misstated loan terms and false and threatening statements

5     during debt collection calls.  (Docket No. 1 at ¶¶ 25-46.)  There is no further Rule 9(b)

6     requirement that the FTC specify exactly what actions each individual defendant took in

7     furtherance of the fraudulent activity.  *See Ivy Capital*, 2011 WL 2118626, at *3-4; *Benning*,

8     2010 WL 2605178, at *4; *see also Terra Ins. Co. v. New York Life Inv. Mgmt., LLC*, No. C 09–

9     01609 WHA, 2009 WL 2365883, at *3 (N.D. Cal. July 30, 2009) ("In cases of corporate fraud,

10    however, the [Rule 9(b)] pleading standard is relaxed since the circumstances may make it

11    difficult to attribute particular fraudulent conduct to each defendant as an individual.").  Such a

12    requirement would be particularly anomalous in the context of a common enterprise claim where

13    the entire thrust of the allegation is that the defendants that were part of the common enterprise

14    were so intertwined that they should be jointly and severally liable.  Requiring a plaintiff to untie

15    a Gordian Knot of interrelated companies acting collectively and specify with particularity the

16    role of each member undermines the purpose of common enterprise liability.

17         And the Muir Defendants offer the equally meritless argument—without authority—that

18    the federal government should be subject to "more stringent pleading standards" due to its

19    "extraordinary pre-litigation investigatory powers" (Docket No. 250 at 12-15) , as if the volume

20    of evidence[15] that the FTC gathered pre-discovery weighs against relaxing Rule 9(b) here.

21

22

23    [15]      As noted above, *Cantkier*, a case cited by Defendants, held that the FTC's allegations in

24          its complaint could be supplemented by evidence presented in its motion for preliminary
           injunction and opposition to the motion to dismiss.  *See* 767 F. Supp. at 155 & n.10.

25          Thus, even though the complaint itself is perfectly compliant under *Ivy Capital* and the
           pleading rules, to the extent Defendants still perceive any difficulty in identifying the

26          particular allegations against each of them, the FTC's earlier motion for preliminary
           injunction, motion to dismiss briefing, and most recent motions to compel provide even

27          greater detail.  (Docket Nos. 5 at 3-13, 30-35; 84 at 22-44; No. 120 at 20-28; No. 236 at
           4-5; No. 240 at 3; No. 241 at 2-3.)

28

**B.    The FTC's Complaint Adequately Pleads Each FTC Act, TILA, And EFTA Violations**

Defendants' second broad attack on the Magistrate Judge's Recommendation centers on the sufficiency of the counts in the complaint.  The Magistrate Judge easily found in his August 28 Order that the FTC's complaint (Docket No. 1) in paragraphs 26-45 "describe[s] the nature of the alleged scheme in detail," namely the deceptive and misstated nature of Defendants' loans under the FTC Act and TILA, the deceptive nature of Defendants' collections calls under the FTC Act, and Defendants' unlawful requirement that borrowers agree to preauthorized bank withdrawals as a condition of receiving credit.  (Docket No. 153 at 12.)  In previous briefing, Defendants ignored the above-cited paragraphs and sheepishly argued that only the paragraphs appearing directly below each count heading in the complaint could support the respective counts[16]—a notion so preposterous that counsel abandoned it during oral argument.[17]  Now, Defendants offer only passing mention of paragraphs 26-45 in the complaint, still clinging to the meritless argument that certain elements of each count are missing.  (*See* Docket No. 247 at 18-20.)

**1.    Counts One And Two Of The Complaint State A Claim For Deception Under The FTC Act**

To state claims that Defendants engaged in deceptive acts or practices in violation of Section 5(a) of the FTC Act, the FTC must allege that Defendants made material representations likely to mislead consumers acting reasonably under the circumstances.  *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994); *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992).  Express and deliberate claims are presumed material.  *FTC v. SlimAmerica,* 77 F. Supp. 2d 1263, 1272 (S.D. Fla. 1999); *In re Thompson Medical Co.*, 104 F.T.C. 648, 788-89 (1984), *aff'd*, 791

---

[16]    *See* Docket No. 101 at 10 (contending that counts one and two in the complaint consist of three paragraphs each), at 16 (contending that count three in the complaint consists of two paragraphs), at 17 (contending that count four in the complaint consists of one paragraph).

[17]    8/23/12 Tr. at 96-97 (counsel for Tucker Defendants admitting, contrary to positions taken in note 16, above, that the Court should consider the whole complaint).

