# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | 2:12-cv -00536-GMN-VCF |
| Plaintiff, | |
| vs. | **ORDER** |
| AMG SERVICES, INC., *et al.,* | **(Motion For Protective Order #343, Motion to Compel #345, Motion to Compel Discovery Responses/Unredacted Documents #360, and Motion for Partial Withdraw #419)** |
| Defendants. | |

Before the Court is the Federal Trade Commission's (hereinafter "FTC") Motion For Protective Order.  (#343).  Defendant AMG Services, Inc. (hereinafter "AMG") filed an Opposition (#347), and the FTC filed a Reply (#364).

Also before the court is AMG and MNE Services, Inc's (dba Tribal Financial Services Ameriloan, UnitedCash Loans, and USFast Cash)(collectively referred to as "AMG") Motion to Compel FTC's Production of a Privilege Log and Accompanying Affidavit.   (#345).   The FTC filed an Opposition (#366), and AMG filed a Reply (#376).

Also before the court is AMG's Motion to Compel Discovery Responses/Unredacted Documents.  (#360).   The FTC filed an Opposition (#377), and AMG filed a Reply (#389).

Also before the court is AMG's Motion for Partial Withdraw of AMG's Second Motion to Compel.  (#419).  The court held a hearing May 20, 2013.  (#422).

. . .

. . .

## I.      Background

As the parties and the court are familiar with the lengthy procedural history of this action, the court will include only background relevant to the instant motions (#343, #345, and #360).  The  FTC filed a motion for protective order on March 14, 2013.  (#343).  The parties filed a joint motion to shorten time regarding the motion (#343) on the same day.  (#344).  On March 15, 2013, the AMG filed a motion to compel FTC's production of a privilege log and accompanying affidavit.  (#345).  On the same day, the court issued an order granting the motion to shorten time (#344), and ordered responses due by March 21, 2013, and replies due by March 28, 2013.  (#346).  On March 21, 2013, AMG filed an opposition to the FTC's motion for protective order (#343).  (#347).

On March 27, 2013, AMG filed a second motion to compel discovery responses and unredacted documents from the FTC (#360), sealed unredacted documents (#361), sealed exhibits (#362), and a motion to seal (#363).  On March 28, 2013, FTC filed a reply in support of its motion for protective order (#343).  (#364).  On the same day the AMG filed an unopposed motion for expedited briefing schedule on the second motion to compel (#360).  (#365).  On March 29, 2013, FTC filed an opposition to the motion to compel (#345).  (#366).  On April 4, 2013, the court issued an order granting the motion to seal (#363).  (#372).  On April 8, 2013, AMG filed a reply in support of their motion to compel (#345).  (#376).  The FTC filed an opposition to the second motion to compel (#360) on the same day.  (#377).

On April 10, 2013, the court issued an order granting the motion (#365) for expedited briefing on the second motion to compel (#360), ordering the responses due by April 8, 2013, and the replies due by April 16, 2013.  (#382).  On April 16, 2013, the court issued an order scheduling a hearing on the pending discovery motions (#343 and #345) for May 20, 2013.  (#390).  The court held that "AMG's request for the court to deem the privilege log insufficient and to require the FTC to include specific

2

information in the privilege log (#345) is premature, as the court cannot determine whether the privilege log and affidavit are sufficient until the FTC has provided AMG and the court with its privilege log." *Id.*  The court ordered that "[o]n or before April 29, 2013, the FTC must provide the court and AMG with the privilege log for responsive documents withheld as privileged. On or before May 6, 2013, AMG may file a supplement to its motion to compel (#345). Any reply is due on or before May 13, 2013." *Id.*

On April 24, 2013, the court issued a minute order clarifying its previous order (#390), and stating that "[o]n or before April 29, 2013, FTC must deliver to chambers, with service to all other parties, a copy of the privilege log for responsive documents withheld as privileged."  (#395).  On the same day the court issued a minute order scheduling a hearing on the second motion to compel (#360) for May 20, 2013.  (#396).  On May 6, 2013, AMG filed a supplement to the motion to compel (#412), and on May 13, 2103, the FTC filed a supplement to its opposition to the motion to compel (#415).

## II.   Motion for Protective Order  (#343)

### A.   FTC's Argument

In preparing its motion for preliminary injunction filed on April 2, 2012 (#4), the FTC supplied nineteen (19) declarations of consumers affected by the defendants' conduct, complaining of loans taken from defendants between 2010 and 2011.  (#5).  On February 15, 2013, AMG served the FTC with notice of 25 subpoenas to the consumer declarants, including one document subpoena to each of the nineteen declarants, and six deposition subpoenas.  (#343).  The parties met to discuss issues the FTC had with the subpoenas, and AMG agreed to modify its instructions to call only for documents in the consumers' possession or custody and the parties agreed to limit the number of consumer declarant subpoenas.  *Id.*  The parties were unable to resolve all of the FTC's concerns, and the FTC filed the instant motion on March 14, 2013.  *Id.*

The FTC asks this court to enter a protective order pursuant to Rule 26(c) regarding the nineteen document subpoenas. *Id*.  The FTC argues that the subpoenas are objectionable because "they call for virtually all of the consumers' financial information for the past six years, without any restriction for documents pertaining only to transactions with the defendants." *Id*.  The FTC makes it clear that it does not oppose the subpoenas to the extent they "call for documents related to the consumers' declarations, their interactions with the defendant lenders, and their communications with the FTC and other consumer protection agencies," but states that it does oppose the portion of the subpoenas that call for "*all* bank records, *all* documents relating to *all* loans, and *all* credit history, credit score, debt consolidation, and bankruptcy documents." *Id* (emphasis in original).

The FTC argues that AMG makes no effort to limit the requests, and that the "subject matter overbreath is reason alone to dispose of these requests, but they further call for documents going back to January 2007, when the declarants' loans at issue here occurred in 2010 and 2011." *Id*.  The FTC asserts that the subpoenas "not only invade those consumers' privacy but put further sensitive (and irrelevant) information in the hands of the very parties that have already victimized them." *Id*.  The FTC asks this court to "strike the following Requests for Production (*see* Ex. A (emphasis in original omitted)):

> 3. All documents related to any other short-term loan for which you have applied since January 1, 2007.
> 4. All documents related to any other loan for which you have applied since January 1, 2007.
> 5. Your bank records since January 1, 2007.
> 6. All documents stating your credit history or credit score since January 1, 2007.
> 7. All documents reflecting any bankruptcy filing or debt consolidation effort since January 1, 2007.
> 9. All communications between you and any other short-term lender during the period of January 1, 2007 through the present concerning any short-term loan. These communications may include, but are not limited to: (a) marketing materials received from the lender; (b) your application for loan(s) with the lender; © your repayment of loan(s) with the lender; or (d) collection of debts from loan(s).

