# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

## ***

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | 2:12-cv -00536-GMN-VCF |
| Plaintiff, | |
| vs. | **ORDER AND**<br>**REPORT & RECOMMENDATION** |
| AMG SERVICES, INC., *et al.,* | |
| Defendants. | **(Amended Motion For Partial Summary Judgment #338, Motion for Legal Determination as to Phase 1(B) of the Court's December 27, 2012, Order #373 and Cross-Motion #380, and Motion to Strike #380)** |

## REPORT & RECOMMENDATION

Before the Court is the Federal Trade Commission's (hereinafter "FTC") Motion for Partial Summary Judgment.  (#338)[1].  Defendants AMG Services, Inc, Red Cedar Services, Inc, and MNE Services, Inc. (hereinafter "Tribal Chartered Defendants"), filed an Opposition (#355), and defendant Robert D. Campbell filed a Joinder thereto (#356).  Defendant Troy L. LittleAxe filed an Opposition (#357), defendants AMG Capital Management, LLC, Level 5 MotorSports, LeadFlash Consulting, LLC, Blackcreek Capital Corporation, Broadmoor Capital Partners, Scott A. Tucker, and Blaine A. Tucker filed a Joint Opposition (#358), and defendant Don E. Brady filed an Opposition (#359).  The FTC filed a Reply.  (#391).

---

[1] The FTC filed a separate Memorandum of Points and Authorities in Support of the Amended Motion for Partial Summary Judgment.  (#339).  When discussing any arguments contained in the memorandum (#339) or the motion for partial summary judgment (#338), the court will refer to (#338).

Also before the court is the Tribal Chartered Defendants' Motion for Legal Determination as to Phase 1(B) of the Court's December 27, 2012, Bifurcation Of Proceedings Order.  (#373)[2].  Defendant LittleAxe filed a Cross-Motion for Legal Determination of Phase 1(B) Issues of the Court's December 27, 2012, Bifurcation Proceedings Order.  (#380).  Defendant Campbell filed a Joinder to the Tribal Chartered Defendants' Motion (#373).  (#387).  The FTC filed an Opposition to the Motion (#373) and Cross-Motion (#380).  (#392).  The Tribal Chartered Defendants filed a Reply (#401), and defendant LittleAxe filed a Reply (#406).

Also before the court is the FTC's Motion to Strike Improper Sur-Replies.  (#407).  The Tribal Chartered Defendants filed an Opposition (#416) and defendant LittleAxe filed an Opposition (#420).  The FTC filed a Reply (#434).

### INTRODUCTION

On December 27, 2012, the court signed the parties' stipulation for preliminary injunction and bifurcation.  (#296).  The stipulation provides for the bifurcation of the proceedings as follows: (1) Phase 1 - Liability, and (2) Phase 2 - Common Enterprise Claim, Individual Liability, and Monetary Relief.  *Id.*  During Phase 1, the court is to adjudicate the merits of several of the FTC claims and "also adjudicate through motion practice the legal question of whether, and to what extent, the FTC has authority over Indian tribes whose sovereignty is asserted in this case and/or AMG Services, Inc., MNE Services, Inc., Red Cedar Services, Inc., and SFS, Inc. for alleged violations of the FTC Act."  *Id.*

Defendants' initial responses to the FTC's complaint (#1) were motions to dismiss and a motion for protective order to stay discovery based on the assertion that the FTC does not have jurisdiction over any of the defendants.  (#100, #101, #103, #104, #105, #107, #108, #109, and #134).  Defendants' analysis underling this assertion rests on alternative arguments:

---

[2] The Tribal Chartered Defendants filed a Memorandum of Points and Authorities in Support of the Motion (#373).  (#374).  When discussing any arguments contained in the memorandum (#374) or the motion (#373), the court will refer to (#373).

1.      Since the FTC does not have authority to regulate Indian Tribes, it may not regulate the lending activities of Arms of Indian Tribes and employees of Arms of Indian Tribes; or

2.      Since the Tribal Chartered Defendants are not "Corporations" for purposes of the Federal Trade Commission Act (hereinafter "FTC Act") 15 U.S.C. § 53, the FTC does not have authority to regulate the lending activities of the Tribal Chartered Defendants or their employees.

Defendants' affirmative defenses presently at issue (with the exception of defendant LittleAxe's 53-55 affirmative defenses, discussed below) contain language similar to the following: Plaintiff lacks authority to bring action against defendant under Section 13(b) of the FTC Act, 15 U.S.C. §53(b), and, thus, Truth in Lending Act (hereinafter "TILA") and Electronic Fund Transfer Act (hereinafter "EFTA"), because either defendant is an arm of the Indian tribe, defendant was acting on behalf a Tribal Chartered Defendant, or defendant was acting as a tribal officer of an Indian Tribe.  (#310-312 and #314-319).  The court finds that theses affirmative defenses encompass the two alternative arguments outlined above.  The Tribal Chartered Defendants addressed both of these arguments in their opposition to the motion (#355), and the FTC did not argue to the court that the "corporation" argument was not within the affirmative defenses asserted (#391).  The court will address both arguments herein.

Having reviewed all the points and authorities submitted by the parties on these issues, the court concludes:

1.      The FTC does have authority under the FTC Act to regulate Indian Tribes, Arms of Indian Tribes, employees of Arms of Indian Tribes and contractors[3] of Arms of Indian Tribes with regard to the subject matter of this litigation; and

---

[3] The defendants admit that the FTC has authority to regulate entities which <u>contract</u> with Arms of the Indian Tribes, and stated in their objections to the Undersigned Magistrate Judge's August 28, 2012, order, that "[t]he Tribal Entities have not—and do not—assert that the FTC's lack of jurisdiction extends to any contractor working with the Tribal Entities or anyone who has a "business relationship" with the Tribal Entities."  (#165).

2.     A genuine issue of material fact exists as to whether the Tribal Chartered Defendants are "Corporations" as defined in § 44 of the FTC Act, 15 U.S.C. § 53.

**Amended Motion for Summary Judgment (#338)**

In the FTC's amended motion for partial summary judgment, the FTC asks this court to enter summary judgment on the following defenses (sometimes referred to as "Tribal Defenses") asserted by the defendants:

1. Red Cedar Services, Inc. Answer (#310) Affirmative Defense 1;

2. SFS, Inc. Answer (#311) Affirmative Defense 1;

3. Robert Campbell Answer (#312) Affirmative Defense 1;

4. Blaine Tucker and Leadflash Consulting, LLC Answer (#314) Third Affirmative Defense;

5. Scott Tucker, AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, and Broadmoor Capital Partners, LLC Answer (#315) Third Affirmative Defense;

6. AMG Services, Inc. Answer (#316) Affirmative Defense 2;

7. Don Brady Answer (#317) Affirmative Defense 1;

8. Tribal Financial Services Answer (#318) Affirmative Defense 2; and

9. Troy LittleAxe Answer (#319) Affirmative Defenses 2, and 53-55[4].

*Id.*   The FTC asserts that the defenses deal with whether the FTC has "the authority to enforce the Federal Trade Commission Act ("FTC Act"), the Truth in Lending Act ("TILA"), and the Electronic Fund Transfer Act ("EFTA") against online lenders and debt collectors, including businesses associated with Indian tribes." *Id.*   The FTC argues that although the defendants "characterize themselves as a

---

[4] Defendant LittleAxe's Affirmative Defenses #53-#55 differ from the other affirmative defenses and are as follows: 53. The Federal Trade Commission Act does not apply to the Defendants under the Indian law canons; 54. The Truth in Lending Act does not apply to the Defendants under the Indian law canons; and 55. The Electronic Funds Transfer Act does not apply to the Defendants under the Indian law canons." (#319).

tribal business and have repeatedly argued that the FTC (and, by extension, the entire federal government) is powerless to regulate them," "they have never offered any proof that Congress intended any tribal businesses to be entirely exempt from federal law enforcement." *Id.*

## A.     Appropriate Standard

Summary judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it might affect the outcome of a suit, as determined by the governing substantive law." *FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1211 (D. Nev. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "An issue is 'genuine' only if sufficient evidence exists such that a reasonable fact finder could find for the nonmoving party." *Id.* (citing *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002)).

## B.     FTC's Arguments

The FTC asserts that "[i]t is beyond reasonable dispute that federal statutes of general applicability that are silent on tribal issues presumptively apply to tribes and tribal businesses."[5] *Id.* The FTC argues that the defendants have reacted to the numerous binding precedent supporting that fact in two ways: (1) "advanc[ing] a series of contradictory arguments in an attempt to expand tribal immunity to block federal oversight of their interstate commerce, only to retract and revise most of their arguments upon the multiple queries and signs of disbelief from the Court," and (2) "choosing to mostly ignore *Tuscarora*, *Donovan* and the rest of the Ninth Circuit cases confirming federal oversight into tribal interstate commerce by relying only on precedent involving state and private litigants." *Id.*

---

[5] *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960) ("it is now well settled by many decisions of this Court that a general statute in terms applying to all persons includes Indians and their property interests"); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985) ("Many of our decisions have upheld the application of general federal laws to Indian tribes; not one has held that an otherwise applicable statute should be interpreted to exclude Indians.").

The FTC discusses several inconsistencies (1) in the way the defendants categorize themselves, (2) in their arguments regarding the applicability of federal laws to them, (3) as to whether non-tribal partners are also allegedly exempt from FTC regulation, (4) regarding whether sovereign immunity applies, and (5) regarding whether they are purportedly immune from the FTC's TILA and EFTA claims. *Id.* The court will address several of theses issues, as well as the relevant case law, below.

### 1.   The FTC Act's Applicability to Defendants

The FTC asserts that its argument in the motion for partial summary judgment is "a purely legal one," and that "[t]his question of statutory interpretation may be decided entirely on the law – irrespective of the Tuckers' particular arrangements with the tribes – and is perfectly suited for disposition via motion for partial summary judgment."[6] *Id.* The FTC argues that although 15 U.S.C. § 45(a)(2) of the FTC Act gives it authority to prevent "persons, partnerships, or corporations" from using unfair and deceptive acts and practices in commerce, defendants still claim "that they are not "persons, partnerships, or corporations" within the meaning of the FTC Act because they are *tribal* corporations. *Id.* The FTC contends that § 45(a)(2) of the FTC Act contains limited exceptions for *certain* types of businesses, but that there are *no* exceptions for tribes or tribal businesses. *Id.*

The FTC argues, therefore, that under the "statutory canon *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of another"), this observation alone defeats Defendants' claim to any exception based on their supposed tribal status. *See Del Webb Communities, Inc. v. Partington*, No. 2:08–cv–00571– RCJ–GWF, 2009 WL 3053709, at *9 (D. Nev. Sept. 18, 2009) (statutory provision specifically articulating eight exceptions implied exclusion of exceptions for other

---

[6] *See Ohio Cas. Ins. Co. v. Biotech Pharmacy, Inc.*, 547 F.Supp.2d 1158, 1159 (D. Nev. 2008) (granting motion for partial summary judgment on a purely legal issue of contract interpretation); *see also Goldinger v. Datex-Ohmeda Cash Balance Plan*, 701 F. Supp.2d 1205, 1207 n.2, 1215 (W.D. Wash. 2010) (granting motion for partial summary judgment on a purely legal issue of statutory interpretation); *Klass v. Fidelity & Guar. Life Ins. Co.*, No. CIV 04–2337–PHX–RCB, 2009 WL 886874, at * 5 (D. Ariz. Mar. 31, 2009) (purely legal issues are proper for resolution under Rule 56).

categories of persons)." *Id.*  The FTC relies on several cases for the position "that statutes of general applicability that are silent on tribal issues presumptively apply to tribes and tribal businesses," including *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960) and *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985).[7]  *Id.*

The court in *Donovan* held that "[a] federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches 'exclusive rights of self-governance in purely intramural matters'; (2) the application of the law to the tribe would 'abrogate rights guaranteed by Indian treaties'; or (3) there is proof 'by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations ....'"  751 F.2d at 1116. The FTC asserts that despite having exceptions, the FTC Act is one of general applicability, as (a) the Ninth Circuit held in *Chapa De* that a law of general applicability for purposes of the *Donovan* rule may contain some exemptions without compromising its status as "generally applicable," 316 F.3d at 998, and (b) the presence of some explicit exemptions for certain types of businesses but no corresponding exemption for tribal businesses defeats, rather than supports, Defendants' argument to now create a judicial exemption for tribal businesses, *See Del Webb Communities, Inc.,* 2009 WL 3053709, at *9 (applying *expressio unius est exclusio alterius canon*)."  *Id.*

---

[7] The FTC also cites to *N.L.R.B. v. Chapa De Indian Health Program, Inc.*, 316 F.3d 995, 998-99(9th Cir. 2003) ("[W]e have explicitly adhered to the *Tuscarora* rule");*Solis v. Matheson*, 563 F.3d 425, 434 (9th Cir. 2009) (applying *Fed. Power Comm'n* and *Donovan* and holding that the Fair Labor Standards Act applies to retail store on tribal trust land); *Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus.*, 939 F.2d 683, 685 (9th Cir. 1991) (applying *Donovan* and holding that the Employee Retirement Income Security Act applies to tribally operated sawmill); *U.S. Dep't of Labor v. Occupational Safety & Health Review Comm'n*, 935 F.2d 182, 184 (9th Cir. 1991) (applying *Donovan* and holding that the Occupational Safety and Health Act applies to tribally operated sawmill); *Chao v. Spokane Tribe of Indians*, No. CV-07-0354-CI, 2008 WL 4443821, at *1-2 (E.D. Wash. Sept. 24, 2008) (applying *Donovan* and holding that Fair Labor Standards Act applies to tribally owned and operated casino); *Hollynn D'Lil v. Cher-Ae Heights Indian Cmty. of the Trinidad Rancheria*, No. C 01-1638 THE, 2002 WL 33942761, at *3 (N.D. Cal. Mar. 11, 2002) (applying *Donovan* and holding that Americans with Disabilities Act applies to inn owned and operated by tribe).

The FTC argues that the defendants have failed to demonstrate that they meet any of the exceptions, and that "[b]ecause the FTC Act is a law of general applicability making no exception for tribes, it must apply to [d]efendants' businesses."  *Id.*

The FTC asserts that the defendants' alleged "arm of the tribe" status, even if proven, "applies exclusively to states' and private litigants' attempts to override tribal sovereign immunity."  *Id.*  The FTC distinguished several cases relied upon by defendants, including *Kiowa Tribe of Oklahoma v. Mfg. Technologies, Inc.*, 523 U.S. 751 (1998), which involved a private plaintiff and issues of sovereign immunity (the Ninth Circuit in *Chapa De,* 316 F.3d at 1000, found *Kiowa* not applicable in a federal government case for that reason), and *Inyo County, Cal. v. Paiute- Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701 (2003), which involved a tribe's attempt to sue a state.  *Id.*

The FTC's final argument is that the defendants cannot claim any immunity under TILA or EFTA, "because each of those statutes has language conferring authority to the FTC to enforce those statutes under the FTC Act, *irrespective of any jurisdiction limitations in the* FTC Act."  *Id* (emphasis provided by FTC).  The FTC states that "Section 108(c) of TILA sets forth the FTC's power to enforce TILA: "All of the functions and powers of the [FTC] under the [FTC] Act are available to the [Commission] to enforce compliance by any person . . . irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the [FTC] Act." 15 U.S.C. § 1607(c) (emphasis added)."  *Id.*  The FTC also states that "[t]he Commission's power to enforce EFTA is similarly unfettered by any FTC Act limitations, even if such limitations were present here. *See* 15 U.S.C. § 1693o(c)."  *Id.*

The FTC asks this court to grant summary judgment to dismiss the defendants' Tribal Defenses that the FTC lacks authority under the FTC Act to bring this action against the defendants.  *Id.*

8

### C.     Tribal Chartered Defendants' Opposition[8]

The Tribal Chartered Defendants assert that the FTC bears the burden to establish the legal issue of whether the FTC Act applies to the Tribal Chartered Defendants, and that the FTC has not met its burden.  (#355).

### 1.     Indian Tribes/Arms of the Tribes: "Persons, Partnerships, or Corporations"

The Tribal Chartered Defendants argue that the FTC mistakenly asserts that they are "corporations" that Congress intended to regulate when it enacted the FTC Act in 1914, and that this presumption is false for the following reasons: (1) "the alleged presumption is derived from the FTC's misinterpretation of dicta from the Supreme Court decision in *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99 (1960)— a misinterpretation that is inconsistent with Supreme Court decisions both before and after *Tuscarora*," (2) "even if the Court's dicta in *Tuscarora* should be given the force of law, this so-called presumption applies solely to individual "Indians," not sovereign Indian tribes or their subordinate governmental entities," and (3) "even assuming the FTC's misreading of *Tuscarora* (and the few lower courts that have shared the FTC's misreading) were correct, it would — at best — stand for the proposition that federal laws of general applicability apply to Indian tribes."  *Id.*

The Tribal Chartered Defendants argue that the FTC Act, however, is, by its own terms, "not a law of general applicability," as it "expressly does not apply to many categories of legal entities" and applies rather "(with gaping exceptions) only to "persons, partnerships and [some] corporations."" *Id.* The Tribal Chartered Defendants assert that a thorough review of the definition of "Corporation" in 15 U.S.C. § 44, in conjunction with principles of statutory construction and principles of Federal Indian

---

[8]Defendant Robert D. Campbell filed a Joinder to the Tribal Chartered Defendants' Opposition (#355), asserting that he joins in the opposition and that "[s]hould the need arise after additional discovery for Campbell to amend his Answer and affirmative defenses, he reserves the right to do so after seeking leave to amend from this Court, which should be freely given when justice so requires."  (#356).

law, reveals that the FTC's conclusory assertions are legally false (Doc. 39 at 12)— the tribal businesses do not fall within the Act's rubric." *Id.*

Pursuant to 15 U.S.C. § 44, a "corporation" is defined as including "any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, which is organized to carry on business for its own profit or that of its members, and has shares of capital or capital stock or certificates of interest, and any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, without shares of capital or capital stock or certificates of interest, except partnerships, which is organized to carry on business for its own profit or that of its members." The Tribal Chartered Defendants argue that, "on its face," this definition does *not* include tribal governmental subdivisions or sovereign entities, and that it "bears stark contrast to other statutes that differentiate between corporations and Indian tribes and their subdivisions." *Id*[9]

The Tribal Chartered Defendants also argue that "it is absolutely irrelevant that there is "no exception in the FTC Act for Indian tribes or tribal businesses,"" as the question is "whether the FTC Act purports to apply to tribal businesses *to begin with,"* and not whether an exception applies. *Id* (emphasis in original).  The Tribal Chartered Defendants contend that the Supreme Court "has reiterated that abrogation of Tribal rights by Congress "cannot be implied," but must be "unequivocally expressed" (*Santa Clara Pueblo*, 436 U.S. at 58) in "explicit legislation" (*see Kiowa Tribe of Okla v. Mfg. Techs*., 523 U.S. 751, 756-59 (1998)," and argue that since the FTC Act does not explicitly include "Indian Tribes" within the definition of persons that can be sued under the Act, it was not Congress' intent to make the act applicable to Indian Tribes.  *Id.*

---

[9] The Tribal Chartered Defendants provide as an example 15 U.S.C. § 375 (10), which states that "[t]he term 'person' means an individual, corporation, company, association, firm, partnership, society, State government, local government, Indian tribal government, governmental organization of such a government, or joint stock company." (#355).  The Tribal Chartered Defendants also assert that Congress "has shown the ability to encompass tribal instrumentalities that take the form of corporations," such as in 16 U.S.C. § 470bb(7), stating that "the term 'person' means an individual, corporation,...or any other private entity or any officer, employee, agent, department, or instrumentality of the United Stated, of any Indian tribe, or of any State or political subdivision thereof." *Id.*

The Tribal Chartered Defendants take the position that "Congress clearly intends to enable Indian tribes to engage in business development in commercial markets,"[10] and that it would be "contrary to congressional policy...to abrogate the Tribe's sovereignty because of the mere name that the tribe chose for its governmental business development entity." *Id.* The Tribal Chartered Defendants also state that the tribes and the arms of the tribes are not "corporations" under the Act because they are "wholly unlike private corporations that Congress intended to be covered by the FTC Act:" Indian Tribes (1) are "distinct, independent *political* communities,"[11] (2) have the power to constitute and regulate its form of government,"[12] and (3) "have the power to tax and legislate — including the power to make criminal and civil laws, not otherwise preempted by federal law, and to administer justice."[13] *Id.* Tribal Chartered Defendants argue that none of these characteristics are shared with private "corporations," and were certainly not shared with corporations that existed in 1914 when Congress enacted the FTC Act. *Id.*[14]

The Tribal Chartered Defendants contend that history itself belies the FTC's argument that Congress intended for the word "corporation" to include Tribes, as "the official federal policy toward Indians and Indian tribes was that of "civilization and assimilation"" when the Act was enacted, and the goal of the federal policy was to "was to end the tribe as a separate political and cultural unit . . . ." *Id* (internal citations omitted). Twenty years *after* the enactment of the FTC Act, Congress enacted the

---

[10] *See e.g.,* Native American Business Development, Trade Promotion, and Tourism Act of 2000, 25 U.S.C. §§ 4301, ET SEQ.; *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 152 (1973)(describing Congressional intent in the Indian Reorganization Act, 25 U.S.C. §§ 461-479, to encourage and support tribal business development while freeing tribal business enterprises from bureaucratic control by the federal government of the details of those enterprises.). *Id.*

[11] *Worcester v. Georgia,* 31 U.S. 515, 559 (1832) (emphasis added).

[12] *Santa Clara Pueblo,* 436 U.S. at 62-63.

[13] See, e.g., *Fisher v. Dist. Ct.,* 424 U.S. 382, 386 (1976); *Kerr-McGee Corp. v. Navajo Tribe,* 471 U.S. 195, 198-200 (1985).

[14] The Tribal Chartered Defendants also assert that the "same argument applies with equal force to the FTC's Truth in Lending Act (TILA) and Electronic Funds Transfer Act (EFTA) claims," and argues that the FTC needs to decide whether it is bringing the TILA and EFTA claims under the FTC Act or not. *Id.*

Indian Reorganization Act, "which, for the first time, encouraged tribes to reorganize their tribal governmental structures similar to those modern business corporations." *Id* (citing *Cohen,* at 81).

### 2. The Indian Law Canons of Construction

Tribal Chartered Defendants assert that the Indian Law Cannons of Construction dictate that ambiguities in the Act be resolved in favor of Indian tribes. (#355). They argue that "[i]t is the precept of federal Indian law that "the standard principles of statutory interpretation do not have their usual force in cases involving Indian law," and that courts are required to apply "Indian canons of construction to cases involving that application of federal statutes to Indian tribes." *Id* (quoting *Mont. v. Blackfeet Tribe*, 471 U.S. 759, 766 (1985)). The Tribal Chartered Defendants assert that the canons include the following "fundamental interpretive rules that govern statutory construction where a question of Indian law is concerned: (1) that courts must resolve ambiguities in a federal statute in favor of Indian tribes, *e.g., County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 268-69 (1992); *Blackfeet Tribe of Indians*, 471 U.S. at 766; *McClanahan v. Ariz. State Tax Com'n*, 411 U.S. 164, 176 (1979); and (2) that a clear expression of Congressional intent is necessary before a court may construe a federal statute so as to impair tribal sovereignty, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59-60 (1978)." *Id.*

The Tribal Chartered Defendants state that it is "manifestly clear that the FTC Act does not apply to Indian tribes," and that because it does not apply to Indian tribes, "it is simply incongruent that it would apply to a tribe's entities."[15] *Id.* "At best," the Tribal Chartered Defendants argue, the question of whether the Act encompasses tribe-owned corporations etc, "is ambiguous," and ambiguities are to be resolved in favor of the Indian tribes. *Id; See County of Yakima*, 502 U.S. at 268-69; *Blackfeet Tribe of Indians*, 471 U.S. at 766; *McClanahan*, 411 U.S. at 176.

---

[15] "[W]hen an Indian tribe establishes an entity to conduct activities, that entity shares the same attributes as the tribe itself. *Allen v. Gold County Casino,* 464 F.3d 1044, 1046 (9th Cir. 2006) (citing cases)." (#355).

### 3.     Case Law: Statutes of General Applicability

The Tribal Chartered Defendants argue that the FTC's motion relies on the "false presumption" that laws of general applicability apply to Indian tribes.  (#355).  They assert that the Supreme Court's statement in *Tuscarora,* 362 U.S. at 116, that "it is now well settled by many decisions of this Court that a general statute in terms of applying to all persons includes Indians and their property interests," is *dicta* and has been "widely acknowledged as *dicta.*"[16]  *Id.*  The Tribal Chartered Defendants argue that the statement also applied only to individual  Indians, not sovereign Indian tribal governments or their instrumentalities.  *Id.*

The Tribal Chartered Defendants also argue that the statement in *Donovan,* 751 F.2d at 1115, following *Tuscarora* and relied upon by the FTC that laws of general applicability are presumed to apply not just to individual Indians, but to sovereign Indian tribes, is *dicta. Id.*  The Tribal Chartered Defendants contend that the court in *Donovan* did not even need to look to *Tuscarora* because the statute in that case, OSHA, "broadly defined entities covered by that statute as "any organized group of persons," but then exempted certain governments, and not Indian tribes.  *Id; Donovan*, 751 F.2d at 1115. The FTC Act, however, does not contain this same broad language.  *Id.*

The Tribal Chartered Defendants further argue that after *Donovan,* the Supreme Court applied the Indian canons of construction and concluded that "*statutes of general applicability at issue...do **not** apply to Indian tribes." Id* (emphasis provided by FTC)(citing *Wildenthal,* 2008 MICH. ST. L. REV. 547, 585; *see also Idaho v. United States*, 533 U.S. 262, 270, 272-79, 278-282 (2001) (determining that statehood act that failed to explicitly address Indian submerged lands did not function to transfer them to the state); *Minn. v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 176-77, 185, 202-08

---

[16] The Tribal Chartered Defendants assert that "in the fifty-three years since deciding *Tuscarora*, the Supreme Court has never cited this passage at all," and that "[b]y contrast, during those fifty-three years, the Supreme Court has on dozens of occasions reaffirmed the Indian law canons of construction noted above."  (#355)

(1999)(determining that statehood act that was silent on the issue failed to extinguish Indian usufructuary rights)).

### 4.    FTC Act's Applicability

The Tribal Chartered Defendants take the position that the FTC "completely fails to demonstrate how or why the FTC Act is a law of general applicability," and that since there is no presumption of generally applicability (and any such presumption would violate the Indian canons), FTC has not met its burden.  (#355).   The Tribal Chartered Defendants contend that the FTC Act cannot be applied broadly, as it is "riddled with exemptions, including nonprofits, "banks, savings and loan institutions . . ., Federal credit unions. . . , common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers . . . , and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act." 15 U.S.C. § 45(a)."  *Id.*[17]  They assert that this is further supported by the fact that Congress did not even intend that the FTC Act apply to all corporations.[18]  *Id.*

The Tribal Chartered Defendants argue that Congress could not have intended on having the FTC Act apply to Indian tribes or their businesses, as "tribal commercial enterprises of the sort...were virtually unknown when Congress enacted the FTC Act."  *Id.*  The Tribal Chartered Defendants also argue that their position is supported by a recent Ninth Circuit decision holding that "federal antitrust laws are not intended to apply to Indian tribes[19] and the fact that the "FTC Act is coterminous with other antitrust laws."[20]  *Id.*

---

[17] The Tribal Chartered Defendants assert that "[w]hile the Ninth Circuit in *National Labor Relations Board v. Chapa De Indian Health Program, Inc*., 316 F.3d 995, 998 (9th Cir. 2002) noted that the issue is "whether the statute is generally applicable, not whether it is universally applicable," the court emphasized in *Chapa De* that only two major exemptions applied to the NLRA: public sector employers and church-controlled and operated schools. By contrast, Congress provided for numerous exemptions to the FTC Act across a variety of industries and entity types. 15 U.S.C. § 45(a); *see also Cmty Blood Bank of Kansas City Area, Inc. v. FTC*, 405 F.2d 1011 at 1017 (1969).

[18] *See Cmty Blood Bank of Kansas City Area Inc*., 405 F.2d at 1017 (citing H.R. REP NO. 533, 63d CONG., 2D SESS. (1914); S. REP. NO. 597, 63d CONG., 2D SESS. (1914); H.R. REP. NO. 1142, 63d CONG., 2D SESS. (1914).

[19] *Miller v. Wright*, -- F.3d --, 2013 WL 174493, at *7 (9th Cir. 2013).

[20] *See, e.g.,* FTC Guide to the Antitrust Laws, http://www.ftc.gov/bc/antitrust/antiturst_laws.shtm (defining the Sherman Act, the Clayton Act, and the FTC Act as "the three core federal antitrust laws"); *Am. Cyanamid Co. v. FTC*, 363 F.2d 757, 770 (1966) ("The Federal Trade Commission Act may be construed in pari materia with the Sherman and Clayton Acts. This

### 5.      Tribal Charter Defendants' Alleged Admissions

The Tribal Chartered Defendants argue that the FTC's reliance on statements made by Tribal Chartered Defendants as "admissions" of the applicability of the FTC Act to Tribes and tribal entities is erroneous, as (1) "the issue of whether a particular federal statute applies to an Indian tribe may be a complicated legal issue," not one that a party can admit or deny, (2) the "admissions" were "isolated statements of Defendants or their counsel made in other proceedings in other jurisdictions involving different legal issues," (3) "Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law. *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972); 6 Handbook of Fed. Evid. § 801:26 (7th ed.)," (4) the statements did not admit anything but that Congress has the *power* to regulate and that MNE "adhere[s] to all federal laws" and is "compliant" with federal laws, and (5) "these so-called "admissions" were of absolutely no consequence in the proceedings from which they arose."  (#355).

### D.      Troy L. LittleAxe's Opposition

Defendant LittleAxe asserts that he joins in the Tribal Chartered Defendants' opposition (#355) and asks this court to deny the FTC's motion (#338).  (#357.)  Defendant LittleAxe also advances the argument that summary judgment cannot be entered against defendant LittleAxe, because (1) the FTC's motion (#338) "defines the term "Defendants" as including only AMG Services, Inc. ("AMG"), MNE Services, Inc. ("MNES"), Red Cedar Services, Inc. ("Red Cedar"), and SFS, Inc. ("SFS")," and not LittleAxe, (2) "LittleAxe's name appears nowhere in the document except as to service on his counsel at page 21," (3) "[t]he only comment the FTC makes as to the remaining defendants is that the remaining defendants allegedly cannot claim a tribal exemption for themselves," and "[t]he entirety of the FTC's reasoning is, "[t]his is because to the extent any person is exempt under the FTC Act, that exemption

---

construction allows for using cases decided under any of the antitrust laws in dealing with cases brought by the Commission.").

15

does not extend to other persons not expressly exempt," and (4) "[t]he remainder of footnote 40 contains only vague statements about tribal business partners, contractors or anyone who has a "business relationship" with the tribal defendants," and the "FTC makes no comprehensible argument about how its comments made only in a footnote show grounds for summary judgment against LittleAxe." *Id.*

Defendant LittleAxe asks this court to deny the FTC's motion "for failure to show any grounds for summary judgment as to LittleAxe." *Id.*

### E.     Joint Opposition

Defendants AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, Broadmoor Capital Partners, LLC, LeadFlash Consulting, LLC, Scott Tucker, and Blaine Tucker (hereinafter "Tucker Defendants") filed a joint opposition to the FTC's amended motion for partial summary judgment. (#358). The Tucker Defendants assert that they incorporate by reference the Tribal Chartered Defendants' opposition (#355) to the FTC's motion (#338), and re-argue the Tribal Chartered Defendants' points that (1) the FTC Act does not cover Indian tribes by its own terms, (2) the type of tribal entity at issue in this case did not even exist at the time the FTC Act was enacted, (3) the FTC relies on *dicta* in Supreme Court cases, (4) any ambiguity should be resolved in favor of the Indian tribe, and (5) the FTC Act is not a statute of general applicability. *Id.*

The Tucker Defendants specifically address the FTC's footnote that the other defendants "cannot, as a legal matter, claim any tribal exemptions for themselves." *Id* (quoting #339 page 17, n.40). The Tucker Defendants argue that the FTC's position fails because (1) in *Cook v. AVI Casino Enterprises, Inc.,* 548 F.3d 718, 727 (9th Cir. 2008) the Ninth Circuit determined that tribal immunity extends to employees of a tribe acting in their official capacity and within the scope of their authority, (2) the court in *Miller v. Wright,* 705 F.3d 919, 927-28 (9th Cir. 2013) held that tribal employees are exempt to the same extent as tribes, (3) the "tribal immunity would be eviscerated if plaintiff could

simply sue the tribal entity employees" or any number of the tribes' officials and employees (citing *Cook*, 548 F.3d at 727), (4) the FTC's argument "rests upon a fundamental misunderstanding about the nature of the Tribal Defendants' argument," as the defendants are not claiming that the Tribes are explicitly *exempt* from the FTC Act, rather the Act does not cover Tribes in the first place, (5) the Eighth Circuit in *Cmty v. Blood Bank of Kansas City Area, Inc, v. FTC,* 405 F.2d 1011, 1021 (8th Cir. 1969) held that "the distinction made in the Act between corporations acting for profit and nonprofit corporations would be erased if all the Commission had to do, in order to obtain jurisdiction, was to name the officers, directors and other personnel of a nonprofit corporation as the respondents," (6) the two cases relied upon by the FTC do not deal with Indian Tribes or their employees and concerned "arm-length agents," rather than actual officers and employees of the Tribal Chartered Defendants, and (7) the FTC can point to no Congressional intent to preclude a tribal entities' officials and employees from claiming the tribal entities' own exemptions.  *Id.*

The Tucker Defendants also argue that the FTC is trying to "short circuit the judicial process" by depriving the defendants of their "rightful opportunity to present valid affirmative defenses."  *Id.*  The Tucker Defendants contend that the "question of agency, being factual in nature, is inappropriate for resolution on summary judgment," and that the FTC's "attempt to deprive the Tucker Defendants of yet another viable defense at the pleading stage should be denied."  *Id* (citing *American Cas. Co. v. Krieger,* 181 F.3d 113, 1121 (9th Cir. 1999)(unless only one conclusion may be drawn, existence of an ostensible agency is a question of fact that should not be decided on summary judgment).  The Tucker Defendants argue that they should be able to prove their agency relationship with the Tribal Chartered Defendants through discovery in Phase 2 of this action.  *Id.*   The Tucker Defendants ask this court to deny the FTC's motion for partial summary judgment (#338).  *Id.*

. . .

### F.      Don E. Brady's Opposition

Defendant Brady's opposition "formally adopts the arguments and authorities set forth by the Tribal [Chartered] Defendants," and addresses the FTC's argument contained in the footnote regarding the non-Tribal Chartered Defendants being subject to the FTC's authority even if the Tribal Chartered Defendants are not. (#359). Defendant Brady contends that it is undisputed between all parties that he was an officer of the Miami Tribe of Oklahoma and its related lending entities during the relevant time period. *Id.*[21] Defendants Brady asserts that the FTC has not met its burden of establishing both that no genuine issue of material fact exists and that the FTC has jurisdiction. *Id.*[22]

Defendant Brady asserts that the FTC cites to one case to support its position, and that this case is not relevant to the issue of law presented in Brady's affirmative defense. *Id.* The FTC relied on *FTC v. CompuCredit Corporation*, 2008 WL 8762850 (N.D. Ga. Oct. 8, 2008), where the defendant moved to dismiss the FTC's complaint based on the FTC's lack of authority over the defendant because it performed bank services as if it were the bank itself. The court held that "'non-bank entities performing contractual services for banks are not within the enumerated exemptions in the FTC Act," and that an entity's "exemption from FTC jurisdiction is based on that entity's status, not its activity." *CompuCredit Corp.,* 2008 WL 8762850 * 4. Defendant Brady argues that since the court *did not* address whether an entity's exempt status extend to its officers, and the case dealt with an outside entity working with the exempt entity trying to gain the exempt status, the case is inapplicable here. (#359).

Brady also asserts that the FTC cannot rely on a prior briefing from the Tribal Chartered Defendants where they stated that the FTC's lack of jurisdiction does not "extend to any contractor

---

[21]Brady Answer, Doc. No. 317 ¶ 13 (admits that Brady was the CEO of AMG Services, Inc); FTC Exhibit 3 ¶ 2 (attached to its Amended Motion for Partial Summary Judgment, Doc. No. 338) (Brady employed as the CEO of Miami Nation Enterprises).
[22]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). *See, e.g., Cmty. Blood Bank of Kansas City Area, Inc. v. F.T.C.*, 405 F.2d 1011, 1015 (8th Cir. 1969) (citations omitted).

working with the Tribal entities or anyone who has a business relationship with the Tribal Entities," as the Tribal Chartered Defendants' statement "merely clarified that the defendant are not claiming that anyone with any connection whatsoever to a tribe is outside the jurisdiction of the FTC." *Id.*

Defendant Brady argues that he has not admitted that the FTC has jurisdiction over him as the FTC contends, and that the FTC's contention is wrong for several reasons, including (1) the FTC relies on a quote from the defendants wherein they "clarify that they are not asserting the FTC lacks jurisdiction over "*any contractor working with the* Tribal Entities or anyone who has a 'business relationship' with the Tribal Entities," (2) the FTC "materially overstates what was actually acknowledged," (3) the FTC continues to ignore the real issue: whether the FTC can assert jurisdiction over an *officer* when it lacks jurisdiction over the entity, and (4) the FTC took a single sentence out of context and distorted the meaning[23]. *Id.*

Defendant Brady asserts that the FTC ignores well-settled law that an entity can act only through its officers,[24] and that "a plaintiff cannot circumvent tribal immunity 'by the simple expedient of naming

---

[23] Defendant Brady asserts that the full passage (#165) states:

> The Tribal Entities' position is, and has always been that officers and employees of the Tribal Entities are protected by the Tribe's sovereignty when acting in their official capacity and within the scope of their authority. This position is consistent with binding precedent. *E.g., Cook v. AVI Casino Enterp., Inc.*, 548 F. 3d 718, 726-27 (9th Cir. 2008). In *Cook*, the Ninth Circuit held that "the settled law of our circuit is that tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself," and that it extends to the tribal corporation's employees and officials acting in the court and scope of their employment. Id. But the Tribal Entities have not asserted (and do not assert) that any person or entity can "claim the status of a Tribal-Chartered Entity," and the Magistrate Judge's determination to the contrary is erroneous. (Doc. 153, p. 4). … And, as set forth above, the legal conclusion that tribal officials and tribal employees are treated as a tribe when acting in the course and scope of their employment is apt. The Tribal Entities have not—and do not—assert that the FTC's lack of jurisdiction extends to any contractor working with the Tribal Entities or anyone who has a "business relationship" with the Tribal Entities.

[24]*See, e.g., Alaska United Gold Min Co v. Muset*, 114 F. 66, 69 (9th Cir. 1902) ("Being a corporation, it could act only by means of officers and agents."); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 419 (9th Cir. 1977) (same); *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1499 (10th Cir. 1994) ("Since a corporation is only a legal entity, it cannot act or have a mental state by itself. See Fletcher Cyclopedia of the Law of Private Corporations § 4877 (Perm.Ed.). It can only act through its officers and employees, and these acts are attributed to the corporation under basic principles of agency.").

an officer of the Tribe as a defendant, rather than the sovereign entity.'"[25] *Id.* Defendant Brady also relies upon *Miller v. Wright,* 705 F.3d 919 (9th Cir. 2013), where the court first held that federal antitrust laws did not preempt the tribe's sovereign immunity, and then extended the immunity to the individuals named in the suit, including the CEO of the tribal store. *Id.* Defendant Brady contends that the court also expressly rejected the plaintiff's claim that the individuals could be sued even if the tribe could not, and held that "the tribal officials are protected by the Tribe's sovereign immunity because they were acting pursuant to the Tribe's authority." *Id* (quoting *Miller,* 705 F.3d at 927-28).

Defendant Brady also relies upon the case of *Community Blood Bank of Kansas City Area, Inc. v. FTC*, 405 F.2d 1011 (8th Cir. 1969), which dealt with non-profit organizations that are exempt from the FTC Act. *Id.* In that case, the court held that "the distinction made in the Act between corporations acting for profit and nonprofit corporations would be erased if all the Commission had to do, in order to obtain jurisdiction, was to name the officers, directors and other personnel of a nonprofit corporation as the respondents." *Id* (quoting *Community Blood Bank of Kansas City Area, Inc,* 405 F.2d at 1021). The court also held that "[i]n this situation we hold that the Commission is not entitled to acquire jurisdiction otherwise lacking over the nonprofit corporations by indirection, that is, by enforcing its order against the pathologists, administrators or key employees of the corporations." *Id* (quoting *Community Blood Bank of Kansas City Area, Inc,* 405 F.2d at 1022).

Defendant Brady asserts that this court should find the same here, as the "FTC is not entitled to acquire jurisdiction over the exempt Tribal Defendants by attempting to enforce the FTC Act against Brady, who held several tribal executive positions." *Id.* Defendant Brady asks this court to deny the FTC's amended motion for partial summary judgment (#338), and to find that the FTC has not met its

---

[25] *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 727 (9th Cir. 2008)

burden in "establishing its jurisdiction over the Miami Tribe of Oklahoma, its related lending enterprises and its officers and employees." *Id.*

### G.    FTC's Reply

The FTC addresses the Tribal Chartered Defendants' status as "corporations" that exist for profit, and asserts that although "the [Tribal Chartered] Defendants attempt to distance themselves from some of th[eir] self-authored facts (Lending Defs.' Mem. at 2-3.)," "they make no effort to explain their previous admissions to financial institutions and to this Court that they exist "for profit."" (#391). The FTC next addresses the burden with regard to jurisdiction, and argues that the defendants improperly place the burden on the FTC, and that "the Court has already, in accord with precedent, assigned this burden to the Lending Defendants." *Id* (citing #153 wherein the court stated "the burden must rest on the Tribal-Chartered Entity to prove that it is in fact sufficiently an arm of a Native American Tribe to fall outside the enforcement jurisdiction of the FTC," and *NLRB v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 710 (2001) (person claiming exemption bears burden)).

### 1.    *Donovan* and Ninth Circuit Precedent

The FTC argues that the defendants' request that this court disregard *Donovan* and other Ninth Circuit precedent is improper. (#391). The FTC contends that the Ninth Circuit declared in *Donovan* that federal statutes "presumptively apply to tribal businesses," when it stated that "[m]any of our decisions have upheld the application of general federal laws to Indian tribes; not one has held that an otherwise applicable statute should be interpreted to exclude Indians," and that "we have not adopted the proposition that Indian tribes are subject only to those laws of the United States expressly made applicable to them." *Id* (*Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985)).

The FTC also cites to *United States v. Mitchell*, 502 F.3d 931, 947 (9th Cir. 2007), where the

court held that "the baseline is that federal statutes of nationwide applicability, where silent on the issue, presumptively *do* apply to Indian tribes," and to *Fed. Power Comm'n v. Tuscarora Indian Nation,* 362 U.S. 99, 116 (1960), where the court stated that "it is now well settled by many decisions of this Court that a general statute in terms applying to all persons includes Indians and their property interests." *Id* (emphasis in original).

The FTC argues that as (a) the FTC Act applies to corporations, (b) the Tribal Chartered Defendants are corporations, as their articles of incorporation demonstrate (#355 ¶ 3, 5, 7, 9), and (c) the FTC Act does not provide for an exception for tribes, tribal corporations, or tribal businesses of any kind, under *Donovan,* "the FTC Act applies to the [Tribal Chartered Defendants]." *Id.* The FTC contends that the holding it relies upon in *Donovan* is not dicta, as the defendants argue, rather it "has been followed as a rule by the Ninth Circuit and district courts within the Ninth Circuit for more than 25 years,"[26] and has been adopted by courts in other circuits[27]. *Id.* The FTC states that *Donovan* applies to FTC Act cases, and that *Donovan* has never been considered an OSHA-only case, and has been applied by subsequent courts to other statutes. *Id.* Only "legislation, a Supreme Court decision, or *en banc* Ninth Circuit review can disturb" *Donovan*[28], the FTC argues, and the court cannot accept the

---

[26]*See, e.g., Solis v. Matheson*, 563 F.3d 425, 434 (9th Cir. 2009); *U.S. v. Fiander*, 547 F.3d 1036, 1039 (9th Cir. 2008); *Mitchell*, 502 F.3d at 947; *U.S. v. Smith*, 387 F.3d 826, 829 (9th Cir. 2004); *N.L.R.B. v. Chapa De Indian Health Program, Inc*., 316 F.3d 995, 998-99 (9th Cir. 2003); *U.S. v. Baker*, 63 F.3d 1478, 1485 (9th Cir. 1995); *Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus*., 939 F.2d 683, 685 (9th Cir. 1991); *U.S. Dep't of Labor v. Occupational Safety & Health Review Comm'n*, 935 F.2d 182, 184 (9th Cir. 1991); *see also Dish Network Corp. v. Tewa*, No. CV 12–8077–PCT–JAT, 2012 WL 5381437, at *8 (D. Ariz. Nov. 1, 2012); *Chao v. Spokane Tribe of Indians*, No. CV-07-0354-CI, 2008 WL 4443821, at *1-2 (E.D. Wash. Sept. 24, 2008); *Cano v. Cocopah Casino*, No. CV-06-2120-PHX-JAT, 2007 WL 2164555, at *2 (D. Ariz. 2007); *Hollynn D'Lil v. Cher-Ae Heights Indian Cmty. of the Trinidad Rancheria*, No. C 01-1638 THE, 2002 WL 33942761, at *3 (N.D. Cal. Mar. 11, 2002).

[27]*See, e.g., Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 182 (2d Cir. 1996) ("We adopt the Ninth Circuit's method of analysis in [*Donovan v.*] *Coeur d'Alene* as the appropriate test to determine whether a statute, silent as to Indians, applies to tribes."); *see also Florida Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla*., 166 F.3d 1126, 1129 (11th Cir. 1999); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 932 (7th Cir. 1989).

[28]  *See United States v. Washington*, 872 F.2d 874, 880 (9th Cir. 1989).

defendants' attempt to use a "law professor's (incorrect) view that the case was wrongly decided" to overrule *Donovan*. *Id.*

The FTC asserts that this court should reject the defendants' arguments regarding *Donovan*'s incompatibility with the canons, as the court in *N.L.R.B. v. Chapa De Indian Health Program, Inc.*, 316 F.3d 995, 998 (9th Cir. 2003) did when it stated that:

> Chapa-De also relies on special canons of construction, which require that statutes be construed for the benefit of Indian interests, in support of its position that even a statute that is generally applicable does not apply to Indian tribes when the statute is silent on the subject. This reliance is misplaced for the same reason. To accept Chapa-De's position would be effectively to overrule [*Donovan v.*] *Coeur d'Alene*, which, of course, this panel cannot do.

*Id.* The FTC also asserts that *Chapa De* "expressly rejected the [Tribal Chartered] Defendants' arguments that cases such as *Kiowa Tribe* (Lending Defs.' Mem. at 7, 7 n.5) supposedly conflict with *Donovan*. 316 F.3d at 1002 ("*Kiowa Tribe* involved the question of sovereign immunity, which is different from whether a statute applies.")" *Id.* The FTC's final argument is that the court should reject the defendants' argument that the presence of express language in other dissimilar statutes addressing tribes upsets *Donovan*'s presumption that silent statutes presumptively apply to tribes, as many of the statutes cited to by the defendants "have particular application to or purpose regarding tribes and none are statutes broadly governing general commercial enterprises as the NLRA, FLSA, OSHA, ERISA, ADA, and the FTC Act are." *Id.*

### 2.    FTC Act's Applicability

The FTC contends that the FTC Act is one of general applicability despite the fact that the FTC Act specifically identifies businesses that are exempt, such as certain banks, savings, and loan institutions, federal credit unions, common carriers, and air carriers. (#391). The FTC explains that the FTC Act provides for these exemptions "to allow other agencies to regulate certain industries," and that

the exemptions do not compromise the conclusion that the FTC Act is one of "general applicability." *Id.* The FTC relies on the court in *Chapa De* to support its conclusion, where the court held that "exemptions alone are not dispositive, "[t]he issue is whether the statute is generally applicable, not whether it is universally applicable," and "[w]e have previously held that other federal statutes that contain exemptions are nevertheless generally applicable." *Id* (quoting *Chapa De*, 316 F.3d at 998).

The FTC also asserts that the case of *Chapa De* is instructive here with regard to the defendants' argument that the FTC Act does not apply to corporations that are wholly owned by, or constitute subdivisions of, tribes, as the court in *Chapa De* specifically found that "the NLRA applied to a tribal health-care business organized and operated by a federally-recognized tribe," despite the fact that the NLRA expressly states that the definition of "employer" under the act does not include "any wholly owned Government corporation" or any "State or political subdivision thereof." *Id* (citing *Chapa De*, 316 F.3d 997-98); 29 U.S.C. § 152(a)(2).

The FTC also distinguishes *Miller* relied upon by the defendants for their argument against "general applicability," and states that the critical difference is that *Miller* was brought by private citizens, as (1) "when it comes to tribes' amenability to suit, this Court itself has recognized the material difference in private versus federal government actions. *U.S. ex rel. Howard v. Shoshone Paiute Tribes, Duck Valley Indian Reservation*, No. 2:10–CV–01890–GMN, 2012 WL 6725682, at *2 n.3 (D. Nev. Dec. 26, 2012) (Navarro, J.)," (2) "because *Miller* was brought by a private plaintiff, the court analyzed the applicability of federal antitrust laws under a sovereign immunity lens," and the defendants admit that they cannot invoke sovereign immunity here, and (3) "*Miller* was not decided under the FTC Act, but rather under the Sherman and Clayton Acts," and "whatever the "general applicability" of other federal antitrust laws may be, the FTC's consumer protection authority under Section 5 of the FTC Act is undoubtedly broad." *Id.* The FTC states that the exemptions in the FTC Act simply allow other

agencies to regulate certain industries and do not compromise the fact that the FTC Act is one of "general applicability." *Id.*

### 3.      TILA and EFTA Claims[29]

The FTC argues that the Tribal Defenses do not apply to the TILA and EFTA claims.  (#391). The FTC asserts that the "plain text of TILA and EFTA state that the FTC may enforce those statutes free of the jurisdictional limits that exist under the FTC Act."  *Id.*  The FTC referred the court to its argument in the motion for partial summary judgment (#338).  *Id.*

### 4.      Tribal Defenses Application to Remaining Defendants

The FTC asserts that if the Tribal Defenses fail as to the Tribal Chartered Defendants, they necessarily fail as to the non-tribal defendants.  (#391).  The FTC argues that the defendants' opposition to this position fails for two reasons: (1) "non-tribal *entity* [d]efendants cannot possibly escape FTC enforcement based on their transactions with supposedly exempt tribal entities," and (2) "even as to *individual* [d]efendants, [d]efendants positions conflict with their previous representations to this Court."  *Id.*  The FTC argues that "entities" cannot escape the FTC's jurisdiction "simply by performing services for an exempt entity[30]," and, as such, the non-tribal defendants (e.g., Black Creek Corporation, LeadFlash Consulting, and Level 5 Motorsports) cannot avail themselves to the defenses raised by the "tribal" corporations.  *Id.*

The FTC contends that the individual defendants alleged status as "tribal employees" "contradicts [d]efendants' prior statements in this case," such as defendant Tucker's counsel stating that "whatever the Tribe's contractors do with their money is their business," and that Congress encouraged

---

[29] The FTC also advances the argument that the defendants' previous statements demonstrate the deficiency in their argument attempting to avoid all federal law enforcement.  (#391).  The court finds it unnecessary to examine this argument, as the issue before the court is a matter of law, not a matter of what the defendants did or did not admit to in other proceedings.
[30] *See, e.g., FTC v. Saja,* CIV-97-0666-PHX-SMM, 1997 WL 703399, at *1-2 (D. Ariz. Oct. 7, 1997); *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 334-35 (4th Cir. 2005); *FTC v. CompuCredit Corp.*, 1:08-CV-1976-BBM-RGV, 2008 WL 8762850, at *4 (N.D. Ga. Oct. 8, 2008).

"outside expertise." *Id* (quoting #338 Exhibit 1).  The FTC also contends that the defendants, including Scott Tucker, joined in a memorandum (#165) disclaiming any tribal defense for any "contractor" working with the Tribal Chartered Defendants.  *Id*.  The FTC asserts that the defendants try to characterize Tucker as a "contractor" when they want to distance the court from his personal expenditures, and now characterize him as an "employee" for "purposes of cloaking them with their (defective) [T]ribal [D]efenses." *Id*.  The FTC concludes that the court should find that the individual defendants cannot assert the Tribal Defenses.  *Id.*

### H.    Relevant Law/Discussion

#### 1.    Burden

As an initial matter, the court finds it necessary to discuss which party bears the burden of establishing whether the Tribal-Chartered Defendants are within the FTC's jurisdiction to enforce the FTC Act.   The Tribal Chartered Defendants assert that the FTC bears the burden to establish the legal issue of whether the FTC Act applies to the Tribal Chartered Defendants, and that the FTC has not met its burden.  (#355).   The FTC argues that the burden is on the defendants to establish that the FTC does not have jurisdiction over the Tribal-Chartered Defendants.  (#391).

As stated above, the court finds that the issues here are as follows: (1) does the FTC have authority under the FTC Act to regulate Indian Tribes, Arms of Indian Tribes, employees of Arms of Indian Tribes and contractors of Arms of Indian Tribes with regard to the subject matter of this litigation; and (2) are the Tribal Chartered Defendants "For Profit" "Corporations" as defined in § 44 of the FTC Act, 15 U.S.C. § 53.

There are no genuine issues of material fact in dispute with regard to the first issue, as it is a legal question of statutory construction.  The Supreme Court of the United States has held that "the general rule of statutory construction that the burden of proving justification or exemption under a

special exception to the prohibitions of a statute generally rests on one who claims its benefits." *N.L.R.B. v. Kentucky River Cmty. Care, Inc*., 532 U.S. 706, 711, 121 S. Ct. 1861, 1866, 149 L. Ed. 2d 939 (2001) (quoting *FTC v. Morton Salt Co.*, 334 U.S. 37, 44–45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948)). As the Tribal-Chartered Defendants and the non-Tribal Chartered Defendants claim that the FTC does not have authority to bring this action under the FTC Act because they are arms of Indian Tribes and wish to benefit from this, the burden in on the defendants to establish the exemption.  *See Id.*

With regard to the second question, which is one of fact, in a motion for summary judgment, the moving party is "entitled to a judgment as a matter of law" when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The defendants, therefore, bear the burden of demonstrating that a genuine issue of material fact exists as to whether the Tribal Chartered Defendants have the status of "for profit corporations" as defined in 15 U.S.C. §44.  *Id.*

### 2.      Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Here, the FTC asks this court to grant summary judgment as to the defendants' following Tribal Defenses:

1. Red Cedar Services, Inc. Answer (#310) Affirmative Defense 1;

2. SFS, Inc. Answer (#311) Affirmative Defense 1;

3. Robert Campbell Answer (#312) Affirmative Defense 1;

4. Blaine Tucker and Leadflash Consulting, LLC Answer (#314) Third Affirmative Defense;

5. Scott Tucker, AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, and Broadmoor Capital Partners, LLC Answer (#315) Third Affirmative Defense;

6. AMG Services, Inc. Answer (# 316) Affirmative Defense 2;

7. Don Brady Answer (# 317) Affirmative Defense 1;

8. Tribal Financial Services Answer (# 318) Affirmative Defense 2; and

9. Troy LittleAxe Answer (# 319) Affirmative Defenses 2, and 53-55[31].

(#338).  These defenses allege that the FTC lacks authority to bring this action against the defendants under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and TILA and EFTA, because the defendants are either arms of an Indian Tribe or employees acting on behalf of an Indian Tribe.  (#310, #311, #312, #314, #315, #316, #317, #318, and #319).  The defendants also contend that they are not "For Profit" "Corporations" as defined in §44 of the FTC Act.  (#355).  The court must, therefore, determine whether the FTC has authority to bring the instant action against the defendants and if the FTC is entitled to judgment on theses defenses as a matter of law.  *See* Fed. R. Civ. P. 56.  In order to do this, the court must first examine the FTC Act, its applicability in general, and then address the Act's applicability to the defendants, by determining if the Tribal Chartered Defendants are "For Profit Corporations" as defined in §44 of the FTC Act.

### a. The FTC Act

The FTC Act states that "[w]henever the Commission has reason to believe--(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and (2) that the enjoining thereof pending the issuance of a complaint by the

---

[31] Defendant LittleAxe's Affirmative Defenses #53-#55 differ from the other affirmative defenses and are as follows:  53. The Federal Trade Commission Act does not apply to the Defendants under the Indian law canons; 54. The Truth in Lending Act does not apply to the Defendants under the Indian law canons; and 55. The Electronic Funds Transfer Act does not apply to the Defendants under the Indian law canons." (#319).

Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public– the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice."  15 U.S.C. § 53(b).

Section 45(a)(2) provides that "[t]he Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to part A of subtitle VII of Title 49, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended [7 U.S.C.A. § 181 et seq.], except as provided in section 406(b) of said Act [7 U.S.C.A. § 227(b) ], from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. §45(a)(2).

15 U.S.C. § 44 defines "Corporation" as "to include any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, which is organized to carry on business for its own profit or that of its members, and has shares of capital or capital stock or certificates of interest, and any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, without shares of capital or capital stock or certificates of interest, except partnerships, which is organized to carry on business for its own profit or that of its members."

The plain text of the FTC Act states that the Act applies to "persons, partnerships, and corporations," and defines the term "corporation."  *See* 15 U.S.C. §45(a)(2) and §44.  The court recognizes that the FTC Act contains specific exemptions for businesses such as certain banks, federal credit unions, and air carriers.  *See* 15 U.S.C. §45(a)(2).  The Ninth Circuit has held, however, that despite containing exemptions, a statute may nevertheless be one of general application.  In *Chapa De,*

the defendant argued to the court that the National Labor Relations Act, 29 U.S.C. § § 151-169, "is not a statute of general applicability and does not apply to Indian tribes because the NLRA has exemptions." *Chapa De*, 316 F.3d at 998.  The court rejected this argument, and held that "exemptions alone are not dispositive," and that "[t]he issue is whether the statute is generally applicable, not whether it is universally applicable." *Id.*    The court went on to state that "[w]e have previously held that other federal statutes that contain exemptions are nevertheless generally applicable." *Id.*  The Ninth Circuit also found that NLRA is "not materially different from the statutes that we have already found to be generally applicable," as its "exemptions are relatively limited..., and it is clear that the statute's reach was intended to be broad." *Id.*

The court had previously held in *Donovan* that OSHA, regardless of its *exemptions* for "working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health," is one of general applicability.    *See Donovan*, 751 F.2d at 1115.  The court had also previously held that ERISA is one of general applicability, even though ERISA *does not apply* to employee benefit plans if the plan is "a governmental plan," "a church plan," "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws," "maintained outside of the United States primarily for the benefit of persons substantially all of whom are nonresident aliens," or "an excess benefit plan (as defined in section 1002(36) of this title) and is unfunded." *Lumber Indus. Pension Fund*, 939 F.2d at 685; *See* 29 U.S.C. §1003(b)(1)-(5).  In *Baker*, the Ninth Circuit also found that the CCTA was a statute of general applicability despite the fact that the definition of cigarettes *excludes* those that are in the "possession of certain specifically identified categories of individuals." *Baker*, 63 F.3d at 1484-85.

Here, just as in *Donovan, Lumber Indus, and Baker,* the FTC Act contains specific exemptions: "banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to part A of subtitle VII of Title 49, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended [7 U.S.C.A. § 181 et seq.], except as provided in section 406(b) of said Act [7 U.S.C.A. § 227(b) ]..."[32]  *See* 15 U.S.C. §45(a)(2).   In accordance with the clear Ninth Circuit precedent discussed above, the court finds that the FTC Act has a "broad reach" and is one of general applicability.  *See Id; Baker,* 63 F.3d at 1484-85; *Lumber Indus. Pension Fund*, 939 F.2d at 685; *Donovan*, 751 F.2d at 1115.

### b.  Applicability/Exemptions

The court finds that the Ninth Circuit law is established on the issue of statutes' applicability to Indians and Indian Tribes and any exemptions thereto.   "Federal laws of general applicability are presumed to apply with equal force to Indians. *United States v. Farris*, 624 F.2d 890, 893 (9th Cir.1980), cert. denied sub nom, *Baker v. United States*, 449 U.S. 1111, 101 S.Ct. 919, 920, 66 L.Ed.2d 839 (1981). See also *United States Dep't of Labor v. OSHRC*, 935 F.2d 182, 184 (9th Cir.1991) (quoting *FPC v. Tuscarora Indian Nation*, 362 U.S. 99, 116, 80 S.Ct. 543, 553, 4 L.Ed.2d 584 (1960))." *Baker*, 63 F.3d at 1484-85.   "In general, in the absence of an expressed exemption for Indians, "a general statute in terms applying to all persons includes Indians and their property interests." *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115-16 (9th Cir.1985)." *Lumber Indus. Pension Fund*, 939 F.2d at 685.   In *United States v. Mitchell*, 502 F.3d 931, 947 (9th Cir. 2007), the court held that "federal

---

[32] The court notes that the commercial activities of the entities exempted from the FTC's jurisdiction under the FTC Act are subject to regulation by federal agencies charged to oversee specific industries, e.g. 12 U.S.C. §1833a, which applies to banks and savings institutions, provides that "[a] civil action to recover a civil penalty under this section shall be commenced by the Attorney General," and part A of subtitle VII of Title 49, which deals with "Air Commerce and Safety," provides that the Department of Transportation and the Attorney General may bring civil actions for violations of the act, 49 U.S.C. §§ 46106 and 46107.

statutes of nationwide applicability, where silent on the issue, presumptively *do* apply to Indian tribes."

"Many of [the Ninth Circuit's] decisions have upheld the application of general federal laws to Indian tribes; not one has held that an otherwise applicable statute should be interpreted to exclude Indians." *Donovan*, 751 F.2d at 1115.[33]  The Ninth Circuit clearly stated that it has "not adopted the proposition that Indian tribes are subject only to those laws of the United States expressly made applicable to them," and refused to do so in *Donovan*. *Id* at 1116.

The FTC Act does not expressly apply to or exclude Indian Tribes, rather, as stated above, it is a statute of general applicability that is silent on the issue.  *See* 15 U.S.C. §45(a)(2).  As the Ninth Circuit held in *Donovan*, a "federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties"; or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations ..." *Donovan*, 751 F.2d at 1116 (*quoting Farris*, 624 F.2d at 893-94).  Neither the Tribal Chartered Defendants nor the non-Tribal Chartered Defendants make the argument that any of these exceptions apply, rather they argue that the language in *Donovan* and *Tuscarora* addressing the application of general statutes to Indian Tribes is *dictum*.  *See* (#355, #356, #357, #358, and #359).

The court in *Donovan* directly addressed this argument, when it stated that the defendant "may be correct when it argues that this language from *Tuscarora* is dictum, but it is dictum that has guided

---

[33] *Citing Confederated Tribes of Warm Springs Reservation of Oregon v. Kurtz*, 691 F.2d 878 (9th Cir.1982), cert. denied, 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1983) (holding that absent a "definitely expressed exemption" tribes and their members are subject to federal excise taxes); *United States v. Fryberg*, 622 F.2d 1010 (9th Cir.), cert. denied, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980) (holding that Eagle Protection Act abrogates treaty hunting rights); *Fry v. United States*, 557 F.2d 646 (9th Cir.1977), cert. denied, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978) (holding that Indian logging operations are subject to federal taxes); *United States v. Burns*, 529 F.2d 114 (9th Cir.1975) (holding that federal gun control law applies to Indians, citing Tuscarora ). *See also Navajo Tribe v. NLRB*, 288 F.2d 162 (D.C.Cir.), cert. denied, 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387 (1961) (holding that National Labor Relations Act applies to employers located on reservation lands).  *Donovan*, 751 F.2d at 1115-16.

many of our decisions." *Donovan,* 751F.2d at 115.  This court finds that defendants' argument lacks

merit, as courts in this and other circuits have routinely relied on both *Donovan* and *Tuscarora* for their

decisions regarding Indians and Indian Tribes.  *See* Footnotes 23 and 24.  As the FTC Act is one of

general applicability, is silent on the issue of applicability to Indian tribes, and none of the defendants

argue that a *Donovan* exception applies, that is the end of the inquiry, and the FTC Act applies to Indian

Tribes, Arms of Indian Tribes, and the employees of the Arms of Indian Tribes.  *Donovan*, 751 F.2d at

1115.  The court must next determine if the "arms of the Indian Tribes" and/or individuals are within the

FTC Act's definition of "persons, partnerships, and corporations."  Before this, the court will address

several statutes and cases relied upon by the defendants.

### c. Cases Relied Upon and Statutes Cited To By Defendants

The court finds it necessary to address the Tribal Chartered Defendants' argument regarding

other statutes.  Tribal Chartered Defendants refer to several statutes and purport to demonstrate that

since the statutes expressly provide for application to Indian Tribes and Indian Tribal governments, this

supports a finding that the FTC Act, which does not expressly provide for application, does not apply to

Indian Tribes.  (#355).  The Tribal Chartered Defendants point to 15 U.S.C. § 375(8), which provides

the definition of "Indian tribe," and 15 U.S.C. § 375(10), which includes "Indian tribal government" in

the definition of "person."  *Id.*   Unlike the FTC Act, which is meant to govern general commercial

activity (15 U.S.C. § 45), 15 U.S.C. § 375 provides definitions for a statute designed to regulate

cigarettes shipped specifically into a State, locality, or *Indian country of an Indian tribe*, so that it is

necessary for the definition of a "person" to specifically include Indian tribal government.  *See* 15

U.S.C. § 376 and §375 (8) and (10).

The Tribal Chartered Defendants also point to 16 U.S.C. § 470bb, which defines "person" as

"...any other private entity or any officer, employee, agent, department, or instrumentality of the United

States, of any Indian tribe, or of any State or political subdivision thereof," and provides for specific definitions for "Indian lands" and Indian tribe." (#355). The court notes that the purpose of this statute is "to secure, for the present and future benefit of the American people, the protection of archaeological resources and sites which are on public lands and *Indian* lands." 16 U.S.C. § 470aa(b)(emphasis added). The FTC Act has a more general purpose as demonstrated in 15 U.S.C. § 45(a).   The Tribal Chartered Defendants state that  42 U.S.C. § 8802(17) also supports this position, as its definition of "person" includes "any agency or instrumentality thereof, or any Indian tribe or tribal organization." (#355). The court finds, as with the other statutes, 42 U.S.C. § 8801 is a more specific statute dealing with biomass energy and alcohol fuels, as opposed to being one of general applicability.

The court finds that the Tribal Chartered Defendants' position that the specific definitions relating to Indian Tribes contained in theses statutes support a finding that FTC Act does not apply to Indian Tribes is without merit.  This conclusion is bolstered by the fact that the Ninth Circuit has found, as discussed above, that statutes of "general applicability," such as the FTC Act, that are silent as to Indian Tribes apply to Indian Tribes.  *Donovan,* 751 F.2d at 1116.

The court also finds it necessary to address several cases relied upon by the Tribal Chartered Defendants for the proposition that the FTC lacks authority to bring this action against them.  The court already addressed herein the Tribal Chartered Defendants' claim that *Tuscarora* is dicta in Section G(2)(b).  The Tribal Chartered Defendants rely heavily on the Supreme Court's decision in *Santa Clara Pueblo,* 436 U.S. 49 in their opposition to the motion for partial summary judgment.  (#355).  *Santa Clara Pueblo* "was brought by female member of Indian tribe for declaratory and injunctive relief against enforcement of tribal ordinance denying membership in tribe to children of female members who married outside the tribe while extending membership to children of male members who married outside the tribe." *Santa Clara Pueblo*, 436 U.S. at 49.  The court addressed "sovereign immunity" of

the tribe in the context of a *private* individual and tribe member suing the tribe. *Id.* This is distinguishable from this action, as the instant action is brought by the FTC against the Tribal Chartered Defendants and individual defendants who claim that the FTC does not have *authority* to bring the action under the FTC Act.[34]

The Tribal Chartered Defendants also rely upon several cases for the position that in light of the Indian canons, the court must resolve any ambiguity in the FTC Act in favor of Indian Tribes. (#355)(relying on *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 247 (1985); *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 268-69 (1992); *Blackfeet Tribe of Indians*, 471 U.S. at 766; *McClanahan v. Ariz. State Tax Com'n*, 411 U.S. 164, 176 (1979)). The court notes that the FTC Act is not ambiguous and contains clearly defined exemptions. *See* 15 U.S.C. § 45(a)(2). The Ninth Circuit specifically rejected the same argument in *Chapa De*, where the defendant relied on canons of construction that require a statute of general applicability that is silent as to Indian tribes be construed for the benefit of Indian interests. *Chapa De*, 316 F.3d at 999. The court held that the defendant's "reliance [on the canons] is misplaced...," and that to accept "Chapa-De's position would be effectively to overrule [*Donovan*], which, of course, this panel cannot do." *Id.* Likewise, this court is not in a position to overrule *Donovan* or refuse to apply the binding

---

[34] The court finds that the FTC correctly points out (#391) that the following cases relied upon by the Tribal Chartered Defendants are distinguishable, as they were not brought by the federal government acting in a law enforcement capacity: *Inyo County v. Paiute-Shoshone Indians*, 538 U.S. 701, 704 (2003) (tribe's suit against state county authorities for alleged civil rights violation); *Idaho v. United States*, 533 U.S. 262, 265 (2001) (tribal property dispute with state); *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 175-76 (1999) (tribal hunting and fishing dispute with state); *Kiowa Tribe of Oklahoma v. Mfg.Technologies, Inc.*, 523 U.S. 751 (1998) (suit by private plaintiff); *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 253 (1992) (tax dispute between tribe and state county); *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering,* 476 U.S. 877, 878 (1986) (tribe's attempt to sue corporation in state court); *Kerr-McGee Corp. v. Navajo Tribe*, 471 U.S. 195, 197 (1985) (suit by corporation to avoid payment of tribal tax); *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 761 (1985) (tribe brought suit to avoid payment of state tax); *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 229 (1985) (tribe's property dispute with two state counties); *Fisher v. Dist. Ct.*, 424 U.S. 382, 383 (1976) (adoption dispute among tribal members residing on a reservation); *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 146 (1973) (tribe brought suit to avoid payment of state tax); *McClanahan v. State Tax Commission of Arizona*, 411 U.S. 164, 165 (1973) (tribal member's suit for refund of state income tax). *Allen v. Gold County Casino*, 464 F.3d 1044 (9th Cir. 2006) a Ninth Circuit case cited by the Lending Defendants, is similarly distinguishable because it is not a federal law enforcement matter.

Ninth Circuit precedent.  Accordingly, summary judgment should be entered in favor of the FTC on defendant LittleAxe's 53rd affirmative defense that "[t]he Federal Trade Commission Act does not apply to the Defendants under the Indian law canons" (#319).

A recently decided case relied upon by the Tribal Chartered Defendants, *Miller v. Wright,* 705 F.3d 919 (9th Cir. 2013) (#355), is distinguishable from the instant action for several reasons: (1) the action was brought by a cigarette dealer and his customers, as opposed to the federal government, (2) the court focused on the Indian Tribe's *sovereign immunity* and the waiver thereof, (3) the court held in that case that the issue *did not* involve a claimed *statutory exemption*, (4) the case was brought under the Sherman Act and the Clayton Act, and (5) the defendants in that case did invoke the *Donovan* exceptions.

### d. "Persons, Partnerships, and Corporations"

### i. Tribal Chartered Defendants

"Corporation" is defined as "to include any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, which is organized to carry on business for its own profit or that of its members, and has shares of capital or capital stock or certificates of interest, and any company, trust, so-called Massachusetts trust, or association, incorporated or unincorporated, without shares of capital or capital stock or certificates of interest, except partnerships, which is organized to carry on business for its own profit or that of its members."  15 U.S.C. § 44.  The FTC presented evidence to the court that the Tribal Chartered Defendants are "for profit corporations" as defined under the FTC Act.  (#338).

The FTC filed as Exhibit 13 to its motion for partial summary judgment (#338) Tribal Chartered Defendant AMG's "Restated Articles of Incorporation," wherein it states in Article II(B) that the purpose of the corporation is to "generate *profits* to promote the growth and community of the Corporation and for distribution to the tribal government." (#338-15)(emphasis added). The FTC also included under seal AMG's bank account opening form which indicates that AMG is a "For Profit" corporation. (#340-1). Exhibit 15 to the motion (#338) is Tribal Chartered Defendant MNE's "Articles of Incorporation," which states that one of the purposes of the corporation is to "generate *profits* to promote the growth and continuity of the Corporation and for distribution to the tribal government." (#338-17)(emphasis added). The FTC filed under seal MNE's bank account opening form stating that MNE is a "For Profit" corporation. (#340-2).

The FTC included as Exhibit 18 to its motion for partial summary judgment (#338) Tribal Chartered Defendant Red Cedar's "Articles of Incorporation," which provides in Article III(B) that one purpose of the corporation is to "promote the growth and continuity of the Corporation and for distribution to the tribal government." (#338-20). Red Cedar's bank account opening form stating the Red Cedar is a corporation "For Profit" is filed under seal as Exhibit 20. (#340-3). The FTC also attached Tribal Chartered Defendant SFS's "Amended Articles of Incorporation" as Exhibit 21 (#338-23) and SFS's bank account opening form under seal stating that SFS is a "For Profit" corporation (#340-4).

The FTC argues that this evidence demonstrates to the court that the Tribal Chartered Defendants are corporations that exist for profit and fall under the definition of "corporation" found in 15 U.S.C. § 44. (#391). The Tribal Chartered Defendants dispute this, and assert in their "Statement of

Genuine Issues in Opposition to Partial Motion for Summary Judgment" that AMG, MNES, Red Cedar, and SFS are not corporations and are not "for profit" as required under the FTC Act.  (#355).  In support of this argument, the Tribal Chartered Defendants state that:

(1) AMG is a "wholly owned tribal corporation," is "considered to be a governmental instrumentality," was created "as an entity to generate revenue for the tribal government," and whose dividends are distributable "to the Tribe as sole shareholder in accordance with a distribution plan approved by the Business Committee of the Tribe," relying on the language in its Articles of Incorporation (#338-15);

(2) MNES is "considered to be a governmental instrumentality of the [Miami] Tribe . . . ." that was created "to generate revenue for distribution to the tribal government," relying on language from the Articles of Incorporation (#338-17);

(3) Red Cedar is "considered to be a governmental instrumentality of the [Modoc] Tribe . . . ." and was created "to generate revenue for distribution to the tribal government," relying on language in the Articles of Incorporation (#338-20); and

(4) SFS is "deemed an economic and political subdivision of the Santee Sioux Nation . . . .," relying on the "Resolution of the Santee Sioux Nation" 2005-27 (#355-2 Exhibit A), and that it was created to "facilitate the achievement of goals relating to the Tribal economy, self-government, and sovereign status of the Santee Sioux Nation . . . .," relying on language in the Articles of Incorporation (#338-23).

*Id.*

The Tribal Chartered Defendants also contend that "they are wholly unlike private corporations that Congress intended to be covered by the FTC Act," and that "Indians tribes are "distinct, independent *political* communities," that have the power to constitute and regulate its form of government." *Id.*

The court finds that there is a "genuine dispute as to [the] material fact" of to whether the Tribal Chartered Defendants are "for profit corporations" as defined in the FTC Act, and that summary judgment is not appropriate on this issue. *See* Fed. R. Civ. P. 56. Whether the Tribal Chartered Defendants are "for profit corporations" is a 'material' fact because would "affect the outcome of [the] suit, as determined by the governing substantive law." *See FTC*, 827 F. Supp. 2d at 1211.

### ii. Non-Tribal Chartered Defendants

As the court finds that (1) the FTC Act applies to Indian Tribes, arms of the Indian Tribes, and employees of arms of Indian Tribes, (2) no exemptions apply, and (3) the cases and statutes relied upon by the defendants are distinguishable, the FTC has authority to bring this action against the non-Tribal Chartered Defendants who allegedly acted on behalf of the Indian Tribes and arms of the Indian Tribes. The issue remains, however, of whether the Tribal Chartered Defendants are "corporations" as defined in the FTC Act, 15 U.S.C. § 44. To the extent the Non-Tribal Chartered Defendants' affirmative defenses rely on this issue, those defenses may preclude a finding of Non-Tribal Chartered Defendants' liability for alleged violations of the FTC Act. As discussed below, however, these affirmative defenses are not applicable to the TILA and EFTA claims against the Non-Tribal Defendants.

. . .

. . .

### e. TILA and EFTA Claims

The Tribal Chartered Defendants contend that "the same argument [regarding the FTC's authority to bring action against the Tribal Chartered Defendants] applies with equal force to the FTC's Truth In Lending Act (TILA) and Electronic Funds Transfer Act (EFTA) claims."  (#355).  The FTC argues that the Tribal Defenses it seeks summary judgment for have no application to the TILA and EFTA claims.  (#391).  The court agrees with the FTC, and finds that the affirmative defenses which are the subject of this motion have no application to the claims under TILA and EFTA, as both TILA and EFTA provide the FTC the power to enforce the statutes *without regard* for any jurisdictional limitations contained in the FTC ACT.  Section (c) of TILA states that:

> [T]he Federal Trade Commission shall be authorized to enforce such requirements. For the purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act, a violation of any requirement imposed under this subchapter shall be deemed a violation of a requirement imposed under that Act. All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Federal Trade Commission to enforce compliance by any person with the requirements under this subchapter, *irrespective of whether that person[35] is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act.*

15 U.S.C. § 1607(c) (emphasis added).  Section (c) of EFTA contains the same language and states that the FTC has authority to enforce the act "irrespective of whether that person[36] is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act."  15 U.S.C. § 1693o(c).  To the extent the defendants' affirmative defenses assert that the FTC does not have authority to bring the TILA and EFTA claims, summary judgment should be entered in favor of the FTC.

---

[35] A "governmental unit" is included in the definition of "person" under TILA. 12 C.F.R. § 226.2(22).
[36] The definition of "person" under EFTA also includes "government agency."  12 C.F.R. § 205.2(j).

**I.       Conclusion**

**1.       FTC's Amended Motion for Partial Summary Judgment (#338)**

The court finds that the FTC Act (1) is one of general applicability, (2) is silent as to Indian Tribes, (3) provides for specific exemptions, none of which exempt Indian Tribes, arms of Indian Tribes, or employees of arms of Indian Tribes, and (4) gives the FTC the *authority* to bring suit against Indian Tribes, arms of Indian Tribes, and employees and contractors of arms of Indian Tribes.   The court also finds that the FTC is given the authority to enforce TILA and EFTA "irrespective of" any jurisdictional tests under the FTC Act.  *Id.*   The FTC's request for partial summary judgment on the defendants' affirmative defenses should be granted to the extent the affirmative defenses are based on the position that the FTC Act, TILA, and EFTA do not apply to Indian Tribes, arms of Indian Tribes, or employees of arms of Indian Tribes.

The court also finds that a genuine issues of material fact exist as to whether the Tribal Chartered Defendants are "for profit corporations" as defined in §44 of the FTC Act.  The court recommends that the FTC's request for partial summary judgment be denied to the extent the defendants' affirmative defenses assert that the FTC Act does not apply to the defendants because the Tribal Chartered Defendants are not "for profit corporations," but be granted against all defendants on the TILA and EFTA claims, as discussed in Sections H(2)(d)(ii) and H(2)(e) above.  The court also recommends that summary judgment be entered in favor of the FTC as to defendant LittleAxe's 53rd affirmative defense regarding the Indian law canons (#319).

. . .

. . .

       2.     **Tribal Chartered Defendants' Motion and Defendant LittleAxe's Cross-Motion for Legal Determination as to Phase 1(B) of the Court's Bifurcation Of Proceedings Order (#373 and #380)**

In its December 27, 2012, order, the court bifurcated the proceedings, and held that in Phase 1(B) "[t]he Court shall...adjudicate through motion practice the legal question of whether, and to what extent, the FTC has authority over Indian tribes whose sovereignty is asserted in this case and/or AMG Services, Inc., MNE Services, Inc., Red Cedar Services, Inc., and SFS, Inc. for alleged violations of the FTC Act." (#296). In the Tribal Chartered Defendants' motion, they ask this court to "determine that the FTC lacks authority under the FTC Act to sue Indian tribes," and contend that the arguments in the motion are "substantially similar to the arguments contained" in their opposition to the FTC's motion for partial summary judgment, but that they filed a separate motion in accordance with Special Order 109 and to "ensure that the Court would, in fact, consider issuing a Phase 1(B) legal determination in their favor." (#373).

Defendant LittleAxe asserts in his Cross-Motion that he joins in the arguments stated in the Tribal Chartered Defendants' motion (#373), and asks this court to determine as "a matter of law that the FTC does not have authority over "Indian Tribes whose sovereignty is asserted in this case," including the Modoc Tribe of Oklahoma ("Modoc Tribe"), or instrumentalities or arms of tribes under the FTC Act." (#380). As the court held herein that the FTC has authority to bring the action against the Tribal Chartered Defendants and the non-Tribal Chartered Defendants, but finds that the a genuine fact of issue remains as to whether the Tribal Chartered Defendants are "corporations" as defined under the FTC Act, the motion (#373) and counter-motion (#380) should be granted in part and denied in part. . . .

### 3.      Motion to Strike Improper Sur-Replies (#407)

The FTC asserts in its motion to strike that the court should strike the Tribal Chartered Defendants' reply in support of their motion for legal determination (#401) and defendant LittleAxe's reply in support of his cross-motion (#406), as they "are masquerading as reply memoranda in support of superfluous cross-motions." (#407). The FTC argues that the defendants' motions (#373 and #380) do not seek "anything other than to defeat the FTC's motion for partial summary judgment" (#338), and that the replies in support thereof (#401 and #406) are "actually surreplies opposing the FTC's summary judgment motion" that "attempt to rebut arguments in the FTC's reply brief in support of summary judgment." *Id.* The FTC argues that the "cross-motions" are not true cross motions for summary judgment, and instead are named "motion for legal determination" because they are "nothing more than oppositions to the FTC's motion..." *Id.* The FTC asserts that the replies (#401 and #406) do not address new issues or aid the court in resolving th FTC's motion. *Id.*

The Tribal Chartered Defendants argue in their opposition that the "filings were designed both to ensure that the Tribal Defendants' request for a Phase 1 legal determination properly was before this Court and to ensure systematic and efficient resolution of this legal issue." (#416). The Tribal Chartered Defendants assert that they "offered a different analytical framework, a different legal standard, and raised different substantive issues" in their opposition (#355) and motion (#373). *Id.* The Tribal Chartered Defendants contend that the cases relied upon by the FTC fail to support its position, and ask this court to deny the motion. *Id.*

Defendant LittleAxe asserts in his opposition that he "properly filed for his own affirmative determination through his Cross Motion" wherein he addressed the application of Indian canons to the

FTC Act (#380), and that he "had no cause to provide analysis of the Indian law canons in his Opposition to the FTC's Amended Motion because the FTC did not seek relief under the Indian law canons nor did the FTC apply any law to LittleAxe." (#420).  Defendant LittleAxe argues that the cases cited to by the FTC are inapposite, that in this case there is no "surreply," and that "LittleAxe's counsel went to unusual lengths to limit the scope of the motion to the agreed threshold issue after discussion with the FTC's counsel."  *Id.*   Defendant LittleAxe asks this court to deny the FTC's motion to strike (#407).  *Id.*

        The FTC asserts in its reply that the Tribal Chartered Defendants and defendant LittleAxe should have sought leave of the court to file the sur-replies, and that their attempts to distinguish the relevant case law is deficient.  (#424).  Because resolution of the affirmative defenses at issue here is critical to the outcome of this case, the court considered the motions for legal determination (#373 and #380) as well as the replies (#401 and #406), and the motion to strike (#407) will be denied.

        Accordingly, and for good cause shown,

        IT IS HEREBY ORDERED that the FTC's Motion to Strike Improper Sur-Replies (#407) is DENIED.

## **RECOMMENDATION**

IT IS THE RECOMMENDATION of the Undersigned Magistrate Judge that:

(1) the Federal Trade Commission's Motion for Partial Summary Judgment (#338) be GRANTED in part, and DENIED in part, as set forth in Section I(1) above.

(2) the Tribal Chartered Defendants' Motion for Legal Determination as to Phase 1(B) of the Court's December 27, 2012, Bifurcation Of Proceedings Order (#373) and Defendant

LittleAxe's Cross-Motion for Legal Determination of Phase 1(B) Issues of the Court's December 27, 2012 Bifurcation Proceedings Order (#380) be GRANTED in part, and DENIED in part, as discussed in Section I(2) above.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 16th day in July, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE