# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

***

FEDERAL TRADE COMMISSION,

                Plaintiff,

vs.

AMG SERVICES, INC., *et al.*,

                Defendants.

2:12–cv–00536–GMN–VCF

## ORDER

(Defendants' Rule 56(c) Objections (#498);
Motion to Exclude Evidence #502))

The Federal Trade Commission commenced this civil enforcement action regarding the offer and sale of "high-fee, short-term payday loans." (First Amend. Compl. (#386) at ¶ 1[1]). Before the court are the Lending Defendants' Rule 56(c)(2) objections (#498) and motion to exclude untimely disclosed witnesses (#502). Defendant Troy L. LittleAxe filed joinders (#496, #504). The Federal Trade Commission filed an opposition (#517); and the Lending Defendants replied (#527). For the reasons discussed below, Defendants motions are granted in part and denied in part.

## BACKGROUND

This action is predicated on "thousands"[2] of complaints by short-term borrowers and former employees of the short-term lenders. The complaints were submitted to the Federal Trade Commission, the Better Business Bureau, and various state-run consumer protection agencies. (*See* Pl.'s Opp'n (#517) at 15:13–14). The Federal Trade Commission ("FTC") initiated an investigation and filed suit on April 2, 2012 against ten Indian-chartered loan companies and their affiliates. (*See* Compl. #1). In pertinent part, the FTC's complaint alleges that Defendants violated the Federal Trade Commission Act, 15

---

[1] Parenthetical citations refer to the court's docket.
[2] *See infra* note 3 (discussing the number of consumer complaints).

U.S.C. § 45(a), and the Truth in Lending Act, 15 U.S.C. § 1601, by misrepresenting the terms on which credit was extended to "millions" of short-term borrowers. (*See* First Amend. Compl. (#386) at ¶¶ 47, 58).

Discovery is now closed. On December 3, 2013, the parties moved for summary judgment. (*See* Pl.'s Mot. Sum. J. #456); (Def.'s Mot. Sum. J. #461). The FTC's motion for summary judgment relies heavily on some of the statements contained in the "thousands" of complaints. (*See, e.g.*, Pl.'s Mot. (#456) at 19). In the motions before the court, Defendants contend that the statements in the complaints were (1) disclosed in violation of Federal Rule of Civil Procedure 26(a) and (2) contain hearsay evidence in violation of Federal Rule of Evidence 802. (*See* Def.'s Objections (#498) at 1:2); (Def.'s Mot. to Exclude (#502) at 1:1); (Def.'s Joinder (#504) at 2:8–9). Because of these alleged violations, Defendants ask the court to exclude the complaints from its analysis of the FTC's motion for summary judgment. (*Id*. at 2:17).

For purposes of Defendants' motions, the relevant facts include: (1) the FTC's complaint and motion for a preliminary injunction; (2) the FTC's initial disclosures; (3) Defendants' depositions of three of its former employees identified in the FTC's initial disclosures; (4) Defendants' depositions of four consumer-witness declarants identified in the FTC's initial disclosures; and (5) the FTC's motion for summary judgment. Each set of facts is discussed below.

## I.   The FTC Files Suit & Moves for a Preliminary Injunction

On April 2, 2012, the FTC filed suit and moved for a preliminary injunction. (*See* Compl. #1); (Prelim. Injunc. Mot. #5). In support of the FTC's complaint and its motion for preliminary injunction, the FTC relied on various declarations by consumer-witness declarants.

For instance, the FTC's original and operative complaints state: "Defendants told a consumer who borrowed $300 from Defendants on or about September 7, 2010 that her loan would be due on September 24, 2010, her finance charge would be $90, her APR would be 684.38%, and her "Total of

Payments" would be $390." (Compl. (#1) at ¶ 35); (*see also* Amend. Compl. (#386) at ¶ 35) (repeating the allegation). The complaints further allege that, in this instance, the actual cost of the loan amounted to $975. (Compl. (#1) at ¶ 39); (*see also* Amend. Compl. (#386) at ¶ 39).

Declarations filed in support of the FTC's motion for a preliminary injunction contain the same allegations. For instance, one declaration reads: "After filing out a loan application online, I received an email from [Defendants] saying I had been approved for a loan of $400 with a total payback of $520." (Vanderhoof Decl. (#493-23) at ¶ 3). The declaration further alleges that the actual cost of the loan amounted to $1,295 (*Id*. at ¶ 14). The FTC's motion for a preliminary injunction cited approximately twenty three similar declarations by consumer witnesses. (*See* Pl.'s Mot. Prelim. Injunc. (#5) at Exs. 1–23).

Between April 2, 2012 and December 27, 2012, the parties filed multiple orders to extend or stay the briefing schedule on the FTC's motion for a preliminary injunction. (*See, e.g.*, Mot. to Extend #51), (Joint Mot. to Stay #273). The FTC continued to rely on the consumer-witness declarations to support its allegations throughout this time. (*See, e.g.*, Pl.'s Reply (#285) at 5).

On December 20, 2012, the parties entered a stipulation regarding the preliminary injunction, which the Honorable Gloria M. Navarro, Chief U.S. District Court Judge, entered the same day. (*See* Bifurcation & Prelim. Injunc. Order #296).

## II.     **The FTC Serves Initial Disclosures**

While the parties litigated the FTC's motion for a preliminary injunction, discovery began. On July 19, 2012, the FTC served initial disclosures on Defendants. (*See* Pl.'s Initial Disclosures (#493-97) at 1–6). Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), the FTC identified the name and address of nine former employees of the Defendants, who the FTC intended to use as witnesses to support its complaint. (*Id*. at 2–3).

Also, pursuant to Rule 26(a)(1)(A)(i), the FTC disclosed the name and address of nineteen consumer-witness declarants who the FTC intended to use to support its claims. (*See id*. at 1–2). The nineteen consumer-witness declarants that the FTC identified in its initial disclosure were taken from the twenty three consumer-witness declarants on whom the FTC predicated its motion for a preliminary injunction. (*See id*.); (*see also* Prelim. Injunc. Mot. (#5) at Exs. 1, 3–21).

Additionally, pursuant to Rule 26(a)(1)(A)(ii), the FTC disclosed "a description" of documents it intended to use to support its claims. (*See id*. at 4:14–17). In pertinent part, the FTC stated that it intended to use "Consumer complaints regarding Defendants." (*Id*. at 4:24).

On February 14, 2013, the FTC produced all "consumer complaints regarding Defendants" that the FTC identified in its initial disclosure. (Singhvi Decl. (#517-1) at ¶ 1) (citing Singhvi Email (#517-2) at 1). The consumer complaints were produced in a searchable and sortable spreadsheet format, which included the consumers' names, addresses, phone numbers, and emails. (*Id*.) There were "thousands" of consumer complaints.[3]

On February 15, 2013, Defendants subpoenaed the nineteen consumer-witness declarants that the FTC used in its complaint and identified in its motion for a preliminary injunction and initial disclosure. (Def.'s Objections (#498) at 3:12–15) (citing Notice of Subpoenas (#493-86, #493-87)). In response to Defendants' subpoenas, the FTC emailed Defendants on February 19, 2013. (*See* Def.'s Objections (#498) at 3:14–16) (citing Singhvi Email (#493-92) at 2). In pertinent part, the FTC stated:

---

[3] (*See* Exhibits (#455-167, #455-16) at 28:9) (containing 892 pages of consumer complaints). Defendants stipulate to the volume of complaints, stating that the FTC's consumer complaint database contains approximately 8,500 entries. (*See* Def.'s Reply (#527) at 2:7, 10). Additionally, the FTC also produced call recordings of consumer complaints. The FTC's exhibits indicate that there are approximately 10,000 call recordings. (*See* Singhvi Decl. (#517-1) at ¶ 7) (citing Ex. 3).

> [T]he FTC has no intention of using all of its initial 19 or so consumer declarants going forward. That being the case, [Defense Counsel] and I discussed the possibility that the number of subpoenas and their scope might be significantly reduced once the FTC identifies the narrower universe of consumer witnesses (perhaps 5 or 6) upon which it will rely, forsaking all other declarations for all purposes.

(Singhvi Email (#493-92) at 2).

On February 21, 2013, the FTC sent Defendants a corrected version of the database containing the thousands of consumer complaints. (Singhvi Decl. (#517-1) at ¶ 2) (citing Singhvi Email (#517-3) at 1).

On March 7, 2013, the FTC served its third amended initial disclosures. (Third Amend. Initial Disc. (#493-94) at 1–5). In pertinent part, the third amended disclosures increased the number of former employees, whom the FTC intended to use as witnesses, to twelve. (*Id*. at 2–3).

The third amended disclosures also eliminated fourteen of the original nineteen consumer-witness declarants who the FTC intended to use as witnesses to support its claims. (*See id*. at 1–2). However, the third amended initial disclosures still listed "Consumer complaints regarding Defendants" under the heading of "Documents" that the FTC intended to use to support its claims. (*See id*. at 4:20).

On June 25, 2013, the FTC answered Defendants first and second set of interrogatories. (Pl.'s Resp. (#93-49) at 1–35). In response to Defendants' first interrogatory, which asked the FTC to identify "each material fact" supporting the FTC's allegation that Defendants "misrepresented" their loan terms, the FTC objected to the question and identified statements from Defendants' website and the loan note and disclosure, but not statements in the consumer-complaint database. (*See id*. at 5–9).

On August 6, 2013, the FTC served its fifth amended initial disclosures. (Fifth Amend. Initial Disc. (#493-95) at 1–6). In pertinent part, the fifth amended disclosures decreased the number of former employees, whom the FTC intended to use as witnesses, to eleven. (*Id*. at 2–3).

The fifth amended disclosures also eliminated fifteen of the original nineteen consumer-witness declarants who the FTC intended to use to support its claims. (*See id*. at 1–2). As a result of this amendment, the FTC's fifth amended initial disclosures—which is the operative disclosure document—

5

state that the FTC will rely on four consumer-witness declarants to support its claims: (1) Kellye Sliger, (2) Angela Vanderhoof, (3) Walter Archer, and (4) Eric Barboza. (*Id.*).

The fifth amended initial disclosures still lists "Consumer complaints regarding Defendants" under the heading of "Documents" that the FTC intended to use to support its claims. (*See id.* at 4:20). Like the FTC's previous amended initial disclosures, the FTC's fifth amended disclosure did not identify which—out of the "thousands" of consumer complaints—the FTC would rely to support its allegations. (*See id.*).

### III.   Defendants Depose the FTC's Former-Employee Witnesses

On April 10, 2013, April 12, 2013, and August 29, 2013, Defendants deposed three of the FTC's former-employee witnesses: Susan Oxenford, Joshua Kendall, and Sara Glass. (*See* Oxenford Depo. #455-113); (Kendall Depo. #455-112); (Glass Depo. #455-75). Defendants' former employees testified that they received frequent complaints from Defendants' customers.

For example, Susan Oxenford estimated that approximately eighty percent of the consumers she spoke with complained that Defendant had withdrawn more from their accounts than the loan cost. (Oxenford Depo. (#455-113) at 170:18–172:10) (cited in Pl.'s Mot. Sum. J. (#456) at ¶¶ 84–6).

Joshua Kendall similarly testified that more than half of the consumers with whom he spoke were confused about the loans' repayment terms. (Kendall Depo. (#455-112) at 135:6–16) (cited in Pl.'s Mot. Sum. J. (#456) at ¶¶ 84–6).

Finally, Sara Glass testified that more than half of the customer-service calls she received involved consumers not understanding how Defendants' loans worked. (Glass Depo. (#455-75) at 105:7–22; 107:15–108:7; 185:16–186:21) (cited in Pl.'s Mot. Sum. J. (#456) at ¶¶ 84–6).

### IV.   Defendants Depose the FTC's Four Consumer-Witness Declarants

Between July 1, 2013 and July 19, 2013, Defendants deposed the FTC's four consumer-witness declarants. (*See* Barboza Depo. #455-119); (Vanderhoof Depo. #455-120); (Sliger Depo. (#455-118);

(Archer Dep. #493-27). During the depositions, the witnesses admitted—contrary to the declarations they submitted in support of the FTC's motion for a preliminary injunction—that they did not read the loan documents when applying for loans with Defendants. For example, defense counsel elicited the following testimony during Eric Barboza's deposition:

> Q.   I just want to be clear. When you applied for your loan with [Defendants], did you read your loan documents before you signed them?
> A.   No.
> Q.   You didn't read any of the documents; is that correct?
> A.   Correct.

(Barboza Depo. (#455-119) at 36:13–15) (objection omitted). Defense counsel elicited similar testimony during Kellye Sliger's deposition:

> Q.   [W]hen you took out your loan with [Defendants did] you read the loan documents?
> A.   No.
> Q.   You did not?
> A.   Huh-uh.

(Sliger Depo. (#455-118) at 112:18–22).

Vanderhoof and Archer's depositions had similar results. Vanderhoofs admitted that she did not read a number of Defendants' loan documents and disclosures. (Vanderhoof Depo. (#455-120) at 29:24–30:19). Additionally, in Vanderhoof's declaration, Vanderhoof stated: "After filing out a loan application online, I received an email from [Defendants] saying I had been approved for a loan of $400 with a total payback of $520." (Vanderhoof Decl. (#493-23) at ¶ 3). However, during her deposition, Vanderhoof admitted that this was not true:

> Q.   Exhibit 5 is the e-mail you're referencing in Paragraph 3 of . . . your declaration; is that right?
> A.   Yes.
>      [. . .]
> Q.   And[,] tell me where in [the e-mail] you see the information, as you recount in your declaration, that you had been approved for a loan of $400 with a total payback of [$]520?
> A.   I don't.

(Vanderhoof Depo. (#455-120) at 49:4–17); (*see also* Archer Depo. (#493-27) at 113:10–14; 118:11–24) (eliciting similar testimony and contradictions).

## V.     The FTC Moves for Summary Judgment & Defendants Move to Exclude Evidence

Discovery closed on August 30, 2013. (Second Amend. Disc. Plan (#432) at 2:20). On September 30, 2013, the FTC and Defendants moved for summary judgment. (*See* Pl.'s Mot. Sum. J #456); (Def.'s Mot. Sum. J. #461).

The FTC's motion for summary judgment relies heavily on statements contained in the consumer-complaint database and statements from Defendants' former employees regarding consumer complaints. (*See generally* Pl.'s Mot. Sum. J #456). The FTC's motion does not rely on the four consumer-witness declarants identified in the FTC's initial disclosures, complaints, and motion for a preliminary injunction. (*See id.* at 19). In fact, only one paragraph of the FTC's 98-paragraph statement of material facts references Barboza, Vanderhoof, Sliger, or Archer. (*See id.* at ¶ 87).

Consequently, on December 3, 2013, Defendants filed a Rule 56(c)(2) objection (#498) and motion to exclude untimely disclosed evidence (#502). Defendants' filings ask the court to exclude three categories of evidence from its analysis of the FTC's motion for summary judgment. (Def.'s Objections (#498) at 2: 13–18). The categories of evidence are: (1) consumer complaints from the FTC's database filed by the FTC as Exhibits 167 and 168; (2) recordings and transcripts of consumer telephone calls filed by the FTC as Exhibits 80–92, 125–62, and 184–89; and, (3) former employee statements identified in paragraphs 85 and 86 of the FTC's statement of material facts (*i.e.*, FTC Exhibits 75, 112–17). (*Id.*); (*see also* Def.'s Mot. to Exclude (#502) at 1:5–6).

Defendants move to exclude the FTC's evidence on two grounds. First, Defendants argue that the consumer complaints and recordings were untimely disclosed under Federal Rule of Civil Procedure 26(a)(1)(A)(i). (Def.'s Mot. to Exclude (#502) at 1:16); (*see also* Def.'s Joinder (#504) at 1). Second,

Defendants argue that the consumer complaint database and former employee statements contain hearsay in violation of Federal Rule of Evidence 802. (*See* Def.'s Objections (#498) at 12).

**DISCUSSION**

Defendants' motions present three questions: (1) whether the FTC violated Federal Rule of Civil Procedure 26(a)'s disclosure requirements; (2) whether the FTC's exhibits contain hearsay in violation of Federal Rule of Evidence 802; and (3) if so, whether the FTC's evidence should be excluded from the FTC's motion for summary judgment, trial, or both. These questions are addressed below.

**I.**     **Whether the FTC Violated Rule 26(a)'s Disclosure Requirements**

The first argument Defendants proffer to exclude the FTC's summary-judgment evidence is that the FTC failed to disclose various consumers as witnesses under Federal Rule of Civil Procedure 26(a)(1)(A)(i). (*See* Def.'s Objections (#498) at 1:2); (Def.'s Mot. to Exclude (#502) at 1:1); (Def.'s Joinder (#504) at 2:8–9). In response, the FTC argues that it complied with Rule 26(a)'s disclosure requirements and, alternatively, any noncompliance is harmless because Defendants "had specific knowledge" of the consumer complaints and the database was disclosed pursuant to Rule 26(a)(1)(A)(ii). (*See* Pl.'s Opp'n (#517) at 15:5, 17:1). The court disagrees.

**A.**     ***Disclosure Requirements under the Federal Rules of Civil Procedure***

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. *See* FED. R. CIV. P. 26(a). Rule 26(a)(1)(A)(i) requires parties to disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses" at the outset of a civil suit. Similarly, Rule 26(a)(1)(A)(ii) requires parties to disclose "a copy . . . of all documents . . . that the disclosing party . . . many use to support its claims or defenses."

Under Rule 26(e), parties are obligated to supplement or correct these disclosures, unless "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). The duty to supplement extends to:

(1) newly discovered evidence; (2) information that was not originally provided, although it was available at the time of the initial disclosure; and (3) the period after the close of discovery. *See* Fed. R. Civ. P. 26(e), Advisory Committee Note, 2007 Amendments; *see also Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc*., 272 F.R.D. 350, 358 (W.D.N.Y. 2011).

Rule 26(a)'s disclosure requirements serve several important functions. First, as the Advisory Committee Notes state, initial disclosures advance the Rules' primary purpose, which is "to secure the just speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 26(a), Advisory Committee Notes, 1993 Amendments (citing Fed. R. Civ. P. 1).

Second, initial disclosures focus litigation by requiring parties to identify "basic," "core information" at the beginning of the lawsuit. *See* 8A Wright & Miller, Federal Practice & Procedure: Civil § 2053 (3d ed. 2010) ("A central goal of all versions of initial disclosure has been to get out the basic information at an early point. [. . .] The [legislative] stimulus behind [initial disclosures] was increasing concern about the cost and delay involved in discovery and the belief that a substantial amount of 'core information' could be identified and exchanged at the outset to avoid much delay and cost.").

Third, initial disclosures eliminate undue waste, delay, and paper work by streamlining the discovery process. *See* Fed. R. Civ. P. 26(a), Advisory Committee Notes, 1993 Amendments; 8A Wright & Miller, Federal Practice & Procedure: Civil § 2053 (3d ed. 2010) (citing 146 F.R.D. 401, 628) ("Rule 26(a)(1) indicates that savings in time and expense can be achieved, particularly if the litigants meet and discuss the issues in the case as a predicate for this exchange").

Fourth, initial disclosures prevent "unfair surprise," "sandbagging," and "trial by ambush." *See, e.g.*, *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc*., 656 F.3d 47, 56 (1st Cir. 2011) (citation omitted); *Miles v. M/V Mississippi Queen*, 753 F.2d 1349, 1354 (5th Cir. 1985); *Costello v. Lungaro*, 54 F.3d 776 (6th Cir. 1995); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co*., 47 F.3d 277, 284 (8th Cir.

1995); *Torres v. City of Los Angeles*, 540 F.3d 1031, 1047 *superseded on other grounds*, 548 F.3d 1197

(9th Cir. 2008); *O'Donnell v. Georgia Osteopathic Hospital, Inc.*, 748 F.2d 1543, 1548 (11th Cir. 1984);

*see also Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 299 (D. Nev. 1998).

### B.   *The FTC Violated Rule 26's Disclosure Requirements*

The court finds that the FTC violated Rule 26(a)'s disclosure requirements with regard to:

(1) consumer complaints from the FTC's database filed by the FTC as Exhibits 167 and 168 and

(2) recordings and transcripts of consumer telephone calls filed by the FTC as Exhibits 80–92, 125–62,

and 184–89.[4] Initial disclosure requirements were enacted to provide a transparent picture of the

"individuals" who "the disclosing party may use" as witnesses "as soon as practicable." *See* FED. R. CIV.

P. 26(a)(1)(A); 26(a)(1)(C) (governing timing); 26(f) (governing timing).

Here, the FTC's initial disclosures contravened Rule 26(a)'s purpose by effectively obfuscating

the "individuals" that the FTC eventually used in its motion for summary judgment. Three findings

support this conclusion: (1) the facts indicate that the FTC "baited" Defendants and "switched"

witnesses; (2) the FTC mistakenly characterized "individuals" as "documents"; and (3) the FTC failed to

comply with Rule 26(e)'s duty to supplement. Each finding is discussed below.

### 1.   The FTC "Baited" Defendants & "Switched" Witnesses

The FTC effectively "baited" Defendants and "switched" witnesses. This action is predicated on

"thousands" of consumer complaints. To support its allegations that Defendants made

misrepresentations in violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and the Truth

in Lending Act, 15 U.S.C. § 1601, the FTC selected twenty three consumers from the pool of thousands

of borrowers on which the FTC decided to base its claims. (*See* Pl.'s Mot. Prelim. Injun. (#5) at Exs. 1–

---

[4] Defendants also move to exclude former-employee statements identified in paragraphs 85 and 86 of the FTC's statement of material facts (*i.e.*, FTC Exhibits 75, 112–17) pursuant to Federal Rule of Civil Procedure 26(a)(1). (*See* Motion to Exclude (#502) 1:6). This request for relief is meritless because the FTC disclosed the former employees identified in these exhibits (*i.e.*, Susan Oxenford, Ivan Valdivia, Joshua Kendall, and Sara Glass) in the FTC's fifth amended initial disclosure on August 6, 2013. (*See* Pl.'s Fifth Amend. Discl. (#493-95) at 2–3).

23).

Overtime, however, the FTC's limited pool of twenty three consumer witnesses narrowed. On July 19, 2012, the FTC served its first initial disclosures, which voluntarily reduced the number of consumer witnesses from twenty three to nineteen. (*See* Pl.'s Initial Disclosures (#493-97) at 1–2).

On February 19, 2013, counsel for the FTC emailed defense counsel and, again, voluntarily reduced the number of consumer witnesses on which the FTC would rely from nineteen to five or six. (*See* Singhvi Email (#493-92) at 2) ("[T]he FTC has no intention of using all of its initial 19 or so consumer declarants. [. . .] [The] FTC [will] narrow[] [the] universe of consumer witnesses (perhaps 5 or 6) upon which it will rely, forsaking all other declarations for all purposes.").

On March 7, 2013, the FTC served amended initial disclosures, which voluntarily reduced the number of consumer witnesses to five. (*See* Third Amend. Initial Disc. (#493-94) at 1–2).

On August 6, 2013, the FTC amended its initial disclosures again, and voluntarily reduced the number of consumer witnesses to four. (*See* Fifth Amend. Initial Disc. (#493-95) at 1–2).

Between July 1, 2013 and July 19, 2013, Defendants deposed and impeached the FTC's remaining consumer witnesses. (*See supra* BACKGROUND § IV). Consequently, when the FTC filed its motion for summary judgment on December 12, 2013, it returned to the pool of "thousands" of borrowers to obtain new statements that support its claims.

Whether intentional or not, the FTC's actions amount to a witness "bait and switch." From the moment this action began, the FTC gave every indication that its claims would be based on a subset of witnesses, whether twenty three, nineteen, six, five, or four. (*See* Compl. #1); (Pl.'s Mot. Prelim. Injun. (#5) at Exs. 1–23); (First Amend. Compl. #386); (Pl.'s Initial Disclosures #493-97); (Singhvi Email #493-92); (Third Amend. Initial Disc. #493-94); (Fifth Amend. Initial Disc. #493-95).

Defendants relied on these representations. However, the FTC: (1) prevented Defendants from deposing nineteen of the FTC's original twenty three witnesses, (*see* Singhvi Email #493-92);

(2) reduced its reliance on the remaining four witnesses to a single paragraph in the FTC's motion for summary judgment, (*see* Pl.'s Mot. Sum. J. (#456) at ¶ 87); and (3) obtained new statements from the pool of "thousands" of customers, who the FTC did not specifically disclose. (*Id.*) This obfuscated "core information" that the FTC used in its motion for summary judgment, which created the "unfair surprise" that initial disclosures were designed to avoid. *See Torres v. City of Los Angeles*, 540 F.3d at 1047; *Elgas*, 179 F.R.D. at 299; *see also* 8A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2053 (3d ed. 2010) (discussing "core information" and initial disclosures).

    2. <u>The FTC's Initial Disclosures Mistakenly Characterize Witness Statements as "Documents"</u>

   The FTC's initial disclosures also mistakenly characterized witness statements as "documents." The FTC's opposition to Defendants' objection and motion argues, in pertinent part, that Defendants' Rule 26 argument "fails at a threshold level" because the FTC complied with Rule 26(a)(1)(A)(ii) by disclosing individual consumer complaints as "documents." (*See* Pl.'s Opp'n (#517) at 16:9–11). The court is unpersuaded.

   As an initial matter, the court recognizes that distinguishing between "individuals" and "documents" is not always an easy task. After all, the only reason that "individuals" and "documents" are relevant to litigation is because of the statements that the "individuals" make and the information the "documents" contain; and every document is, at some point, the product of an individual. Nonetheless, the court concludes that the FTC should have designated the consumer complaints as "individuals" for three reasons.

   First, the plain language of Rule 26(a)(1)(A)(i) requires the FTC to disclose the name of "each individual" that is "likely to have discoverable information," which "the disclosing party may use to support its claims." It requires no citation to authority to demonstrate that the consumers listed in the FTC consumer-complaint database are (1) "individuals," (2) "likely to have discoverable information"

(*i.e.*, an understanding of the loan terms), which (3) the FTC used to support its claims. (*See generally* Pl.'s Mot. Sum. J. #454).

In fact, the FTC's motion for summary judgment identifies the individual consumers by name, and not bates number, the date on which the consumer's complaint was filed, the agency with which the complaint with filed, or any other indicia that is commonly associated with "documents" rather than "individuals." (*See, e.g.*, Pl.'s Mot. Sum. J. (#456) at ¶ 90) (listing nine individuals by name from Exhibits 167–68 [*i.e.*, the FTC's consumer-complaint database] and quoting their statements regarding alleged misrepresentations); (*see also id.* at ¶ 88) (listing seventeen individuals by name from Exhibits 80–92, 125–62, and 184–89 [*i.e.*, audio call recordings] and quoting their statements regarding alleged misrepresentations).

Second, the court's conclusion that the individuals listed in the consumer-complaint database should be characterized as "individuals" and not "documents" is bolstered by the content and function of the consumer complaints. The FTC's motion for summary judgment quotes specific statements from specific individuals in order to demonstrate what specific consumers actually thought. (*See id.* at ¶¶ 88, 90). Nothing distinguishes these statements from deposition testimony, declarations, or affidavits other than two facts: (1) Defendants were not given an opportunity to cross-examine the individuals; and (2) the FTC compiled the statements into a database. Permitting the FTC to treat these witnesses as "documents" under Rule 26(a) would elevate form over substance and permit parties to avoid disclosing the "individuals" on whom they will rely by burying the individual's name, phone number, address, and testimony in a database.

Third, the FTC's consumer-complaint database (*see id.* at Exs. 167–68) is a document created by the FTC's Division of Enforcement. From an evidentiary perspective, the court regards these exhibits with caution for two reasons. First, the exhibits appear to have been created in anticipation of litigation. The exhibits are the product of the FTC's "Consumer Sentinel Database," which is an "investigative

cyber tool."[5] Over the course of litigation, the database containing complaints unique to Defendants appears to have been "truncated," modified, and subsequently corrected. (*See* Singhvi Decl. (#517-1) at ¶ 2); (Batra Emails #517-2, #517-3).

Additionally, the FTC's consumer-complaint database interprets the consumers' complaints and obfuscates the native format of the consumers' complaints. For example, the first and sixth entries in Exhibit 168 refer to the individual in the third person as "consumers." (*See, e.g.*, Exhibit 168 (#455-168) at Cell 1) ("Consumer states that they is an [*sic*] current employee" of Defendants). This entry reflects the FTC's interpretation of the consumer's complaint, and not the complaint itself. As stated above, permitting the FTC to treat these witnesses as "documents" would elevate form over substance and allow parties to proffer witness statements into evidence by entering the statement into a "document."

### 3.   The FTC Failed to Comply with Rule 26(e)

The court also finds that the FTC failed to comply with Rule 26(e). Under Rule 26(e), parties are required to supplement initial disclosures if the disclosing party learns that "some material respect" of the disclosure is incomplete or incorrect, and if the corrective information has not otherwise "been made known" to the other party. FED. R. CIV. P. 26(e).

The FTC argues that it complied with Rule 26's requirements because "[a]ll of the information clearly was known to Defendants." (Pl.'s Opp'n (#517) at 17:17; 18:16–18; 19:7–8) ("Defendants do not—and cannot—claim that they were unaware of the existence of the Sentinel Database and complaints contained therein. . . . Defendants were more than sufficiently aware of the existence of the consumers who filed complaints with the FTC [and] BBBs").

---

[5] *See* FEDERAL TRADE COMMISSION, *Consumer Sentinel Network*, http://www.ftc.gov/enforcement/ consumer-sentinel-network (last visited Jan. 1, 2014). The court may take judicial notice of information posted on government websites as it can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2); *see Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F.Supp. 2d 997, 1003–04 (N.D. Cal. Nov. 5, 2012) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities")).

This argument is unpersuasive. Contrary to the premise of the FTC's argument, a party's initial disclosure obligations are not satisfied by disclosing individuals who are "likely to have discoverable information . . . [but whom] **the disclosing party may use** to support its claims." *Lujan v. Cabana Mgmt., Inc*., 284 F.R.D. 50, 34 (E.D.N.Y. 2012) (citing FED. R. CIV. P. 26(a)(1)(A)(i) (emphasis original)); *see also* 8A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2053 (3d ed. 2010) (discussing how Rule 26(a) was amended to only require disclosure of information that the disclosing party "may use," and not—as formerly required—all relevant information).

Under Rule 26(e), the disclosing party must supplement initial disclosures if (1) "some material respect" of the information that the disclosing party may use is incomplete or incorrect, and (2) the corrective information that the disclosing party may use has not otherwise "been made known." *See* FED. R. CIV. P. 26(e).

Here, the FTC changed its witnesses in a material respect and failed to disclose this change. Originally, the FTC intended to use between twenty three and nineteen witness declarants out of a pool of "thousands" of customers. (*See supra* BACKGROUND). However, the FTC voluntarily reduced the number to four witnesses, who were impeached by Defendants. (*Id*.) Subsequently, Defendants filed a motion for summary judgment that relies on, *inter alia*, nine database complaints and seventeen audio complaints taken from a pool of "thousands." (*See* Pl.'s Mot. Sum. J. (#456) at ¶¶ 88, 90). The selection and use of these particular individuals' statements represents a "material" change that was not "made known" to Defendants.

## C.    *Defendants' Remedy for the FTC's Rule 26 Violations*

Having concluded that the FTC violated Rule 26's initial disclosure requirements, the court must now impose an appropriate remedy. For the reasons discussed below, the court follows Federal Rule of Civil Procedure 37(c)(1)(B) and grants Defendants the opportunity to "inform the jury of the [FTC's]

16

failure" to comply with its initial disclosure obligations until September 30, 2013.[6]

Federal Rule of Civil Procedure 37(c) governs initial disclosure violations. Rule 37(c)(1) states that if a party fails to comply with Rule 26(a) or (e)'s initial disclosure requirements, "the party is not allowed to use the information . . . at a hearing, or at trial, unless the failure was substantially justified or is harmless. *See* FED. R. CIV. P. 37(c)(1). The party facing sanctions under bears the burden of showing "substantial justification" or "harmlessness."[7] *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106–07 (9th Cir. 2001).

Preclusion of evidence is a "drastic measure." *Taylor v. Illinois*, 484 U.S. 400, 417 n. 23 (1988); *Wendt v. Host Int'l, Inc*., 125 F.3d 806, 814 (9th Cir. 1997). The Advisory Committee Notes to Rule 37(c) indicate that "[l]imiting the automatic sanction" of preclusion "is needed to avoid unduly harsh penalties in a variety of situations, *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties." FED. R. CIV. P. 37(c), Advisory Committee Notes, 1993 Amendments. Accordingly, Rule 37 "provides the court with a wide range of other sanctions." *Id*. Under Rule 37(c)(1)(B), the court "may inform the jury of the party's failure" to comply with Rule 26.

The district court has wide latitude in using its discretion to impose discovery sanctions. *Yeti by Molly, Ltd.*, 259 F.3d at 1106. Rulings regarding evidence made in the context of summary judgment are reviewed for an abuse of discretion. *Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002) (noting limited appellate review "even when the rulings determine the outcome of a motion for summary judgment").

In the Ninth Circuit, evidence preclusion under Rule 37(c) is governed by a five factor test: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party facing preclusion; (4) the public policy favoring disposition of cases

---

[6] Because the FTC filed its motion for summary judgment on September 30, 2013, that day constitutes the day that the FTC disclosed the witnesses on which it would rely.
[7] The FTC failed argue that its noncompliance with Rule 26 is "substantially justified" or "harmless." (*See* Pl.'s Opp'n (#517) at 19–20).

on their merits; (5) the availability of less drastic sanctions. *Wendt*, 125 F.3d at 814 (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)).

These factors counsel against preclusion and militate in favor of the lesser sanction of informing the jury of the FTC's discovery violations. In reaching this conclusion, the court is particularly swayed by the third, fourth, and fifth factors. Evidence preclusion would: (1) severely prejudice the FTC; (2) risk creating a situation where the court's judgment rests on the technicalities of Rule 26, and (3) ignore less drastic sanctions recommended by the Advisory Committee Notes to Rule 37(c). Consequently, the court follows Federal Rule of Civil Procedure 37(c)(1)(B) and grants Defendants the opportunity to "inform the jury of the [FTC's] failure" to comply with its initial disclosure obligations.

## II.   Whether the FTC's Motion for Summary Judgment Contains Inadmissible Hearsay

The second argument Defendants proffer to exclude the FTC's summary-judgment evidence[8] is that the FTC's evidence violates Federal Rule of Civil Procedure 56(c)(2) because it contains inadmissible hearsay. (*See* Def.'s Objections (#498) at 1:2). In response, the FTC argues that statements contained in its exhibits are either non-hearsay under Federal Rule of Evidence 803(3) or subject to the residual exception under Rule 807. (*See* Pl.'s Opp'n (#517) at 7:18–20; 9:21). For the reasons stated below, Defendants' objections are sustained in part and overruled in part.

### A.   *Hearsay Objections at the Summary-Judgment Stage*

Defendants hearsay objections are made pursuant to Federal Rule of Civil Procedure 56(c)(2). Rule 56(c)(2) provides, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Notes specify that Rule 56(c)(2) objections "function much as an objection at trial . . . .   The burden is on the proponent to show that the material is admissible as presented." FED. R. CIV. P. 56(c)(2), Advisory

---

[8] As discussed above, Defendants object to statements from the FTC's: (1) consumer complaint database (*i.e.*, Exhibits 167–68); (2) recordings and transcripts of consumer complaints (*i.e.*, Exhibits 80–92, 125–62, and 184–89); and, (3) former employee statements (*i.e.*, Exhibits 75, 112–17). (*See* Def.'s Objections (#498) at 2:13–15).

Committee Notes, 2010 Amendments.

      Article VIII of the Federal Rules of Evidence governs hearsay. Rule 801(c) defines "hearsay" as a statement that "the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." In turn, Rule 802 states that hearsay is inadmissible unless an exception applies. Similarly, Rule 805 states that "hearsay within hearsay" is inadmissible, unless an exception applies to "each part of the combined statement."

      Hearsay is inadmissible for two primary reasons. First, "it deprives the opposing party of the opportunity for cross-examination." *N.L.R.B. v. First Termite Control Co., Inc.*, 646 F.2d 424, 426 (9th Cir. 1981) *opinion amended on reh'g sub nom.* 80–7142, 0081 WL 638063 (9th Cir. Aug. 5, 1981) (citing 4 WEINSTEIN & BERGER, WEINSTEIN'S EVIDENCE ¶ 800(01) at 10–11 (1993)). Second, "[h]earsay is inadmissible because a juror's ability to evaluate a witness' testimony is greatly enhanced when he or she can consider the testimony in light of the declarant's demeanor. *United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995) (citation omitted).

      In limited exceptions, however, hearsay is admissible. Three exceptions are relevant here. First, a statement of the declarant's "then-existing" state of mind (*i.e.*, motive, intent, plan) is not hearsay. FED. R. EVID. 803(3); *Mutual Life Ins. Co. of New York v. Hillmon*, 145 U.S. 285 (1892). Second, certain business records are not hearsay. *See* FED. R. EVID. 803(6). Third, Rule 807 provides a residual exception to the rule against hearsay.

      Under Rule 807's residual exception, hearsay is admissible if the hearsay statement (1) is trustworthy, (2) is offered as evidence of a material fact, (3) is more probative on the point for which it is offered than other evidence, and (4) best serves "the purpose of these rules and the interests of justice." *See* FED. R. EVID. 807(a).

**B.** ***The FTC's Consumer Complaint Database (Exhibits 167–68) is Inadmissible under Rule 803(3)***

The FTC argues that the consumer complaint databases (exhibits 167–68) do not violate the rule against hearsay because the statements in the exhibits are nonhearsay under Rule 803(3). (Pl.'s Opp'n (#517) at 7:12). The court disagrees.

Before discussing the legal basis for this conclusion, the court pauses to discuss the content of the FTC's exhibits. FTC exhibits 167 and 168 are two spreadsheet compilations of consumer complaints. For purposes of the court's hearsay inquiry, there are two notable features that distinguish exhibits 167 and 168. First, the exhibits are compilations prepared by the FTC. (*See* Singhvi Decl. (#454-2) at ¶¶ 167–68). These exhibits compile consumer complaints from three intermediary sources: (1) the FTC's Consumer Sentinel Database, (2) various Better Business Bureaus; and (3) various state-run consumer protection agencies. (*Id.*); (*see also* Pl.'s Opp'n (#517) at 19:7–8).

Second, the consumer complaints listed the exhibits were written in either the first or third person. For instance, the fifth and sixth entries in exhibit 167 are third-person accounts of consumers' complaints. Entry five reads in pertinent part: "Consumer is calling on behalf of her husband applied [*sic*] for a online [*sic*] loan with [Defendants]." (Exhibit 167 (#455-167) Paulette Ntow at Row 5). Similarly, entry six reads in pertinent part: "Consumer states that she applied for an online loan with [Defendants]." (*Id.* at Harold Sawyer, Row 6). By contrast, the seventh entry in exhibit 167 appears to be the entire copy a letter or email that a consumer sent to the FTC, Better Business Bureau, or state-run consumer protection agency. (*See id.* at Chere Jacobs, Row 7).

The FTC contends that the exhibits should be admitted under Rule 803(3) because the complaints show widespread "confusion," which is a state of mind. (Pl.'s Opp'n (#517) at 7:18-20). The court finds that the FTC's Rule 803(3) argument is insufficient for four reasons.

First, the FTC has not satisfied Rule 803(3)'s requirements. To admit a statement under Rule 803(3), the FTC must demonstrate that the first-person complaints were submitted when the consumers

were still confused and not—as Defendants correctly argue—at a later date. Fed. R. Evid. 803(3)

(barring as hearsay "a statement of memory or belief to prove the fact remembered or believed"). When

deciding whether Rule 803(3) is satisfied, the Ninth Circuit instructs lower courts to:

> [E]valuate three factors: contemporaneousness, chance for reflection, and relevance. The
> state of mind declaration has probative value, because the declarant presumably knows
> what his thoughts and emotions are at the time of his declarations. The more time that
> elapses between the declaration and the period about which the declarant is commenting,
> the less reliable is his statement, because the greater chance there is that his memory is
> erroneous.

*United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980), overruled on other grounds by *United*

*States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984); *see also U.S. v. Miller*, 874 F.2d 1255, 1264

(9th Cir. 1989) (affirming the trial court's finding that statements were inadmissible under Rule 803(3)

because "two hours" had elapsed and the declarant "had a sufficient opportunity to fabricate" the

statement). Here, the FTC did not (1) argue that the first-person complaints satisfy Rule 803(3)'s

contemporaneity requirement or (2) engage in any analysis of exhibits 167 and 168 under Rule 803(3).

(*See* Pl.'s Opp'n (#517) at 7:12–9:8).

    Second, even if the first-person complaints satisfy Rule 803(3), which the FTC did not

demonstrate, many of the complaints are written in the third person. As a result, these complaints do not

represent the consumer's state of mind. Rather, they represent the FTC, Better Business Bureau, or a

state-run consumer protection agency's understanding of the consumer's complaint. (*See, e.g.*, Exhibit

167 (#455-167) Paulette Ntow at Row 5) (reflecting the FTC's understanding of a complaint as

described by the consumer's spouse: "Consumer is calling on behalf of her husband applied [*sic*] for a

online [*sic*] loan with [Defendants].")

    Third, the FTC did not argue that the exhibits—rather than the complaints within the exhibits—

are admissible. (*See generally* Pl.'s Opp'n #517). Exhibits 167 and 168 fall squarely within Rule 805's

prohibition against "hearsay within hearsay." *See, e.g.*, *Wilson v. Zapata Off–Shore Co.*, 939 F.2d 260,

21

271 (5th Cir. 1991) (stating that a log of consumer complaints is "hearsay within hearsay"). The FTC did not address this issue.

Fourth, it is unlikely that the FTC could satisfy Rule 805's prohibition against "hearsay within hearsay." Exhibits 167 and 168 are compilations of complaints from FTC's Consumer Sentinel Database, various Better Business Bureaus, and state-run consumer protection agencies. (Pl.'s Opp'n (#517) at 19:7–8). As a result, the FTC would have to demonstrate that complaints taken from each of these sources satisfy an exception to Rule 802, such as Rule 806's business records exception. It is, however, highly unlikely that the FTC could demonstrate that none of the complaints were obtained in anticipation of litigation, which the business records exception requires. *See, e.g.*, *Timberlake Constr. Co., v. U.S. Fidelity and Guar. Co*., 71 F.3d 335, 341–342 (10th Cir. 1995) (holding that letters addressing the dispute that was the subject of litigation were written in anticipation of litigation and, therefore, did not fall under business record exception because "[i]t is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business.").

## C.   *The FTC's Summary-Judgment Evidence is Admissible under Rule 807's Residual Exception*

The FTC also argues that its summary-judgment evidence (*i.e.*, exhibits 75, 80–92, 112–17, 125–62, 167–68, 184–89) is admissible under Rule 807's residual exception to the hearsay rule. (Pl.'s Opp'n (#517) at 9:21). As discussed above, to be admissible under Rule 807, a hearsay statement must: (1) have "equivalent circumstantial guarantees of trustworthiness;" (2) be "offered as evidence of a material fact;" (3) be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts;" and (4) be admitted to "best serve the purposes of these rules and the interests of justice." FED. R. EVID. 807(a).

Here, the FTC argues its exhibits satisfy Rule 807 because "[t]he Ninth Circuit has already confirmed the FTC's ability to introduce FTC complaint information under Rule 807." (Pl.'s Opp'n (#517) at 10:4–5). The court disagrees. There is no FTC-consumer complaint exception to the hearsay

rule. The FTC relies on *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993) for this assertion. In *Figgie*, the Ninth Circuit stated that the trial court must make "detailed findings" when admitting evidence under Rule 807. *Id*. "Detailed findings" are necessary because Rule 807 "is not to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circumstances." *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 713 (9th Cir. 1992) (citing *Fong v. Am. Airlines*, 626 F.2d 759, 763 (9th Cir.1980)).

As stated in *Figgie*, the "most important inquiry under this Rule is whether the proffered evidence has trustworthiness equivalent to that of the enumerated hearsay exceptions." *Figgie Int'l, Inc.*, 994 F.2d at 608 (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991). Consequently, the *Figgie* court identified four facts regarding the complaints **in that case**, which provided "circumstantial guarantees of trustworthiness." *Id*. Here, the FTC failed to make the requisite "detailed" showing regarding the complaints **in this case**. Rather, the FTC repeatedly states that other courts have admitted consumer complaints before, so this court should do it again. (*See, e.g.*, Pl.'s Opp'n (#517) at 10:14 –11:2). This is insufficient. FED. R. CIV. P. 56(c)(2), Advisory Committee Notes, 2010 Amendments (stating that the proponent bears the burden of persuasion on Rule 56(c)(2) objections); *see also United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir. 2000) (stating that the hearsay proponent bears the burden of persuasion).

Nevertheless, the court admits the FTC's exhibits because its own review of the written complaints, transcripts, and recordings by employees and consumers (*i.e.*, exhibits 75, 80–92, 112–17, 125–62, 167–68, 184–89) demonstrate that the complaints contain the type of hearsay statements that Rule 807 was designed to admit. The court may make this determination *sua sponte*. *See* FED. R. CIV. P. 1 (instructing courts to administer and secure the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."); *accord* FED. R. EVID. 102 (instructing courts to construe the Rules "as to administer every proceeding fairly, eliminate unjustifiable expense and delay,

and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.").

With regard to the first element, the exhibits have five "circumstantial guarantees of trustworthiness." FED. R. EVID. 807(a)(1). The statements report "roughly similar experiences." *Figgie Int'l, Inc.*, 994 F.2d at 608. The complaints were submitted by thousands of unrelated members of the public in different cities and states. The statements were obtained by the FTC from three independent sources, including the FTC's Consumer Sentinel Database, the Better Business Bureau, and various state-level consumer protection agencies. The number of the statements (*i.e.*, approximately 8,500) represents a statistically significant sample size to provide "circumstantial guarantees of trustworthiness." And, the combined volume and similarity of the complaints indicate that there is little risk that the statements were "the product of faulty perception, memory or meaning, the dangers against which the hearsay rule seeks to guard." *Id*. (citing 4 WEINSTEIN & BERGER at 803–375).

Second, consumer confusion, the represented cost of the consumers' loans, and the actual cost of the consumers' loans are material facts. (*See* Jan. 28 Report & Recommendation at 22:7–11).

Third, "reasonable efforts" would not produce more probative evidence. As the Ninth Circuit stated in *Figgie*, the "FTC could bring [the consumers] into court to swear, under oath and subject to cross-examination, that the contents of their [complaints] were true. But such efforts would not be reasonable." *Id*. In *Figgie* there were 127 complainants. *Id*. By contrast, this action involves approximately 8,500 complainants.

Fourth, admitting the complaints "furthers the federal rules' paramount goal of making relevant evidence admissible." *Id*. (citing 4 WEINSTEIN & BERGER at 803–381). Admitting the complaints also serves the interests of justice. If the FTC were not permitted to admit the thousands of consumer complaints under Rule 807, FTC enforcement actions would be effectively halted and the agency would

24

be barred from presenting the core information it uses to initiate investigations and prosecute cases.

The court, therefore, admits FTC's exhibits 75, 80–92, 112–17, 125–62, 167–68, 184–89.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendants' motion to exclude untimely disclosed evidence (#502) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants may inform the jury that the FTC failed to comply with its initial disclosure obligations until September 30, 2013.

IT IS FURTHER ORDERED that Defendants' Rule 56(c)(2) objections(#498) are SUSTAINED in part and OVERRULED in part.

IT IS FURTHER ORDERED that the FTC's exhibits 75, 80–92, 112–17, 125–62, 167–68, 184–89 are ADMITTED for purposes of resolving the parties' motions for summary judgment.

IT IS SO ORDERED.

DATED this 28th day of January, 2014.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE