# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

***

FEDERAL TRADE COMMISSION,

                    Plaintiff,

vs.

AMG SERVICES, INC., *et al.*,

                    Defendants.

Case No. 2:12–cv–536–GMN–VCF

**<u>ORDER</u>**

 

This matter involves the Federal Trade Commission's civil-enforcement action regarding the offer and sale of "high-fee, short-term payday loans." (First Amend. Compl. (#386) at ¶ 1[1]). Three motions are before the court: (1) the Federal Trade Commission's Motion to Compel (#691); (2) the Relief Defendants' Counter Motion for a Protective Order (#703); and (3) the Lending Defendants' Motion for Leave to File a Sur-Reply (#708). For the reasons stated below, the Commission's Motion to Compel is granted in part and denied in part, the Tucker Defendants' Motion for a Protective Order is granted in part and denied in part, and the Defendants' Motion for Leave to File a Sur-Reply is denied.

## BACKGROUND

Between 2002 and December 27, 2012, Defendants sold "high-fee, short-term payday loans" through tribal-chartered corporations. (First Amend. Compl. (#386) at ¶¶ 1, 27); (Prelim. Injunc. #296). The Federal Trade Commission commenced this action because the sale of these loans allegedly violated section 5 of the Federal Trade Commission Act of 1914, 15 § U.S.C. 45(a)(1), the Truth in Lending Act of 1968, 15 U.S.C. § 1601(a), and Regulation Z, 12 C.F.R. § 1026(a). The court agreed. On March 7,

---

[1] Parenthetical citations refer to the court's docket.

2014, the Honorable Gloria M. Navarro, Chief U.S. District Judge, determined that the Federal Trade Commission Act applies to the tribal-chartered corporations and entered summary judgment in the Commission's favor. (Doc. #559).

The parties are now litigating the relief phase of this action. (*See* Order (#296) at 10) (bifurcating the action into a liability phase and a relief phase). On July 25, 2012, before the matter was bifurcated, the Commission served Defendants with requests for production of documents and interrogatories. Ten of the discovery requests are now in controversy. On October 24, 2014, the Commission filed the instant Motion to Compel and Motion to Seal Exhibits. On October 27, 2014, the Commission filed a Notice of Corrected Document and filed a new Motion to Compel. (*See* Doc. #694). The Commission's notice does not state what, if anything, differs between the October 24 and October 27 motions or why a second document was filed. (*See id.*)

On November 10, 2014, Defendants opposed the Commission's motions. (*See* Docs. #700–02). Each of Defendants' motions responds to the Commission's October 24 filing.[2] On the same day, the Tucker Defendants filed the instant Counter Motion for a Protective Order. (Doc. #703). At issues in the parties' filings are the propriety of the Commission's requests, which seek documents related to minutes of meetings, compensation, related litigation and grand jury proceedings, and various financial records. Finally, on November 25, 2014, the Lending Defendants filed the instant Motion for Leave to File a Sur-Reply.[3]

---

[2] Because Commission did not state what, if anything, differs between the October 24 and October 27 filings or why a second document was filed, and because Defendants relied on the first filing, the court strikes the Commission's Notice of Corrected Image. *Metzger v. Hussman*, 682 F. Supp. 1109, 1111 (D. Nev. 1988) (discussing the District Court's inherent power to strike).

[3] The Lending Defendants seeks leave to file a sur-reply because the Commission allegedly misstated the record with regard to previous discovery disputes. As shown below, the Commission's arguments regarding previous discovery did not impact the court's decision here. Therefore, the court denies the Lending Defendants' Motion for Leave to File a Sur-Reply.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. It provides for two forms of discovery: party-controlled discovery and court-controlled discovery. The first sentence of Rule 26(b)(1) governs party-controlled discovery. It states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The second sentence of Rule 26(b)(1) governs court-controlled discovery. It states that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id*. While parties are expected to conduct party-controlled discovery independently, and only request judicial intervention to end discovery disputes, court-controlled discovery begins with judicial intervention.[4]

These provisions provide for "[l]iberal discovery." *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery serves "the integrity and fairness of the judicial process by promoting the search for the truth," *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), and assisting "the preparation and trial, or settlement, of litigated disputes." *Rhinehart*, 467 U.S. at 34. Indeed, it permits parties to "fish" for evidence, provided that they cast a "reasonably calculated" lure. FED. R. CIV. P. 26(b), Advisory Comm. Notes (1946) (citation omitted) ("[T]he Rules . . . permit 'fishing' for evidence as they should."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party

---

[4] In 1999, Rule 26(b)(1) provided for one form of discovery. It stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." FED. R. CIV. P. 26(b)(1) (1999). The Rule was amended in 2000 to curb overbroad discovery. *See* FED. R. CIV. P. 26(b)(1), Advisory Comm. Notes (2000). To prevent overbroad discovery, a party can no longer independently request information that is "relevant to the subject matter involved in the action" without showing "good cause" and obtaining leave of court. FED. R. CIV. P. 26(b)(1). The FTC's assertion that discovery must be allowed "unless the information has no conceivable bearing on the case," (*see* Doc. #691 at 2), stems from a rescinded rule of law. *See Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) (citing 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2008 (2d ed. 1983 & Supp. 1990)).

from inquiring into the facts underlying his opponent's case.").[5]

Discovery, however, has limits. The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962). This directive is echoed by Rule 26(b)(2)(C), under which the court, "on its own, must" limit the frequency and extent of discovery if the discovery sought is "unreasonably cumulative or duplicative," can be "obtained from some other source that is more convenient, less burdensome, or less expensive," is untimely, or if "the burden or expense of the proposed discovery outweighs its likely benefit."

If, as here, a party resists discovery, the requesting party may file a motion to compel. *See* FED. R. CIV. P. 37(a)(1). A facially valid motion to compel has two components. First, the motion must certify that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery. FED. R. CIV. P. 37(a)(1); LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). Second, the motion must include a threshold showing that the information in controversy is relevant and discoverable under Rule 26. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)).

If the requesting party makes these showings, the resisting party carries a "heavy burden" of demonstrating why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must specifically detail the reasons why each request is improper. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472–73 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *Id.*

---

[5] *See also* Robert T. Reagan & Federal Judicial Center, *Confidential Discovery: A Pocket Guide on Protective Orders* at 1–2 (2012) ("A party is presumptively entitled to all information in an opposing party's control material to the action, so long as the requesting party knows how to ask for it.").

**DISCUSSION**

The Commission's Motion to Compel concerns ten written discovery requests. In addition to the Federal Rules, discovery motions are governed by Local Rule 26-7(a), which states that "[a]ll motions to compel discovery . . . shall set forth in full the text of the discovery originally sought and the responses thereto, if any." The Commission overlooked this requirement. It appended thirty-two exhibits to its motion, none of which include the "full . . . text of the discovery originally sought." This court routinely denies motions to compel that do not comply with this rule. *See, e.g.*, *Plaintiffs Ins. Co. v. Peter Mario Balle, D.C.*, No. 2:10–cv–02205–APG–NJK, 2013 WL 5323968, at *4 (D. Nev. Sept. 20, 2013) ("The Court cannot determine that particular responses to requests for production were improper without knowing what request was made or what response was given.").

Compliance with this rule may have assisted the Commission. The instructions to its discovery requests, which were not included as "originally sought," may have persuaded the court that some of its requests are not overbroad. Nonetheless, the court treats the Commission noncompliance as substantially harmless because, as discussed in more detail below, the parties are ordered to meet and confer to narrow the overbroad requests. (*See infra* § C at pp. 9–13). With this proviso in mind, the court addresses the Commission's ten disputed requests below.

**A.**    ***Requests One & Two: Meeting Minutes & Agendas***

The first two requests were served on the Lending Defendants (*i.e.*, AMG, MNES, SFS, and Red Cedar). These requests seek: (1) "[a]ll minutes of all meetings of Your board of directors, officers, or similar managing body(ies)" and (2) "[a]ll meetings agendas and minutes provided to, reflecting the participation of, or reflecting the decisions of, any individual Defendant." (Pl.'s Mot. to Compel (#691) at 4, 6). The Commission argues that these requests are proper because they are relevant to its common-enterprise claim. (*Id.* at 4:9). The Lending Defendants oppose, arguing that the requests are overbroad

because they fail to "heed the requirement that document requests be 'relevant to any party's claim or defense.'" (Def.'s Opp'n (#700) at 2:20–21).

The Commission's requests are not unreasonably overbroad in light of the Commission's common-enterprise claim. "[E]ntities constitute a common enterprise when they exhibit either vertical or horizontal commonality qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *Fed. Trade Comm'n v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142–43 (9th Cir. 2010). To determine whether a common enterprise exists, courts consider various factors including common control, the sharing of office space and officers, whether business is transacted through a maze of interrelated companies, the commingling of corporate funds and failure to maintain separation of companies, unified advertising, and evidence that reveals that no real distinction exists between the corporate defendants. *Fed. Trade Comm'n. v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1216 (D. Nev. 2011) *aff'd in part, vacated on other grounds by* 763 F.3d 1094 (9th Cir. 2014). The Lending Defendants' "minutes of all meetings" are relevant, if not essential, to the Commission's common-enterprise claim.

The Lending Defendants contend that "all minutes of all meetings" is overbroad because it does not focus on whether specific defendants were physically present at the meetings. (Def.'s Opp'n (#700) at 3:3–7). This argument is inapposite. Unless a company's articles of incorporation provide otherwise, an individual's physical presence generally has no effect on resolutions that may or may not be adopted during a meeting. Decisions may be made by proxy or by telephone. Physical presence is similarly inapposite to relevance under Rule 26(b)(1) because a company may take action on its own that is relevant to a common-enterprise factor, such as a decision to lease office space in the same building as another defendant. The Lending Defendants cite no authority stating, as the Lending Defendants urge, that simultaneous physical presence during board meetings is a necessary predicate to a common-enterprise

6

claim.

The court is also unpersuaded by the Lending Defendants' plain-language argument, which contends that the Commission's request is improper because it is facially unlimited in scope by requesting "all minutes of all meetings." (*See* Doc. #700 at 3:11–26). In support of this argument, the Lending Defendants rely on, *inter alia*, this court's decision in *Wynn Las Vegas v. Zoggolis*, No. 14–cv–157–MMD–VCF, 2014 WL 2772241, at *3 (D. Nev. June 17, 2014) (Ferenbach, M.J.). The court's decision in *Zoggolis* is distinguishable on two grounds. First, in *Zoggolis*, the requesting party sought "all documents related to Wynn," the defendant. *Id.* at *3. Here, the Commission's request is considerably narrower; it seeks "all minutes of all meetings," not all documents.

Second, *Zoggolis* involved a breach-of-contract claim. This is unlike the Commission's common-enterprise claim, which is governed by a multi-factoral test, not a discrete set of elements. As stated in *Grant Connect, LLC*, 827 F. Supp. 2d at 1216, one of the factors courts consider is other "evidence that reveals that no real distinction exists between the corporate defendants." This evidence may take many forms under the circumstances of each case. Therefore, the court is unpersuaded that the Commission's request for "all minutes of all meetings" should be limited to an isolated collection of discrete topics, as the Lending Defendants propose.[6]

/// /// ///

/// /// ///

/// /// ///

/// /// ///

---

[6] For the same reason, the court finds that the Commission's requests are not moot. The Lending Defendants assert that the requests are moot because they already produced "all minutes of all meetings" as they related to the Loan Documents during Phase I of the litigation. (Def.'s Opp'n (#700) at 4:1–11). Again, this argument overlooks the scope of the common-enterprise test that is in controversy in Phase II.

**B.**  ***Request Three: Communications regarding Compensation***

The court now turns to the Commission's third request, which was also served on the Lending Defendants. It seeks,

> All Communications between You and any Defendant, Relief Defendant, or Associated Person relating to (a) Compensation to, or for the benefit of, any Defendant, Relief Defendant, or Associated Person; or (b) distribution of revenues to, or for the benefit of, any Defendant, Relief Defendant, or Associated Person. You may exclude from production communications between You and the Miami Tribe of Oklahoma, Modoc Tribe of Oklahoma, or Santee Sioux Nation.

(Pl.'s Mot. to Compel (#691) at 10). The Lending Defendants contend that this request is improper because it "is unreasonably cumulative or duplicative," *see* FED. R. CIV. P. 26(b)(2)(C)(i), of a subsequent discovery request, which seeks,

> All Documents related to or reflecting the involvement of any individual Defendant, any corporate Defendant other than You, or any person listed in Your initial disclosures— including without limitation all emails and other Communications to, from, or copied to any such person—concerning . . . (e) Compensation or payments to any other Defendant or Relief Defendant.

(Def.'s Opp'n (#700) at 5:11–14).

The Commission asserts that "two major facial differences" distinguish these requests. (Pl.'s Reply (#706) at 8:20). First, the disputed request seeks information concerning an "Associated Person," which the subsequent request does not. (*Id*. at 9:1–2). Second, the disputed request focuses on "[a]ll Communications between You and any Defendant, Relief Defendant, or Associated Person," whereas the subsequent request is limited to "[a]ll Documents related to or reflecting the involvement of any individual Defendant, any corporate Defendant other than You, or any person listed in Your initial disclosures." (*Id*. at 9:4–7).

With the exception of the reference to an "Associated Person," the court finds the Commission's distinctions unpersuasive. The Commission's papers fail to articulate any meaningful difference between

8

(1) "[a]ll Communications between You and any Defendant, Relief Defendant [concerning compensation]" and (2) "[a]ll Documents related to or reflecting the involvement of any individual Defendant, any corporate Defendant other than You, or any person listed in Your initial disclosures [concerning compensation]." A reasonable reading of both requests indicates that the Commission wants documents regarding compensation[7] from all Defendants, nothing more. Therefore, the court limits the Commission's third dispute request under Rule 26(b)(2)(C)(i) to Associated Persons.[8]

### C.   *Requests Four & Five: Grand Jury Proceedings & Related Litigation*

Next, the Commission seeks information regarding grand jury proceedings and related litigation. These requests demand: (1) "[a]ll of Your Communications, including without limitation, all emails to, from, or copied to You, concerning any litigation or any government investigation related to the Loan Documents (including without limitation all Communications regarding this case)" and (2) "[f]or the period of January 1, 2010 to present, all documents produced by You in connection with grand jury proceedings (excluding documents produced by You in this case)." (Pl.'s Mot. to Compel (#691) at 15, 17).

These requests explicitly seek information that is "relevant to the subject matter involved in the action," rather than information that is "relevant to any party's claims or defense." *See* FED. R. CIV. P.

---

[7] This includes the "distribution of revenues." (*See* Doc. #691 at 10:1–5).

[8] Stated differently, Defendants must produce responsive documents to the following modified discovery request:

> All Communications between You and any ~~Defendant, Relief Defendant, or~~ Associated Person relating to (a) Compensation to, or for the benefit of, any ~~Defendant, Relief Defendant, or~~ Associated Person; or (b) distribution of revenues to, or for the benefit of, any ~~Defendant, Relief Defendant, or~~ Associated Person. You may exclude from production communications between You and the Miami Tribe of Oklahoma, Modoc Tribe of Oklahoma, or Santee Sioux Nation.

By stipulation of the parties, the court further limits this request to exclude transactions of $10,000 or less. (*See* Schall Decl. (#691-3) at ¶ 9).

26(b)(1). The Commission does not argue, as Rule 26 requires, that good cause exists to permit discovery on all related litigation. (*See generally* Pl.'s Mot. to Compel (#691) at 15–23); (Pl.'s Reply (#706) at 9–12). The Commission similarly made no showing that at least some of this information, like publically available court dockets and filings, cannot readily "be obtained from some other source that is more convenient, less burdensome, or less expensive," *see* FED. R. CIV. P. 26(b)(2)(C)(i), like the internet.

Rule 26(b)(2)(C) states that, "on its own, the court must limit" the extent of discovery allowed by the rules if "the burden or expense of the proposed discovery outweighs its likely benefit." These requests epitomize unduly burdensome requests. They seek "all communications" and "all documents" related to any litigation, government investigation, or grand jury proceeding. Additionally, as written, the Commission's requests disregard Rule 26(b)(1)'s requirement that discovery be limited to matters that are relevant to "any party's claim or defense." Requests, like these, which expressly seek irrelevant information are inherently undue and burdensome. *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) (citing *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335–336 (N.D. Cal. 1995)).

The Commission contends that its requests are appropriate because discovery must be allowed "unless the information has no conceivable bearing on the case." (*See* Doc. #691 at 2:15–16, 5:15). As noted above (*see supra* n. 4 at p. 3), this is incorrect and based on an outdated rule of law. In 1999, Rule 26(b)(1) provided for one form of discovery. It stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." FED. R. CIV. P. 26(b)(1) (1999).

Today, Rule 26(b)(1) provides for two forms of discovery: (1) party-controlled discovery, which concerns discovery that is relevant to claims and defenses and (2) court-controlled discovery, which

concerns discovery that is relevant to the subject matter involved in the action. *See* FED. R. CIV. P. 26(b)(1), Advisory Comm. Notes (2000). This distinction requires a party to either limit discovery requests to information that is relevant to a party's claim or defense or demonstrate good cause and seek leave of court before propounding requests, like the Commission's, which seek information without regard to the specific nature (*i.e.*, who, what, where, and when) of the parties' claims and defenses.

The Commission's insists that its request are proper because they may return relevant information. (Pl.'s Reply (#706) at 11:6–8) (stating that documents from related litigation "could be used to establish Individual Defendants' liability."). Relevance is not the *sine qua non* of a proper discovery request. As noted above, "[a] party is presumptively entitled to all information in an opposing party's control material to the action, so long as the requesting party knows how to ask for it." (*See supra* n. 5 at p.4) (citation omitted). If, as here, the requesting party does not appropriately tailor a request to "any party's claim or defense" or demonstrate "good cause" to expand discovery "to the subject matter involved in the action," then that party has not properly asked for the requested information.

However, the court does not find—as the Tucker Defendants urge—that the Commission seeks undiscoverable information. In addition to overbreadth, the Tucker Defendants contend that the Commission's requests are improper because they violate the "sanctity of grand jury" proceedings. (Def.'s Opp'n (#701) at 12). Rule 26(b)(1) limits discovery to "any nonprivileged matter." This includes certain information protected by Federal Rule of Criminal Procedure 6(e)(2), which governs grand-jury secrecy. *See United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir. 1993). Rule 6(e)(2) provides that "a matter occurring before the grand jury" may not be disclosed by grand jurors, interpreters, court reporters, those who record or transcribe testimony, an attorney for the government, personnel who assist the attorney for the government, and those who receive grand jury material pursuant to certain statutory authorizations.

11

"The rule of grand jury secrecy is not absolute." 1 C. A. WRIGHT & A. D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 106 at p. 377 (4th ed. 2008); *accord Oracle Corp. v. SAP AG*, 566 F. Supp. 2d 1010, 1012 (N.D. Cal. 2008) ("There is no blanket prohibition on discovery of documents submitted to the grand jury."). No secrecy obligation can be imposed on grand-jury witnesses. *Butterworth v. Smith*, 494 U.S. 624, 636 (1990). Where, as here, a party to a civil action seeks discovery related to grand-jury proceedings, courts in the Ninth Circuit apply a "purpose" test, which examines the reason for the document request. *See Dynavac*, 6 F.3d at 1411. If documents are "sought for their own sake," the discovery request accords with Rule 6(e). If, however, documents are sought "learn what happened before the grand jury," the discovery request violates Rule 6(e).

In *Dynavac*, *Inc.* the Ninth Circuit held:

> Rule 6(e) is intended only to protect against disclosure of what is said or takes place in the grand jury room. [I]t is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release.

6 F.3d at 1411 (internal citations, ellipses, and quotation marks omitted). In this regard, the discoverability of grand-jury documents resembles the work-product doctrine: both protect certain mental impressions and thought processes from disclosure, but not documents produced in the ordinary course of business. *See id.*; *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 598 (D. Nev. 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). Similarly, the discoverability of grand-jury documents resembles the attorney-client privilege: both protect communications (*i.e.*, "what is said or takes place"), but not the underlying facts. *Dynavac*, 6 F.3d at 1411; *LightGuard*, 281 F.R.D. at 604 ("A fact is one thing and a communication concerning that fact is an entirely different thing") (citations omitted).

12

With these considerations in mind, the court finds that the Commission's request—which seeks "all documents produced by You in connection with grand jury proceedings"—treads too close to impeding upon the sanctity of the grand jury. In *Dynavac*, the Ninth Circuit stated that disclosure was appropriate under the circumstances, in part because "the records were subpoenaed . . . without mention of the grand jury." *Dynavac*, 6 F.3d at 1414. That is not the case here. A fair reading of the Commission's request indicates that the Commission seeks documents because they were submitted to a grand jury.[9] If, by analogy, the Commission requested documents because they were submitted to (or relied upon by) an attorney, there would be no doubt that the request would violate the work-product doctrine or the attorney-client privilege.

Therefore, the parties are ordered to meet and confer to narrow the Commission's requests to comply with the (1) limits of party-controlled discovery and (2) the Ninth Circuit's decision in *Dynavac*. If the parties cannot stipulate to appropriate requests by February 9, 2015, then the Commission is granted leave to file a renewed Motion to Compel and demonstrate "good cause" for seeking discovery "relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). The Commission's renewed Motion to Compel must be filed no later than February 27, 2015, absent a showing under Local Rule 26-4.

### D.    *The Sixth Request is Moot*

The Commission's sixth discovery requested was served on LeadFlash and Black Creek. (Doc. #691 at 12). After the Commission moved to compel, the parties agreed to modify his request, leaving "no dispute" before the court. (Def.'s Opp'n (#701) at 9:8). Therefore, the Commission's Motion to Compel is denied as moot with regard to this request.

---

[9] This fact distinguishes the Commission's request from the authorities it cites. (*See* Pl.'s Mot. to Compel (#691) at 21). The Commission's request is not problematic because it contains the words "grand jury." Rather, as phrased, the Commission appears to request information for the purpose of viewing what the grand jury considered. This is prohibited under *Dynavac*, 6 F.3d at 1411.

**E.**     ***Requests Seven through Ten: Real Estate, Financial Statements, Tax Returns & Trust Information***

The Commission's remaining requests were served on the Relief Defendants (*i.e.*, Kim Tucker and Park 269, LLC). These requests seek: (1) "[d]ocuments sufficient to identify all real property owned by You, in whole or in part;" (2) "all real estate owned by You, wholly or in part, directly or indirectly, including the address, date or purchase, purchase price, and current value;" (3) "[a]ll Your Financial Statements and tax returns;" and (4) "all trusts funded by You, managed by You, or created for Your benefit, including the name of the trust, the settlor(s), the trustee(s), the beneficiary(ies), the date of creation, the assets included in the trust, and the value of the trust." (*See* Doc. #691 at 23–24). In response, the Relief Defendants move for a protective order, arguing that the Commission's requests are (1) premature, (2) moot, (3) prohibited under Rule 26(b)(2)(C)(i), and (4) privileged. (*See* Def.'s Mot. (#702) at 3–8).

The starting point of every discovery dispute is relevance. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would without the evidence; and the fact is of consequence in determining the action. Fed. R. Evid. 401 (alphanumerics omitted). However, "information need not be admissible at the trial" to be discoverable; information may be discovered if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Here, the Commission seeks copies the Relief Defendants' financial statements and tax returns as well as information regarding their real estate holdings and trusts to demonstrate, *inter alia*, that the Lending Defendants, Tucker Defendants, and Relief Defendants commingled funds. (Doc. #691 at 25:6).

There is no dispute that information regarding commingled funds and assets is relevant to the Commission's common-enterprise claim. (*See generally* Doc. #702 at 3–8); *Network Servs. Depot, Inc.*, 617 F.3d at 1142–43 (stating that entities constitute a common enterprise when assets are revenues are

14

pooled). Rather, the Relief Defendants' first basis for resisting discovery is that the Commission's discovery requests are premature because judgment has not been entered and, therefore, the Relief Defendants' "ability to pay restitution" is not yet in controversy. (Doc. #702 at 5:8–9). This argument is unpersuasive. Rule 26(b)(1) permits the Commission to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Whether the Commission's motive for obtaining discovery is to assess the Relief Defendants' ability to pay restitution, as the Relief Defendants argue, or to support the Commissions common-enterprise claims, as the Commission asserts, is inconsequential. A party's motive for requesting discovery is generally irrelevant, unless the requesting party's aim is to delay, embarrass or harass the person from whom discovery is sought. *See* FED. R. CIV. P. 26(c)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n. 17 (1978) (citation omitted).[10]

The Relief Defendants' second basis for resisting discovery is that the Commission's request for Financial Statements is moot. They contend that Kim Tucker does not maintain formal financial statements, but nonetheless produced her W-2 forms. (Doc. #702 at 7:5–6). Additionally, Kim Tucker asserts that the Commission already obtained her bank records and, insofar as the Commission's request for Financial Records can be construed as a request for bank records, the Commission's request is duplicative under Rule 26(b)(1)(C)(i). (*Id.* at 7:13–17). The Commission's brief reply, (*see* Doc. #706 at 18:21–19:1), did not refute these arguments. The Commission merely stated that Financial Statements, as defined by its document requests, are not limited to corporate financial statements. Therefore, the court denies the Commission's Motion to Compel with regard to the Relief Defendants' financial statements. If

---

[10] The Relief Defendants also briefly argue that the Commission's requests are irrelevant with regard to Kim Tucker because "[h]er relationship to this matter is only through her marriage to [Defendant] Scott Tucker" and the couple kept their finances separate by filing separate tax returns. (Doc. #702 at 8:3–6). This argument is unpersuasive. Property interests are a matter of state law. Accordingly, Kim Tucker's property interests depends on, *inter alia*, the particular rules of the jurisdiction in which she and/or her husband acquired and maintained their various property rights.

15

none exist, then none can be produced.[11]

The next discovery dispute concerns information regarding the Relief Defendants' real estate holdings. (*See* Doc. #702 at 7:18). The Relief Defendants argue that "this information—including information which could identify a chain of title—is already available in the public record" and, therefore, "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In reply, the Commission argues that the Relief Defendants should be compelled to respond to its discovery requests because the Commission does not know "which jurisdictions to search and the names of the entities in whose names the properties are held." (Doc. #706 at 19:5–6).

Both parties' arguments are meritorious. Rule 26(b)(1) entitles the Commission to obtain discovery regarding the Relief Defendants' real estate holdings. Similarly, Rule 26(b)(2)(C)(i) protects the Relief Defendants from producing information that may be obtained from "some other source that is more convenient, less burdensome, or less expensive." Therefore, with regard to the real estate requests, the court grants both motions in part, denies both motions in part, and orders the Relief Defendants to provide the Commission with a list of names in which the Relief Defendants hold real estate along with the corresponding jurisdiction (*i.e.*, country, state, county, and city) where the real estate is located by February 9, 2015.

The next discovery dispute concerns the Commission's request for the Relief Defendants' tax returns. The Relief Defendants assert that tax returns are privileged and "generally not discoverable." (Doc. #702 at 8:7). This is incorrect. Tax returns are not privileged under federal law. S*ee St. Regis Paper Co. v. United States*, 368 U.S. 208, 218–19 (1961) (tax returns are generally discoverable under federal

---

[11] Therefore, the Relief Defendants' Motion for a Protective Order is denied as moot with regard to Financial Statements.

law where they are in the possession of the taxpayer and not the government); *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497 (N.D. Cal. 2003) (citing *Heathman v. District Court*, 503 F.2d 1032, 1035) (9th Cir. 1974); *Playboy Enter., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1056 (9th Cir. 1999) (stating, "[u]nder federal law, tax returns are not privileged [and] . . . are generally discoverable where necessary in private civil litigation)).

However, courts recognize a concomitant public policy against unnecessary public disclosure. *Aliotti*, 217 F.R.D. at 497 (citing *Premium Serv.*, 511 F.2d at 229). In light of this policy, the *Aliotti* court concluded tax returns should be only be ordered produced if they are relevant and where there is a compelling need because the information sought is otherwise unavailable. *Id*. at 498 (citation omitted). The District of Nevada has adopted *Aliotti's* holding. *See, e.g*., *Pacquiao v. Mayweather*, No. 2:09–cv–02448–LRH–RJJ, 2012 WL 4364074, at *2 (D. Nev. Sept. 21, 2012) (Johnston, M.J.); *KeyBank Nat'l Ass'n v. Nielson*, 2011 WL 2036975, at *3 (D. Nev. May 24, 2011) (Leavitt, M.J.); *Taser Intern., Inc. v. Stinger Sys., Inc*., No. 2:09–cv–00289–KJD–PAL, 2010 WL 5070929, at *4 (D. Nev. Dec. 6, 2010) (Leen, M.J.).

Here, the Commission failed to demonstrate "a compelling need" and that "the information sought is otherwise unavailable." *See Aliotti*, 217 F.R.D. at 498. Therefore, the Commission's Motion to Compel is denied with regard to the Relief Defendants' tax returns. Because tax returns are discoverable upon an appropriate showing, the court also denies the Relief Defendants' Motion for a Protective Order with regard to the tax returns. The Commission is granted leave to file a renewed Motion to Compel the Relief Defendants' tax returns. The motion must be filed no later than February 27, 2015, absent an appropriate showing under Local Rule 26-4.

This brings the court to the final issue: the Commission's Motion to Compel seeks an order requiring the Relief Defendants to disclosure certain trust information. The Relief Defendants' opposition

and Counter Motion for a Protective Order did not oppose this request. (*See generally* Doc. #702 at 3–8). The party resisting discovery carries a "heavy burden" of demonstrating why discovery should be denied. *Blankenship*, 519 F.2d at 429. By failing to oppose the Commission's request, the Relief Defendants failed to carry their burden with regard to the trusts. This information must be disclosed.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the Federal Trade Commission's Motion to Compel (#691) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Federal Trade Commission's Motion to Compel is GRANTED with regard to requests one and two. (*See supra* § A at pp. 5–7).

IT IS FURTHER ORDERED that the Federal Trade Commission's Motion to Compel is GRANTED as modified with regard to the third discovery request. (*See supra* § B at pp. 8–9).

IT IS FURTHER ORDERED that the parties are ordered to MEET AND CONFER to narrow the Commission's fourth and fifth requests to comply with the (1) limits of party-controlled discovery and (2) the Ninth Circuit's decision in *Dynavac.* If the parties cannot stipulate to appropriate requests by February 9, 2015, then the Commission is granted leave to file a renewed Motion to Compel and demonstrate "good cause" for seeking discovery "relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). The Commission's renewed Motion to Compel must be filed no later than February 27, 2015, absent an appropriate showing under Local Rule 26-4. (*See supra* § C at pp. 9–13).

IT IS FURTHER ORDERED that the Federal Trade Commission's Motion to Compel is DENIED as moot with regard to the sixth request. (*See supra* § D at p. 13).

IT IS ORDERED that the Federal Trade Commission's Motion to Compel (#691) is GRANTED in part and DENIED in part with regard to requests seven through ten. (*See supra* § E at pp. 14–18). The Relief Defendants must produce a list of names in which the Relief Defendants hold real estate along with

18

the corresponding jurisdiction (*i.e.*, country, state, county, and city) where their real estate is located by February 9, 2015. The Commission is granted leave to file a renewed Motion to Compel the Relief Defendants' tax returns. The motion must be filed no later than February 27, 2015, absent an appropriate showing under Local Rule 26-4.

IT IS FURTHER ORDERED that the Relief Defendants' Counter Motion for a Protective Order (#703) is GRANTED in part and DENIED in part, as discussed above.

IT IS FURTHER ORDERED that the Relief Defendants' request for oral argument is DENIED. *See* LR 78-2.

IT IS FURTHER ORDERED that the Lending Defendants' Motion for Leave to File a Sur-Reply (#708) is DENIED.

IT IS FURTHER ORDERED that Federal Trade Commission's Notice of Correct Image (#694) is STRICKEN.

IT IS SO ORDERED.

DATED this 14th day of January, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE