# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### ***

FEDERAL TRADE COMMISSION,

                Plaintiff,

vs.

AMG SERVICES, INC., *et al.*,

                Defendants.

Case No. 2:12–cv–536–GMN–VCF

**<u>ORDER</u>**

MOTION TO COMPEL (#735)
MOTION FOR PROTECTIVE ORDER (#769)
MOTION TO COMPEL (#777)
MOTION TO COMPEL (#788)

This matter involves the Federal Trade Commission's civil-enforcement action regarding the offer and sale of "high-fee, short-term payday loans." (First Am. Compl. (#386) at ¶ 1 [1]). Four discovery motions are before the court. For the reasons stated below, they are granted.

## BACKGROUND

Between 2002 and December 27, 2012, Defendants sold "high-fee, short-term payday loans" through tribal-chartered corporations. (First Amend. Compl. (#386) at ¶¶ 1, 27); (Prelim. Injunc. #296). The Federal Trade Commission commenced this action because the sale of these loans allegedly violated section 5 of the Federal Trade Commission Act of 1914, 15 § U.S.C. 45(a)(1), the Truth in Lending Act of 1968, 15 U.S.C. § 1601(a), and Regulation Z, 12 C.F.R. § 1026(a). The court agreed. On March 7, 2014, the Honorable Gloria M. Navarro, Chief U.S. District Judge, determined that the Federal Trade Commission Act applies to the tribal-chartered corporations and entered summary judgment in the Commission's favor. (Doc. #559).

---

[1] Parenthetical citations refer to the court's docket.

The parties are now conducting discovery in connection with the relief phase of this action. (*See* Order (#296) at 10) (bifurcating the action into a liability phase and a relief phase). Four motions are before the court: (1) the Commissions' Motion to Compel (#735); (2) the Commission's Motion for a Protective Order (#769); (3) the Tucker Defendants' Motion to Compel (#777); and (4) the Commission's Motion to Compel (#788).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. It provides for two forms of discovery: party-controlled discovery and court-controlled discovery. The first sentence of Rule 26(b)(1) governs party-controlled discovery. It states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The second sentence of Rule 26(b)(1) governs court-controlled discovery. It states that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id*. While parties are expected to conduct party-controlled discovery independently, and only request judicial intervention to end discovery disputes, court-controlled discovery begins with judicial intervention.[2]

These provisions provide for "[l]iberal discovery." *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery serves "the integrity and fairness of the judicial process by promoting the search for the truth," *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), and assisting "the preparation

---

[2] In 1999, Rule 26(b)(1) provided for one form of discovery. It stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." FED. R. CIV. P. 26(b)(1) (1999). The Rule was amended in 2000 to curb overbroad discovery. *See* FED. R. CIV. P. 26(b)(1), Advisory Comm. Notes (2000). To prevent overbroad discovery, a party can no longer independently request information that is "relevant to the subject matter involved in the action" without showing "good cause" and obtaining leave of court. FED. R. CIV. P. 26(b)(1). The FTC's assertion that discovery must be allowed "unless the information has no conceivable bearing on the case," (*see* Doc. #691 at 2), stems from a rescinded rule of law. *See Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) (citing 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2008 (2d ed. 1983 & Supp. 1990)).

and trial, or settlement, of litigated disputes." *Rhinehart*, 467 U.S. at 34. Indeed, it permits parties to "fish" for evidence, provided that they cast a "reasonably calculated" lure. FED. R. CIV. P. 26(b), Advisory Comm. Notes (1946) (citation omitted) ("[T]he Rules . . . permit 'fishing' for evidence as they should."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").[3]

Discovery, however, has limits. The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962). This directive is echoed by Rule 26(b)(2)(C), under which the court, "on its own, must" limit the frequency and extent of discovery if the discovery sought is "unreasonably cumulative or duplicative," can be "obtained from some other source that is more convenient, less burdensome, or less expensive," is untimely, or if "the burden or expense of the proposed discovery outweighs its likely benefit."

If, as here, a party resists discovery, the requesting party may file a motion to compel. *See* FED. R. CIV. P. 37(a)(1). A facially valid motion to compel has two components. First, the motion must certify that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery. FED. R. CIV. P. 37(a)(1); LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). Second, the motion must include a threshold showing that the information in controversy is relevant and discoverable under Rule 26. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)).

---

[3] *See also* Robert T. Reagan & Federal Judicial Center, *Confidential Discovery: A Pocket Guide on Protective Orders* at 1–2 (2012) ("A party is presumptively entitled to all information in an opposing party's control material to the action, so long as the requesting party knows how to ask for it.").

If the requesting party makes these showings, the resisting party carries a "heavy burden" of demonstrating why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must specifically detail the reasons why each request is improper. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472–73 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *Id.*

## DISCUSSION

Four motions are before the court: (1) the Commissions' Motion to Compel; (2) the Commission's Motion for a Protective Order; (3) the Tucker Defendants' Motion to Compel; and (4) the Commission's Motion to Compel. Each is addressed below.

## I.    The Commission's Motion to Compel (#735) is Granted

The Commission moves to compel Defendants to produce five categories of documents: (1) documents identifying Defendant Level 5 Motorsports' sponsors and compensation received from those sponsors; (2) documents identifying Nonparty BA Services' employees and transactions between BA Services and Defendant Scott Tucker; (3) specific documents identifying payments from the Lending Defendants to the Tucker Defendants; (4) documents produced to grand juries; and (5) Kim Tucker's tax returns. Each category of documents is addressed below.

### A.    *The First Two Categories of Documents*

The Commission's motion is granted with regard to the first two categories of documents. It argues that these requests are reasonably calculated to lead to the discovery of admissible evidence that may tend to show the existence of a common enterprise. The court agrees. "[E]ntities constitute a common enterprise when they exhibit either vertical or horizontal commonality qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *Fed. Trade*

*Comm'n v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142–43 (9th Cir. 2010). To determine whether a common enterprise exists, courts consider various factors including common control, the sharing of office space and officers, whether business is transacted through a maze of interrelated companies, the commingling of corporate funds and failure to maintain separation of companies, unified advertising, and evidence that reveals that no real distinction exists between the corporate defendants. *Fed. Trade Comm'n. v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1216 (D. Nev. 2011) *aff'd in part, vacated on other grounds by* 763 F.3d 1094 (9th Cir. 2014). The Commission's requests are directly relevant to these factors.

Nonetheless, Defendants contend the Commission is not entitled to discovery regarding BA Services because the Commission has not stated a claim against BA Services alleging that that it is part of a common enterprise or scheme. This argument is unavailing. The Commission propounded discovery on BA Services because it asserts that the Lending Defendants and the Tucker Defendants were engaged in a common enterprise in which BA Services was used as an intermediary and/or holding company. *See* (Doc. #735 at 6). This renders the Commission's request relevant to its common-enterprise claim against the Lending Defendants and Tucker Defendants. *See* Fed. R. Civ. P. 26(b)(1) (permitting a party to propound discovery requests that are "reasonably calculated" to lead to information that is relevant to a claim or defense); *see also Grant Connect*, 827 F. Supp. 2d at 1216 ("whether business is transacted through a maze of interrelated companies"). The fact that BA Services is a nonparty is irrelevant. A party may propound document subpoenas and deposition notices on a third party.

The Commission's request regarding Level 5 Motorsports' sponsors and compensation is also reasonably calculated to lead to the discovery of admissible evidence. The Commission seeks discovery regarding Level 5 Motorsports' sponsors because it asserts that "Scott Tucker wrote more than 1,000 checks, totaling tens of millions of dollars, from the Lending Defendants' bank accounts to Level 5; most of these checks simply recite the world 'Sponsorship' on their memo line." (Doc. #735 at 3). As stated by

the Ninth Circuit, "entities constitute a common enterprise when they exhibit . . . a showing of strongly interdependent economic interests or the pooling of assets and revenues," which may be demonstrated by "the commingling of corporate funds and failure to maintain separation of companies [] and evidence that reveals that no real distinction exists between the corporate defendants." *Grant Connect*, 827 F. Supp. 2d at 1216. The Commission seeks discovery on Level 5 Motorsports' sponsors in order to determine, *inter alia*, whether Scott Tucker and the Lending Defendants unlawfully pooled their assets and commingled their funds. Defendants' assertions that the requests seek irrelevant information fails as a matter of law.

The court is similarly unpersuaded by Defendants' arguments that the Commission's request is overbroad or cumulative of previously produced evidence. The Commission's merely seeks "[d]ocuments **sufficient** to identify your sponsors" and "compensation you received from any sponsor." *See* (Doc. #755 at 10) (emphasis added). The Commission is not seeking a complete audit, merely a framework for understanding the various transactions between Scott Tucker, the Lending Defendants, and its sponsors. Therefore, the Commission's Motion to Compel is granted with regard to the first two categories of documents.

## B. *The Third Category of Documents*

The parties next dispute whether Defendants should produce specific documents identifying payments from the Lending Defendants to the Tucker Defendants. Defendants assert that the Commission previously received "more than fifty-thousand pages" from banks identifying payments from the Lending Defendants to the Tucker Defendants. When the Commission propounded discovery requests on Defendants seeking similar information, Defendants responded by listing the thousands of pages documents that were produced by the banks. Now, Defendants contend that the Commission's request is improper under Rule 26(b)(2)(C)(i) and that Defendants complied with the request under Rule 33(d). The court disagrees.

Rule 26(b)(2)(C)(i) states that "the court must limit the frequency or extent of discovery . . . if it determines that the discovery sought is unreasonably cumulative or duplicative." Defendants rely on this provision as a basis for resisting discovery. However, Defendants already elected to answer the Commission's interrogatory. This renders Rule 26(b)(2)(C)(i) irrelevant and the court finds that Defendants waived Rule 26(b)(2)(C)(i)'s protections by answering. The only question is whether Defendants' properly answered the Commission's interrogatory. They did not.

Rule 33(d) states that a party may respond to an interrogatory by "specifying the records that must be reviewed, in sufficient detail to enable to interrogating party to locate and identify them as readily as the responding party could." The rule permits a party to "answer an interrogatory by specifying records from which the answers may be obtained and by making the records available for inspection." *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983) (citing former Rule 33(c) and 1980 Advisory Committee's Note). When this business records option was revised in 1980, the Advisory Committee noted that when a responding party directs an interrogating party to a "mass of business records," it is an abuse of Rule 33(d). Fed. R. Civ. P. 33, Ad. Comm. Notes (1980). The proper way to use Rule 33(d) is to offer records in a manner that permits the same direct and economical access that is available to the responding party. *Id*. Here, Defendants listed thousands of pages of documents that were produced by third party banks when answering the Commission's interrogatory. This abused Rule 33. Therefore, the Commission's Motion to Compel is granted.

### C.   *The Fourth Category of Documents*

The fourth category of documents concerns documents produced to grand juries. On January 14, 2015, the court denied the Commission's Motion to Compel related to grand jury proceedings against the Defendants because the Commission (1) failed to demonstrate good cause for seeking discovery related

to the subject matter of the action and (2) propounded a discovery request that risked impeding on the sanctity of the grand jury.

As previously stated, "[t]he rule of grand jury secrecy is not absolute." 1 C. A. WRIGHT & A. D. LEIPOLD, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 106 at p. 377 (4th ed. 2008); *accord Oracle Corp. v. SAP AG*, 566 F. Supp. 2d 1010, 1012 (N.D. Cal. 2008) ("There is no blanket prohibition on discovery of documents submitted to the grand jury."). No secrecy obligation can be imposed on grand-jury witnesses. *Butterworth v. Smith*, 494 U.S. 624, 636 (1990). Where, as here, a party to a civil action seeks discovery related to grand-jury proceedings, courts in the Ninth Circuit apply a "purpose" test, which examines the reason for the document request. *See Dynavac*, 6 F.3d at 1411. If documents are "sought for their own sake," the discovery request accords with Federal Rule of Criminal Procedure 6(e). If, however, documents are sought to "learn what happened before the grand jury," the discovery request violates Rule 6(e).

In *Dynavac, Inc.* the Ninth Circuit held:

Rule 6(e) is intended only to protect against disclosure of what is said or takes place in the grand jury room. [I]t is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release.

6 F.3d at 1411 (internal citations, ellipses, and quotation marks omitted). In this regard, the discoverability of grand-jury documents resembles the work-product doctrine: both protect certain mental impressions and thought processes from disclosure, but not documents produced in the ordinary course of business. *See id.*; *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 598 (D. Nev. 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). Similarly, the discoverability of grand-jury documents resembles the attorney-client privilege: both protect communications (*i.e.*, "what is said or takes place"), but not the

underlying facts. *Dynavac*, 6 F.3d at 1411; *LightGuard*, 281 F.R.D. at 604 ("A fact is one thing and a communication concerning that fact is an entirely different thing") (citations omitted).

In its previous Motion to Compel, the Commission sought "all documents produced by You in connection with grand jury proceedings." The Commission subsequently modified its request, which now seeks the following:

> For the period January 1, 2010 to present, documents produced by You in connection with any grand jury proceeding (excluding documents produced by You in this case) concerning (i) the receipt and use of funds generated from defendants' lending operations, (ii) transfers of funds between or among defendants, (iii) Scott Tucker's role with, or control of, any Defendant, (iv) or Blaine Tucker's role with, or control of, any Defendant.

(Doc. #735 at 25). The court finds that this request seeks information that is relevant to the Commission's claims without intruding into the sanctity of the grand jury by seeking all documents Defendants produced to it.

Defendants argue that the Commission is improperly seeking this information because it was submitted to a grand jury. The court disagrees. The request is limited to the Commission's claims against the Defendants. This complies with Rule 26(b)(1) and, therefore, presents no risk of disclosing the grand jury's mental impressions and thought processes. *See Dynavac*, 6 F.3d at 1411; *LightGuard*, 281 F.R.D. at 604. Therefore, the Commission's Motion to Compel is granted with regard to the fourth category of documents.

### D.   *The Fifth Category of Documents*

The fifth category of documents concerns Kim Tucker's tax returns. Tax returns are not privileged under federal law. *See St. Regis Paper Co. v. United States*, 368 U.S. 208, 218–19 (1961) (tax returns are generally discoverable under federal law where they are in the possession of the taxpayer and not the government); *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497 (N.D. Cal. 2003) (citing *Heathman v. District Court*, 503 F.2d 1032, 1035 (9th Cir. 1974); *Playboy Enter., Inc. v. Welles*, 60 F. Supp. 2d

9

1050, 1056 (9th Cir. 1999) (stating, "[u]nder federal law, tax returns are not privileged [and] . . . are generally discoverable where necessary in private civil litigation)).

Courts recognize a concomitant public policy against unnecessary public disclosure. *Aliotti*, 217 F.R.D. at 497 (citing *Premium Serv.*, 511 F.2d at 229). In light of this policy, the *Aliotti* court concluded tax returns should be only be ordered produced if they are relevant and where there is a compelling need because the information sought is otherwise unavailable. *Id*. at 498 (citation omitted). The District of Nevada has adopted *Aliotti's* holding. *See, e.g.*, *Pacquiao v. Mayweather*, No. 2:09–cv–02448–LRH–RJJ, 2012 WL 4364074, at *2 (D. Nev. Sept. 21, 2012) (Johnston, M.J.); *KeyBank Nat'l Ass'n v. Nielson*, 2011 WL 2036975, at *3 (D. Nev. May 24, 2011) (Leavitt, M.J.); *Taser Intern., Inc. v. Stinger Sys., Inc.*, No. 2:09–cv–00289–KJD–PAL, 2010 WL 5070929, at *4 (D. Nev. Dec. 6, 2010) (Leen, M.J.).

On January 24, 2015, the court denied the Commission's request to compel Kim Tucker to produce her tax returns because it failed to show "a compelling need" and that "the information sought is otherwise unavailable." The court granted the Commission leave to renew its Motion to Compel and make an appropriate showing. The court finds that the Commission has now satisfied its burden. It seeks Kim Tucker's tax returns because she is "refusing to specify whether she earned any of the substantial payments made to her by the other corporate defendants." (Doc. #735 at 27). Without the tax returns, the Commission will be unable to obtain discovery that is relevant to its claim that the Tucker Defendants are party of a common enterprise with the Lending Defendants. *Id*. at 29 (stating that the Commission has unsuccessfully attempted to obtain this information by other means).

Defendants' arguments in opposition fail as a matter of law. They assert that the Commission's motion should be denied because the Commission failed to meet and confer before filings its motion. (Doc. #753 at 6). However, the court explicitly granted the Commission leave to file a renewed motion

10

for the purpose of satisfying its burden under *Aliotti*. Defendants also assert that the Commission's motion

applies the wrong legal standard by presenting a motion for reconsideration as a motion to compel. (*Id*. at

8). This is incorrect. The court granted the Commission leave to file a renewed motion to compel.

The court is also unpersuaded that by Defendants' assertion that the Commission failed to

demonstrate a compelling need or that the discovery request is improper because Kim Tucker is a Relief

Defendant and not a Defendant. As stated above, the Commission's complaint alleges that the Tucker

Defendants and Lending Defendants engaged in a common enterprise. In order to determine whether the

Tucker Defendants unlawfully comingled assets with the Lending Defendants, the Commission may seek

discovery regarding Kim Tucker's income. Therefore, the Commission's Motion to Compel is granted

with regard to Kim Tucker's tax returns.

## II.    The Commission's Motion for a Protective Order (#769) is Granted in Part and Denied in Part

The parties' filings present a second issue: whether the court should enter a protective order and

prevent the Defendant from taking the Commission's Rule 30(b)(6) deposition on seventeen topics. The

court begins with the governing law.

### A.    *Legal Standard*

Federal Rule of Civil Procedure 30(b)(6) governs subpoenas directed to organizations. In pertinent

part, Rule 30(b)(6) provides, "[t]he named organization must [] designate one or more officers . . . who

consent to testify on its behalf. [. . .] The person designated must testify about information known or

reasonably available to the organization." FED. R. CIV. P. 30(b)(6).

This provision imposes a duty on the corporation to educate its designee. 8A WRIGHT

& MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2103 (3d ed.). The duty to educate encompasses

"all information reasonably available to the responding organization." *Id.*; *see also United States ex rel*

*Fago v. M&T Mortgage Corp.*, 235 F.R.D. 11, 25 (D. D.C. 2006) ("Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide."); *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D. D.C. 2003) (corporation is obligated to produce one or more Rule 30(b)(6) witnesses who are thoroughly educated about the noticed deposition topics and facts known to the corporation or its counsel)).

It is well established that Rule 30(b)(6)'s duty to educate "impose[s] considerable burdens." 8A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2103 (3d ed.). For instance, a Rule 30(b)(6) designee cannot "take the position that its documents state the company's position." *Great Am. Ins. Co. of New York*, 251 F.R.D. at 539 (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. at 174). Similarly, a Rule 30(b)(6) designee's failure to provide knowledgeable answers is "tantamount to nonappearance," which warrants sanctions. *Great Am. Ins. Co. of New York*, 251 F.R.D. at 543 ("The court finds Mr. Musso's inability to provide knowledgeable answers about the majority of the noticed deposition topics was tantamount to a nonappearance, and warrants sanctions.").

The reasons for this are twofold. First, the purpose of Rule 30(b)(6) is to "streamline" discovery by giving the corporation the benefit of choosing and preparing its deponent. *Id.* at 539; *see also* FED. R. CIV. P. 30(b)(6), Ad. Comm. Notes (1970). Second, it curbs "bandying," whereby various corporate officers are deposed "but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to [the organization itself]." *Id.* (citing *Haney v. Woodward & Lothrop, Inc.*, 330 F.2d 940, 944 (4th Cir. 1964). Rule 30(b)(6), therefore, forces someone to come to the table who can speak knowledgably on behalf of the corporation.

### B.    *Analysis*

First, the Commission argues that a protective order should be entered because Defendants seek discovery in connection with defenses—(*viz.*, rulemaking, equitable considerations, laches, and estoppel)—that fail as a matter of law. *See* (Doc. #769 at 6–12); (Doc. #774 at 3). This argument fails as a matter of law. A party may not resist discovery by challenging the merits of a claim or defense. *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2257–58 (2014). Discovery exists to determine if a claim or defense has merit; discovery does not exist to adjudicate the merits of claims and defenses that have not yet been substantiated.

Second, the Commission argues that a protective order should be entered because the information Defendants seek is either publically available or privileged. These arguments also fail as a matter of law. A party cannot resist sitting for a Rule 30(b)(6) deposition by directing the deposing party to documents. *Great Am. Ins. Co. of New York*, 251 F.R.D. at 539 (citing *In re Vitamins Antitrust Litig.*, 216 F .R.D. at 174). Rule 26(d) permits the requesting party to choose its means and methods of discovery. *See* Fed. R. Civ. P. 26(d)(2) ("[M]ethods of discovery may be used in any sequence."); *Equal Emp't Opportunity Comm'n v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 433 (D. Nev. 2006). Nor may a party resist a deposition by asserting that the deposition will elicit privileged testimony. Such an objection is not ripe for review. The proper procedure to permit the requesting party to ask questions and object if a specific question intrudes upon a particular privilege.

Third, the Commission's assertion that topics seven through fourteen seek irrelevant information because relate to other FTC investigations is unpersuasive. Rule 26(b)(1) permits a party to obtain discovery that is relevant to the subject matter involved in the action.[4] It also permits a party to obtain

---

[4] Absent Congressional action to the contrary, this will not be the case after December 1, 2015.

13

information that is relevant to any party's defense. *See* Fed. R. Civ. P. 26(b)(1). Here, Defendants assert that the Commission's claims are barred by rulemaking and *ad hoc* prosecution of a handful of companies. *See* (Doc. #774 at 10). This defense renders topics seven through fifteen discoverable because those topics concern the Commission's activities with other payday lenders and the date the Commission began investigating Defendants. (*Id.* at 3).

Nonetheless, the court reaches a different conclusion with regard to topics one through six and sixteen. On balance, the court finds that these topics seek irrelevant information. Topics one through six address the Commission's negative option rule. The negative option rule governs "goods and merchandise," not financial instruments. *See* 16 C.F.R. § 425.1. Because the subject matter of the Commission's complaint concerns financial instruments, and not goods or merchandise, the negative option rule is irrelevant. Therefore, the Commission's Motion for a Protective Order is granted with regard to topics one through six.

Similarly, the court finds that topic sixteen seeks irrelevant information. Topic sixteen addresses Operation Chokepoint, which was an investigation by the Department of Justice, FDIC, and FTC into the short-term lending industry. This topic explicitly seeks information that is "relevant to the subject matter involved in the action," rather than information that is "relevant to any party's claims or defense." *See* Fed. R. Civ. P. 26(b)(1). Defendants to not argue, as Rule 26 requires, that good cause exists to permit discovery on Operation Chokepoint. And the court's review of the parties' filings and papers demonstrates that conducting discovery on Operation Chokepoint would be disproportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Therefore, the Commission's Motion for a Protective Order is denied with regard to topics 7–15 and granted with regard to topics 1 –6 and 16.

### III.    The Tucker Defendants' Motion to Compel (#777) is Granted in Part and Denied in Part

The parties' filings present a third dispute: whether the Commission should be compelled to respond to eight interrogatories, nine requests for production of documents, and forty-two requests for admissions, which the Tucker Defendants propounded in connection with three affirmative defenses. (Doc. #777 at 1). The court begins with the governing law.

As discussed above, Rule 26 provides for liberal discovery and permits parties to "fish" for evidence. *Rhinehart*, 467 U.S. at 34; Fed. R. Civ. P. 26(b), Advisory Comm. Notes (1946) (citation omitted). If, as here, a party resists discovery, the requesting party carries a "heavy burden" of demonstrating why discovery should be denied. *Blankenship*, 519 F.2d at 429. The resisting party must specifically detail the reasons why each request is improper. *Beckman Indus.*, 966 F.2d at 472–73. Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *Id.*

After reviewing the parties' papers, the court finds that the Commission failed to satisfy its burden for six reasons. First, the court overrules the Commission's general objections to the Tucker Defendants' discovery requests. General objections are improper as a matter of law. *See Beckman Indus.*, 966 F.2d at 472–73 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (citation omitted) ("To justify a protective order, one of Rule 26(c)(1)'s enumerated harms must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'").

Second, the court overrules the Commission's objections to the Tucker Defendants' sixth interrogatory, which asks the Commission to "[i]dentify all actions or conduct personally undertaken by Scott Tucker or Blaine Tucker." (Doc. #777 at 4). The Commission first contends that the interrogatory is ambiguous because it is unclear whether "personally undertaken" refers to actions the Tuckers took in

15

their personal capacity or capacity as an employee of a Lending Defendant. (Doc. #779 at 4). The Commission's argument is unavailing. It concedes that it already disclosed what actions the Tuckers took as employees of the Lending Defendants. Therefore, the Commission is ordered to responded to the interrogatory and identify all actions or conduct personally undertaken by Scott Tucker or Blaine Tucker in their personal capacity.

The court is also unpersuaded that the sixth interrogatory is overbroad. The Commission asserts that the interrogatory's scope is improper because it requests an answer that relates to the entire case. This argument fails as a matter of law. Rule 33(a)(2) states that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." FED. R. CIV. P. 33(a)(3). Because this action is in the relief phase, it is critical for the parties to identify which actions each defendant did or did not take so the court may determine each party's individual liability.

Third, as discussed above, the Commission's assertion that discovery should be denied with regard to meritless defenses fails as a matter of law. A party may not resist discovery by challenging the merits of a claim or defense. *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2257–58 (2014). Discovery exists to determine if a claim or defense has merit; discovery does not exist to adjudicate the merits of claims and defenses before the parties have had an opportunity to obtain relevant discovery.[5]

The court is similarly unpersuaded by the Commission's argument that discovery should be denied because some of the Defendants' affirmative defense are unavailable under the circumstances. Entertaining these arguments would require the court to make a premature determination of the merits of

---

[5] However, the court limits discovery to prevent the parties from obtaining information regarding the negative option rule. As discussed above, this rule is irrelevant to the subject matter involved in this action. All discovery requests related to the negative option rule is irrelevant. This includes, but is not limited to, Interrogatories 14 and 15 and Requests for Production of Documents 11–15.

16

the parties' claim and defenses. If an affirmative defense had no possible relation or logical connection to the subject matter of the controversy, then it would be appropriate for the court to limit discovery on that affirmative defense under Rule 26. Here, however, the court has already determined that the Commission failed to show that Defendants' affirmative defenses have no possible relation or logical connection to the subject matter of the controversy. *See Fed. Trade Comm'n v. AMG Servs., Inc.*, No. 2:12–cv–536–GMN–VCF, 2014 WL 5454170, at *9 (D. Nev. Oct. 27, 2014) (denying the Commission's motion to strike Defendants' 142 affirmative defenses). The court will not reconsider that ruling here.

Fourth, the court is also unpersuaded by the Commission's assertion that Defendants' discovery requests seek irrelevant information because there are no facts to support the defense. For instance, the Commission asserts,

> To show a sudden change in direction [under the rulemaking defense], Defendants must show they relied on some publically-available prior policy legitimizing their activities, which was later reversed. No such policy exists here. Similarly, to show a circumvention of the APA, Defendants must show that the FTC used adjudication to alter existing legal requirements in a manner conflicting with existing regulations or enacting proposals that were in a rulemaking. No such alteration or congruent rulemaking exists here.

(Doc. #779 at 11). If the Commission lacks facts—(i.e., if there is no policy and was no alteration or congruent rulemaking)—then it must respond to Defendants' discovery requests by stating that no responsive information exists.

Fifth, the court is unpersuaded by the Commission's argument that a privilege log is not required when a party asserts that documents are both irrelevant and privileged. *See* (Doc. #779 at 19) ("Defendants' argument that the FTC has inexplicably and inexcusably not produced a privilege log and attestation presumes that their requests for internal documents concerning unrelated rules and for information regarding other investigations of payday lenders are relevant in the first place."). Whether documents are relevant is determined under Rule 26(b)(1)'s standard. Whether documents are privileged

17

is determined under a separate standard. If a party asserts a privilege, that party bears the burden of showing that the privilege applies to the documents in question. *See LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 597 (D. Nev. 2012).

Here, the Commission objected to the Tucker Defendants' discovery requests by asserting that the information sought was both irrelevant and privileged. However, the Commission failed to produce a privilege log. Because the court rejects the majority of the Commission's relevancy arguments, the Commission must produce a privileges log.[6] The Commission is ordered to produce a privilege log by October 1, 2015. The court declines to entertain the parties' arguments regarding privileges until the Commission has defined the universe of documents that are allegedly protected from disclosure by the privileges it asserts.

Sixth, the court is unpersuaded by the Commission's argument that it property answered the Tucker Defendants' requests for admissions. Rule 36(a)(4) states, "[i]f a matter is not admitted, the answer must specifically deny it **or** state in detail why the answering party cannot truthfully admit or deny it." FED. R. CIV. P. 36(a)(4) (emphasis added). Here, the Commission answered the Tucker Defendants' requests for admissions by stating it "has made a reasonable inquiry and the information it knowns or can readily obtain is insufficient to enable it to admit or deny this request. To the extent that a response is required at this time, the FTC denies this request." *See* (Doc. #777-4 at 6).

This response is improper. A party may not both deny a request for admission and state that it lacks insufficient information to deny a request for admission. *See* FED. R. CIV. P. 36(a)(4). The rule is written in the disjunctive and provides that a party's statement "in detail why the answering party cannot truthfully

---

[6] The court recognizes that many of the Tucker Defendants' discovery requests are broad; however, the court does not find, as the Commission insists, that the requests are unreasonably overbroad in light of the needs of this case and the amount in controversy. *See* FED. R. CIV. P. 26(b)(2)(C).

18

admit or deny" the request for admission is a response to a request for admission. *See id*. Therefore, the Tucker Defendants' Motion to Compel is granted with regard to these requests. The Commission is ordered amend is answers by October 1, 2015. The court denies the Tucker Defendants' request to strike the Commission's answers and deem the matters admitted.

Nonetheless, the court denies the Tucker Defendants' motion with regard to interrogatory 11 request for production 17. They seeks "all investigations, administrative actions, and lawsuits the FTC brought against payday loan providers between 2012 and 2014 where the FTC has challenged the providers' loan documentation." (Doc. #777 at 10–11). These requests are unreasonable under Rule 26(b)(2)(C)(i), which states that "the must limit the frequency of extent of discovery . . . [that] can be obtained from some other source that is more convenient, less burdensome, or less expensive." Because this information is publically available and the Commission "has already provided Defendants with the identity of all of its administrative actions and litigation against payday lenders," the Tucker Defendants' motion is denied with regard to these requests.

For the same reason, the court denies the Tucker Defendants' motion with regard to interrogatory 12 and requests for production 18 and 19, which seek information regarding the Commissions' "settlements, compromises or resolutions" with payday lenders. (Doc. #777 at 10–11). This information is publically available.

Therefore, the Tucker Defendants' Motion to Compel is granted in part and denied in part, as described above.

**IV.   <u>The Commission's Motion to Compel (#788) is Granted</u>**

The parties' papers present a final dispute: whether Kim Tucker should be compelled to produce information related to her life insurance policies and any asset worth more than $25,000.00. The Commission argues that this information is discoverable because it is relevant to its common-enterprise

claim and its ability in equity to disgorge Defendants' ill-gotten gains in the event the Commission prevails on the merits of its claims.

The Commission's motion is denied. Rule 26(b)(2)(C) requires the court to limit the frequency and extent of discovery in light of the needs of the case. The court has already ordered Mrs. Tucker to disclose her tax returns and identify certain real property that she holds in her name. The court finds that these disclosures are sufficient for the Commission to support its common-enterprise claim and determine whether Tucker Defendants and Lending Defendants transacted through a maze of interrelated entitles or pooled their assets. *Grant Connect, LLC*, 827 F. Supp. 2d at 1216.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the Federal Trade Commission's Motion to Compel (#735) is GRANTED in full and that Defendants must produce the requested information by October 1, 2015.

IT IS FURTHER ORDERED that Federal Trade Commission's Motion for a Protective Order (#769) is GRANTED in part and DENIED in part. The Commission's motion is GRANTED with regard to topics 1 –6, 16 and DENIED with regard to topics 7–15. All depositions must be taken between September 28, 2015 and November 30, 2015. *See* (Scheduling Order #846).

IT IS FURTHER ORDERED that the Tucker Defendants' Motion to Compel (#777) is GRANTED in part and DENIED in part. The Tucker Defendants' motion is DENIED with regard to (1) all discovery requests related to the negative option rule including, but is not limited to, Interrogatories 14 and 15 and Requests for Production of Documents 11–15; (2) Interrogatory 11–12; and (3) Requests for Production of Documents 17–19. The Tucker Defendants' motion is GRANTED with regard to all remaining discovery requests and the Commission is ordered to amend its answers to the Tucker Defendants' requests for admissions by October 1, 2015.

IT IS FURTHER ORDERED that the Commission produce a privilege log by October 1, 2015.

IT IS FURTHER ORDERED that the Tucker Defendants' Motion to Compel (#788) is DENIED.

IT IS SO ORDERED.

DATED this 28th day of August, 2015.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE