1   Patrick J. Reilly, Esq.
    Nevada Bar No. 6103
2   HOLLAND & HART LLP
    9555 Hillwood Drive, Second Floor
3   Las Vegas, Nevada 89134
    Tel: (702) 669-4600
4   Fax: (702) 669-4650
    preilly@hollandhart.com
5
    Linda C. McFee, Esq.
6   (admitted *pro hac vice*)
    R. Pete Smith, Esq.
7   (admitted *pro hac vice*)
    MCDOWELL, RICE, SMITH & BUCHANAN
8   605 West 47th Street, Suite 350
    Kansas City, MO 64112
9   Tel:  (816) 753-5400
    Email:  petesmith@mcdowellrice.com
10          lmcfee@mcdowellrice.com

11  *Attorneys for Relief Defendants*
    *Kim C. Tucker and Park 269 LLC*
12
13              UNITED STATES DISTRICT COURT

14                  DISTRICT OF NEVADA

15  FEDERAL TRADE COMMISSION,                Case No. :  2:12-cv-00536-GMN-VCF

16                     Plaintiff,
                                             **MOTION      FOR      DISCOVERY**
17  vs.                                      **SANCTIONS    AND    FOR    SUMMARY**
                                             **JUDGMENT BY KIM C. TUCKER AND**
18  AMG SERVICES, INC., an Oklahoma Tribal   **PARK 269, LLC**
    Entity; RED CEDAR SERVICES, INC., an
19  Oklahoma Tribal Entity, also dba 500     **(Oral Argument Requested)**
    FastCash; SFS, INC., a Nebraska Tribal
20  Entity, also dba OneClickCash; TRIBAL
    FINANCIAL   SERVICES,   an   Oklahoma
21  Tribal   Entity,   also   dba   Ameriloan,
    UnitedCashLoans, USFastCash, and Miami
22  Nation   Enterprises;   AMG   CAPITAL
    MANAGEMENT, LLC, a Nevada Limited
23  Liability   Company;   LEVEL   5
    MOTORSPORTS, LLC, a Nevada Limited
24  Liability   Company;   LEADFLASH
    CONSULTING, LLC, a Nevada Limited
25  Liability company; PARTNER WEEKLY,
    LLC, a Nevada Limited Liability Company;
26  BLACK    CREEK    CAPITAL
    CORPORATION, a Nevada Corporation;
27  BROADMOOR   CAPITAL   PARTNERS,
    LLC, a Nevada Limited Liability Company;
28  THE MUIR LAW FIRM, LLC, a Kansas

8407729_1

1  Limited Liability Company; SCOTT A.
   TUCKER, in his individual and corporate
2  capacity; BLAINE A. TUCKER, in his
   individual and corporate capacity; TIMOTHY
3  J. MUIR, in his individual and corporate
   capacity; DON E. BRADY, in his individual
4  and corporate capacity; and TROY L.
   LITTLEAXE, in his individual and corporate
5  capacity,

6                    Defendants, and

7  PARK 269 LLC, a Kansas Limited Liability
   Company; and KIM C. TUCKER, in her
8  individual and corporate capacity,

9                    Relief Defendants.

10

11         Relief Defendants Kim C. Tucker ("Mrs. Tucker") and Park 269, LLC ("Park 269")

12  hereby move for discovery sanctions and for summary judgment in the above-entitled action.

13  This Motion is made pursuant to Fed. R. Civ. P. 37(c), Fed. R. Civ. P. 56 and LR 7-2, and is

14  based on the attached Memorandum of Points and Authorities and supporting documentation, the

15  papers and pleadings on file in this action, and any oral argument this Court may allow.

16         DATED this 19th day of January, 2016.

17

18                    _____/s/ Patrick J. Reilly_____
                      Patrick J. Reilly, Esq.
19                    HOLLAND & HART LLP
                      9555 Hillwood Drive, Second Floor
20                    Las Vegas, Nevada 89134

21                    Linda C. McFee, Esq.
                      R. Pete Smith, Esq.
22                    McDowell, Rice, Smith & Buchanan
                      605 West 47th Street, Suite 350
23                    Kansas City, MO 64112

24                    *Attorneys for Relief Defendants*
                      *Kim C. Tucker and Park 269 LLC*

25

26

27

28

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas 89134

8407729_1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DISCOVERY SANCTIONS AND FOR SUMMARY JUDGMENT
BY KIM C. TUCKER AND PARK 269, LLC**

## I.

## INTRODUCTION

This is an action in which Plaintiff contends that various corporate lenders violated federal law by making consumer loans that were misleading and confusing.  Plaintiff has named Mrs. Tucker and her limited-liability company, Park 269, as relief defendants, and seeks disgorgement of alleged "ill-gotten gains" received from the Defendants.

From the beginning of this case, however, Plaintiff has refused to provide the basic information regarding its claimed damages.  Plaintiff's Initial Disclosure made no reference to Mrs. Tucker or Park 269, and identified no damages or categories of damages against them. Nine subsequent disclosures were similarly devoid of any such information.   And though Plaintiff conceded in written discovery responses that a meaningful disclosure of such damages required expert witness testimony, it never bothered to disclose an expert witness.

Finally, in its Tenth Amended Disclosure, **served after the close of fact discovery and after the deadline to identify expert witnesses had passed**, Plaintiff finally offered a bare bones disclosure of the **minimum** amount of damages it would be seeking against Mrs. Tucker and Park 269.   However, Plaintiff has never provided a methodology for calculating those damages or the evidence to support a causal connection between unlawful conduct and monies received by Mrs. Tucker and Park 269.  These omissions are significant and were apparently intentional, as Plaintiff repeatedly refused at its deposition to provide details as to its damage theories on the basis of "privilege."  Regardless of the intent, Plaintiff's untimely and insufficient disclosures plainly violate the rules of discovery, and warrant the imposition of sanctions under Rule 26(c).

Summary judgment is additionally required because Plaintiff cannot distinguish between monies that were received from allegedly unlawful conduct and monies that were received from unquestionably lawful conduct.  Specifically, this Court entered a Preliminary Injunction on December 27, 2012, and there is no suggestion that the Lending Defendants have engaged in

8407729_1

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

unlawful conduct or violated this Court's Preliminary Injunction since then.  Yet, much of the damages that are apparently claimed as subject to disgorgement (Mrs. Tucker and Park 269 are essentially guessing, as Plaintiff's untimely damage disclosures are so barren of specificity) were provided to Mrs. Tucker **after** the issuance of that injunction.

Rather than distinguish between monies obtained from lawful versus unlawful loans, and rather than establish a causal connection between "ill-gotten" gains and Mrs. Tucker and Park 269, Plaintiff has taken a "spousal strict liability" approach to damages.  Apparently, Plaintiff believes it may recover **any** money **ever** received by Mrs. Tucker from her husband, regardless of whether those monies were derived from unlawful loans, or from lawful loans that were underwritten after the entry of this Court's Preliminary Injunction on December 27, 2012, or from any other lawful source. However, that is not the law.  Where benefits result from both lawful and unlawful conduct, the party seeking disgorgement must distinguish between the legally and illegally derived profits.  *See, e.g., S.E.C. v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1308 (2d Cir.), *cert. denied*, 404 U.S. 1005 (1971); *S.E.C. v. Willis,* 472 F. Supp. 1250, 1276 (D. D.C. 1978).   Plaintiff has made no effort to disclose or prove such a distinction.  Accordingly, and in addition to the foregoing discovery violations, summary judgment is required.

## II.

## STATEMENT OF UNDISPUTED FACTS

**A.    Mrs. Tucker and Park 269.**

1.    As evidenced by the Declaration of Kim C. Tucker, a copy of which is attached hereto as **Exhibit "A"**,[1] Mrs. Tucker is the spouse of Scott Tucker, and they have been married for 20 years.  They have two daughters, aged 17 and 13.  *Id.*

2.    Mrs. Tucker has filed her own federal income tax return every year since 2007. *Id.*  She keeps and maintains her own personal checking and brokerage accounts.  *Id.*

3.    Mrs. Tucker also had her own career for 22 years before starting to work for AMG, and was the "bread winner" of the family for many years.  *Id.*

---

[1] Mrs. Tucker's Declaration was previously filed with this Court on May 26, 2015 as Dkt. #796-1.

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

8407729_1

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

4.      Mrs. Tucker is the sole member of Park 269, which is a limited-liability company created pursuant to the laws of the State of Kansas.  *Id.*  Park 269 is a holding company with a single asset, namely, a 5,500 sq. ft. five-bedroom house located at 269 Park Avenue, Aspen, Colorado (the "Property").  *Id.*

5.      As evidenced by real estate assessor records attached hereto as **Exhibit "B"**, Park 269 purchased the Property on May 8, 2009.

**B.      The Complaint and Plaintiff's Allegations Against the Relief Defendants.**

6.      Plaintiff commenced this action on April 2, 2012 (Dkt. #1), nearly four years ago.

7.      In the Complaint, Plaintiff asserted claims against seventeen (17) different defendants, including Scott Tucker.  Plaintiff alleged *inter alia* that the various defendants formed a common lending enterprise in which they engaged in deceptive business practices, violated the Truth In Lending Act (the "TILA"), the Electronic Funds Transfer Act (the "EFTA"), 12 C.F.R. §§ 1026.17 and 1026.18 ("Regulation Z"), and 12 C.F.R. § 1005.10(e)(1) ("Regulation E").[2]  *Id.*

8.      Plaintiff additionally named Mrs. Tucker and Park 269 as "Relief Defendants." Dkt. #1 at ¶¶ 68-70.

9.      Plaintiff did **<u>not</u>** allege that Mrs. Tucker or Park 269 had engaged in actual wrongdoing.  Rather, Plaintiff alleged as follows:

> Relief Defendants, Park 269 LLC, and Kim Tucker, have received, directly or indirectly, funds or other assets from Defendants **<u>that are traceable to funds obtained from defendants' customers through the unlawful acts or practices described herein</u>**.

> Relief Defendants are not bona fide purchasers with legal and equitable title to Defendants' customers funds and other assets, and Relief Defendants will be unjustly enriched if they are not required to disgorge the funds or the value of the benefit they received as a result of Defendants' unlawful acts or practices.

> By reason of the foregoing, Relief Defendants hold funds and assets in constructive trust for the benefit of Defendants' consumers.

---

[2] Plaintiff's focus in this case has been exclusively on the language contained in certain loan agreements.  The Lending Defendants apparently used these agreements for years without complaint by Plaintiff.  After obtaining a partial summary judgment declaring that the loan agreements were, in hindsight, confusing and misleading, Plaintiff now seeks to recover damages against the Defendants on a *post hoc* basis, despite waiting years to file this lawsuit.

8407729_1

*Id.* (emphasis added).  Plaintiff filed a First Amended Complaint (Dkt. #386) on April 12, 2013, making identical allegations therein as to Mrs. Tucker and Park 269.

**B.      Early Discovery and Plaintiff's Initial Rule 26(a)(1) Disclosures.**

10.      On July 19, 2012, Plaintiff provided its initial disclosure in accordance with Fed. R. Civ. P. 26(a)(1).  A copy of this initial disclosure is attached hereto as **Exhibit "C"**.

11.      In its Initial Disclosure, Plaintiff identified **<u>no witnesses</u>** relating to its allegations made against Mrs. Tucker and Park 269.  *Id.*

12.      In its Initial Disclosure, Plaintiff identified **<u>no documents</u>** whatsoever concerning Mrs. Tucker or Park 269 or the allegations against them.  *Id.*

13.      In its Initial Disclosure, as to claimed categories of damages, Plaintiff made **<u>no reference</u>** to any category of damages that were being sought against Mrs. Tucker or Park 269.[3] *Id.*

**C.      The Stipulated Injunction and Cessation of Allegedly Unlawful Activities**.

14.      On December 7, 2012, Plaintiff and numerous defendants, including Scott Tucker and AMG Services, Inc., entered into an Agreed Joint Motion to Enter Preliminary Injunction and Order re: Bifurcation (Dkt. #272), a copy of which is attached hereto as **Exhibit "D"**.

15.      As a result of that Joint Motion, and after the submission of an Amended Agreed Joint Motion (Dkt. #293), this Court issued an Order Entering Stipulated Preliminary Injunction and Bifurcation (Dkt. #296), a copy of which is attached hereto as **Exhibit "E"**.

16.      Plaintiff has never suggested that any unlawful conduct has taken place since the entry of the Preliminary Injunction on December 27, 2012, more than three years ago.  In fact, Plaintiff has conceded that all allegedly unlawful activity stopped shortly after issuance of the Preliminary Injunction.  Transcript of Rule 30(b)(6) Deposition of Federal Trade Commission (Nov. 13, 2015), a copy of which is attached hereto as **Exhibit "F"**, at 152:10 to 154:1; *see also*

---

[3] Fed. R. Civ. P. 26(a)(1) mandates that a party must disclose "without awaiting a discovery request," the identity of witnesses, documents, and a computation of "each category of damages claimed by the disclosing party."  Given the noticeable absence of any such evidence in Plaintiff's initial disclosure, it appears that Plaintiff possessed absolutely no evidence supporting its allegations against Mrs. Tucker and Parker 269 when the Complaint was filed, and that Mrs. Tucker and Park 269 were sued blindly, simply because of Mrs. Tucker's relationship as Defendant Scott Tucker's spouse.

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

8407729_1

Letter from Plaintiff to Bradley Weidenhammer and Conly Schulte (Jan. 2, 2013), a copy of which is attached hereto as **Exhibit "G"**.[4]

**D.     Plaintiff's Untimely and Insufficient Disclosures and Failure to Establish a Nexus Between Unlawful Conduct and Receipt of "Ill-Gotten Gains."**

17.     Per this Court's Discovery Plan and Scheduling Order (Dkt. #644), the close of fact discovery occurred on April 16, 2015.  *See* **Exhibit "H"** attached hereto.

18.     Also per this Court's Discovery Plan and Scheduling Order (Dkt. #644), initial expert witness disclosures were due on May 7, 2015.  *Id.*

19.     On March 27, 2015, nearly one month before the close of fact discovery, Plaintiff served amended answers to Scott Tucker's Interrogatories, a copy of which is attached hereto as **Exhibit "I"**.  In Interrogatory No. 16, Scott Tucker sought information as to all types of equitable and monetary relief sought in this case. Mr. Tucker's Interrogatory was simple and straight forward as an Interrogatory can be:

> For each type of the alleged equitable relief and/or damages you are seeking (including monetary disgorgement), identify the total amount and methodology or basis used to calculate each amount.

Exhibit I at p. 28, Interrogatory No. 16.

20.     This Interrogatory was without question broad enough to include relief sought against Mrs. Tucker and Park 269.  Yet, Plaintiff's answer to Interrogatory No. 16 made **no reference to any damages sought as to Mrs. Tucker or Park 269**.  Worse yet, in its objections to this Interrogatory, Plaintiff stated as follows:

> The amount of equitable monetary relief, and methodology or basis for calculating such amount, **will likely be a subject of expert testimony**.  To the extent it is, such information will be disclosed pursuant to Fed. R. Civ. P. 26 and the Court's scheduling order.

*Id.*  (emphasis added).

21.     Though Plaintiff's claims against Mrs. Tucker and Park 269 cry out for the

---

[4] When asked the same question again later in the deposition (whether the Defendants had been in compliance since the Preliminary Injunction), the FTC refused to answer, asserting the "work product" privilege.  Exhibit E at 154:14 to 155:22.

8407729_1

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

testimony of an expert witness, and though Plaintiff expressly conceded as much in the foregoing discovery response, **Plaintiff never disclosed an expert witness of any kind**, including an expert witness that could identify which monies were transferred to Mrs. Tucker as a result of "ill-gotten gains" or how they could be considered as such.

22.     To the knowledge of Mrs. Tucker and Park 269, Plaintiff has not amended its Interrogatory Answer since March 27, 2015.

23.     On June 19, 2015, more than two months after the close of fact discovery, and five weeks after the initial expert witness disclosure deadline had passed, Plaintiff served its Tenth Amended Rule 26(a)(1) Initial Disclosures.  *See* **Exhibit "J"** attached hereto.  In that document, **Plaintiff disclosed for the first time the damages it was seeking from Mrs. Tucker and Park 269**.  Plaintiff identified that it seeks "disgorgement . . . in the amount of at least $26.7 million" as a result of "payments of ill-gotten gains by Defendants to the Relief Defendants for which the Relief Defendants offered no consideration."  *Id.* at p. 7.

24.     As to Mrs. Tucker and Park 269, Plaintiff's untimely Tenth Amended Disclosure was a "bare bones" disclosure.  In addition to its untimely production, it was defective in a number of respects, including the following:

      a.  The Tenth Amended Disclosure did not identify the defendants from which Mrs. Tucker allegedly received "ill-gotten gains."

      b.  The Tenth Amended Disclosure did not identify the specific monies received by any Defendant from which "ill-gotten gains" were procured.

      c.  The Tenth Amended Disclosure did not disclose the methodology or basis for calculating its claimed damages.

25.     By the time Plaintiff had served its Tenth Amended Disclosure on June 19, 2015, Mrs. Tucker and Park 269 no longer had the ability to serve written discovery requests, and no longer had the ability to disclose an expert witness.

26.     There were numerous instances in which counsel for Mrs. Tucker and Park 269 attempted informally to ascertain the basis for disgorgement, in particular which monies were "ill-gotten" after the issuance of the Preliminary Injunction, and the basis therefor.  Declaration

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

8407729_1

of Patrick J. Reilly, filed concurrently herewith.  Plaintiff rebuffed such attempts.  *Id.*

27.    When Plaintiff was finally deposed in Washington, D.C. on November 13, 2015,[5]

it repeatedly refused to answer questions regarding its damage claims against Mrs. Tucker and

Park 269, claiming that such information was "privileged":

> Q:    How much is the Commission seeking from Kim Tucker in this lawsuit?
>
> A:    (objection omitted) In my personal capacity, I don't know the answer to that question.
>
> Q:    What about in your capacity as the person most knowledgeable for the Commission?
>
> A:    Again, my counsel is telling me that that question is beyond the scope of the 30(b)(6) topics that you've noticed, and so I don't know the answer.
>
> Q:    How much, in terms of damages, has accrued as a result of the lending defendants' conduct after December 27th, 2012?
>
> A:    Would you repeat the question back for me, please.
>
> Q:    Sure.  How much, in terms of damages, is the Commission seeking as a result of accrued damages after December 27th, 2012?
>
> A:    It is my understanding that a preliminary injunction was entered on December 27th, 2012; and that both before that date and in the days immediately following December 27, 2012, there were conversations and negotiations between counsel for the defendants and counsel for the FTC about how the defendants intended to comply with that preliminary injunction order; and that some time after January 2, 2013, the defendants began implementing changes to their practices with the idea of trying to comply with the December 27, 2012, preliminary injunction order; but that **it is entirely possible** that damages continue to accrue to consumers from practices that predated those changes but that the money came in following the date of those changes.  It is also my understanding that at least some of the relief defendants received ill-gotten gains from the defendants after December 27, 2012.  They received funds from the defendants without providing bona fide consideration in return for those funds.
>
> Q:    Has the FTC -- does the FTC know what the breakdown is between monies that maybe came in after December 27, 2012, but were the result of loans that were generated prior to December 27, 2012?
>
> MS. ESTEP:            Objection. Work product.  I instruct the witness not to answer to the extent he can't do so without revealing privileged information.

---

[5] The FTC's deposition and other depositions were taken after the fact discovery cutoff per a Stipulation and Order Extending Deadlines and Deposition Limit (Dkt. #856).  However, in Paragraph 8 of that stipulation, the parties expressly agreed that said stipulation "shall not constitute a stipulation to, or be the basis for, an extension of the dispositive motion deadline . . . or the extension of the deadline for any other discovery."

8407729_1

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

A:   **I don't know that I can answer your question without revealing privileged information**.  I'm a little concerned that we're focusing on December 27, 2012, as a definitive date. And as I understand it, it is not.

Q:   All right.  Well, let's back up a little bit, because you were the one who just mentioned a few minutes ago that there were monies that came in after December 27, 2012, as a result of loans that were underwritten prior to December 27th, 2012.  So, I'm asking you: How much was that?

A:   And if I said that -- and I don't think that I did -- what I meant to say anyway was that there were monies that came in after changes were made in response to the December 27, 2012, PIs.  Let me clarify that.  And furthermore, I would say that I don't know the breakdown, personally.

Q:   Does the Commission know what the breakdown is?

MS. ESTEP:        Objection. Deliberative process. Work product.

A:   **I'm not going to answer the question because it's privileged**.

MR. REILLY:        Are you instructing the witness not to answer?

MS. ESTEP:        Yes.

Q:   And you are refusing to answer?

A:   **Yes**.

Exhibit F at 147:19 to 151:12 (emphasis added).

28.    Plaintiff continued to be evasive and non-responsive as to whether monies received by Mrs. Tucker would be considered "ill-gotten" gains if they were received as a result of lawful loans that were underwritten after the issuance of the Preliminary Injunction.  For example:

Q:   Now, to the extent that monies were generated from loans that were underwritten after January 2, 2013, and then somehow made its way to Kim Tucker or Park 269, would the Commission consider those monies to be ill-gotten gains?

A:   (objection omitted) What I can say, generally, outside of the specific facts of this case, is that relief-defendant allegations do not require the FTC to trace a particular dollar bill through commerce.  So, what is important is that the defendants, generally, received ill-gotten gains from consumers; and regardless of when those monies made their way to relief defendants or whether a particular dollar bill came in before or after a preliminary injunction order was entered; or whether that particular dollar bill or a different particular dollar bill made its way to a relief defendant at whatever period of time is not relevant, in the least, to the legal allegations of a relief defendant.
. . .

8407729_1

1

2

Q:   So, it's the Commission's position . . . that if Kim Tucker were to receive $10,000 from her husband today, then that $10,000 could be considered ill-gotten gains and sought by the Commission in this lawsuit.  Correct?

3

4

5

6

7

8

A:   (objection omitted) Generally speaking, if there was a defendant who got ill-gotten gains from a consumer and was charged with violating the FTC Act and, after the complaint was filed in that case, that particular defendant took every dollar that he got from consumers through unlawful acts and practices and turned it over to his wife, his neighbor, his grandmother -- a stranger in Lithuania -- that person could absolutely be subject to a relief defendant allegation.  Otherwise, it would provide a very easy avenue for consumers to hide their money and prevent the FTC and the courts from providing meaningful redress to consumers harmed by unlawful practices.

. . .

9

10

Q:   But you did say **as a result of** defendants taking money through unlawful practices.  Did I hear that right?

11

A:   Yes.

12

13

Q:   So, don't you have to show some kind of nexus between the money that was transferred to a relief defendant and money that was allegedly, unlawfully earned?

14

15

MS. ESTEP:       Objection.  The witness is here to testify as a fact witness, not as an attorney.  He is not here to provide his legal opinion.

16

17

MR. REILLY:       I think he just did a few minutes ago; so, I'm following up on that.

18

19

A:   The FTC, generally speaking, has to show that a certain amount of money came in.  If **that money** went somewhere else, that's subject to relief-defendant allegations.  There is no requirement for tracing particular dollar bills through commerce.

20

21

22

Q:   Well, let's say Scott Tucker, tomorrow, goes and gets a job at McDonald's flipping hamburgers, and then takes his paycheck and every two weeks sends it to his wife.  Are those potentially ill-gotten gains that could be recovered in this lawsuit?

23

A:   You know, at this point, this is getting way too much into legal briefing; so, I'm going to take my counsel's advice on this one.

24

MR. REILLY:       She didn't make an objection.

25

MS. ESTEP:       It was the same question you were asking before.

26

MR. REILLY:       It was a very different question.

27

THE WITNESS:       I don't think so.

28

MR. REILLY:       There is no objection pending.

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

8407729_1

THE WITNESS:     **I think there is going to be**.[6]

MS. ESTEP:     Objection. The witness is not here to provide his legal opinion.   Would it be good time to take a couple-minute break?

Exhibit F at 155:10 to 159:16 (emphasis added).

29.     After a short break, Plaintiff's designated Rule 30(b)(6) witness directed Mrs. Tucker and Park 269 to its initial disclosures and the declaration and deposition of Elizabeth Ann Miles to locate the alleged unlawful loans and proceeds "upon which the [Plaintiff] is seeking damages against my clients." *Id.* at 162:7-20.

30.     When Plaintiff was asked whether the Ms. Miles' declaration or deposition provided a discrete analysis of "monies received as a result of loans before and after January 2013," Plaintiff had no answer, and simply referred back to those documents as the "best evidence." *Id.* at 163:1-8.

31.     Plaintiff could not identify at the deposition how much it is seeking from Mrs. Tucker or Park 269 in this action, or whether allegedly "ill-gotten" gains were actually received as a result of loans underwritten after the issuance of the Preliminary Injunction, despite the fact that these questions related directly to topics 8 and 9 of their Rule 30(b)(6) notice. *Id.* at 163:11 to 164:4.

**E.     The Miles Declaration and Deposition Transcript.**

32.     As referenced *infra*, Plaintiff contended in its deposition that the Declaration of Elizabeth Ann Miles (the "Miles Declaration") would identify the allegedly unlawful loans upon which one could determine the "ill-gotten" gains that were directed to Mrs. Tucker and Park 269. Exhibit F at 162:7-20.   Yet, the Miles Declaration contains no such analysis.   *See* Miles Declaration at **Exhibit "K"**.   In fact, the Miles Declaration makes **no mention** of damages or relief sought against Mrs. Tucker and Park 269.   Nor does her deposition transcript.   *See* Transcript of Deposition of Elizabeth Miles, a copy of which is attached hereto as **Exhibit "L"**.

33.     Instead, the Miles Declaration is nothing more than a summary of a "data analyst"

---

[6] It is extremely telling that Plaintiff refused to answer questions based upon "counsel's advice" when no objection was even pending.  Worse yet, the witness (who himself is a licensed attorney) blatantly telegraphed to counsel that she should object on his behalf ("I think there is going to be") to justify his refusal to answer the question.

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

8407729_1

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

who calculated at the direction of counsel "consumer and loan data" from seven loan portfolios. Exhibit I at page 1.  There is absolutely no analysis of loan repayments that led to Mrs. Tucker or Park 269.  *See id.*  In fact, there is no mention at all of Mrs. Tucker or Park 269.  *See id.*

34.     Based on the foregoing, as of today, Mrs. Tucker and Park 269 have no idea how the Plaintiff determined that monies received by Mrs. Tucker after the issuance of the Preliminary Injunction were causally related to "unlawful" loan documents, so as to be considered "ill-gotten" gains.

### III.

### LEGAL ARGUMENT

**A.     Failure to Timely Disclose Computation of Damages Warrants Preclusion of Evidence and Entry of Summary Judgment.**

The purpose of discovery is to "make a trial less a game of blind man's bluff and a more fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677 (1958).  Rule 26(a)(1) specifically compels— without requiring a written discovery request—the disclosure of a computation of each category of damages that is claimed.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rule 26(e)(1)(A) requires litigants to supplement initial disclosures "in a timely manner if the party" making the disclosure learns "that some material respect" of the disclosure changed.  Fed. R. Civ. P. 26(e)(1)(A).  Rule 26(e) does not create a "loophole" for a party who wishes to revise its initial disclosures to its advantage after the deadline has passed.  *Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 596, 500 (9th Cir. 2009).  Supplementation merely means "correcting inaccuracies . . . based on information that was not available at the time of the initial disclosure."  *Id.*, citing *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998).

It is undisputed that Plaintiff's Initial Disclosures contained no information whatsoever concerning Mrs. Tucker and Park 269.  It is further undisputed that Plaintiff failed to provide any disclosure of damages as to Mrs. Tucker or Park 269 by the fact discovery cutoff date of April 16, 2015.  It is further undisputed that Plaintiff's Tenth Amended Disclosure, served two months after the fact discovery cutoff, did not merely "correct" an "inaccuracy" from a prior disclosure.

Rather, the damages sought by Plaintiff as against Mrs. Tucker and Park 269 constituted an entirely new disclosure, formed well after the fact discovery cutoff and more than three years into this lawsuit.

If a party fails to timely disclose or supplement a computation of damages for each category of damages that is claimed, that party is not allowed to use the information at a hearing or at trial unless the failure to timely disclose the information was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). Substantial justification or harmlessness is governed by four factors: (1) prejudice or surprise; (2) the ability to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness. *Lanard Toys Ltd. v. Novelty, Inc.,* 375 F. App'x 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir.2003)). The party facing sanctions under Rule 37 bears the burden of showing substantial justification or harmlessness. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106–07 (9th Cir. 2001). The district court has wide latitude in using its discretion to impose discovery sanctions. *Id .* at 1106.

Courts in the District of Nevada—including this Court—routinely exclude damage claims that are not timely disclosed pursuant to Rule 26(a). *See, e.g., Smith v. Wal-Mart Stores, Inc.,* No. 2:13-cv-1597-MMD-VCF, 2014 WL 3548206, at *3 (D. Nev. July 16, 2014); *Patton v. Wal-Mart Stores, Inc.,* No. 2:12-cv-2142-GMN-VCF (Dkt. #50), 2013 WL 6158461 (D. Nev. Nov. 20, 2013); *Rios v. Wal–Mart Stores, Inc.,* No. 11–cv–1592 (D. Nev. Dec. 11, 2013); *Shakespear v. Walmart Stores, Inc.,* No. 12–cv–1064 (D. Nev. July 8, 2013); *Olaya v. Walmart Stores, Inc.,* 11–cv–0997 (D. Nev. Aug. 7, 2012); *Baltodano v. Walmart Stores, Inc.,* No. 10–cv–2062 (D. Nev. Aug. 31, 2011).

There is no dispute that Plaintiff failed to disclose any damages or category of damages as to Mrs. Tucker or Park 269 during the fact witness discovery period. Plaintiff's first disclosure of any category of money damages came after the close of both fact discovery **and** the deadline to disclose expert witnesses. This latter missed deadline is significant. As Plaintiff admitted in its Answers to Interrogatories, disgorgement calculations effectively require the disclosure of expert testimony. Exhibit I at Answer No. 16. By waiting to disclose claimed

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

Page 14 of 22

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

1    damages until after the expert witness disclosure had passed, Mrs. Tucker and Park 269 were

2    deprived of any ability to retain an expert witness, or even a rebuttal expert witness.

3           And, to this day, Mrs. Tucker and Park 269 have no way of knowing how Plaintiff has

4    calculated its claimed damages, or whether any of those claimed "ill-gotten" gains were derived

5    from lawful loans that were underwritten after this Court entered its Preliminary Injunction.

6           Ironically, Plaintiff had a golden opportunity to at least partially cure its discovery

7    failures when it was deposed on November 13, 2015.  Instead of being forthcoming, Plaintiff

8    continued to play "hide the ball."  It repeatedly refused—on the basis of privilege no less—to

9    answer questions regarding damages claimed against Mrs. Tucker and Park 269.  In at least one

10   instance, the witness refused to answer a question on the basis of privilege when no privilege

11   objection was even pending, and then instructed counsel to make a privilege objection to justify

12   his refusal to answer the question.  Exhibit F at 159:11-2 ("I think there is going to be [an

13   objection].").

14          Plaintiff may not use its privilege as both a sword and shield.  *Chevron Corp. v. Pennzoil*

15   *Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992).  It may **not** wait until after the close of fact

16   discovery to disclose its claimed damages, **not** disclose an expert witness on a matter it admits

17   requires expert testimony, **not** specify how those damages were calculated, **hide** behind the

18   attorney-client privilege, and still expect to have its damage claims survive.  A government

19   agency is not exempt from the disclosure requirements of Rule 26 or this Court's scheduling

20   order.  Its failure to provide such disclosures in a case into which it has devoted so many

21   resources is not only telling, it requires sanctions under Rule 26(c) in the form of prohibiting

22   Plaintiff from introducing evidence of damages as to Mrs. Tucker and Park 269.

23   **B.     Standard of Review on Motion for Summary Judgment.**

24          Pursuant to the Federal Rules of Civil Procedure, summary judgment is proper "if the

25   pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

26   genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

27   law." Fed. R. Civ. P. 56(c)(2).  Such a motion may address "all or any part" of a civil action.

28   Fed. R. Civ. P. 56(a).  Summary judgment must be granted unless there is sufficient evidence to

8407729_1

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

1  create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly

2  probative, summary judgment may be granted." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242,

3  249-50 (1986) (citations omitted); _Berg v. Fourth Shipmor Assoc._, 82 F.3d 307, 311 (9th Cir.

4  1996).   A fact is "material" if it might affect the outcome of a suit as determined by the

5  governing law. _Anderson_, 477 U.S. at 248.  An issue is "genuine" only if sufficient evidence

6  exists such that a reasonable fact finder could find for the non-moving party.   _Jespersen v._

7  _Harrah's Operating Co._, 392 F.3d 1076, 1079 (9th Cir. 2004).

8       The Court views evidence in the light most favorable to the non-moving party.

9  _Jespersen_, 392 F.3d at 1079.  After the moving party demonstrates no genuine issue of material

10  fact exists, the burden shifts to the non-moving party to produce evidence of a genuine issue of

11  material fact.  _Id._  Summary judgment is regarded "not as a disfavored procedural shortcut, but

12  rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

13  speedy and inexpensive determination of every action.'"  _Celotex Corp. v. Catrett_, 477 U.S. 317,

14  327 (1986) (_quoting_ Fed. R. Civ. P. 1).

15       As a threshold matter, because Plaintiff failed to disclose its damages claims during the

16  fact discovery period, and such failure was not substantially justified or harmless, Plaintiff is left

17  with no basis to obtain monetary damages against Mrs. Tucker and Park 269.  Because Mrs.

18  Tucker and Park 269 are solely relief defendants in this case, and they are not accused of

19  wrongdoing, there is no basis for maintaining this action against them.  They are therefore

20  entitled to summary judgment as a result of the Rule 37(c) discovery sanction sought herein.

21  That being said, Mrs. Tucker and Park 269 independently seek summary judgment because

22  Plaintiff is unable to prove a reasonable approximation of damages against them.

23  **C.   The FTC Bears Burden to Prove Reasonable Approximation of Damages.**

24       "A nominal defendant is a person who 'holds the subject matter of the litigation in a

25  subordinate or possessory capacity **as to which there is no dispute**.'"  _S.E.C. v. Colello,_ 139

26  F.3d 674, 677 (9th Cir. 1998) (_quoting S.E.C. v. Cherif,_ 933 F.2d 403, 414 (7th Cir.1991))

27  (emphasis added).  "The paradigmatic nominal defendant is 'a trustee, agent, or depositary ...

28

8407729_1

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

1  [who is] joined purely as a means of facilitating collection.'" *Id.* Such a person may be joined[7]

2  in an enforcement action "to aid the recovery of relief," provided that he "has no ownership

3  interest in the property which is the subject of litigation." *S.E.C. v. George*, 426 F.3d 786, 798

4  (6th Cir. 2005) (internal quotation marks omitted).

5      To seek disgorgement of funds from a nominal "relief" defendant,[8] the FTC's burden is to

6  prove that (1) the named defendants actually violated the Act, (2) the assets the FTC seeks to

7  disgorge are specifically traceable to the violations, and (3) the relief defendants have no

8  legitimate claim to the funds at issue. *See, e.g., Colello*, 139 F.3d at 677; *S.E.C. v. Ross*, 504 F.

9  3d 1130, 1142 (9th Cir. 2007) (same); *see also Smith v. S.E.C.*, 653 F.3d 121, 128 (2d Cir.

10  2011) (*quoting F.T.C. v. Bronson Partners, LLC*, 674 F. Supp.2d 373, 392 (D. Conn.

11  2009)); *F.T.C. v. Think Achievement Corp.*, 144 F. Supp.2d 1013, 1020 (N.D. Ind. 2000); *F.T.C.*

12  *v. Inc21.com Corp.*, 745 F. Supp.2d 975, 1009 (N.D. Cal. 2010), *aff'd* 475 Fed. App'x 106 (9th

13  Cir. 2012); *F.T.C. v. Transnet Wireless Corp.*, 506 F. Supp.2d 1247, 1273 (S.D. Fla. 2007).

14      The equitable remedy of disgorgement exists in part to prevent a wrongdoer from

15  keeping the profits of an unlawful operation or practice. *See S.E.C. v. JT Wallenbrock &*

16  *Assocs.*, 440 F.3d 1109, 1113-14 (9th Cir. 2006). However, disgorgement is not to penalize, but

17  to deprive "wrongdoers of ill-gotten gains." *CFTC v. Hunt*, 591 F.2d 1211, 1222 (7th Cir. 1979).

18  Because disgorgement is meant to be remedial and not punitive, it must be limited to "property

19  causally related to the wrongdoing" at issue. *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215,

20  1231 (D.C. Cir. 1989). **Accordingly, the party seeking disgorgement must distinguish**

21  **between that which has been legally and illegally obtained**. *Id.; F.T.C. v. Verity Int'l Ltd.*, 443

22  F.3d 48, 68-70 (2d Cir. 2006) (same).

---

23  [7] Mrs. Tucker and Park 269 again note that Plaintiff failed to properly join them as relief defendants in the manner
24  required by Section 53(b) of the Federal Trade Act. Section 53(b) requires that said joinder be made upon motion to
25  the district court wherein the court first "determines that the interests of justice require that any other person,
partnership, or corporation to be added as a party…."

26  [8] Mrs. Tucker and Park 269 take umbrage with the Plaintiff's characterization that it is seeking disgorgement of
funds for the "benefit" of consumers. Setting aside that Plaintiff has never demonstrated actual confusion by actual
27  consumers (which begs the question as to whether there are "actual" damages to be awarded to the Plaintiff),
Plaintiff has no intention of "returning" so-called "ill-gotten" gains to consumers in the event it recovers damages in
28  this matter. Rather, to the extent Plaintiff recovers any damages in this case against any defendant, said funds will
simply fill the coffers of Plaintiff, a federal government agency.

8407729_1

To obtain the extraordinary remedy of disgorgement, the FTC must show: "(1) that the defendant profited from violations of the FTC Act; (2) that the profits are causally related to the violations; and (3) that the disgorgement figure reasonably approximates the amount of unjust enrichment." *F.T.C. v. Magui Publishers, Inc.,* 1991 WL 90895, at *17 (C.D. Cal. 1991); *see also Verity,* 443 F.3d at 67 (explaining that the proper framework for calculating disgorgement requires the FTC to show that its calculations reasonably approximate the amount of the defendants' unjust gains, after which the burden shifts to the defendants to show that those figures were inaccurate).

Generally, where benefits result from both lawful and unlawful conduct, the party seeking disgorgement must distinguish between the legally and illegally derived profits. *See, e.g., S.E.C. v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1308 (2d Cir.), *cert. denied*, 404 U.S. 1005 (1971); *S.E.C. v. Willis,* 472 F. Supp. 1250, 1276 (D. D.C. 1978). Thus, in order to establish a proper disgorgement amount, "the party seeking disgorgement must distinguish between the legally and illegally derived profits." *CFTC v. British American Commodity Options Corp.,* 788 F.2d 92, 93 (2d Cir.), *cert. denied,* 479 U.S. 853 (1986). This rule exists so that disgorgement is ordered only with respect to those profits that were actually illegally derived.

While the disgorgement calculation does not need to be exact, it has to be a "reasonable approximation of profits causally connected to the violation." *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998) (holding party moving for disgorgement bears "the ultimate burden of persuasion that its disgorgement figure" is "a reasonable approximation of profits causally connected to the violation"). Thus, it is the FTC's burden to establish **both** a reasonable approximation of profits obtained **and** the causal connection between the approximation and the alleged lending violations. *Id.*; *S.E.C. v. Presto Telecomm., Inc.,* 237 Fed. Appx. 198, 200 (9th Cir. 2007) (affirming finding that "the SEC presented insufficient evidence to calculate the appropriate amount of disgorgement"); *S.E.C. v. Todd*, No. 03–2230, 2007 WL 1574756, at *18 (S.D. Cal. May 30, 2007) (concluding that SEC failed to establish a "nexus between the supposed ill-gotten gains and the requested disgorgement"); *S.E.C. v. Wyly*, 56 F. Supp.3d 260,

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

269-71 (S.D.N.Y. 2014) (holding proposed disgorgement did not appear to arise from the violations and "therefore smacks of punishment, not equity or deterrence").

The "causal connection" requirement is not an illusory, *pro forma* element to which only lip service must be paid. It is an essential element of any disgorgement claim. And, setting aside Plaintiff's failure to disclose any damages during the discovery period, Plaintiff has additionally turned a blind eye to the fact that much of the money Plaintiff seeks in disgorgement was received by Mrs. Tucker **after** the entry of the Preliminary Injunction in this case. Plaintiff has made no effort to establish a causal connection as to monies received by Mrs. Tucker from her husband after the entry of this Court's Preliminary Injunction. And while Plaintiff made the point in its deposition that it is theoretically *possible* for a defendant to improperly transfer ill-gotten gains after the cessation of wrongful conduct (see Exhibit F at 156-157), Plaintiff has made no effort to establish that actually took place. Plaintiff must prove the "causal connection" between funds that were transferred and the originally unlawful conduct.

Rejecting its burden of proof and an essential element of its case, Plaintiff has adopted a "spousal strict liability" standard for relief defendants.[9] If a relief defendant receives money from her spouse, she must disgorge every penny, without any requirement of proof or review by this Court that the monies were actually received "as a result of" unlawful conduct. She must simply turn over every penny her husband has ever earned, regardless of whether these monies were obtained from lawful loans, unlawful loans, an executive salary for legitimate work performed, or even from cooking hamburgers at fast food restaurant. This is plainly not the law. *Texas Gulf Sulphur*, 446 F.2d at 1308; *Willis*, 472 F. Supp. at 1276.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[9] Plaintiff's approach completely ignores that it must prove in the first place that Mr. Tucker, an individual who did not make any loans in his own capacity, should be personally liable for the actions of the Lending Defendants.

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

**IV.**

**CONCLUSION**

Accordingly, and based on the foregoing, Mrs. Tucker and Park 269 respectfully request that this Court preclude evidence of damages against Mrs. Tucker and Park 269 as required by Fed. R. Civ. P. 26(c), and that it further enter summary judgment in this action in their favor.

DATED this 19th day of January, 2016.

                                 _____/s/ Patrick J. Reilly_____
                                 Patrick J. Reilly, Esq.
                                 HOLLAND & HART LLP
                                 9555 Hillwood Drive, Second Floor
                                 Las Vegas, Nevada 89134

                                 Linda C. McFee, Esq.
                                 R. Pete Smith, Esq.
                                 McDowell, Rice, Smith & Buchanan
                                 605 West 47th Street, Suite 350
                                 Kansas City, MO 64112

                                 *Attorneys for Relief Defendants*
                                 *Kim C. Tucker and Park 269 LLC*

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

8407729_1

1

## CERTIFICATE OF SERVICE

2   I hereby certify that on the 19th day of January, 2016, a true and correct copy of the

3   foregoing **MOTION FOR DISCOVERY SANCTIONS AND FOR SUMMARY**

4   **JUDGMENT BY KIM C. TUCKER AND PARK 269, LLC** was served on counsel through

5   the Court's electronic service system as follows:

6   **Electronic Service:**

7   Daniel G. Bodgen, Esq.
United States Attorney
8   District of Nevada
Blaine T. Welsh, Esq.
9   Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
10  Las Vegas, Nevada 89101
Email: Blaine.Welsh@usdoj.gov

11
Nikhil Singhvi, Esq.
12  Jason D. Schall, Esq.
LaShawn M. Johnson, Esq.
13  Thomas E. Kane, Esq.
Courtney A. Estep, Esq.
14  **Federal Trade Commission**
600 Pennsylvania Avenue, NW
15  Mailstop CC-10232
Washington, D.C. 20580
16  Email: nsinghvi@ftc.gov
        jschall@ftc.gov
17        ljohnson@ftc.gov
        tkane@ftc.gov
18        cestep@ftc.gov

19  *Attorneys for Plaintiff*
*Federal Trade Commission*

Von S. Heinz, Esq.
E. Leif Reid, Esq.
Darren J. Lemieux, Esq.
**Lewis Roca Rothgerber LLP**
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169
Email: VHeinz@lrrlaw.com
        dlemieux@lrrlaw.com
        lreid@lrrlaw.com

Jeffrey D. Morris, Esq.
Nick J. Kurt, Esq.
Ryan C Hudson, Esq.
**Berkowitz Oliver Williams**
**Shaw & Eisenbrandt LLP**
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Email: jmorris@berkowitzoliver.com
        rhudson@berkowitzoliver.com
        nkurt@berkowitzoliver.com

*Attorneys for Defendants AMG Capital*
*Management, LLC; Level 5 Motorsports, LLC;*
*LeadFlash Consulting LLC; Black Creek*
*Capital Corporation; Broadmoor Capital*
*Partners; Scott A. Tucker and Nereyda M.*
*Tucker, as Executor of the Estate of Blaine A.*
*Tucker*

20

21

22

23

24

25

26

27

28

*Holland & Hart LLP*
*9555 Hillwood Drive, Second Floor*
*Las Vegas, Nevada 89134*

Page 21 of 22

8407729_1

Victoria W. Ni, Esq.
(*Pro Hac Vice*)
Gabriel S.H. Hopkins, Esq.
(*Pro Hac Vice*)
Public Justice, P.C.
555 12th Street, Suite 1230
Oakland, CA 94607
Email: vni@publicjustice.net

Craig Friedberg, Esq.
Law Offices of Craig Friedberg, Esq.
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Email: attcbf@cox.net

*Attorneys for Intervenor*
*Americans for Financial Reform*

Joshua M. Dickey, Esq.
**Bailey Kennedy, LLP**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Email:   jdickey@baileykennedy.com

Nicole Ducheneaux, Esq.
**Fredericks Peebles & Morgan LLP**
3610 North 163rd Plaza
Omaha, Nebraska 68116
Email:   nducheneaux@ndnlaw.com

Conly Schulte, Esq.
**Fredericks Peebles & Morgan LLP**
1900 Plaza Drive
Louisville, CO 80027
Email:   cschulte@ndnlaw.com

Francis J. Nyhan, Esq.
**Fredericks Peebles & Morgan LLP**
2020 L Street
Sacramento, California 95811
Email: jnyhan@ndnlaw.com

*Attorneys for Red Cedar Services, Inc. and*
*SFS, Inc.*

/s/ Susann Thompson
An employee of Holland & Hart LLP

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

8407729_1