**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

FEDERAL TRADE COMMISSION,

          Plaintiff,

vs.

AMG SERVICES, INC.; *et.al.*,

          Defendants.

Case No. 2:12–cv–536–GMN–VCF

**ORDER**

MOTION FOR DISCOVERY SANCTIONS (DOC. #899)

      This matter involves the Federal Trade Commission's (hereafter the "FTC") civil action against Kim Tucker, Park 269 LLC, (hereafter the "Relief Defendants"[1]) and other Defendants. Before the court are the Relief Defendants' motion for discovery sanctions (Doc. #899), the FTC's response (Doc. #939), and the Relief Defendants' reply (Doc. #948). For the reasons stated below, the Relief Defendants' motion is denied.

**I. Background**

      In July 2012, the FTC served the Relief Defendants[2] its initial disclosures, which stated "[b]ased on information currently available, [the FTC] believes that monetary consumer injury includes disgorgement of all funds obtained by Defendants from consumers as a result of deceptive lending and collection practices." (Doc. #901-1 at 17). In the subsequent months, and years, of litigation, discovery was stayed multiple times.

---

[1] The FTC does not allege that the Relief Defendants participated in any violation of federal law; rather the FTC alleges that the Relief Defendants received proceeds attributable to the other Defendants' unlawful activity and thus proceeds received by the Relief Defendants are subject to disgorgement.

[2] At this time, only the Relief Defendants move for discovery sanctions. Accordingly, the court will limit its discussion to discovery exchanged between the FTC and the Relief Defendants.

1

In August 2012, discovery was temporarily stayed, as to all Defendants, for approximately one month. (Doc. #137). When discovery resumed in September 2012, the FTC sought discovery from the Relief Defendants, eventually moving to compel discovery responses from the Relief Defendants. (Doc. #240). In its November 2012 motion to compel, the FTC described the funds that the FTC alleged were subject to disgorgement. (Id.). The FTC's description contained the total amount of disgorgement sought, but did not differentiate among individual transfers. (Id.). Before the FTC's motion to compel was resolved, the action was bifurcated. (Doc. #296). Phase I focused on the liability of certain Defendants for violations of federal law. (Id. at 9). Phase II focused, among other issues, whether the FTC could obtain disgorgement from the Relief Defendants. (Id. at 10).

In May 2014, Phase I concluded with summary judgment being entered in favor of the FTC. (Doc. #584). During Phase I proceedings, discovery regarding the Relief Defendant's potential monetary liability was stayed. In July 2014, Phase II began and the FTC renewed its efforts to obtain discovery from the Relief Defendants. On March 9, 2015, the FTC served the Relief Defendants a set of interrogatories which asked, among other questions, what consideration, if any, the Relief Defendants gave to their co-Defendants in exchange for a litany of money transfers. (Doc. #938-20 at 8-12). In April 2015, the Relief Defendants responded that many of the transfers were "gifts" and "spousal transfers." (Doc. #938-20). Notably, many of the money transfers occurred after the court's bifurcation order, which stayed discovery regarding the amount of disgorgement damages.

In May 2015, based on the Relief Defendants' discovery responses, the FTC moved to enjoin any further transfers of assets to the Relief Defendants. (Doc. #780). In June 2015, the FTC served its tenth supplement to its initial disclosures, which stated that "[the FTC] calculates disgorgement against the Relief Defendants in the amount of at least $26.7 million. This computation is based upon records showing the purchase and maintenance of an $8 million property in Aspen, CO by Defendants with ill-

2

gotten gains and $18,714,603.10 in further payments of ill-gotten gains by Defendants to the Relief Defendants for which the Relief Defendants offered no consideration." (Doc. #938-16 at 9).

The Relief Defendants now move to exclude the FTC's $26.7 million disgorgement figure on the ground that the FTC's disclosure of the disgorgement figure was untimely.

## II. Legal Standard

"[A] party must, without awaiting a discovery request, provide to the other parties … a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying under Rule 34 the documents to other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including material bearing on the nature and extent of injuries suffered." FED. R. CIV. P. 26(a)(1)(A)(iii)

"A party must make its initial disclosures based on the information then *reasonably available* to it." FED. R. CIV. P. 26(a)(1)(E) (emphasis added). "A party is not excused from making its disclosures because it has not fully investigated the case." FED. R. CIV. P. 26(a)(1)(E). "While a party may not have all of the information necessary to provide a computation of damages early in the case, it has a duty to diligently obtain the necessary information and prepare and provide its damages computations within the discovery period. *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011).

"A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." FED. R. CIV. P. 26(e).

/// /// ///

/// /// ///

3

## III. Discussion

1. <u>The FTC's $26.7 Million Disgorgement Figure Is Not Excluded</u>

Under the circumstances, the FTC's June 2015 disclosure of its $26.7 million disgorgement figure complied with the requirements of Rule 26(a) regarding computation of damages and will not be excluded. Rule 26(a) requires that a party make its computation of damage based on the information reasonably available to it at the time of initial disclosures. F<small>ED</small> R. C<small>IV</small>. P. 26(a)(1)(E). In August 2012, while the FTC was generally aware that some proceeds from the Defendants' misconduct was diverted to the Relief Defendants, the FTC did not have sufficient information to generate its $26.7 million disgorgement figure. Only in April 2015, after the FTC subpoenaed information from third-party financial institutions and received the Relief Defendants detailed discovery responses, as part of Phase II discovery, was the FTC able to provide a computation of disgorgement damages. Once the FTC obtained sufficient information to calculate the amount of damages sought from the Relief Defendants, it acted promptly, by first filing a motion for a preliminary injunction to halt any future transfers to the Relief Defendants, then by supplementing its initial disclosures to include a computation of disgorgement damages.

The Relief Defendants' argument, that the FTC's June 2015 supplemental disclosure was untimely as it was made nearly three years after the FTC's first initial disclosure, ignores the multiple discovery stays in this action. Discovery, regarding the amount of damages sought from the Relief Defendants, was stayed for nearly two years while the parties completed Phase I. The FTC was prohibited from pursuing information about the disgorgement damages. The court had ordered the parties to focus on the Defendants' alleged violations of federal law in Phase I. Contrary to the Relief Defendants' position, the FTC diligently pursued, and acted on, information regarding the amount of damages sought from the Relief Defendants.

The Relief Defendants next argue that they are prejudiced by the FTC's June 2015 supplemental disclosure as they were unable to obtain an expert witness or rebuttal expert witness before the close of discovery. The Relief Defendants' prejudice argument is unpersuasive.  As early as August 2012, the Relief Defendants were aware that the FTC sought disgorgement damages from them.  (Doc. #901-1 at 17.).  The Relief Defendants had financial records relevant to their disgorgement damages. Third-party discovery, and discovery directed to the Relief Defendants, was required in order for the FTC to calculate its $26.7 million disgorgement figure.  Thus the Relief Defendants had ample opportunity, and arguably an opportunity superior to the FTC, to retain a disgorgement damages expert.

The authorities that the Relief Defendants rely on, where courts excluded untimely damages' claims, are distinguishable.  The Relief Defendants' authorities are personal injury actions where the plaintiff untimely disclosed medical expenses or lost wages.  In each case, the plaintiff was in the best position, and possessed the requisite diagnosis and other information, to determine his medical expenses and lost wages, at the time initial disclosures were due.  Here, the Relief Defendants, not the FTC, possessed the information necessary for calculating the Relief Defendants' disgorgement damages.  The FTC needed information from the Relief Defendants, as well as third-party financial institutions, in order to calculate the amount of damages sought from the Relief Defendants.  The FTC promptly provided the Relief Defendants with its calculations once it had the necessary information.  Under these circumstances, exclusion is not warranted.  The FTC did not violate Rule 26(a).

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that the Relief Defendants' motion for discovery sanctions (Doc. #899) is DENIED.

IT IS FURTHER ORDERED that the FTC's disgorgement damages are limited to $26.7 million; $8 million of which is attributable to the purchase and maintenance of property in Aspen, CO, with the

remaining $18,714,603.10 attributable to payment from the Defendants for which the Relief Defendants offered no consideration.[3]

IT IS SO ORDERED.

DATED this 24th day of March, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[3] This limitation is subject to adjustment, if the FTC presents evidence that the Relief Defendants received money transfers from the Defendants, after April 2015, for which the Relief Defendants gave no consideration.