**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

THE FEDERAL TRADE COMMISSION,

        Plaintiff,

vs.

AMG SERVICES; *et.al.*,

        Defendants.

Case No. 2:12–cv–536–GMN–VCF

**ORDER**

MOTION TO EXCLUDE EXPERT OPINION (DOC. #951)

      This matter involves the Federal Trade Commission's (the "FTC") civil action against Scott A. Tucker, Nereyda M. Tucker, and other related Defendants (the "Tucker Defendants"). Before the court are the Tucker Defendants' motion to exclude expert opinion (Doc. #951), the FTC's response (Doc. #961), and the Tucker Defendants' reply (Doc. #969). For the reasons stated below, the Tucker Defendants' motion is denied.

**I. Background**

      In Phase I of this action, the AMG Services designated Dr. Scheffman as an expert witness. (Doc. #961-2). Dr. Scheffman's report opined that repeat borrowers would be more knowledgeable about their loans than first time borrowers and that repeat borrowers could not have been deceived by the Defendants' payday loan information. (*Id.*) At the end of Phase I, the FTC and AMG Services stipulated to a permanent injunction and entry of judgement.[1] (Doc. #727). As part of their stipulation, AMG Services was terminated from this action. (*Id.*)

---

[1] The stipulation prevented AMG Services and MNE Services from engaging in payday lending. (Doc. #727). AMG also agreed to pay the FTC twenty-one million dollars. (*Id.*)

1

In Phase II of this action, the Tucker Defendants contend that they are not required to pay damages to repeat borrowers. (Doc. #951). They offered Dr. Scheffman's Phase I opinion to support their position. (*Id.*) The Tucker Defendants did not designate Dr.Scheffman as an expert witness by the initial expert disclosure deadline. (*Id.*) Instead the Tucker Defendants alluded to Dr. Scheffman's opinion in their discovery responses and relied on the doctor's opinion in support of their motion for summary judgement. (Doc. #961).

As a rebuttal witness, the FTC offered Dr. Loewenstein. (*Id.*) Dr. Loewenstein opined that Dr. Scheffman's opinions are misleading and that repeat borrowers are less knowledgeable than the Tucker Defendants contend. (Doc. #951-2).

The Tucker Defendants now move to strike Dr. Loewenstein's opinion.

**II. Discussion**

The parties present two issues: (1) whether the FTC's designation of Dr. Loewenstein's opinion was untimely and (2) whether Dr. Loewenstein's testimony is admissible as an expert opinion.

1.  <u>The FTC Timely Disclosed Dr. Loewenstein's Opinion</u>

The FTC disclosed Dr. Loewenstein's opinion by the rebuttal expert disclosure deadline. A party must disclose its expert testimony at least 90 days before the trial date. FED. R. CIV. P. 26(a)(2)(D)(i). An opposing party must disclose its rebuttal expert testimony within 30 days of the other party's initial expert testimony disclosure. FED. R. CIV. P. 26(a)(2)(D)(ii). Under the court's Phase II discovery plan, initial expert disclosures were due on May 7, 2015, and rebuttal expert disclosures were due on July 2, 2015. (Doc. #644).

During Phase II discovery, the Tucker defendants did not disclose Dr. Scheffman. Instead they referenced Dr. Shceffman's opinion in their discovery responses and relied on Dr. Scheffman's opinion in support of their motion for summary judgment. Despite the Tucker defendant's uncertain designation

of Dr. Scheffman, the FTC disclosed Dr. Loewenstein's rebuttal opinion on July 2, 2015, the rebuttal expert deadline. As the FTC designated Dr. Loewenstein by the rebuttal expert disclosure deadline, his opinion will not be stricken.

The Tucker Defendants argue that since the FTC did not disclose Dr. Loewenstein during Phase I discovery, Dr. Loewenstein's opinion should be stricken. In Phase I, the parties litigated the defendant's statutory liability. In Phase II, the parties are litigating the amount of damages each defendant must pay. In order to focus the parties on the relevant issues, the court entered separate scheduling orders for Phase I and Phase II discovery.

Dr. Loewenstein opines about damages, and his opinions would have been irrelevant in Phase I. Now that the Tucker Defendants have been found liable, the FTC properly offers Dr. Loewenstein's opinions to rebut the Tucker Defendants' damages expert. The Tucker Defendants' argument that Dr. Loewenstein should have been disclosed during Phase I discovery ignores the purpose of the court's phased discovery plan.

2. <u>Dr. Loewenstein's Opinions are Admissible as Expert Opinions</u>

       i. *Dr. Loewenstein's First Opinion Will Not Be Stricken*

When he formed his first opinion, Dr. Loewenstein used a reliable methodology and reliably applied it to the facts of this case. When forming his opinion, Dr. Loewenstein must use reliable principles and methods and reliably apply them to the facts of this case. FED. R. CIV. P. 702. Dr. Scheffman concluded that repeat borrowers would have learned from their previous borrowing experience and that the Tucker Defendants could not have deceived these borrowers. Dr. Loewenstein opined that this conclusion was misleading as it was based on the unfounded assumption that borrowers would actually learn from their past experiences.

In support of his opinion, the doctor cited research that shows "severe limitations in what people learn from experience." (Doc. #951-2).  Contrary to the Tucker Defendants' argument, Dr. Loewenstein's first opinion is the product of a reliable methodology, namely research regarding individuals' ability to learn from experience, and he reliably applied it to the facts of this case.

In addition, the court finds that Dr. Loewenstein's specialized knowledge will help the court determine if a genuine issue of material fact exists.  FED. R. EVID. 702.  Dr. Loewenstein opined that Dr. Scheffman's opinion was flawed, in part, because Dr. Scheffman improperly assumed that repeat borrowers knew that they were borrowing from the same lender.

At his deposition, Dr. Loewenstein testified that he could not rule out the possibility that some of the repeat borrowers knew that they were borrowing from the same lender.  The Tucker Defendants argue that Dr. Loewenstein's inability to completely refute Dr. Scheffman's opinion renders Dr. Loewenstein's opinion unhelpful.  This argument goes to the weight and not the admissibility of Dr. Loewenstein's opinion.

        ii.     *Dr. Loewenstein's Second Opinion Will Not Be Stricken*

Dr. Loewenstein used a reliable methodology to form his second opinion.  Dr. Loewenstein opined that Dr. Scheffman's comparison of first time borrowers and repeat borrowers was flawed.  It did not take into account significant factors that could account for the differences between the two groups.  These factors included the increased desperation and lack of sophistication of repeat borrowers.  The Tucker Defendants argue that since Dr. Loewenstein did not cite to any independent support for his opinion, it is untested speculation.  This argument ignores the fact that Dr. Loewenstein likely used a similar methodology as Dr. Scheffman.

Both experts attempt to explain the differences between the two groups of borrowers.  Dr. Scheffman opines that the differences are attributable to the repeat borrowers past experience with loans.

Dr. Loewenstein opines that other factors resulted in the observed differences. As Dr. Loewenstein applied a reliable methodology to the facts of this case, his alternative conclusions go to the weight, not the admissibility of his opinion.

### iii. *Dr. Loewenstein's Third Opinion Will Not Be Stricken*

Dr. Loewenstein is qualified to render his third opinion. Dr. Loewenstein finds fault with Dr. Scheffman's statistical conclusions. The Tucker Defendants argue that since Dr. Loewenstein testified that he is not a statistics expert, he cannot challenge Dr. Scheffman's statistical conclusions. A witness may give an expert opinion if his knowledge, skill, experience, training, education qualifies him as an expert. FED. R. EVID. 702. Even though Dr. Loewenstein does not have formal training in statistics,[2] his experience with consumer finance and consumer behavior qualifies him to give an opinion about Dr. Scheffman's statistical conclusions. (Doc. #951-2). The doctor's lack of formal statistical training goes to the weight, not the admissibility of his opinion.

### iv. *Dr. Loewenstein's Fourth Opinion Will Not Be Stricken*

Dr. Loewenstein used a reliable methodology to form his fourth opinion. Dr. Scheffman concluded that if borrowers took longer to repay a loan, they would become more knowledgeable about their loan. Based on his research, Dr. Loewenstein opined that these conclusions ignored basic principles of human learning. The Tucker Defendants contend that Dr. Loewenstein's opinions are untested speculation. This argument ignores that substantial body of research Dr. Loewenstein cited in support of his opinion. Any issues the Tucker Defendants have with Dr. Loewenstein's fourth opinion

/// /// ///

---

[2] Dr. Loewenstein testified "I wouldn't call myself an expert in statistics, because my expertise is in economics and psychology." The Tucker Defendants assert that the doctor's testimony is an admission that he is not qualified to testify about statistics. The court disagrees. In context, Dr. Loewenstein meant the non-legal definition of the word "expert." His comment cannot be construed as an admission that he is not qualified under Rule 702.

go to the weight, not the admissibility of his opinion.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that the Tucker Defendants' motion to strike (Doc. #951) is DENIED.

IT IS SO ORDERED.

DATED this 4th day of May, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE