DANIEL G. BOGDEN
United States Attorney
District of Nevada
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar. No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone:  (702) 388-6336
Facsimile:  (702) 388-6787
Email:  Blaine.Welsh@usdoj.gov

DAVID C. SHONKA
Acting General Counsel
NIKHIL SINGHVI
JASON D. SCHALL
HELEN P. WONG
IOANA RUSU
COURTNEY A. ESTEP
THOMAS E. KANE
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop CC-10232
Washington, D.C. 20580
Phone:  (202) 326-3480 (Singhvi)
Facsimile:  (202) 326-3768
Email:  nsinghvi@ftc.gov (Singhvi); jschall@ftc.gov (Schall)
*Attorneys for Plaintiff Federal Trade Commission*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:12-cv-536 |
| Plaintiff, | |
| v. | **EMERGENCY MOTION TO ENFORCE ASSET FREEZE ORDER** |
| AMG Services, Inc., et al., | |
| Defendants, and | |
| Park 269, LLC, et al., | |
| Relief Defendants. | |

**INTRODUCTION**

This is an emergency motion necessitated by the actions of a third party attempting to appropriate a $600,000 asset during the pendency of these proceedings, with full knowledge and in defiance of this Court's Asset Freeze Order (ECF No. 960).  The Federal Trade Commission ("FTC") seeks to prevent El Dorado Trailer Sales, LLC and ETS Ventures, LLC (collectively, "El Dorado") from disposing of a vehicle purchased by Defendant Level 5 Motorsports, LLC ("Level 5").  Notwithstanding its knowledge of the Asset Freeze Order, El Dorado has stated its intention to sell the vehicle in two weeks.  El Dorado's arbitrary deadline and threat to act unilaterally requires urgent action.

Level 5 – which supports this emergency motion – has a bill of sale and proof of payment for the trailer's full purchase price.  But El Dorado has seized the vehicle and transported it more than 500 miles and across four states without Level 5's knowledge or consent.  El Dorado's claim to ownership of the vehicle is preposterous even based on its own statements, all of which confirm Level 5 paid the purchase price.  More incredibly, El Dorado will not agree to restrain the vehicle to resolve the purported dispute.

The relief sought by the FTC is narrow and reasonable:  the Court should enter an order to prevent El Dorado's brazen strong-arm tactics and to preserve the status quo pending further factual determination by the Court.  To preserve the vehicle from this renegade actor, the Court should order El Dorado to surrender the vehicle to an agent designated by the FTC.

**FACTS**

Level 5 is an auto racing venture wholly owned by Defendant Scott Tucker.  (ECF No. 58.)  In August 2014, Level 5 contracted with Bruce High Performance Transporters ("Bruce Transporters") to purchase a vehicle transporter trailer.  (Ex. 3.)  The purchase price for the trailer, including taxes, was $589,680, payable in a down payment and two later installments.  (*Id.*)  Level 5 made all three payments, the last of which occurred in November 2014.  (*Id.*)  For as yet unexplained reasons, Level 5 did not take possession of the trailer, and it remained in storage at a Bruce Transporters facility in Painesville, Ohio.

On December 31, 2015, Bruce Transporters, by its owner Bruce Hanusosky, sold certain assets of the company to ETS Ventures LLC.  (Ex. 2 ¶ 2.)  Level 5 was not a party to that agreement.  (*Id.* at Ex. A.)  According to a draft settlement agreement, Mr. Hanusosky initially continued as a Bruce Transporters employee after the sale, but was terminated in or around July 2016.  (Ex. 6.)  Among other things, the draft

1  settlement agreement confirms that Level 5 paid for the trailer but provides that Mr. Hanusosky and El

2  Dorado would seek to have the trailer declared abandoned under Ohio law, so that Mr. Hanusosky and El

3  Dorado could share the net proceeds of its sale.  (*Id.*)

4       The Court entered the Asset Freeze Order on March 31, 2016 (ECF No. 960), freezing the assets of

5  Level 5 (along with those of the other defendants).  In or about July 2016, Level 5's agent, Kelly Moss

6  Racing, unsuccessfully attempted to retrieve the trailer on behalf of Level 5.  (Ex. 4.)  In an August 4, 2016

7  letter to Level 5, El Dorado's counsel informed Level 5 that, in light of a dispute between El Dorado and

8  Mr. Hanusosky regarding completion of the trailer, pursuant to which El Dorado had purportedly incurred

9  $280,000 in expenses, El Dorado had moved the trailer from Ohio to Wisconsin.  (Ex. 5.)  In that letter, El

10  Dorado admitted that Level 5 paid the full cost of the trailer.  (*Id.*)  Yet El Dorado took the position that

11  Level 5's claim was solely against Bruce Transporters (*id.*), and, claiming the trailer as its own, has now

12  refused to deliver the trailer to Level 5.

13       On or around August 2, 2016, Mr. Hanusosky reported to the FBI the removal of the trailer, which

14  he believed to be unlawful and part of an apparent attempt by El Dorado to take advantage of the

15  uncertainty surrounding Level 5 as a result of the proceedings in this Court.  (Singhvi Decl. ¶ 9.)  Among

16  other things, Mr. Hanusosky delivered to the FBI a copy of a certificate of origin for the trailer that appears

17  to bear his signature, which Mr. Hanusosky claims is unauthorized.  (Exs. 4, 7.)

18       Shortly after Mr. Hanusosky contacted the FBI regarding El Dorado's actions, the FTC served El

19  Dorado with the Asset Freeze Order.  On August 10, 2016, the FTC requested El Dorado's agreement to

20  restrain the trailer pending a resolution of the dispute concerning its ownership, assuring El Dorado that it

21  would not waive its claim in so doing.  (Singhvi Decl. ¶ 6.)  The FTC followed up with another call on

22  August 22, 2016, making the same request and assurance.  (*Id.*)  Later on August 22, 2016, El Dorado

23  provided to the FTC a letter from counsel and a sworn statement from its principal, Dale Becker.  (Exs. 1

24  and 2.)  The letter admitted that Level 5 paid for the trailer but relayed El Dorado's position that the Asset

25  Freeze Order does not apply and its intention to sell the trailer in as soon as two weeks.  (Ex. 1.)  Mr.

26  Becker's statement also admitted that Level 5 paid for the trailer but reiterated El Dorado's claim that it

27  was forced to complete the trailer at its expense and that Level 5 somehow had no ownership interest in it.

28  (Ex. 2.)

**ARGUMENT**

**I.     The Court Has The Power To Enforce Its Asset Freeze Order**

The Court entered the Asset Freeze Order pursuant to authority stemming from 15 U.S.C. § 13(b), which grants the Court broad equitable powers in FTC matters, including to freeze assets.  (ECF No. 960 at 3.)  The Order provides, in relevant part, that any person served with the Order who holds an asset of any Defendant must hold and retain that asset, and prohibit its sale or other disposal.  (*Id.* at 16, Art. II.A.)  On its face and pursuant to settled law, the Asset Freeze Order applies to non-parties.  *See Pittman v. Aswan Rest. Grp., LLC*, No. 11–cv–2259–BEN (JMA), 2012 WL 505920, at *2 (S.D. Cal. Feb. 14, 2012).

The Court has authority to defend and enforce its orders under the All Writs Act, 28 U.S.C. § 1651, which provides that district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  The Court's power under the All Writs Act includes the power to compel compliance by third parties.  *United States v. New York Tel. Co.*, 434 U.S. 159, 171-72 (1977); *In re Am. Online Spin-Off Accounts Litig.*, No. CV 03-6971-RSWL, 2005 WL 5747463, at *2 (C.D. Cal. May 9, 2005); *Ridgeway v. Flagstar Corp.*, No. C 93-20202 JW, 1994 WL 525553, at *2 (N.D. Cal. Sept. 22, 1994).[1]

Likewise, the Court has the power to issue writs to enforce compliance with previous orders.  In *New York Tel. Co.*, the Supreme Court held:

> This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate *to effectuate and prevent the frustration of orders it has previously issued* in its exercise of jurisdiction otherwise obtained: "This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve "the rational ends of law."' " *Harris v. Nelson*, 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281 (1969), *quoting Price v. Johnston*, 334 U.S. 266, 282, 68 S.Ct. 1049, 1058, 92 L.Ed. 1356 (1948).

---

[1] *See also SEC v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008) ("the injunctive mandate of a federal court runs nationwide, and the issuing court has the authority to deal with defiance of its order regardless of where that defiance occurs"); *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985) ("The nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders.") (citations omitted).

434 U.S. at 172 (emphasis added); *see also FTC v. 4 Star Resolution, LLC*, No. 15-CV-112S, 2016 WL 4138229, at *2 (W.D.N.Y. Aug. 4, 2016) (quoting *New York Tel. Co.*). Here, a determination regarding ownership of the vehicle by the Court is necessary and should not be frustrated by El Dorado's unilateral attempt to dispose of the asset. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (the court "may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced") (cited in *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982)); *FTC v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486, at *8-9 (N.D. Cal. Feb. 22, 2010) (discussing application of *Porter* to permit district courts to craft equitable remedies in aid of complete justice).

Here, the FTC merely attempts to enforce the Asset Freeze Order and preserve the status quo by preventing El Dorado's sale of the trailer and securing the trailer in a safe location. A limited order of that nature to permit the Court to make a conclusive determination regarding the trailer's ownership is well within the Court's power.

## II. The Court Should Restrain El Dorado's Strong-Arm Attempt To Sell The Trailer Before Any Resolution Of The Ownership Dispute

The FTC has made a sufficient showing to warrant the narrow relief requested herein.

First, there is no dispute that Level 5 purchased the vehicle in question and paid for it in full. The bill of purchase and check images confirm the same. (Ex. 3.) Dale Becker, El Dorado's principal, admits that Level 5 paid the purchase price for the trailer (Ex. 2), as does his counsel. (Exs. 1, 5.)

Mr. Becker's statement provides further support for the FTC's position. Based on that statement, El Dorado's claim to ownership of the trailer stems from a dispute related to its asset purchase agreement with Bruce Hanusosky. (Ex. 2.) Importantly, El Dorado makes no claim that Level 5 requested or authorized any of the work on the trailer that El Dorado claims to have done. (*See generally id.*) So, if El Dorado has a genuine claim for labor and materials required to complete Level 5's trailer, its dispute rests solely with Bruce Hanusosky. That dispute is of no concern to Level 5, a bystander to the sale of the Bruce Transporter assets and a customer simply attempting to take possession of a vehicle it ordered and paid for. And even accepting at face value Mr. Becker's claim that El Dorado incurred **$280,000** in labor

and material cost to complete the trailer, he and his legal counsel never explain how that claim could possibly permit El Dorado to title *to itself* a **$600,000** vehicle paid for by Level 5, and then seize and transport that vehicle, all without notice to (much less permission from) Level 5.

One might imagine that if El Dorado had a genuine claim against Level 5 for the apparently unrequested and unauthorized work to finish the trailer, El Dorado would first demand that Level 5 settle that work before engaging in its various extraordinary self-help measures.  But El Dorado's apparent failure to make such a claim to Level 5 supports two inferences:  it did not want to remind Level 5 that the trailer existed and had been paid for; and it knew that its claim for the purported extra work, at least as against Level 5, was specious.  El Dorado's current position that it may now sell the vehicle in two weeks, notwithstanding Level 5's full payment and notwithstanding the Asset Freeze Order, is even more outrageous.

Whereas the bill of sale, check images, and Mr. Becker's own statements are sufficient to warrant the relief sought by the FTC, other facts in the limited record presently before the Court also severely undermine El Dorado's ownership claim and call into doubt its unilateral attempt to sell the vehicle.  For example, the certificate of origin created by El Dorado for purposes of surreptitiously transporting the vehicle from Ohio to Wisconsin bears Mr. Hanusosky's signature (Ex. 7), but Mr. Hanusosky claims that the signature was unauthorized.  (Ex. 4.)  Also, a July 2016 draft severance agreement between Mr. Hanusosky and El Dorado contemplates the sale of the trailer and division of proceeds between Mr. Hanusosky and El Dorado in the event the vehicle had been deemed abandoned by Level 5 (Ex. 6), indicating the parties' knowledge that the trailer presumptively belonged to Level 5 and further supporting suspicions that El Dorado hoped to unjustly benefit from the confusion created by the Asset Freeze Order.  Likewise, it bears noting that while Level 5 and Mr. Hanusosky proactively informed the FTC and FBI, respectively, about this dispute, El Dorado, undoubtedly aware of the federal civil and criminal proceedings against Scott Tucker, took matters into its own hands and failed to contact any federal authorities regarding its seizure and transport of the vehicle.

**CONCLUSION**

The purpose of the Court's Asset Freeze Order is to preserve the Defendants' assets for possible redress to the millions of consumers deceived by Defendants' actions.  El Dorado's claim that the trailer is not a Level 5 asset defies logic, and its intent to sell the trailer, based on an arbitrary deadline of two weeks and before the Court has any opportunity to fully examine the facts, openly defies the authority of the Court.  For the foregoing reasons, the Court should enter an order requiring El Dorado to restrain and not sell or otherwise dispose of the trailer, and permitting the FTC to designate an agent to take custody of it.

Dated:  August 24, 2016

Respectfully submitted,

*/s/ Nikhil Singhvi*
Nikhil Singhvi
Jason D. Schall
Helen P. Wong
Ioana Rusu
Courtney A. Estep
Thomas E. Kane

***Attorneys for Plaintiff***
***Federal Trade Commission***

**CERTIFICATE OF SERVICE**

I, Nikhil Singhvi, certify that, as indicated below, all parties were served by ECF with the FTC's **EMERGENCY MOTION TO ENFORCE ASSET FREEZE ORDER** filed with the Court.

Von S. Heinz (vheinz@lrrc.com)
Darren J. Lemieux (dlemieux@lrrc.com)
E. Leif Reid (lreid@lrrc.com)
Jeffrey D. Morris (jmorris@berkowitzoliver.com)
Ryan C. Hudson (rhudson@berkowitzoliver.com)
Nick J. Kurt (nkurt@berkowitzoliver.com)
Justin C. Griffin (justingriffin@quinnemanuel.com)
Sanford I. Weisburst (sandyweisburst@quinnemanuel.com)
Kathleen Sullivan (kathleensullivan@quinnemanuel.com)
*Attorneys for Defendants AMG Capital Management, LLC; Level 5 Motorsports, LLC; LeadFlash Consulting, LLC; Black Creek Capital Corporation; Broadmoor Capital Partners, LLC; Scott A. Tucker; Nereyda M. Tucker, as Executor of the Estate of Blaine A. Tucker*

Patrick J. Reilly (preilly@hollandhart.com)
Linda C. McFee (lmcfee@mcdowellrice.com)
Robert Peter Smith (petesmith@mcdowellrice.com)
*Attorneys for Relief Defendants Kim C. Tucker and Park 269 LLC*

Victoria W. Ni (vni@publicjustice.net)
Craig B. Friedberg (attcbf@cox.net)
*Attorneys for Intervenor Americans for Financial Reform*

I further certify that third parties El Dorado Trailer Sales, LLC and ETS Ventures, LLC have been served via email and overnight delivery to:

Jeffrey Vanderloop
Madden Vanderloop, S.C.
116 South Main Street
Mayville, WI  53050
jvanderloop@madvanlaw.com

August 24, 2016
*/s Nikhil Singhvi*
Nikhil Singhvi