DANIEL G. BOGDEN
United States Attorney
District of Nevada
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar. No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone:  (702) 388-6336
Facsimile:  (702) 388-6787
Email:  Blaine.Welsh@usdoj.gov

KIMBERLY L. NELSON
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop CC-9528
Washington, D.C. 20580
Phone:  (202) 326-3304
Facsimile:  (202) 326-3197
Email:  knelson@ftc.gov
*Attorney for Plaintiff Federal Trade Commission*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMG Services, Inc. *et al*., <br><br> Defendants, and <br><br> Park 269 LLC, *et al.*, <br><br> Relief Defendants. | Case No. 2:12-cv-536 <br><br><br> **JOINT MOTION TO ENTER STIPULATED ORDER APPOINTING MONITOR AND FREEZING ASSETS** |

Plaintiff, Federal Trade Commission ("FTC"), Defendants Scott Tucker, AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, and Broadmoor Capital Partners (collectively, "Tucker Defendants"), and Relief Defendants Kim Tucker and Park 269, LLC (together, "Relief Defendants") have conferred to resolve various post-judgment motions pending before the Court.  Those negotiations resulted in the attached, proposed Stipulated Order Appointing Monitor and Freezing Assets (the "Proposed Stipulated Order").  The Proposed Stipulated Order resolves the pending Motion for Order Directing Turnover of Assets (ECF No. 1059, "Turnover Motion"), the Motion for Appointment of a Receiver (ECF No. 1064 (filed under seal), "Receiver Motion"), the oppositions filed to those motions, and issues related to a stay of execution that will arise once the Tucker Defendants, or the Tucker Defendants and Relief Defendants file a notice of appeal (due November 29, 2016).  Specifically, the parties have agreed, *inter alia*, to:  (i) a stay of execution upon filing a notice of appeal by the Tucker Defendants or by the Tucker Defendants and Relief Defendants; (ii) the imposition of a post-judgment asset freeze while the anticipated appeal is pending (but subject to certain carve-outs and time limitations); and (iii) the appointment of a monitor to oversee the asset freeze and the orderly sale of certain assets the Tucker Defendants have agreed to liquidate while the appeal is pending.

Thus, the FTC, Tucker Defendants and Relief Defendants respectfully request that the Court enter the attached proposed order.  Entry of the Proposed Stipulated Order will make adjudication of the Turnover Motion and Receiver Motion unnecessary, as the issues addressed in each motion have been resolved in the Proposed Stipulated Order.

/

/

/

/

/

/

/

/

/

1

Dated: November 28, 2016

Respectfully submitted by:

  /s/ Kimberly L. Nelson
Kimberly L. Nelson
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-9528
Washington, DC  20580
knelson@ftc.gov
Tel. (202) 326-3304
Fax (202) 326-3197

*Attorney for Plaintiff Federal Trade Commission*

  /s/ Jeffrey D. Morris
Jeffrey D. Morris
Berkowitz Oliver LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO  64108
jmorris@berkowitzoliver.com
Phone:  (816) 561-7007
Fax: (816) 561-1888

*Attorney for Defendants Scott Tucker, Black Creek Capital Corporation, Level 5 Motorsports LLC, Broadmoor Capital Partners, LLC, and AMG Capital Management, LLC*

  /s/ Linda C. McFee
Linda C. McFee
R. Pete Smith
McDowell, Rice, Smith & Buchanan
605 West 47th Street, Suite 350
Kansas City, MO  64112
Tel:  (816) 753-5400
lmcfee@mcdowellrice.com
petesmith@mcdowellrice.com

*Attorneys for Relief Defendants Kim C. Tucker and Park 269, LLC*

**CERTIFICATE OF SERVICE**

I, Kimberly L. Nelson, certify that, as indicated below, all parties were served by ECF with **JOINT MOTION TO ENTER STIPULATED ORDER APPOINTING MONITOR AND FREEZING ASSETS and proposed order** filed with the Court.

Von S. Heinz (vheinz@lrrc.com)
Darren J. Lemieux (dlemieux@lrrc.com)
E. Leif Reid (lreid@lrrc.com)
Jeffrey D. Morris (jmorris@berkowitzoliver.com)
Ryan C. Hudson (rhudson@berkowitzoliver.com)
Nick J. Kurt (nkurt@berkowitzoliver.com)
Justin C. Griffin (justingriffin@quinnemanuel.com)
Sanford I. Weisburst (sandyweisburst@quinnemanuel.com)
Kathleen Sullivan (kathleensullivan@quinnemanuel.com)
*Attorneys for Defendants AMG Capital Management, LLC; Level 5 Motorsports, LLC; LeadFlash Consulting, LLC; Black Creek Capital Corporation; Broadmoor Capital Partners, LLC; Scott A. Tucker; Nereyda M. Tucker, as Executor of the Estate of Blaine A. Tucker*

Patrick J. Reilly (preilly@hollandhart.com)
Linda C. McFee (lmcfee@mcdowellrice.com)
Robert Peter Smith (petesmith@mcdowellrice.com)
*Attorneys for Relief Defendants Kim C. Tucker and Park 269 LLC*

Victoria W. Ni (vni@publicjustice.net)
Craig B. Friedberg (attcbf@cox.net)
*Attorneys for Intervenor Americans for Financial Reform*

November 28, 2016                    /s/ Kimberly L. Nelson
                                     Kimberly L. Nelson

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

FEDERAL TRADE COMMISSION,                    Case No. 2:12-cv-536

Plaintiff,

v.

AMG Services, Inc. et al.,                    **ORDER APPOINTING**
**MONITOR AND FREEZING**
**ASSETS**
Defendants, and

Park 269 LLC, et al.,

Relief Defendants.

The Federal Trade Commission ("FTC") and Defendants Scott Tucker, AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, and Broadmoor Capital Partners (collectively, "Tucker Defendants"), Kim Tucker and Park 269, LLC (together, "Relief Defendants") request that the Court enter the following post-judgment asset freeze and appoint Thomas W. McNamara as a monitor with the rights and powers identified herein.

## FINDINGS

1.      On September 30, 2016, this Court entered an Order granting the FTC's summary judgment motion on Phase 2, and entered judgment against the Tucker Defendants and the Relief Defendants.  Order (ECF No. 1057).  In the Order, the Court ordered, *inter alia*, the Tucker Defendants to pay the Commission $1,266,084,156 within fourteen days of entry; and similarly ordered relief defendants Kim Tucker and Park 269 LLC to pay $19,072,774 and $8,000,000, respectively.  Order, Section VI.B-C.  To date, the FTC has not received any payments from the Tucker Defendants or the Relief Defendants.

2.      To facilitate post-judgment collection and enforcement of the Court's Order, the FTC filed a Motion for Order Directing Turnover of Assets (ECF No. 1059, "Turnover Motion") and a Motion for Appointment of a Receiver (ECF No. 1064 (filed under seal), "Receiver Motion").  The Tucker Defendants have opposed each motion.  *See generally*, Tucker Defendants' Response in Opposition to FTC's Motion for Order Directing Turnover of Assets (ECF No. 1061); Tucker Defendants' Opposition to Motion for Appointment of a Receiver (ECF No. 1071).

1

3. The parties have negotiated a resolution to the Turnover Motion and Receiver Motion that includes the appointment of a monitor, the imposition of a post-judgment asset freeze and a suspension of collection efforts pending appeal.

4. The Tucker Defendants have indicated they intend to appeal the Court's Order. The deadline for the Tucker Defendants and Relief Defendants to file a notice of appeal is November 29, 2016.

5. Good cause exists to appoint a monitor and impose an asset freeze to preserve the status quo during the pendency of the appeal, and to facilitate the liquidation of assets that absent such liquidation would waste in value during the pendency of the appeal.

Accordingly, the Court orders as follows:

## DEFINITIONS

For the purpose of this order, the following definitions shall apply:

A. **"Asset"** means assets disclosed in each Defendant's "Federal Trade Commission Financial Statement of Individual Defendant" or "Federal Trade Commission Financial Statement of Corporate Defendant," any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property wherever located, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, futures, securities, partnership interests, inventory, checks, notes, accounts, credits, receivables, cash or currency, trusts, including but not limited to asset protection trusts and trusts held for the benefit of a Defendant, and reserve funds or other accounts associated with any payments processed on behalf of any Defendant, including, but not limited to, such reserve funds held by a payment processor, credit card processor, or bank, regardless of when any Defendant acquired such interest, right, or claim.

B. **"Defendants"** means (a) each Tucker Defendant and (b) each Relief Defendant. In addition, any person insofar as he or she is acting in the capacity of an officer, agent, employee, or attorney of any Tucker Defendant or any Relief Defendant, and any person or entity in active concert or participation with any of the foregoing who receives actual notice of this Order by personal service or otherwise, is bound to comply with this Order, *see* FED. R. CIV. P. 65(d), whether these persons or entities are acting directly or through a trust, corporation, subsidiary, division, or other device.

2

C.    **"Document"** is synonymous in meaning and equal in scope to the terms "Document" and "electronically stored information," as described and used in the Federal Rules of Civil Procedure.  This includes, but is not limited to, electronic mail, instant messaging, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on:  cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.

D.    **"Financial Institution"** means any bank, savings and loan institution, credit union, payment processor, trust, or any financial depository of any kind, including but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

E.    **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

F.    **"Plaintiff" or "Commission" or "FTC"** means the Federal Trade Commission.

G.    "**Monitor**" means the person or entity appointed pursuant to Section VI of this order.

H.    The "**Monitor Entities"** means:

a.    The corporate defendants and corporate relief defendant:  AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, Broadmoor Capital Partners, LLC, Park 269, LLC; and their successors, assigns, affiliates, and subsidiaries;

b.    BA Services LLC, C5 Capital LLC, DF Services Corp., DFTW Consolidated [UC] LLC, Impact BP LLC, Level 5 Apparel LLC, Level 5 Capital Partners LLC, Level 5 Eyewear LLC, Level 5 Scientific LLC, NM Service Corp. (f/k/a/ National Money Service), PSB Services LLC, Real Estate Capital  LLC (f/k/a/ Rehab Capital I, LLC), Sentient Technologies, ST Capital LLC, Westfund LLC, Eclipse Renewables Holdings LLC, Scott Tucker Declaration of Trust, dated February 20, 2015, West Race Cars, LLC, and Level 5 Management LLC, and their successors, assigns, affiliates, and subsidiaries; and

c.      Any other entity identified by the Monitor that, upon motion granted by the Court, is found to be a proper Monitor Entity because, for example, such entity holds Assets of a Defendant or existing Monitor Entity, or is owned or controlled by a Defendant or Monitor Entity.

d.      This Court shall have exclusive jurisdiction over any dispute regarding whether any entity is included as a Monitor Entity.

I.      **"Relief Defendants"** means Kim Tucker, Park 269, LLC, and their successors, assigns, affiliates, and subsidiaries.

J.      **"Representatives"** means Defendants' and Tucker Entities' officers, agents, employees, and attorneys, and all other persons or entities directly or indirectly under the control of them, and any other person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise.

K.      "**Tucker Entities**" means BA Services LLC, C5 Capital LLC, DF Services Corp., DFTW Consolidated [UC] LLC, Impact BP LLC, Level 5 Apparel LLC, Level 5 Capital Partners LLC, Level 5 Eyewear LLC, Level 5 Scientific LLC, NM Service Corp. (f/k/a/ National Money Service), PSB Services LLC, Real Estate Capital  LLC (f/k/a/ Rehab Capital I, LLC), Sentient Technologies, ST Capital LLC, Westfund LLC, Eclipse Renewables Holdings LLC, Scott Tucker Declaration of Trust, dated February 20, 2015, West Race Cars, LLC, and Level 5 Management LLC, and their successors, assigns, affiliates, or subsidiaries.

L.      **"Tucker Defendants"** means Scott A. Tucker, AMG Capital Management, LLC, Level 5 Motorsports, LLC, Black Creek Capital Corporation, Broadmoor Capital Partners, LLC, and their successors, entities, assigns, affiliates, and subsidiaries.

## I.      SUSPENSION OF COLLECTIONS ACTIVITIES

**IT IS ORDERED** that:

A.      Upon the timely filing of a notice of appeal by the Tucker Defendants, or Tucker Defendants and Relief Defendants, the FTC is stayed from acting to collect the monetary relief awarded in favor of the FTC and against the Tucker Defendants, or Tucker Defendants and Relief Defendants (the "Collection Stay"), in the amounts set forth in the Court's September 30, 2016 Order.  The Collection Stay

4

shall remain in effect until the Collection Stay terminates as set forth in Paragraph C below (including sub-parts), or the Collection Stay and Suspension are otherwise terminated by order of the Court.

B.     Upon entry of this Order and for the duration of the Collection Stay in Section I.A., the Tucker Defendants and relief defendant Kim Tucker shall deposit into a segregated account (Country Club Bank Checking Account x8808, the "Earnings Account"):  (1) all earnings, including but not limited to earnings from services performed by the Tucker Defendants and Kim Tucker, except as set forth below, and (2) all income received by the Tucker Defendants and Kim Tucker, except as set forth below.  The Earnings Account shall be an Asset and frozen pursuant to Section II herein.  Until the Collection Stay terminates, no money or other property may be withdrawn from the Earnings Account or any other Asset, except as follows:

1.  Kim Tucker's W-2 or Form 1099 wages up to $8,000 per month earned as an employee, at Restoration Hardware or any independent employer not a Monitorship Entity or otherwise owned or controlled by any Defendant, shall not be deposited into the Earnings Account and shall be Mrs. Tucker's free and clear of any freeze or other restraint.

2.  Scott and Kim Tucker shall submit records concerning the Earnings Account to the Monitor beginning thirty (30) days from entry of this Order and every thirty days thereafter, unless otherwise agreed to in writing by the FTC.

C.     The Collection Stay shall automatically terminate, without further order, at the earliest of the following:

1.  The date that the Ninth Circuit panel enters its decision on the Tucker Defendants' pending appeal;

2.  The date the appeal is dismissed or withdrawn; or

3.  Twenty-six (26) months after the date of entry of this Order, if no extension has been granted by written agreement of the FTC or order of the Court.

**II.    ASSET FREEZE**

**IT IS FURTHER ORDERED** that:

A.      Defendants, Tucker Entities and their Representatives, whether acting directly or indirectly through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby restrained and enjoined from:

1.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest in, or otherwise disposing of any Assets, wherever located, including outside the United States, that are:

a.   owned or controlled, directly or indirectly, by any Defendant or Tucker Entity, in whole or in part, or held, in whole or in part, for the benefit of any Defendant or Tucker Entity;

b.   in the actual or constructive possession of any Defendant or Tucker Entity;

c.   held by an agent of any Defendant or Tucker Entity as a retainer for the agent's provision of services to any Defendant or Tucker Entity;

d.   owned, controlled by, or in the actual or constructive possession of or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any of the Defendants or Tucker Entities, or of which any Defendant or Tucker Entity is an officer, director, member, or manager.  This includes, but is not limited to, any Assets held by, for, or subject to access by any of the Defendants or Tucker Entities at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other Financial Institution or depository of any kind; or

e.   owned, controlled, or held in any account for which any Defendant or Tucker Entity is an authorized signer.

2.      Opening or causing to be opened any safe deposit boxes titled in the name of or held for the benefit of any Defendant or Tucker Entity, either individually or jointly, or subject to access by any Defendant or Tucker Entity;

3.      Obtaining a personal or secured loan;

4.      Incurring liens or other encumbrances on real property, personal property, or other Assets in the name, singly or jointly, of any Defendant or Tucker Entity, or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or Tucker Entity; or

5.      Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, individually or jointly, of any Defendant or Tucker Entity, or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or Tucker Entity or of which any Defendant or Tucker Entity is an officer, director, member, or manager.  This includes, but is not limited to, any corporate bank or credit card account for which any Defendant or Tucker Entity is an authorized signer.

B.      The asset freeze includes the education savings plans (accounts x0803 and x0804 at Learning Quest) held for the benefit of Scott and Kim Tucker's two children ("529 Accounts").  Provided however, that the funds in the 529 Accounts shall be released upon written consent of the Monitor, which consent shall be provided for any qualified 529 expenses that arise during the pendency of this asset freeze.

C.      The asset freeze excludes Defendants' Assets restrained by the United States District Court for the Southern District of New York ("SDNY Court") or subject to *lis pendens* filed in conjunction with the criminal case pending in the SDNY Court, unless the United States Attorney's Office for the Southern District of New York has directed the release of such asset or *lis pendens* in writing, in which case such assets become Assets frozen under this Order.

D.      The asset freeze excludes the Park 269 account at Country Club Bank (account x8282) (the "Park 269 Account"), subject to the terms and restrictions set forth below in Section VIII.

E.      The asset freeze does not preclude the Monitor from exercising the control set forth under Sections VIII-XI.

F.    **IT IS FURTHER ORDERED** that the assets affected by this Section shall include Assets (a) existing as of the date this Order is entered, (b) acquired by any Defendant or Tucker Entity following entry of this Order, and (c) proceeds from the sale of any Assets of any Defendant or Tucker Entity.

G.    **IT IS FURTHER ORDERED** that the asset freeze imposed by this Order shall remain in effect until the earlier of:

    1.    the Collection Stay terminates under Section I.C above, as conditioned by the following:

        a.    if the Ninth Circuit panel issues a mandate that affirms the Court's Order, the frozen Assets will be transferred to the Monitor for liquidation and payment pursuant to Sections VI to XVIII;

        b.    if the Collection Stay terminates under Sections I.C.2 or I.C.3, then the frozen Assets will be transferred to the Monitor for liquidation and payment pursuant to Sections VI to XVIII; or

        c.    if the Ninth Circuit panel issues a mandate that vacates the finding of liability and the monetary judgment against the Tucker Defendants and/or Relief Defendants the asset freeze shall terminate as to that party or parties, but if the Ninth Circuit panel issues a mandate that otherwise rules in a manner other than affirming the Order in its entirety, the Assets will remain frozen until further ruling by this Court regarding the duration of the asset freeze; or

    2.    this Court enters an order otherwise terminating the asset freeze.

**III.    DUTIES OF ASSET HOLDERS**

**IT IS FURTHER ORDERED** that, except as provided in Section IX, any Financial Institution, business entity, or Person who receives actual notice of this Order (by personal service or otherwise) that (a) holds, controls, or maintains custody of any Asset of any Defendant or Tucker Entity, (b) holds, controls, or maintains custody of any Asset associated with credit or debit card charges made on behalf of any Defendant or Tucker Entity, including but not limited to, reserve funds held by payment processors, or (c) has held, controlled, or maintained custody of any such Asset at any time since the date of entry of this Order shall:

A.      Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishing, conversion, sale, liquidation or other disposal of any such Asset except by further order of this Court;

B.      Deny any person access to any safe deposit box that is:

      1.  titled in the name of or held for the benefit of any Defendant or Tucker Entity, either individually or jointly; or

      2.  otherwise subject to access by any Defendant or Tucker Entity;

C.      Provide the FTC's counsel, within three (3) business days of receiving a copy of this Order, a sworn statement (attached as Exhibit A) reaffirming the financial statements previously provided in response to the March 31, 2016 Preliminary Injunction Asset Freeze, at Section III and Attachment A/Attachment B.

D.      Upon the request of the FTC, promptly provide the FTC with copies of all records or other documentation pertaining to such account or Asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## IV.  REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that, within three (3) business days following entry of this Order on the docket, Defendants and Tucker Entities shall provide the FTC's counsel a sworn statement (attached as Exhibit A) reaffirming their prior statements previously provided in response to the March 31, 2016 Preliminary Injunction Asset Freeze that none have assets or documents to repatriate.

## V.  NOINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants and Tucker Entities, and their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or

dissipation of foreign Assets, or in the hindrance of the repatriation required by the preceding "Repatriation of Assets and Documents" Section of this Order, including, but not limited to:

A.     Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all Assets have been fully repatriated pursuant to the "Repatriation of Assets" Section of this Order; or

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Assets have been fully repatriated pursuant to the "Repatriation of Assets" Section of this Order.

## VI.   <u>APPOINTMENT OF MONITOR</u>

**IT IS FURTHER ORDERED** that Thomas W. McNamara is appointed as Monitor over the Monitorship Estate. The Monitor shall be the agent of this Court and solely the agent of this Court in acting as Monitor under this Order and under 28 U.S.C. § 959.  The Monitor shall be accountable directly to this Court.  The Monitor shall comply with any laws and Local Rules of this Court governing receivers, including but not limited to Local Rules LR 66-4 to 66-9.

The Monitorship Estate constitutes:  All of Scott Tucker's, Kim Tucker's, and the Monitor Entities' Assets, wherever they may be located, in whosoever possession they may be found, whether owned directly or indirectly, except as excluded below ("Monitorship Estate"):

A.     The Monitorship Estate does not include any of the Defendants' Assets restrained by the SDNY Court or subject to *lis pendens* filed in connection with the criminal case in the SDNY Court, unless the United States Attorney's Office for the Southern District of New York has directed the release of such asset in writing, in which case the asset becomes an Asset of the Monitorship Estate.

B.     The Monitorship Estate does not include the education savings plans (accounts x0803 and x0804 at Learning Quest) held for the benefit of Scott and Kim Tucker's two children ("529 Accounts").  Provided however, that prior to withdrawing or using any of the funds in the 529 Accounts, Scott and Kim Tucker will first submit documentation concerning the expenditure to the

Monitor, who shall timely approve the expense so long as it qualifies as a valid educational expense, and funds for the approved education expense may be released from the 529 Accounts.

C.    The Monitorship Estate does not include Kim Tucker's W-2 wages up to $8,000 per month earned as an employee, at Restoration Hardware or any independent employer not a Monitorship Entity or otherwise affiliated with or associated with any Defendant, or which shall be Mrs. Tucker's free and clear of any freeze or other restraint.

This Court shall have exclusive jurisdiction regarding any dispute regarding whether any Asset is included in the Monitorship Estate.

## VII.    MONITOR NOT TO INTRUDE ON OR IMPAIR LEGAL PRIVILEGES

**IT IS FURTHER ORDERED** that the Monitor is directed as follows:

A.    Notwithstanding any term, provision or language within this Order, the Monitor shall have no right, claim, interest or any basis to gain access to, or otherwise review, control, inspect, demand or possess Documents or any information or material to the extent they contain attorney-client privileged information, attorney work product or other privileged information relating to or implicated by:  (i) the Defendants' and the Tucker Entities' litigation of the present case, including their appeal of the judgment entered in this case, (ii) Scott Tucker's defense of any and all grand jury investigations and the criminal charges pending in the SDNY Court, or (iii) Defendants' defense in *Felts v. Paycheck Today, et al.*, Case No. D-202-CV-2008-13084 (2d District, State of New Mexico 2008) and *Internet Lending Cases*, Case No. JCCP004688 (Superior Court of California, County of Alameda).

B.    Nothing in this Order shall be construed to waive or modify any attorney-client privilege, work product or other privilege protections that pertain to the Defendants and Tucker Entities relating to or implicated by:  (i) the Defendants' and the Tucker Entities' litigation of the present case, including their appeal of the judgment entered in this case, (ii) Scott Tucker's defense of any and all grand jury investigations and the criminal charges pending in the SDNY Court, or (iii) Defendants' defense in *Felts v. Paycheck Today, et al.*, Case No. D-202-CV-2008-13084 (2d District, State of New Mexico 2008) and Internet Lending Cases, Case No. JCCP004688 (Superior Court of California, County of Alameda).

# VIII.  DUTIES AND AUTHORITY OF MONITOR

**IT IS FURTHER ORDERED** that the Monitor is directed and authorized to accomplish the following:

A.  Monitor compliance with the Asset Freeze imposed by this Order.

B.  Perform all acts necessary or advisable to preserve the value of the assets under the Asset Freeze, in order to prevent any wasting, irreparable loss, damage, or injury to consumers, including but not limited to obtaining or creating an accounting of the Assets and preventing the transfer, withdrawal, or misapplication of the Assets.  In fulfilling this obligation, the Monitor may:

    1.  Upon motion by the Monitor and order of the Court, sell Assets of the Monitorship Estate that the Monitor, in exercising reasonable business judgment, finds are wasting in value, or likely to suffer imminent irreparable loss or damage, and the proceeds of such sales shall be deposited into the Monitor's account designated for this case; or

    2.  Upon written request or consent by Defendants or Tucker Entities, sell Assets of the Monitorship Estate, subject to the Monitor's exercise of his business judgment and in a commercially reasonable manner, with the proceeds of such sales deposited into the Monitor's account designated for this case;

C.  Sell all assets of Level 5 Motorsports, LLC in a commercially reasonable manner, with the proceeds of such sale to be deposited into the Monitor's account designated for this case;

D.  Monitor the receipt of rental income generated by the Park 269 residence located in Aspen, Colorado, as coordinated by the rental broker, with all rental income deposited into the Park 269 Account and the only allowable disbursements from that account to be reasonable expenses, as coordinated by the property management company with the cooperation of the Tuckers, associated with the maintenance, upkeep, and taxes owed by Park 269, LLC; with all account information, rental information and maintenance/upkeep information being provided to the Monitor; the use and expenditure of income from the Park 269 Account shall be subject to the Monitor's claims, such as for mismanagement, wasting, and fraud;

E.     If the Asset Freeze terminates under Section II.G.1.a or Section II.G.1.b above, the Monitor shall take immediate possession of all frozen Assets and liquidate all Assets of the Defendants and Tucker Entities;

F.     Monitor the Earnings Account by reviewing the accounting of all deposits and withdrawals from the Earnings Account provided by Scott and Kim Tucker beginning thirty (30) days from entry of this Order and every thirty days thereafter, unless otherwise agreed to in writing between the FTC, Monitor and Scott and Kim Tucker;

G.     Conduct such investigation and discovery (including but not limited to discovery permitted under Rule 69(a)(2) of the Federal Rules of Civil Procedure) as may be necessary to locate and account for additional Assets (including Assets held by either Persons or entities other than a Defendant) belonging to, or held by others for the benefit of, any Defendant or Monitorship Entity, for inclusion in the Monitorship Estate;

H.     For the Monitor Entities, upon motion by the Monitor setting forth the grounds therefor and the granting of the motion by the Court, remove any director, officer, independent contractor, employee, attorney, or agent of a Monitor Entity from control of, management of, or participation in, the affairs of Monitorship Entities, except as limited by Section VII;

I.     Publish this Order to any Persons as the Monitor deems necessary or appropriate in carrying out his powers and duties under this Order, and/or to serve this Order upon any Person whom the Monitor deems appropriate to inform them of the status of this matter and/or the financial condition of the Monitorship Estate;

J.     In order to review compliance with the Asset Freeze ordered above, obtain copies of all statements and Documents from Financial Institutions which have possession, custody, or control of any Assets of Defendants or Monitorship Entities;

K.     Monitor and provide instructions regarding the businesses of the Monitorship Entities in such manner, to such extent, and for such duration as the Monitor may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all, using solely the Assets of the Monitorship Estate;

L.      Employ McNamara Benjamin LLP as the Monitor's attorneys, for the services and at the rates of compensation set forth in the Monitor's verified application;

M.      Choose, engage, and employ such additional attorneys, accountants, appraisers, investigators, employees, and other independent contractors and technical specialists, as the Monitor deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order pursuant to the procedures and limitations set forth in LR 66-6 and LR 66-7;

N.      Make payments and disbursements from the Monitorship Estate that are necessary or advisable to secure, manage, and maintain the Assets in the Monitorship Estate;

O.      Enter into contracts and purchase insurance as advisable or necessary to maintain Assets in the Monitorship Estate or prevent the wasting of such Assets;

P.      Prevent the inequitable distribution of the Assets in the Monitorship Estate and to determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Monitorship Entities;

Q.      Collect any money due or owing to the Defendants or Monitorship Entities including, without limitation, membership dues, salaries, and royalties payable to the Defendants or Monitorship Entities or on behalf of Defendants or Monitorship Entities or persons or entities Defendants or Monitorship Entities control.  *Provided, however*:

1.  the Monitor shall not attempt to collect or receive any amount from a consumer if the consumer was a victim of the unlawful conduct alleged in the complaint in this matter;

2.  The Monitor shall monitor the receipt of rental income generated by the Park 269 residence located in Aspen, Colorado, as coordinated by the rental broker, with all rental income deposited into the Park 269 Account and the only allowable disbursements from that account to be reasonable expenses, as coordinated by the property management company with the cooperation of the Tuckers, associated with the maintenance, upkeep, and taxes owed by Park 269, LLC; with all account information, rental information and maintenance/upkeep information being provided to the Monitor; the use and expenditure of income from the Park 269 Account shall be subject to the Monitor's claims, such as for mismanagement, wasting, and fraud.

R.     Institute, compromise, adjust, appear in, intervene in, or become a party to such actions or proceedings in state, federal or foreign courts that the Monitor deems necessary and advisable to preserve or recover the Monitorship Estate or to carry out the Monitor's mandate under this order.  Provided however, that the monitor may not appear in, intervene in, or become a party to the legal matters identified at Section VII.A;

S.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings, except those identified in Section VII, against any Monitorship Entity or the Monitor, that the Monitor deems necessary and advisable to preserve the Monitorship Estate or to carry out the Monitor's mandate under this order;

T.     Take depositions and issue subpoenas to obtain documents and records to carry out the Monitor's mandate under this order.  Subpoenas may be served by the Monitor's agents or attorneys and by agents of any process server the Monitor retains;

U.     Issue requests pursuant to the Cooperation and Compliance Monitoring provisions in any order for permanent injunction previously entered in this case;

V.     Request the assistance of the U.S. Marshals Service, in any judicial district, to take possession, custody, and control of, or identify the location of any Monitorship Entities' Assets, and to request similar assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction;

W.     Open one or more bank accounts as designated depositories for Assets of the Monitorship Estate.  As appropriate, the Monitor shall deposit such Assets in such a designated account and shall make payments and disbursements from the Monitorship Estate from such an account; and

X.     Maintain accurate records of all receipts and expenditures made by the Monitor.

## IX.    DELIVERY OF MONITORSHIP PROPERTY

**IT IS FURTHER ORDERED** that:

A.     The Asset Freeze in Section II notwithstanding, immediately upon service of this Order upon them or upon obtaining actual knowledge of this Order, or within a period permitted by the Monitor, Defendants and the Monitorship Entities and any person or entity acting in concert with the Defendants and the Monitorship Entities, including but not limited to any law firm, financial or brokerage institution or

depository, escrow agent, title company, commodity trading company, or trust shall cooperate with all requests of the Monitor relating to implementation of this order, including, without limitation, transferring funds at the Monitor's or Court's direction upon circumstances set forth at Section II.G.1.a or Section II.G.1.b, producing records related to the Assets and sales of Defendants and the Monitorship Entities, and delivering to the Monitor possession and custody of:

1. All Assets of Level 5 Motorsports, LLC;

2. All Documents of the Monitorship Entities, including but not limited to the books and records of the Monitorship Entities, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), corporate minutes, contracts, customer and consumer lists, title documents, and electronic records;

3. All insurance information for both existing and prior insurance policies insuring Defendants or Assets, including all applications, policies, riders, correspondence, endorsements, claims and other information;

4. Any mobile phones, computers, or devices (*e.g.*, cell phone, smart phone, tablet, laptop) used predominantly for the benefit of, or issued by, any Monitorship Entity;

5. All keys, computer and other passwords, entry codes, combinations to locks required to open or gain or secure access to any Assets of the Defendants or the Monitorship Entities ordered to be sold by or placed in the custody of the Monitor, wherever located; and

6. Information identifying the accounts, employees, properties, or other Assets or obligations of the Defendants or the Monitorship Entities.

B.    In the event any person or entity fails to deliver or transfer immediately any Asset as set forth above or otherwise fails to comply with any provision of this Section IX, the Monitor may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Monitor.  The writs shall authorize and direct the United States

16

Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)) to seize the asset, document, or other thing and to deliver it to the Monitor.

## X.    ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.    Monitorship Entities, and all their employees or agents shall provide the Monitor with any necessary means of access to Documents, devices, and records, including, without limitation, the locations of Monitorship Entities' business premises, keys and combinations to locks, computer access codes, device passwords, and storage area access information, if any.   Defendants are required to provide the Monitor access to their personal residence in Leawood, Kansas on one occasion and with 48-hours' written notice to allow the Monitor to inventory Assets.  However, consistent with Section VII, the Tuckers shall not be required to provide the Monitor access to any attorney-client or privileged information addressed in that Section.  The Monitor shall not interfere with or otherwise encroach on the defense of the criminal action pending in the SDNY Court and/or the appeal of the Defendants challenging the judgment and rulings in this case.

B.    If any computers or other electronic data devices (including but not limited to mobile devices) containing information related to the business practices or finances of Monitorship Entities are at a location other than a business premises, including, but not limited to, the personal residences of Defendants, then immediately upon service of this Order upon them, such Defendant and its agents, employees, and officers and those persons in active concert and participation with it shall produce to the Monitor all such information concerning Monitorship Entities.  In order to prevent the destruction of electronic data, upon service of this Order upon them, such Defendant and its agents, employees, officers, and those persons in active concert and participation with it shall maintain such computers or other electronic data devices containing such information and remove any automatic delete or destruction processes used in the normal course of the operating systems on such devices and systems.

C.    Within forty-eight (48) hours of service of this Order, each Defendant shall produce to the Monitor a list of all agents, employees, officers, and those persons in active concert and participation with any Monitorship Entity.

## XI. COOPERATION WITH THE MONITOR

**IT IS FURTHER ORDERED** that the Defendants and the Monitorship Entities, their successors, assigns, members, officers, agents, employees, and attorneys shall fully cooperate with and assist the Monitor as limited by the mandate of this Order and Section VII. Such cooperation and assistance shall include but not be limited to providing any information to the Monitor that the Monitor reasonably deems necessary to exercise the authority and discharge the responsibilities of the Monitor under this Order; providing any login and password required to access any Monitorship Entity computer or electronic files or information in any medium; and advising all persons who owe money to Monitorship Entities that all debts should be paid directly to the Monitor. Defendants and the Monitorship Entities, and their successors, assigns, members, officers, agents, employees, and attorneys are hereby restrained and enjoined from directly or indirectly:

A. Transacting any of the business of the Monitorship Entities without the Monitor's written consent, other than matters set forth at Section VII.A;

B. Excusing debts owed to the Monitorship Entities;

C. Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any Documents of the Monitorship Entities;

D. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Monitorship Entities or the Monitor;

E. Directing the modification or cancellation (other than at the Monitor's request) of any contract (whether written or oral) or insurance policy;

F. Failing to notify the Monitor of any Asset of a Monitorship Entity held in any name other than the name of such entity, or by any person or entity other than a Monitorship Entity, or failing to provide any assistance or information requested by the Monitor in connection with obtaining possession, custody, or control of such Asset; or

G. Doing any act or thing whatsoever to interfere with the Monitor's taking and keeping custody, control, possession, or managing of the Assets or Documents subject to this Monitorship; or to harass or interfere with the Monitor in any way, or to interfere in any

18

manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Monitorship Entities, or to refuse to cooperate with the Monitor or the Monitor's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

## XII. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.      Except by leave of this Court, during pendency of the Monitorship ordered herein, Defendants and Monitorship Entities and all other persons and entities be and hereby are stayed from taking any action to collect against, recover, or to otherwise seek to gain possession of a Monitorship Estate Asset, including, but not limited to, the following actions:

1.  Accelerating the due date of any obligation or claimed obligation against a Monitorship Estate Asset; filing or enforcing any lien against a Monitorship Estate Asset; taking or attempting to take possession, custody, or control of any Monitorship Estate Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Monitorship Estate Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

2.  Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not, against a Monitorship Estate Asset; or

3.  Doing any act or thing whatsoever to interfere with the Monitor taking custody, control, possession, or management of the Monitorship Estate's Assets or Documents, or to harass or interfere with the Monitor in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Monitorship Estate.

B.      This Section XII does not stay:

1.  The commencement or continuation of any criminal action or proceeding;

2.  The commencement or continuation of a civil action or proceeding against the Monitorship Entities or Defendants, so long as that proceeding or action does not

include collecting against, recovering, or to otherwise seeking to gain possession of a Monitorship Estate Asset, or that otherwise interferes with the powers of the Monitor or the jurisdiction of this Court over the Monitorship Estate, which actions are stayed;

3. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4. The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

5. The issuance of a notice of tax deficiency.

## XIII. DEFENDANTS' ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Monitor shall allow Defendants and their representatives reasonable access to the premises of the Monitorship Entities, if any. The purpose of this access shall be to inspect, inventory, and copy any Documents and other property owned by, or in the possession of, the Monitorship Entities, provided that those Documents are not removed from the premises without the permission of the Monitor. The Monitor shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XIV. TRANSFER OF FUNDS TO THE MONITOR BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that, if the Asset Freeze terminates under Section II.G.1.a, b, or if the Court otherwise orders the Monitor to liquidate an Asset, upon service of a copy of this Order, any law firm, financial or brokerage institution or depository, escrow agent, title company, commodity trading company, payment processing company, or trust shall cooperate with all reasonable requests of counsel for the FTC and the Monitor relating to implementation of this Order, including transferring funds at the Monitor's direction and producing records related to Defendants' or Monitorship Entities' Assets, and providing the Monitor immediate and complete electronic access to the accounts of Defendants and Monitorship Entities.

## XV.   COMPENSATION FOR MONITOR

**IT IS FURTHER ORDERED** that the Monitor and all personnel hired by the Monitor as herein authorized, including counsel to the Monitor and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of, or which may be received by, the Defendants or Monitorship Entities.  The Monitor shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order.  The Monitor shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVI.   MONITOR'S BOND

**IT IS FURTHER ORDERED** that the Monitor shall file with the Clerk of this Court a bond in the sum of $10,000 with sureties to be approved by the Court, conditioned that the Monitor will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XVII.   REPORTS OF MONITORS AND NOTICE OF HEARINGS

**IT IS FURTHER ORDERED** that the Monitor shall report to the Court as provided in LR 66-4(b) within 60 days of being appointed and at intervals of no less than 90 days thereafter.  The Monitor shall also comply with LR 66-5 regarding petitions for approval of the matters set forth therein, including but not limited to petitions to confirm real or personal property sales, for authority to sell property at private sale, and for applications for fees and for discharge.  *Provided, however,* if any of the required information would hinder the Monitor's ability to pursue and maximize Monitorship Assets, the portions of the Monitor's report containing such information may be filed under seal and not served on the parties.

## XVIII.   MONITOR'S FINAL REPORT AND DISBURSEMENT OF ASSETS

**IT IS FURTHER ORDERED** that:

A.      No later than three-hundred sixty (360) days from the date the Asset Freeze terminates and triggers Section VIII.E of this Order, or at some later date that the Monitor may request of the Court for good cause shown, the Monitor shall file and serve on the parties a report (the "Final Report") to the Court that details the steps taken to dissolve the Monitorship estate.  The Final Report must include an accounting of the Monitorship Estate's finances and total assets and a description of what other actions, if any, must be

taken to wind-up the Monitorship. Promptly thereafter, but no later than thirty (30) days after submission of the Final Report, the Monitor shall file an application for payment of compensation and expenses associated with his performance of duties as Monitor under this Order which have not previously been approved by the Court. The Monitor shall mail copies of the Final Report to all known creditors of the Defendants with a notice stating that any objections to paying any assets of the Defendants to satisfy the Monitor's costs and expenses and the monetary judgment must be submitted to the Court and served by mail upon the Monitor and the parties within thirty days of the mailing of the Final Report. If subsequent actions (such as the completion of tax returns or further actions to recover funds for the Monitorship) are appropriate, the Monitor shall file additional report or reports (the "Supplemental Reports") describing the subsequent actions and a subsequent application for the payment of fees and expenses related to the subsequent acts;

      B.    The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Monitor:

          1.   Pay the reasonable costs and expenses of administering the Monitorship, including compensation of the Monitor and the Monitors' personnel, and the actual out-of-pocket costs incurred by the Monitor in carrying-out his duties; and

          2.   To the extent that funds remain, pay all remaining funds to the FTC or its designated agent to reduce the monetary judgment owed by Defendants to the FTC.

## XIX.   CREDIT REPORTS

      **IT IS FURTHER ORDERED** that the Monitor or the FTC may obtain credit reports concerning any of the Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the Monitor or the FTC.

## XX.   SERVICE ON FINANCIAL INSTITUTIONS, ENTITIES OR PERSONS

      **IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, e-mail, and overnight delivery service, upon any Financial Institution or other entity or person that may have possession, custody, or control of any documents or assets of any

1  Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or

2  office of any Financial Institution shall effect service upon the entire Financial Institution.

3  **XXI.    GENERAL SERVICE OF ORDER**

4          **IT IS FURTHER ORDERED** that pursuant to Rule 4(c)(2), FED. R. CIV. P., this Order and the

5  initial papers filed in this matter may be served on Defendants, upon the business premises of Defendants,

6  and upon any Financial Institution or other entity or person that may have possession, custody or control of

7  any Documents or Assets of any Defendant or Tucker Entity, or that may be subject to any provision of

8  this Order, by employees of the FTC, by employees of any other law enforcement agency, by any agent of

9  Plaintiff, or by any agent of any process service retained by Plaintiff.

10 **XXII.    CORRESPONDENCE**

11         **IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service

12 of pleadings on Plaintiff shall be addressed to:

13              Kimberly L. Nelson
               Federal Trade Commission

14              600 Pennsylvania Avenue NW, CC-9528
               Washington, DC  20580

15              Fax:  202-326-3197
               Email:  knelson@ftc.gov

16

17 **XXIII.    RETENTION OF JURISDICTION**

18         **IT IS FURTHER ORDERED** that this Court shall have exclusive jurisdiction regarding any

19 dispute regarding this Order, including whether an entity or person should be included as a Tucker Entity

20 or in the Monitorship Estate.

21 Dated this 30 day of November, 2016.

22

23                                              _____

24                                              Gloria M. Navarro, Chief Judge
                                               United States District Court, District of Nevada

25

26

27

28

Seen and agreed to by:

Date:  November __, 2016                    Date:  November __, 2016

_____              _____

*Defendant Scott Tucker*                    *Authorized Representative for Defendant Black Creek Capital Corporation*

Date:  November __, 2016                    Date:  November __, 2016

_____              _____

*Authorized Representative for Defendant Level 5 Motorsports LLC*    *Authorized Representative for Defendant Broadmoor Capital Partners, LLC*

Date:  November __, 2016

_____

*Authorized Representative for Defendant AMG Capital Management, LLC*

Date:  November __, 2016                    Date:  November __, 2016

_____              _____

*Relief Defendant Kim C. Tucker*            *Authorized Representative for Defendant Park 269, LLC*

Date:  November 28, 2016                    Date:  November 28, 2016

 /s/ Kimberly L. Nelson                      /s/ Jeffrey D. Morris
Kimberly L. Nelson                          Jeffrey D. Morris
Federal Trade Commission                    Nick J. Kurt
600 Pennsylvania Ave., NW                   Berkowitz Oliver LLP
Mailstop CC-9528                            2600 Grand Boulevard, Suite 1200
Washington, DC  20580                       Kansas City, MO  64108
knelson@ftc.gov                             jmorris@berkowitzoliver.com
Tel. (202) 326-3304                         nkurt@berkowitzoliver.com
Fax (202) 326-3197                          Phone:  (816) 561-7007
                                            Fax: (816) 561-1888
*Attorney for Plaintiff Federal Trade Commission*

                                            *Attorney for Defendants Scott Tucker, Black Creek Capital Corporation, Level 5 Motorsports LLC, Broadmoor Capital Partners, LLC, and AMG Capital Management, LLC*

24

Date:  November 28, 2016

 /s/ Linda C. McFee
Linda C. McFee
R. Pete Smith
McDowell, Rice, Smith & Buchanan
605 West 47th Street, Suite 350
Kansas City, MO  64112
Tel:  (816) 753-5400
lmcfee@mcdowellrice.com
petesmith@mcdowellrice.com
*Attorneys for Relief Defendants Kim C. Tucker and*
*Park 269, LLC*

Seen and agreed to by:

Date: November 28, 2016      Date: November 28, 2016

_____    _____

*Defendant Scott Tucker*      *Authorized Representative for Defendant Black Creek Capital Corporation*

Date: November 28, 2016      Date: November 28, 2016

_____    _____

*Authorized Representative for Defendant Level 5 Motorsports LLC*      *Authorized Representative for Defendant Broadmoor Capital Partners, LLC*

Date: November 28, 2016

_____

*Authorized Representative for Defendant AMG Capital Management, LLC*

Date: November 28, 2016      Date: November 28, 2016

_____    _____

*Relief Defendant Kim C. Tucker*      *Authorized Representative for Defendant Park 269, LLC*

Date: November ___, 2016      Date: November 28, 2016

 /s/ Kimberly L. Nelson      _____

Kimberly L. Nelson      Jeffrey D. Morris
Federal Trade Commission      Nick J. Kurt
600 Pennsylvania Ave., NW      Berkowitz Oliver LLP
Mailstop CC-9528      2600 Grand Boulevard, Suite 1200
Washington, DC 20580      Kansas City, MO 64108
knelson@ftc.gov      jmorris@berkowitzoliver.com
Tel. (202) 326-3304      nkurt@berkowitzoliver.com
Fax (202) 326-3197      Phone: (816) 561-7007
     Fax: (816) 561-1888

*Attorney for Plaintiff Federal Trade Commission*

     *Attorney for Defendants Scott Tucker, Black Creek Capital Corporation, Level 5 Motorsports LLC, Broadmoor Capital Partners, LLC, and AMG Capital Management, LLC*

24

Seen and agreed to by:

Date: November ___, 2016

_____

*Defendant Scott Tucker*

Date: November ___, 2016

_____

*Authorized Representative for Defendant
Level 5 Motorsports LLC*

Date: November ___, 2016

_____

*Authorized Representative for Defendant
AMG Capital Management, LLC*

Date: November 28, 2016

_____

*Relief Defendant Kim C. Tucker*

Date: November ___, 2016

 /s/ Kimberly L. Nelson
Kimberly L. Nelson
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-9528
Washington, DC 20580
knelson@ftc.gov
Tel. (202) 326-3304
Fax (202) 326-3197

*Attorney for Plaintiff Federal Trade
Commission*

Date: November ___, 2016

_____

*Authorized Representative for Defendant Black
Creek Capital Corporation*

Date: November ___, 2016

_____

*Authorized Representative for Defendant
Broadmoor Capital Partners, LLC*

Date: November 28, 2016

_____

*Authorized Representative for Defendant Park
269, LLC*

Date: November ___, 2016

_____

Jeffrey D. Morris
Berkowitz Oliver LLP
2600 Grand Boulevard, Suite 1200
Kansas City, MO 64108
jmorris@berkowitzoliver.com
Phone: (816) 561-7007
Fax: (816) 561-1888

*Attorney for Defendants Scott Tucker, Black
Creek Capital Corporation, Level 5 Motorsports
LLC, Broadmoor Capital Partners, LLC, and
AMG Capital Management, LLC*

01929099.DOCX;-1