F.2d 189 (D.C. Cir. 1986).  The FTC need not allege that defendants' misrepresentations were made with an intent to defraud or deceive or were made in bad faith.  *See*, *e.g.*, *Removatron Int'l v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 202, 526 (S.D.N.Y. 2000).  Nor is there any need to show individual reliance by each consumer.  *Figgie*, 994 F.2d at 605.

Whether judged under Rule 8(a) or Rule 9(b), the complaint alleges facts sufficient to allege Defendants' deception in respect of their lending and debt collection practices.

### a)      Count One: Deceptive Lending Practices

The complaint describes in detail how Defendants deceive consumers about the cost of their payday loans by prominently touting a "Total of Payments" and "FINANCE CHARGE" but then assessing much more costly totals of payments and finance charges.  Defendants state without explication that the "Business Practices" section of the complaint (Docket No. 1 ¶¶ 27-41) "at best" satisfies the first element of Section 5(a) (that there is a misrepresentation), but not the second (that the misrepresentation was likely to mislead consumers) or third (that the misrepresentation was material).  (Docket No. 247 at 18.)

The "Business Practices" section alleges that Defendants make representations on their website that, when a consumer's loan is due, Defendants will "withdraw the consumer's scheduled payment from the consumer's bank account."  (*Id.* ¶ 29).  In their loan contracts, Defendants state that the total payment required to repay the loan is the sum of the principal borrowed plus a one-time finance charge.  (*Id.*)  Defendants convey these representations in bold and prominent text defining the "Total of Payments" as the sum of the "Amount Financed" and a "FINANCE CHARGE."  (*Id.* ¶¶ 34-35; *see also* Docket No. 5-11 at 25 (PX10 at 343) (image of loan contract).)  But, in practice, "[r]ather than withdraw the scheduled payment on a specific date, Defendants typically initiate withdrawals on multiple occasions, assessing multiple finance charges to the consumer."  (Docket No. 1 ¶ 30).  The complaint describes in detail how consumers' repayments are actually assessed under Defendants' loan, how the actual terms of the loan differ markedly from Defendants' representations, and that Defendants never disclose to

consumers the true schedule and cost of their loans.  (*Id.* ¶¶ 39-41.)  "[T]he result of this process is that Defendants withdraw from the consumer significantly more than they represent on their website and in the prominent terms in their Loan Disclosure . . . ."  (*Id.* ¶ 38).  These allegations plausibly show how consumers, acting reasonably, would be misled by Defendants' material representations, *see Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S. at 678, and, assuming Rule 9(b) applies, adequately put Defendants on notice of the allegations they are called to answer. *See Moore,* 885 F.2d at 540.

    Defendants' argument is perhaps that the FTC did not devote separate paragraphs to stating that obviously critical statements from Defendants regarding the cost of their loans would be material to consumers and relied upon by them.  This is folly.  Whether consumers could reasonably rely on Defendants' material representations need not be pled in so many words.[18] When the entire complaint is considered, Defendants' representations as to the "Total of Payments" and "FINANCE CHARGE" in Defendants' loan contract are no doubt material to consumers determining whether to borrow from them, and they mislead consumers acting reasonably in reliance on the accuracy of those prominent terms. (Docket No. 1 ¶¶ 34-35; *see also* Docket No. 5-11 at 25 (PX10 at 343) (image of loan contract).)

    In *Ivy Capital*, the FTC similarly detailed the deceptive acts in a "Business Practices" section preceding the count headings, and the FTC did not allege in separate paragraphs for their deception counts that the defendants' representations were material and would mislead consumers acting reasonably.[19]  The court had no difficulty sustaining the deception allegations,

---

[18]  *Cf. Barnes v. Yahoo!, Inc.*, No. 05-926-AA, 2009 WL 4823840, at *4 (D. Or. Dec. 11, 2009) ("Although plaintiff does not specifically use the term 'reliance' … [t]aken as true, the allegations lead to the reasonable and plausible inference that plaintiff relied on defendant's promise"); *Gentry v. Carnival Corp.*, No. 11-21580-CIV, 2011 WL 4737062, at *4 (S.D. Fla. Oct. 5, 2011) ("Requiring Gentry to also allege that her reliance was reasonable would serve no practical purpose because reasonableness is a question of fact which cannot be decided on a motion to dismiss.").

[19]  *See* FTC Request for Judicial Notice Ex. A, Docket No. 121-1 (*Ivy Capital* Compl. ¶¶ 48-73, 76-78, 79-81, 82-84, 85-87).  (The *Ivy Capital* complaint was originally filed under seal but the seal was later lifted.)

even under Rule 9(b).  2011 WL 2118626, at *4 ("the FTC also describes the nature of the scheme in detail").  The court in *Commerce Planet*, another case from this Circuit, also sustained the FTC's similarly styled deception allegations.[20]

### b) Count Two: Deceptive Debt Collection Practices

The FTC also alleges that Defendants engage in deception with false threats in connection with debt collection.  Specifically, the complaint alleges that "Defendants represent that they can and will cause consumers to be arrested, criminally prosecuted, or imprisoned for not paying debts claimed by Defendants." (Docket No. 1 ¶ 44.)  The complaint then explains how such threats are false because "Defendants do not and could not cause consumers to be arrested, criminally prosecuted, or imprisoned for not paying such debts."  (*Id.*)  The complaint also states that "Defendants threaten to file suit against consumers who fail to pay the debts Defendants attempt to collect" and how those threats are false because "Defendants do not file lawsuits against consumers."  (*Id.*)  As with the lending claims, these allegations plausibly show how consumers, acting reasonably, would be misled by Defendants' material representations, *see Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S. at 678, and adequately put Defendants on notice of the allegations they are called to answer, *see Moore,* 885 F.2d at 540.

### 2. Count Three Of The Complaint States A Claim Under TILA

Defendants' motions to dismiss the FTC's TILA claim are, by Defendants' admission, subject to the Rule 8(a) standard as articulated in *Twombly* and *Iqbal*.[21]  The parties further agree that TILA requires Defendants to disclose the finance charge, annual percentage rate, payment schedule, and total of payments for their loans.  *See* 15 U.S.C. §§ 1631(a), 1631(b)(1).[22]

---

[20]    *See* FTC Request for Judicial Notice Ex. B, Docket No. 121-2 (*Commerce Planet* Compl. ¶¶ 14-19, 21-23) (deception allegations pleaded in "Business Practices" section and no specific paragraphs relating to materiality or reasonable reliance) and Ex. C, Docket No. 121-3 (*Commerce Planet* Order) (sustaining FTC's deception allegations).

[21]    Docket No. 101 at 5, 16.

[22]    *Id.* at 16.

The complaint describes how Defendants fail to accurately disclose the finance charge, annual percentage rate, payment schedule, and total of payments and therefore contains allegations (Docket No. 1 ¶¶ 34-41), which, taken as true, render it plausible that Defendants have violated TILA.

Contrary to Defendants' assertion that the FTC "never alleges" the actual legal obligation of the parties,[23] the complaint includes an entire section titled "The Actual Cost of Defendants' Loans" (Docket No. 1 ¶¶ 37-41), which includes a recitation of the complete payment schedule that the consumer is automatically obliged to follow once the loan contract is executed (*id.* ¶ 39). In other words, the complaint explains how Defendants disclose certain loan terms to consumers (*id.* ¶ 34-35) and then enroll consumers into loans that actually have markedly different and more costly terms (*id.* ¶¶ 39-41).

### 3.    Count Four Of The Complaint States A Claim, As Defendants Have Admitted, That Defendants Condition Credit Upon The Consumer's Agreement To Repay By Electronic Funds Transfer In Violation Of EFTA

Defendants' motions to dismiss the FTC's EFTA claim are, by Defendants' admission, subject to the Rule 8(a) standard as articulated in *Twombly* and *Iqbal*.[24]  The parties further agree that EFTA makes it unlawful for Defendants to condition the extension of credit on a consumer's repayment by electronic funds transfer.  *See* 15 U.S.C. §§ 1693(k)(1).[25]

The complaint alleges that Defendants condition the extension of credit on a consumer's repayment by electronic funds transfer (Docket No. 1 ¶¶ 42, 66) and therefore contains allegations, which, taken as true, render it plausible that Defendants have violated EFTA.  While paragraph 66 alleges Defendants violated EFTA, paragraph 42 of the Complaint, wholly ignored by Defendants, pleads the facts on which the EFTA violation is based:  "Defendants' loan application also contains a provision that requires the consumer to authorize Defendants to

---

[23]    Docket No. 247 at 19.

[24]    Docket No. 101 at 5-6, 17.

[25]    *Id*. at 17.

16

initiate electronic fund transfers . . . as a condition of obtaining credit . . . ."  (*Id.* ¶ 42.)  And, contrary to Defendants' assertion that the complaint "never" refers to the document containing the EFTA violation,[26] the complaint clearly identifies "Defendants' loan application" as containing the applicable provision.  (*Id.*)

Indeed, Defendants' loan application is replete with language requiring the consumer, as a condition of obtaining a loan from Defendants, to repay by preauthorized electronic fund transfers.

> Any payment due on [t]he Note shall be made by us effecting one or more ACH[27] debit entries to your Account at the Bank.  You authorize us to effect this payment by these ACH debit entries.

> 6.  You authorize us . . . to initiate one or more ACH debit entries . . . to your Deposit Account indicated below for the payments that come due each pay period and/or each due date concerning every renewal, with regard to the loan for which you are applying.[28]

And Defendants readily admit that consumers must agree to electronic fund transfer repayment provisions in order to receive their loans.[29]

In fact, Defendants' violation of EFTA is so plain that the only argument they could muster in the preliminary injunction briefing is that consumers supposedly have the right to revoke the electronic funds transfer authorization at a later time.[30]  But, not surprisingly, Defendants cannot simply "undo" the EFTA violation after it has already occurred.  *See*

---

[26]     *Id.*

[27]     ACH (automatic clearinghouse) is a type of electronic fund transfer.

[28]     Docket No. 5-11 at 26, 27 (PX10 at 344, 345).  As noted above, Defendants' loan application is specifically referenced in the complaint and the Court may consider its entire contents in resolving Defendants' motions to dismiss.  *See Liguori*, 2012 WL 786263, at *1.

[29]     Lending Defs.' 5/4/12 Preliminary Injunction Opposition Memo. at 12 (stating that consumer must agree to, *inter alia*, ACH authorization, to have loan application processed).

[30]     *Id.* at 37-38.

1   *O'Donovan v. Cashcall, Inc.*, 2009 U.S. Dist. LEXIS 53895, *7-*8 (N.D. Cal. Jun. 24, 2009)

2   ("[T]he right to later cancel EFT payments does not allow a lender who conditions the initial

3   extension of credit on such payments to avoid liability.").

4   ## II.   THE FTC HAS AUTHORITY TO ALLEGE TILA CLAIMS IN FEDERAL COURT

5

6            Defendants' argument that the FTC has no authority to allege TILA claims in federal

7   court[31] is based on a complete misreading of the statute.   TILA expressly provides, "All of the

8   functions and powers of the Federal Trade Commission under the Federal Trade Commission

9   Act are available to the Commission to enforce compliance by any person with the requirements

10  under [TILA]."[32]   Section 13(b) of the FTC Act, in turn, authorizes the Commission to bring

11  actions in federal district courts.   15 U.S.C. § 53; *see also FTC v. Capital City Mortgage Corp.*,

12  No. 98-237 (J.H.G.), slip op. (D.D.C. Oct. 10, 2003) (in a district court action under TILA, "the

13  FTC may seek any relief that it is permitted to pursue under section 13(b)" of the FTC Act).[33]

14           Defendants ignore this provision, instead focusing on the entirely separate process under

15  which *an agency itself* orders a defendant to comply with TILA.   This is clear from the very

16  portion of the statute that Defendants reprint in their dismissal brief.[34]   15 U.S.C. §§ 1607(e)(1),

17  (e)(4)(A) ("[A]n adjustment under this subsection *may be required by an agency* . . . only by an

18  _____

19  [31]     Docket No. 247 at 20-21.

20  [32]     15 U.S.C. § 1607(c).

21  [33]     The FTC has brought numerous other cases in federal courts for violating TILA and
         Regulation Z, including against payday lenders, and was not required to consult with
22       those defendants in advance.   *See, e.g.*, *FTC v. Cash Today, Ltd.*, Civ. No. 08-cv-590-
         BES-VPC (D. Nev. Oct. 27, 2009); *FTC v. Consumer Money Markets, Inc.*, Civ No.
23       CVS001071-PMP-RJJ (D. Nev. Aug. 30, 2000); *FTC v. EMC Mortgage Co.*, Civ No. 08-
         cv-338 (E.D. Tex. Sept. 9, 2008); *FTC v. BlueHippo Funding, LLC*, Civ. No. 08-CV-
24       1819 (S.D.N.Y. Apr. 10, 2008); *FTC v. Stewart Fin. Co. Holdings, Inc.*, Civ. No.
         1:03CV-2648 (N.D. Ga. Nov. 4, 2005); *FTC v. 30 Minute Mortgage, Inc.*, Civ. No. 03-
25       60021 (S.D. Fla. Nov. 26, 2003).   Those matters include cases (*Captial City Mortgage*,
         *Consumer Money Markets, Stewart Financial*, etc.) which involved, as here, misstated
26       loan terms such as the annual percentage rate and finance charge.

27  [34]     Docket No. 101 at 14-15.

28

                                                    18

order issued in accordance with cease and desist procedures.") (emphasis added).  The administrative cease and desist process is irrelevant here, given that the FTC is not issuing an order against Defendants; rather, the FTC is requesting that *this Court* issue an order.[35]

## CONCLUSION

Because Defendants' objections to the Magistrate Judge's Recommendation are meritless, this Court should overrule their objections and accept the Recommendation to deny Defendants' motions to dismiss.

Dated:  December 3, 2012

Respectfully submitted,

___*/s Nikhil Singhvi*_____
Nikhil Singhvi
Jason D. Schall
Julie G. Bush
Helen P. Wong
Ioana Rusu

*Attorneys for Plaintiff*
*Federal Trade Commission*

---

[35]     One individual Defendant, Timothy Muir, claims that TILA violations cannot be brought against individuals who are not themselves creditors.  Docket No. 250 at 17-19.  But under TILA, all functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person, 15 U.S.C. § 1607(c), including the power to seek relief against individuals who control or participate in a common enterprise.  *See FTC v. Cash Today, Ltd*., Civ. No. 08-cv-590-BES-VPC (D. Nev. Oct. 27, 2009) (enforcing TILA and Regulation Z claims against individuals participating in common enterprise); *see also* Docket No. 120 at 20-28.

19

## CERTIFICATE OF SERVICE

I, Nikhil Singhvi, certify that the following individuals were served with the **PLAINTIFF'S POINTS AND AUTHORITIES OPPOSING DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S NOVEMBER 1, 2012 ORDER** by the method indicated below:

**Electronic Case Filing:**

David J. Merrill (david@djmerrillpc.com)
Conly J. Schulte (cschulte@ndnlaw.com)
Francis J. Nyhan (jnyhan@ndnlaw.com)
Shilee T. Mullin (smullin@ndnlaw.com)
*Attorneys for Defendants AMG Services, Inc.; Red Cedar Services, Inc. dba 500FastCash; SFS, Inc. dba OneClickCash; Tribal Financial Services, dba Ameriloan, UnitedCashLoans, USFastCash, and Miami Nation Enterprises*

Debra K. Lefler (debra.lefler@kirkland.com)
Bradley Weidenhammer (bweidenhammer@kirkland.com)
Charles Kalil (ckalil@kirkland.com)
Richard Howell (rhowell@kirkland.com)
*Attorneys for Defendants AMG Services, Inc.; Tribal Financial Services, dba Ameriloan, UnitedCashLoans, USFastCash, and Miami Nation Enterprises*

Von S. Heinz (vheinz@lrlaw.com)
Darren J. Lemieux (dlemieux@lrlaw.com)
E. Leif Reid (lreid@lrlaw.com)
Jeffrey D. Morris (jmorris@berkowitzoliver.com)
Ryan C. Hudson (rhudson@berkowitzoliver.com)
Nick J. Kurt (nkurt@berkowitzoliver.com)
*Attorneys for Defendants AMG Capital Management, LLC; Level 5 Motorsports, LLC; LeadFlash Consulting, LLC; Black Creek Capital Corporation; Broadmoor Capital Partners, LLC; Scott A. Tucker; Blaine A. Tucker*

L. Christopher Rose (lcr@juww.com)
Michael R. Ernst (mre@juww.com)
*Attorneys for Defendants The Muir Law Firm, LLC and Timothy J. Muir*

Jay Young (jay@maclaw.com)
*Attorney Defendant for Robert D. Campbell*

Paul C. Ray (paulcraylaw@aol.com)
*Attorney for Defendant Troy L. LittleAxe*

Patrick J. Reilly (preilly@hollandhart.com)
Linda C. McFee  (lmcfee@mcdowellrice.com)
*Attorneys forRelief  Defendants Kim C. Tucker and Park 269 LLC*

Brian R. Reeve (breeve@swlaw.com)
Nathan F. Garrett (ngarrett@gbmglaw.com)

1   Whitney P. Strack (pstrack@gbmglaw.com)
    *Attorneys for Defendant Don E. Brady*

2

3                                                          */s Nikhil Singhvi*
    Dated this 3rd day of December 2012.                  Nikhil Singhvi
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21