> 10. All communications between you and the Federal Trade Commission concerning …
> any other loans that you discussed with the Federal Trade Commission.
> 11(3). All communications between you and any federal agency; any state government, any
> state agency; any Better Business Bureau; or any other agency or individual related to
> … (3) any other short-term loan applied for or received from any lender during the
> period of January 1, 2007 through the present."

*Id.*

The FTC argues that the court should strike those requests unrelated to the consumers' dealings with the defendants and virtually unrestricted in time. (#343). The FTC states that "[a]n act or practice is "deceptive" under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), if it involves a material representation or omission that is likely to mislead consumers, acting reasonably under the circumstances, to their detriment. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009); *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994)." *Id.* The FTC further states that "[t]erms relating to the price of a product are material," *See FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 608 (9th Cir. 1993), and "[t]he Court may also presume express claims to be material," *Pantron I Corp.*, 33 F.3d at 1095-96. *Id.* The FTC asserts that a determination of whether a representation is deceptive under the FTC Act "requires an analysis of the communications at the time of the transactions, not any statements offered thereafter." *Id* (citing *FTC v. Medical Billers Network, Inc.*, 543 F. Supp.2d 283, 307 (S.D.N.Y. 2008)).

The FTC states that it received thousands of complaints from consumers about defendants' practices, and that it selected and submitted nineteen (19) consumer declarations testifying to their experiences with defendants. (#343). The FTC asserts that the declarants testified that "they understood defendants' loans to cost the amount financed plus one finance charge (as indicated in the prominent text in defendants' disclosures, see Ex. B)," but that "[t]he loans, however, actually cost the amount financed plus multiple finance charges." *Id.* The FTC argues that since the consumers' loans with *these* defendants is relevant to whether the defendants' practices were deceptive, documents relating to other

loans with other providers and to the consumers' credit histories are irrelevant and not discoverable. *Id* (citing *Remec, Inc.*, 2008 WL 2282647, at *3 (subpoena to nonparty for information regarding all asset valuations was overbroad because dispute involved valuation of only particular assets); *Serramonte*, 237 F.R.D. at 223 (information related to complainant's employment with other employers, before and after employment dispute at issue, was not discoverable in connection with harassment claim against defendant employer); *Renaissance III Org.*, No. 3-05-CV- 1063, 2006 WL 832504, at *1 (same); *Moon*, 232 F.R.D. at 638 (subpoena to nonparty for information regarding all of nonparty's products was overbroad because dispute involved only products for a particular geographic region)).

The FTC also argues that AMG cannot demonstrate the potential relevance for its request for *all* bank statements for the consumers. *Id.* The FTC asserts that (1) the consumers may have more than one bank account, and the only account that is relevant is that which was involved in the loan at issue, (2) for the specific relevant accounts, AMG may request from consumers, at most, redacted statements showing only the particular deposits from and withdrawals to the defendants, and (3) unrelated transactions on the accounts have no bearing on whether the defendants deceived the plaintiffs, and would unnecessarily invade the consumers' privacy. *Id.* The FTC also addresses the time period of the subpoenas, and asserts that "[n]one of the consumer declarants in this case complain of any loan from any defendant older than 2010 or more recent than 2011," and "[s]till, AMG would demand that these consumers produce all of their bank records, and all of their loan records and credit history documents going back for many years before (and many months after) they ever dealt with defendants." *Id.* FTC argues that this should not be permitted. *Id* (citing *Century Surety Co.*, 2010 WL 2231890, at *1 (modifying nonparty subpoena request for documents to align with time periods relevant to the dispute); *Remec, Inc.*, 2008 WL 2282647, at *2 (same)).

The FTC asks the court to issue a protective order and to modify instruction 1 in each subpoena regarding the documents in the declarants' possession or custody and withdraw requests 3, 4, 5, 6, 7, 9, 10, and 11(3).  *Id.*

### B.      AMG's Reply (#347)

AMG argues that the documents subpoenas seek information about two discrete, "highly relevant issues: "(I) the witnesses' experience with loan products and (ii) the witnesses' contemporaneous financial condition."  (#347).  AMG asserts that the witnesses' prior experience with loan products "directly informs their subjective understanding of Defendants' loan disclosures," and that "their financial condition at the time that they took out prior loans allows AMG to test the credibility of their statements as to whether they had any ability (or intention) to pay off their loans on the initial due date."  *Id.*  AMG argues that "[t]he financial records AMG seeks—bank statements and documents relating to personal bankruptcies, credit history, and debt consolidation efforts—also may contain further evidence of other loans that would have affected consumers' understanding of Defendants' loans."  *Id.*

AMG takes the position that its document subpoenas "are firmly grounded on the substance of the witnesses' own statements," and that the declarations "describe consumers' prior experience with other loan products and reveal extensive familiarity with short-term loans in particular..."  *Id.*  AMG provides the court with examples within the declarations where the witnesses refer to their histories with short-term loans:

• "When I took out a payday loan from United Cash Loans I had 4 other payday loans

from various lenders. I had gotten into a cycle of taking out payday loans to pay bills, as

well as to pay for the loans themselves." (Meltzer Decl. Ex. A-5, Beskid Decl. ¶ 2.)

• "I have tried to manage paying my medical bills by taking out several payday loans." (Meltzer Decl. Ex. A-7, Burton Decl. ¶ 2.)

• "I have tried to manage paying my bills by taking out several payday loans." (Meltzer Decl. Ex. A-10, Deckard Decl. ¶ 2.)

• "Due to financial difficulties in 2010 stemming from my husband's unemployment, I sought payday loans from several online lenders." (Meltzer Decl. Ex. A-17, Sliger Decl. ¶ 2.)

• "I filled out the information required on the loan application, none of which seemed unusual, and digitally signed a contract." (Meltzer Decl. Ex. A-2, Archer Decl. ¶ 3.) "I knew that many companies debit amounts smaller than the normal payment for the first debit to verify the validity of the account, so I really did not think a lot about the $30 debit." (Id. ¶ 7.)

*Id.*   AMG asserts that "[i]ts subpoenas impose minimal burden on the witnesses, because AMG narrowed its subpoenas to require production of documents only in the consumers' actual possession (i.e. in their homes), and pursuant to the parties' stipulated Amended Confidentiality and Protective Order, the consumers face no real privacy risk in producing this information. (Am. Prot. Order, ECF No. 308, ¶ I)." *Id.*   AMG argues that by putting the witnesses' subjective experiences with defendants' loan products at issue in this action, the FTC "cannot now prevent AMG from seeking discovery that tests these allegations by analyzing the same witnesses' prior experiences with other loan products and their financial condition." *Id.*   AMG also argues that without this information, it will not be able to conduct an informed cross-examination of these witnesses' statements. *Id.*

AMG asserts that requests 3, 4, 9, 10, and 11, seek documents and communications that will "allow AMG to assess the witnesses' understanding and use of similar loan products, which may

support or contradict their testimony about how they used and understood defendants' loans." *Id.* AMG further asserts that requests 5, 6, and 7 seek documents containing information that "will allow AMG to test whether a particular consumer had any intent (or ability) to pay back the short term loans at issue here by the initial due date—another issue that directly touches upon the declarants' alleged reliance on Defendants' representations, as well as the consumer's credibility." *Id.* AMG states that without the information, they will not be able to test consumers' representations that they timed their payday loan with their next payday and that they expected to be able to pay the loan off with their next paycheck. *Id.*

With regard to the consumers who filed for bankruptcy, sought debt consolidation, and/or suggested that they rely on payday loans to pay their bills, AMG asserts that it "must be permitted to test consumers' purported confusion about the loan renewal process." *Id.* AMG distinguishes the cases cited by FTC in support of its motion, and asserts that the FTC, not defendants, placed the consumers' statements about prior loans and contemporaneous financial hardship directly at issue. *Id.* AMG argues that it is entitled to discovery that supports its defense against alleged consumer confusion and deception. *Id.* AMG also argues that the FTC sought this same type of documentation from the consumers before filing the declarations, and that the "playing field should be level." *Id* (Exhibit B Email Correspondence demonstrating that FTC sent an email to consumer requesting five months worth of "full" bank statements).

AMG argues that the subpoenas are not unduly burdensome to the consumers, and that a six-year date range is appropriate in these circumstances. *Id.* AMG argues that the FTC itself sought discovery regarding defendants' lending practices going back ten years, and that the consumer declarations note prior experience with other loan products. *Id.* AMG asserts that the "reasonableness of a subpoena's date range will vary case by case," and that the cases cited by FTC are not applicable. *Id.* "Whether a subpoena imposes upon a witness an 'undue burden' depends upon such factors as relevance, the need

of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Berwick v. Hartford Fire Ins. Co.*, No. MC 12-00055, 2012 WL 2856117, *1 (D. Ariz. July 11, 2012). AMG asserts that it made good-faith efforts to minimize any logistical burden on the consumers in producing responsive documents, by limiting the scope to those in the consumers' actual possession and providing pre-paid FedEx packages to each consumer. *Id.*

AMG's final argument is that the subpoenas do not impinge the consumers' privacy, as the stipulated confidentiality and protective order "provides sufficient protection to alleviate any concerns about consumers' privacy interests." *Id* (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (requiring the production of financial records) (citing *In re Heritage Bond Litigation*, 2004 WL 1970058, *5 n. 12 (C.D. Cal.) ("Any privacy concerns Kasirer defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter.")).

## D.    Relevant Law/Discussion

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.." Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id.*

Rule 26(c) provides:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense….

Fed. R. Civ. P. 26(c).  The court finds that FTC, as a party to this action, may bring this motion for protective order (#343) regarding the subpoenas issued to the nonparty consumers.  *See In re Remec, Inc. Secs. Litig.*, No. 04cv1948 JLS(AJB), 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) (party may move for a protective order regarding subpoena issued to a non-party); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (same); *accord Auto-Owners Ins. Co. v. S.E. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (same); *see also E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (pursuant to Rule 26(c) plaintiff federal agency may move to quash nonparty subpoenas).

The "party resisting discovery bears the burden of showing why a discovery request should be denied."  *See Painters Joint Committee v. J.L. Wallco, Inc.*, No. 2:10-CV-1385 JCM (PAL), 2011 WL 4573349 at *5 (D. Nev. 2011), modified on other grounds, 2011 WL 5854714 (D. Nev. 2011).  The "objecting party must specifically detail the reasons why each request is irrelevant" and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *Id*; *see also E.E.O.C. v. Caesars Entertainment, Inc*., 237 F.R.D. 428, 432 (D. Nev. 2006) ("Rule 26© requires more than broad allegations of harm, unsubstantiated by specific examples or articulated reasoning. The party seeking the order must point to specific facts that support the request, as opposed to conclusory or speculative statements…") (internal quotations omitted).

While the scope of relevancy is broader for discovery purposes, discovery permissible from nonparties is narrower than that permissible from parties to the action.  *See Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649-50 (9th Cir. 1980) (broader restrictions on discovery appropriate to protect nonparties); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for non-party discovery…require a stronger showing of relevance than for simple party discovery.").

One of the issues in this action is whether defendants committed a deceptive act under Section 5(a) of the FTC Act regarding the payday loans, *i.e.* if the loans documents contain a material representation or omission that is likely to mislead consumers, *acting reasonably under the circumstances*, to their detriment.  *See Stefanchik*, 559 F.3d at 928.  During the hearing, defense counsel represented that defendants have reason to believe that many of the consumers took out loans in the past from other payday loan companies with similar if not the same loan terms and conditions as those that are the subject of this action.   (#422).   The court finds that the defendants must be afforded an opportunity to discover whether these consumers were acting reasonably under the circumstances in light of their familiarity with payday loans such as the ones at issue in this action.  Defense counsel also stated during the hearing that it is defendants' belief that some of the nineteen consumers who signed declarations in this action took out payday loans from the named defendants *after* the date of their declaration.   (#422).   On or before May 24, 2013, defendants must file under seal a list of those consumers.

Based on the foregoing, and the fact that there is a confidentiality order in place, the court limits the requests as follows:

3. All documents related to any other short-term loan for which you have applied since January 1, 2007.  **Limit Time-Frame: One (1) year before the loan at issue.  If the consumer took out**

**multiple loans from the defendants that are the subject of this action, the time frame will expand accordingly.**

4. All documents related to any other loan for which you have applied since January 1, 2007. **Strike The Entire Request.**

5. Your bank records since January 1, 2007. **Limit Time-Frame: Sixty (60) days before the loan at issue and sixty (60) days after. The court will discuss redactions below.**

6. All documents stating your credit history or credit score since January 1, 2007. **Limit Time-Frame: Sixty (60) days before the loan at issue and sixty (60) days after.**

7. All documents reflecting any bankruptcy filing or debt consolidation effort since January 1, 2007. **Limit Time-Frame: One (1) year before the loan at issue. If the consumer took out multiple loans from the defendants that are the subject of this action, the time frame will expand accordingly.**

9. All communications between you and any other short-term lender during the period of January 1, 2007, through the present concerning any short-term loan. Thesecommunications may include, but are not limited to: (a) marketing materials received  from the lender; (b) your application for loan(s) with the lender; (c) your repayment of loan(s) with the lender; or (d) collection of debts from loan(s). **Strike The Entire Request.**

10. All communications between you and the Federal Trade Commission concerning …any other loans that you discussed with the Federal Trade Commission. **Strike This Portion of The Request Only.**

11(3). All communications between you and any federal agency; any state government, any state agency; any Better Business Bureau; or any other agency or individual related to…(3) any other short-term loan applied for or received from any lender during the  period of January 1, 2007 through

13

the present.  **Limit Time-Frame: One (1) year before the loan at issue and one (1) year after the loan at issue.  If the consumer took out multiple loans from the defendants that are the subject of this action, the time frame will expand accordingly.**

### III.   Motion to Compel Discovery Responses/Unredacted Documents (#360) and Motion to Withdraw (#419)

AMG ask this court enter an order compelling the FTC to produce (1) a response to their Request for Production 1 and (2) unredacted versions of documents that the FTC received from third parties and subsequently redacted.  (#360).  On May 16, 2013, the defendants filed a motion for partial withdrawal of the motion to compel discovery responses.  (#419).  The defendants assert that "[o]n May 9, 2013, the FTC directed AMG to two publicly available documents that the FTC viewed as potentially responsive to AMG's Request for Production 1. Both parties agreed that these two documents are irrelevant to this case," "[o]n May 14, 2013, the FTC notified AMG that the FTC does not have any other policies or guidelines concerning the enforcement or regulation of TILA or EFTA," and that "[o]n May 15, 2013, the parties agreed that the FTC's representation resolved the dispute about Request for Production 1." *Id.*

The defendants assert that "[b]ased on the FTC's representation, and in the interest of preserving judicial resources, AMG hereby moves to withdraw the portion of AMG Services, Inc.'s Motion To Compel Discovery Responses and Unredacted Documents from the FTC that seeks documents responsive to AMG's Request for Production 1." *Id.*  The court grants the defendants' motion for partial withdrawal (#419).  As defendants withdrew the portion of the motion regarding the response to request for production No. 1, the court will address the request for the unredacted versions of the documents only.

. . .

## A.    Defendants' Arguments

The defendants assert that the "FTC redacted line items from bank statements it produced relating to four consumers: Betty Turner, Jennifer Adelman, Lejone Morris, and Walter Archer," and that "[t]he FTC explained that it redacted this information "in case the documents might be filed publicly."" (#360).  The FTC stated that the consumers' bank activity with any entity *other* than the defendants is not relevant to any issues in this action.  *Id.*  Defendants argue that since the FTC put the consumers' understanding of defendants' loan documents at issue, the FTC cannot redact the "information that might clarify or explain those understandings." *Id.*  The defendants also argue that the FTC cannot redact the documents based on "privacy" grounds, when there is a protective order in place. *Id.*

The defendants argue that the FTC offered testimony from consumers who state that they "were confused by defendants' loan documents," and that "[h]aving put these consumers' subjective experiences with defendants' loan products at issue, the FTC cannot now redact information that might reveal consumers' financial condition and experiences with other loan products." *Id.*  The bank records, unredacted, are relevant to the consumers' familiarity with payday loans and the terms associated with such loans, and may "undermine these declarants' claims of confusion." *Id.*  The defendants argue that the bank statements "could also disprove declarants' assertions about when they expected to repay their loans." *Id.*  The statements, the defendants assert, would help defendants determine whether "they indeed had the means to pay their loans off at those times while testing these consumers' credibility." *Id.*

The defendants argue that the FTC is not able to redact the information in the bank records due to an asserted lack of relevance. *Id.*  The defendants state that "[a]llowing one party to unilaterally redact information creates the risk of "possible nondisclosure of information [litigants] might consider

significant."   *Id* (quoting *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1160, 1165 (W.D. Wash. 1986)).[1] "Although it appears that [the] Ninth Circuit has not explicitly addressed the issue, other courts agree that "[t]he Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction." *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-CV-555, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008) (noting that "[t]here is no express or implied support" in the Federal Rules of Civil Procedure for allowing "a party [to] scrub responsive documents of non-responsive information")."   *Id.*

The defendants assert that the bank statements that have been redacted may be highly relevant to the defendants' defenses, and that the FTC's unilateral redaction would hinder the defendants' ability to defend in this action.   *Id.*   The defendants further assert that the protective order in place will prevent dissemination of the records, and that no harm will come to the consumers if the bank statements are produced unredacted.   *Id.*   The defendants quote *Beverage Distributors, Inc. v. Miller Brewing Co.*, No. 2:08-CV-827, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010), when it held that "the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case."   *Id.*   The defendants state that courts regularly "refuse to permit redactions for confidentiality or privacy reasons when a protective order already guards the confidential or private information."   *Id.*[2]

---

[1] The defendants assert that an *in camera* review of the documents may be appropriate.   (#360).

[2] *See, e.g., In re iPhone/ iPad Application Consumer Privacy Litig.*, No. 11-MD-2250, 2013 WL 843833, at *6 (N.D. Cal. Mar. 6, 2013) (ordering production of unredacted documents because party was not "entitled to redact 'incredibly sensitive and highly confidential' irrelevant information" when the party could "not explain why the protective order to which it agreed . . . [wa]s insufficient" to protect that information); *Henry A. v. Willden*, 271 F.R.D. 184, 190 (D. Nev. 2010) (denying party's motion for protective order that would allow it to redact private information of third parties when the parties had stipulated to a protective order that "applie[d] to all of the files or documents" at issue and "prohibit[ed] use of this confidential information for any purpose other than the prosecution, defense or settlement of this action")

The defendants argue that "such redactions undermine the parties' ability to understand the unredacted information by depriving them of context. *See Seafirst Corp.*, 644 F. Supp. at 1165 (finding that, when "disclosure of some possibly irrelevant material will cause no harm," redaction "may tend to distort the tenor" of the produced documents)." *Id.* Defendants ask this court to compel FTC to produce the unredacted bank statements, and argue that "the FTC's *sua sponte* redactions of highly relevant, substantive information cannot stand." *Id.*

## B.    FTC's Arguments

The FTC asserts that the "financial information [the defendants' seek] is irrelevant, as well as highly sensitive and private," and that the redacted line items do not involve the defendant lenders in this action and are irrelevant. (#377). The FTC argues that privacy interests are protected with greater force in the context of third party discovery. *Id* (citing *Laxalt*, 116 F.R.D. at 457 (D. Nev. 1986); *see also Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir.1980); *Jadwin v. County of Kern*, 2008 WL 2916386, 07-CV-026 (E.D. Cal. July 28, 2008)). The FTC states that the court should follow the Ninth Circuit's holding that necessary restrictions must be imposed on non-party discovery to "protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Beinin v. Center for Study of Popular Culture*, No 06-02298, 2007 WL 1795693 (N.D. Cal. June 20, 2007) *citing Dart Indus. Co.*, 649 F.2d at 649 (9th Cir. 1980)." *Id.*

The FTC argues that the risk of embarrassment and annoyance from disclosure is high, and that disclosure would also cause a "gross invasion of privacy." *Id.* The FTC states that consumers have voiced that they were uncomfortable with producing to the FTC all of their bank statements, and that they only agreed to provide the statements to the FTC if the FTC would promise to "redact anything extraneous or sensitive from the statements..." *Id.* The FTC rebuts the defendants' argument regarding relevancy of the bank statements, and argues that "a few individuals' experience with other payday

loans could not bear on the core issue here -- whether Defendants' loan disclosures are deceptive to reasonable consumers." *Id.* The FTC also argues that the defendants' statement regarding needing information of the consumers' history with "similar loan products" does not support its request for *all* transactions, including those wholly unrelated to pay day lending. *Id.*

The FTC next addresses the defendants' argument regarding the need to "test the consumers' credibility" as to whether they could pay back the loans, and asserts that this argument itself lacks credibility for two reasons: (1) a consumer's lack of funds at a particular time does not prove, or even suggest, that the consumer did not believe the funds were due at that time, and (2) "the facts that AMG claims it wants to test are generally withdrawals AMG made from consumers' bank accounts and the existence of emails AMG received that are also attached to declarations filed in this case." *Id.*

With regard to the defendants' argument that the protective order is sufficient to address the privacy issues, the FTC argues that "[c]ourts in this circuit have held that redaction of sensitive information is still necessary even where there is a protective order in place. *See, e.g., Knoll v. Moderno*, No. 12-80193, 2012 WL 4466543, *2 (N.D. Cal. Sept. 26, 2012)." *Id.* The court in *Knoll* held that even with the existence of a protective order, "the disclosing party should still "redact sensitive and private information, such as bank account numbers, credit card information, and customer names, which are not relevant to the underlying litigation." *Id.* The FTC distinguishes this case from that relied upon by the FTC, *In re iPhone/iPad Application Consumer Privacy Litigation*, No. 11–MD–2250–LHK, 2013 WL 843833 (N.D. Cal. March 6, 2013), and asserts that the unlike here, in that case (1) the redacted information is related to one of the parties involved, not, as here, nonparties, (2) the party alleged to have engaged in the wrongful act, *i.e.,* Apple, Inc., was the defendant/party seeking to redact information, and (3) there was no reason to suspect that the plaintiffs in that case, class action consumers, would abuse the un-redacted information. *Id.*

The FTC argues that the consumers' day-to-day spending has no bearing on whether the defendants' loan documents were deceiving and the motion should be denied. *Id.*

## C.       Relevant Law/Discussion

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.."   Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).   For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id.*

An act or practice is "deceptive" under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), if it involves a material representation or omission that is likely to mislead consumers, acting reasonably under the circumstances, to their detriment. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009); *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994).   As the court held above, the issue of whether the consumers were "acting reasonably" in light of their experience with payday loans is therefore relevant.

The defendants make a credible argument regarding the FTC placing the consumers' actual confusion at issue: that the defendants must be afforded an opportunity to discover the consumers' history and familiarity with payday loans in order to defend against this actual confusion and whether the consumers were "acting reasonably." (#360).   The FTC stated during the hearing that the FTC could redact the bank records to reveal payday loans *only.*    (#422).   The court finds that producing the

19

redacted bank records to reveal transactions relating to any payday loan only is proper.  The court also finds that the consumers' ability to re-pay the payday loans and their account balance, does not relate to whether the defendants' loan documents were misleading, whether the consumers acted reasonably, or any defense thereto.  *See* Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund*, 437 U.S. at 351.  The court will not order disclosure of such information.  On or before June 6, 2013, the FTC must provide the defendants with the redacted bank records to reveal any transaction relating to payday loans *only*.

**IV.     Motion to Compel FTC's Privilege Log (#345)**

     **A.     Arguments/Procedural Background**

On October 25, 2012, AMG served the FTC with a request for production of documents seeking "all documents related to [the FTC's] investigation of defendants (including any of Defendants' affiliates or predecessors)."  (#345).  AMG filed its motion to compel on March 15, 2013.  *Id.*  The FTC filed an opposition on March 29, 2013.  (#366).  AMG asked this court in its motion to compel to issue an "order compelling the FTC to produce a detailed privilege log and accompanying affidavit for documents and other information the FTC withholds pursuant to the deliberative privilege."  (#345).  AMG asserted that the FTC is withholding a number of responsive documents under the "deliberate process privilege," and that the FTC refuses to provide much detail about its basis for asserting this privilege.  *Id.*  AMG sought an order requiring FTC to produce: "(1) a detailed document-by-document log for documents withheld pursuant to the deliberative process privilege; and (2) an affidavit from the head of the agency or another senior official that describes with particularity the bases for asserting the deliberative process privilege." *Id.*

The FTC asserted in its opposition that the court should deny the "motion to compel a privilege log and affidavit for the deliberative process privilege because the motion is premature and AMG misstates the requirements for those submissions."  (#366).  FTC stated that it "is in the process of

assembling its privilege log and accompanying declaration asserting the deliberative process privilege over a narrow sliver [of] pre-complaint internal documents generated by FTC attorneys while determining whether to recommend enforcement action," and that "AMG has nonetheless filed a [m]otion to [c]ompel, challenging the sufficiency of the privilege log and declaration, which do not yet exist." *Id.* The FTC argued that the "[c]ourt cannot assess the adequacy of the FTC's privilege log and declaration until they are submitted to AMG and the parties first have an opportunity to discuss and resolve any of AMG's specific concerns." *Id.*

The court issued an order on April 16, 2013, holding that "AMG's request for the court to deem the privilege log insufficient and to require the FTC to include specific information in the privilege log (#345) is premature, as the court cannot determine whether the privilege log and affidavit are sufficient until the FTC has provided AMG and the court with its privilege log." (#390). The court ordered that "[o]n or before April 29, 2013, the FTC must provide the court and AMG with the privilege log for responsive documents withheld as privileged," "[o]n or before May 6, 2013, AMG may file a supplement to its motion to compel (#345)," and "[a]ny reply is due on or before May 13, 2013." *Id.* The FTC provided the court with its privilege log and accompanying affidavits. On May 6, 2013, AMG filed its supplemental reply supporting its motion to compel a privilege log and accompanying affidavit. (#412). The FTC filed a supplemental response opposing the motion to compel a privilege log and accompanying affidavit on March 13, 2013. (#415).

## B.    Supplements (#412 and #415)/Discussion

AMG argues that the privilege logs "provide insufficient information to prevent production of the withheld documents," and give the following five reasons in support of this argument: (1) the FTC's assertion of the law enforcement privilege is too vague to evaluate whether the privilege even applies to the withheld documents, (2) the FTC has withheld several "informant privilege" documents in their

entirety without explaining why redacting the informants' identifying information would not suffice, (3) the FTC cannot withhold facts from documents protected by the deliberative process privilege, (4) the agency asserted the deliberative process privilege over several documents that (at least from the FTC's description) do not appear to fall within the privilege's ambit, and (5) the FTC has asserted work product protection over several documents created before the date the FTC claims it reasonably anticipated litigation. (#412).

AMG asks the court to issue an order compelling the FTC to "(1) provide a more detailed law enforcement privilege log or submit these documents to the court for an *in camera* review; (2) produce redacted versions of documents withheld pursuant to the informant's privilege; (3) produce the facts in documents withheld pursuant to the deliberative process privilege; and (4) produce documents that fall outside the reach of the deliberative process privilege." *Id.* AMG also seeks an order striking the FTC's work product protection claims for documents dated before October 19, 2011. *Id.*

FTC argues that the privilege log is sufficient and that the affidavit accurately informs the defendants of the basis for each privilege asserted. (#415). The court will address the logged categories of documents, the parties' arguments, and the court's rulings below.

### 1. Informant/Law Enforcement Log

**Entries 1-4 and 6-16:** The FTC claims Informant's Privilege for these entries. (#415). AMG asks this court to order production with the identifying information redacted. (#412). The FTC argues that it is not required to produce redacted information, that it "will not rely on the statements of the informing individuals who decline to testify, and [that] Defendants have already received five former AMG employee declarations and deposed the three declarants who are willing to testify." (#415)(relying on *Chao v. Raceway Petroleum, Inc.*, No. 06-3363 (JLL), 2008 WL 2064354, at *4 (D.N.J. May 14, 2008)(holding that the defendants were entirely capable of preparing their defense

without the statements based on the availability of other evidence).   The FTC states that the communications are "non-substantive and non-responsive," as a majority of the communications "merely exchange contact information, document delivery instructions, and suggest times for calls."  *Id.* The FTC also states that redaction of the identifying information would still permit AMG to surmise who the individuals are based on the date, the witnesses' knowledge, and the tip supplied.  *Id.*

The purpose of the informant's privilege is to permit the government to maintain the anonymity of individuals who provide information regarding violations of law.   *U.S. v. Forest, No.* 2:11-cr-00421-KJD-PAL, 2013 WL 1145113, at *4 (D. Nev. Mar. 2013) (citing *Rovario v. United States*, 353 U.S. 53 (1957)).  The privilege encourages individuals to cooperate with law enforcement and promotes the public interest.  *Rovario*, 353 U.S. at 59; *EEOC v. G-K-G Inc*., 131 F.R.D. 553, 555 (N.D. Ill. 1990).  The court finds that production of the communications in 1-4 and 6-16 is protected by the informant's privilege.  The witnesses are *not* going to testify, the FTC represents that any documents created as a result of the informants' communications were produced, and AMG has the ability to conduct discovery regarding the witnesses who are willing to reveal themselves and testify.  *See Chao*, 2008 WL 2064354, at *4; *see also G-K-G, Inc*. 131 F.R.D. at 554-56 (declining to order production of informant's names and their statements where defendant "has been given access to the identities of [other] witnesses and the substance of their knowledge").

The court also finds that redacting the communications is not in the public's interest or consistent with the purpose of the informant's privilege, as AMG may still be able to surmise the identities of the individuals based on the information provided, the type of relationship the information derived from, and/or the date of the communications.  *See G-K-G Inc.*, 131 F.R.D. at 555 ("[b]y preserving the informer's anonymity, the privilege encourages cooperation not only from the informer,

but also from others who have yet to offer assistance."). Entries 1-4 and 6-16 are protected by the informant's privilege and no production is required.

Entries 17-21: The FTC claims Law Enforcement Privilege for entries 17-21. (#415). AMG asks this court to order FTC to provide basic information about these documents *or* produce the documents for *in camera* review. (#412). The FTC states that "[a] primary purpose for the FTC's privilege assertion was preventing Defendants from learning about other agencies' investigations of them." (#415). FTC argues that "[i]f the FTC stated the names of agencies or individuals with whom it corresponded, and the dates of each correspondence, as AMG now asks (Docket No. 412 at 3-4), the identities of other agencies investigating or considering investigations of certain defendants would be exposed." *Id.*

The Acting Director of the Bureau of Consumer Protection of the FTC, Charles A. Hardwood, asserts in his declaration attached to the privilege that "it is crucial for law enforcement investigations to be confidential until the enforcement agency chooses to divulge the existence of its investigation," and that if the target of an investigation learns of the investigation at an inopportune time, the target could compromise/interfere with the investigation, destroy evidence, or intimidate witnesses. (Hardwood Declaration ¶ 45). Hardwood also states that entries 17-18 contain email chains between the FTC and other agencies that were investigating, or considered investigating, at least one of the defendants. *Id* at ¶ 47. Hardwood asserts that entries 19-20 consist of "all handwritten notes taken by FTC attorneys during telephone conversations with other law enforcement agencies" that investigated, were investigating, or were considering investigating the defendants. *Id* at ¶ 48. Producing this information, according to Hardwood, could severely hamper the FTC's ability to communicate effectively with other law enforcement agencies and could severely hamper any existing law enforcement investigations of the defendants. *Id* at ¶ 55. Hardwood states that entry 21 contains communications "whose disclosure is

prohibited" by federal law and that federal law prohibits the FTC from describing the documents further. *Id* at ¶ 56.

"Once [the Law Enforcement] privilege is properly invoked, the court must engage in a balancing of the public's interest in nondisclosure of the information versus the [party's] need for access to the investigatory files." *Alexander v. F.B.I.*, 186 F.R.D. 154, 167 (D.D.C. 1999). The court finds that disclosure of the communications at entries 17-20 is improper, as (1) the FTC's communications with *other* agencies are irrelevant[3] to whether the defendants violated the FTC Act or any defense thereto, (2) the disclosure could interfere with other agencies' ongoing investigations of the defendants, and (3) the public has an interest in agencies conducting investigations without the targets of the investigations interfering, as the agencies' goal is to protect the public from fraud and deception. *See In re Sealed Case*, 856 F. 2d at 272 ("The Commission further explained that disclosure of the information would jeopardize on-going investigations by prematurely revealing facts and investigatory materials to potential subjects of those investigations."); Fed. R. Civ. P. 26(b)(1); *Oppenheimer*, 437 U.S. at 351. With regard to the communications logged at entry 21, as federal law prohibits the disclosure of the communications or describing the communications, the court will not order disclosure.

**Entries 19 and 20:** The FTC also claims the Work Product Privilege for entries 19 and 20. (#415). AMG asks this court to order FTC to provide a date for the documents, and, if the documents are dated before October 19, 2011, AMG asks for an order requiring their production. (#412). Entries 19 and 20 are emails between the FTC and other agencies, and, as discussed above, are protected from disclosure due to the law enforcement privilege. The court need not address the work product privilege.

. . .

. . .

---

[3] The FTC stated during the hearing that such irrelevant information was logged because the defendants sought the FTC's entire claim file. (#422).

## 2.      Deliberate Process Privilege Log

**Entries 1, 2, 3-4, 9, 14, 16, 17, and 24:** The FTC claims Deliberative Process, Work Product, and Law Enforcement (Techniques)(FTC does not claim Law Enforcement Privilege for Line 24) for these entries.  (#415).  With regard to the Deliberative Process Privilege, AMG argues that the FTC must produce the facts in the documents, if not the entire documents themselves.  (#412).  FTC asserts that it already produced the factual documents it obtained from other sources during the investigation, and that the privileged materials are *internal* documents the FTC created to facilitate its decision to bring this action.  (#415).  The FTC states that even where portions of the documents discuss facts of the case, they do so in an evaluative and analytical way.  *Id.*

The deliberative process privilege protects documents that are "predecisional" and "deliberative in nature."  *See, e.g., Hongsermeier v. Comm'r of Internal Revenue*, 621 F.3d 890, 904 (9th Cir. 2010).  "[E]ven if the content of a document is factual, if disclosure of the document would expose the decision-making process itself to public scrutiny by revealing the agency's evaluation and analysis of the multitudinous facts, the document would nonetheless be exempt from disclosure."  *Nat'l Wildlife Fed. v. U.S. Forest Serv*., 861 F.2d 1114, 1118-19 (9th Cir. 1988).  While "[p]urely factual material that does not reflect deliberative processes is not protected," a government agency need not produce factual material that "is interwoven with and demonstrative of the deliberative process."  *Binion v. U.S. Dep't of Justice,* 695 F. 2d 1189, 1193 (9th Cir. 1983); *see also U.S. v. Fernandez*, 231 F. 3d 1240, 1247 (9th Cir. 2000).

Entry 1 is a chart outlining *potential* claims against the defendants and are entirely evaluative. The FTC argues that "[t]he documents' only factual content states which facts staff attorneys think support claims being considered," and that the court should find that to produce just the facts, as AMG seeks, would reveal the deliberation process of what claims to bring, what facts support what claims,

etc. (#415). The court finds that this document is related to the deliberative process and is privileged. *See Nat'l Wildlife Fed.*, 861 F.2d at 1118-19.

Entry 2 is comprised of drafts of the consumer declarations that have already been produced to Defendants in this case. The FTC argues that "[i]t is impossible to untangle the deliberative nature of these documents from the underlying facts because a comparison of the initial drafts with the final declarations would uncover the FTC's deliberations." (#415). The court finds that the drafts of documents already produced would reveal to AMG FTC's decision making process, *i.e.* which facts to include, how to structure the declaration, and what information is pertinent, and that the facts cannot be separated in a way that would still protect the deliberative process. The drafts of the declarations, as a whole, are privileged. *See Nat'l Wildlife Fed.*, 861 F.2d at 1118-19; *Fernandez*, 231 F.3d at 1247 (holding that "[a]lthough the documents at issue include "facts and evidence," which are not protected by the deliberative process privilege, see *Warner Communications*, 742 F.2d at 1161, that factual material is so interwoven with the deliberative material that it is not severable. See *Binion v. Department of Justice*, 695 F.2d 1189, 1193 (9th Cir.1983)).

Entries 3 and 4 are attorneys' and paralegals' distillations and analyses of interviews with witnesses. The FTC argues that these documents are privileged in their entirety, and that "FTC has produced to Defendants all consumer complaints it has received." (#415). The court finds that FTC employees' mental impressions of the interviews which were used to determine whether to bring claims and what claims to bring are part of the deliberative process and must be protected. *See Nat'l Wildlife Fed.*, 861 F.2d at 1118-19.

Entry 9 is a recommendation from subordinate staff to a superior recommending the initiation of an investigation. The FTC argues that "[t]he factual material in the memorandum is presented as support for the subordinate's recommendation," and "[i]t is an interwoven part of the FTC's deliberative

analysis." (#415).  AMG seeks production of the facts within the document.  (#412).  The court finds that a memo analyzing why the FTC should conduct an investigation of the defendants is deliberative in nature and would contain facts so intertwined that the facts could not be separated and produced without revealing the deliberative process.  *See Fernandez*, 231 F.3d 1240, 1247; *Binion*, 695 F. 2d at 1193.  The communication must be protected.

Entry 14 is a memorandum providing an FTC attorney's thoughts on potential counts that could be brought against defendants in this case.  The FTC argues that "[t]his document constitutes a "subjective document which reflect[s] the personal opinions of the writer rather than the policy of the agency" and is therefore privileged.  *Nat'l Wildlife*, 861 F. 2d at 1118-19."  (#215).  AMG asks for production of the entire document.  (#412).  The court finds that a memo containing legal theories and discussing what claims to bring against the defendants is "deliberative in nature" and reveals the decision making process that the deliberative privilege was meant to protect.  *Hongsermeier*, 621 F.3d at 904.  The memorandum is protected from disclosure.

Entry 16 are compilations and the factual analyses conducted by FTC staff when the FTC was deciding whether to bring an action, what counts to include in any action, and what defendants to name in any action.  The FTC asserts that "[w]hen the raw data underlying an agency's deliberative analysis has been produced, agencies are not required to also produce the *internal* analysis of this data. *See, e.g., Lahr,* 569 F. 3d at 983 (affirming order to release raw data and affirming determination that "analysts' evaluation of that data, their calculations, and their thought processes" are privileged.")."  (#415).  AMG asks this court to order production of the facts in these communications.  (#412).  The court finds that to redact the communications to reveal only the facts would reveal to the defendants what facts the FTC relied on during its deliberation regarding bringing claims, and that the facts cannot be separated in a

manner to protect the deliberative process.  *See Fernandez*, 231 F.3d 1240, 1247; *Binion*, 695 F. 2d at 1193.

Entries 17 and 24 are emails discussing particular evidence.  The FTC asserts that "[t]he underlying evidence being discussed has already been produced to Defendants."  (#415).  The FTC also states that 17 is a communication between FTC staff commenting on the significance of a particular piece of evidence, and that "[t]he evidence itself has been produced; the FTC only asserts privilege over the staff communication about the document's significance."  *Id.*  The FTC argues that "[t]he Ninth Circuit has held that staff opinions on the importance of evidence are subject to the deliberative process privilege."  *Id.*  AMG seeks production of the entire document.  (#412).  Since the evidence itself has already been produced, and this is simply the FTC staff's deliberations over and analysis of the *significance* of the evidence, the communications are privileged.  *See, e.g., Lahr*, 569 F. 3d at 983-84.

The FTC asserts that entry 24 is an email conversation between FTC staff about how the FTC should present certain evidence in a filing in this case.  (#415).  The FTC argues that "Director Harwood clarified that "[t]he presentation of evidence is an important part of the FTC's deliberation over whether to bring an action and, if so, what claims to bring."  *Id.*  AMG asks the court to order the FTC to produce the facts in this document.  (#412).  The privilege log states that the communication involves "whether the FTC should file a complaint against the [d]efendants; what the FTC should allege in any complaint."  (#415).  The court finds that an email conversation regarding how to present certain evidence and whether to file a complaint is deliberative in nature and privileged.  *Hongsermeier*, 621 F.3d at 904.  The court also finds that separating the facts from the deliberation would reveal the decision making process, as the defendant could then compare facts in the complaint with those discussed in the email to see the process the FTC went through in bringing the complaint.  *See Fernandez*, 231 F.3d 1240, 1247; *Binion*, 695 F. 2d at 1193.

As the Deliberative Process Privilege applies to all of the entries in the Deliberative Process Privilege Log, as discussed above, the court need not address the other asserted privileges.

Accordingly and for good cause shown,

IT IS HEREBY ORDERED that Federal Trade Commission's Motion For Protective Order (#343) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that the court limits the requests in the subpoenas as follows:

3. All documents related to any other short-term loan for which you have applied since January 1, 2007. **Limit Time-Frame: One (1) year before the loan at issue. If the consumer took out multiple loans from the defendants that are the subject of this action, the time frame will expand accordingly.**

4. All documents related to any other loan for which you have applied since January 1, 2007. **Strike The Entire Request.**

5. Your bank records since January 1, 2007. **Limit Time-Frame: Sixty (60) days before the loan at issue and sixty (60) days after**. **The court will discuss redactions below.**

6. All documents stating your credit history or credit score since January 1, 2007. **Limit Time-Frame: Sixty (60) days before the loan at issue and sixty (60) days after**.

7. All documents reflecting any bankruptcy filing or debt consolidation effort since January 1, 2007. **Limit Time-Frame: One (1) year before the loan at issue. If the consumer took out multiple loans from the defendants that are the subject of this action, the time frame will expand accordingly.**

9. All communications between you and any other short-term lender during the period of January 1, 2007, through the present concerning any short-term loan. These communications may include, but are not limited to: (a) marketing materials received from the lender; (b) your application for loan(s) with the lender; © your repayment of loan(s) with the lender; or (d) collection of debts from loan(s). **Strike The Entire Request.**

10. All communications between you and the Federal Trade Commission concerning …any other loans that you discussed with the Federal Trade Commission. **Strike This Portion of The Request Only.**

11(3). All communications between you and any federal agency; any state government, any state agency; any Better Business Bureau; or any other agency or individual related to…(3) any other short-term loan applied for or received from any lender during the

period of January 1, 2007 through the present. **Limit Time-Frame: One (1) year before the loan at issue and one (1) year after the loan at issue. If the consumer took out multiple loans from the defendants that are the subject of this action, the time frame will expand accordingly.**

IT IS FURTHER ORDERED that, on or before May 24, 2013, the defendants must file under SEAL a list of the consumers who took out payday loans from the named defendants *after* the date of their declaration.

IT IS FURTHER ORDERED that AMG's Motion to Compel FTC's Production of a Privilege Log and Accompanying Affidavit (#345) is DENIED as moot in light of the FTC's production of its privilege log.

IT IS FURTHER ORDERED that AMG's objections to the privileges are OVERRULED and AMG's request for an *in camera* review is DENIED.

IT IS FURTHER ORDERED that AMG's Motion to Compel Discovery Responses/Unredacted Documents (#360) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that, on or before June 6, 2013, FTC must provide AMG with the bank records redacted to reveal transactions relating to any payday loan only.

IT IS FURTHER ORDERED that AMG's Motion for Partial Withdraw of AMG's Second Motion to Compel (#419) is GRANTED.

DATED this 23rd day in May, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE