UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

FEDERAL TRADE COMMISSION, )
                                                Plaintiff, )     Case No.: 2:12-cv-00536-GMN-VCF
      vs. )
                                                        )               **ORDER**
AMG SERVICES, INC., *et al.*, )
                                              Defendants. )

Pending before the Court is the Motion to Dissolve the Emergency Restraining Order, (ECF No. 1038), filed by Interested Parties El Dorado Trailer Sales, LLC, and E.T.S. Ventures, LLC (collectively "El Dorado"). The Federal Trade Commission ("FTC") filed a Response, (ECF No. 1046), and El Dorado filed a Reply, (ECF No. 1053). For the reasons discussed below, the Court DENIES the Motion.

I. **BACKGROUND**[1]

This action was originally brought by the FTC asserting that certain payday lending entities violated portions of the Federal Trade Commission Act, the Truth in Lending Act, and the Electronic Fund Transfer Act.[2] (Am. Compl. 15:1–20:6, ECF No. 386). On March 31, 2016, the Court entered an Order, (ECF No. 960), granting the FTC's Motion for Preliminary Injunction against the payday lending defendants and their associated entities, including Level 5 Motorsports LLC ("Level 5"), in the form of an asset freeze and accounting (the "Asset

---

[1] The facts as recited below are undisputed by the parties.

[2] On September 30, 2016, the Court granted summary judgment in favor of the FTC and closed the case. (*See generally* Order, ECF No. 1057).

Freeze Order"). The instant Motion concerns the disputed ownership of an asset purchased by Level 5 and subject to the Asset Freeze Order.

During the pendency of this action, Level 5 entered into a contract ("Purchase Contract") dated August 13, 2014, with Bruce High Performance Transporters, LLC ("Bruce Transporters") to purchase a custom vehicle transport trailer. (Ex. D to Am. Becker Aff. at 9–15, ECF No. 1052-1). The Purchase Contract required Level 5 to pay Bruce Transporters $578,046.00, payable in a down payment and two installments, with a delivery date of December 15, 2014. (*Id.*). Although Level 5 made each of these payments, Bruce Transporters never completed construction of the trailer and Level 5 made no attempts to take possession of the trailer. (*See* Ex. 3 to Resp. at 4, ECF No. 1046-4).

By December 2015, Bruce Transporters had ceased all operations. (*See* Mot. to Dissolve 4:3–4). Ultimately, Bruce Transporters executed an asset purchase agreement ("Asset Purchase Agreement") with El Dorado on December 31, 2015. (Ex. E to Am. Becker Aff. at 17–21). Pursuant to the Asset Purchase Agreement, El Dorado paid $400,001.00 in exchange for Bruce Transporters' "accounts receivable, accounts payable as of December 31, 2015, inventory, work in progress, equipment and other tangible personal property." (*Id.*). Schedule A of the Asset Purchase Agreement lists the assets acquired by El Dorado but does not include the trailer purchased by Level 5. (*Id.* at 27–40). After executing the Asset Purchase Agreement, El Dorado took possession of the unfinished trailer and spent $281,164.37 to complete it. (Mot. to Dissolve 5:3–10); (Ex. F to Am. Becker Aff. at 44–91).

The FTC learned of El Dorado's possession of and intent to sell the trailer in August 2016. (Resp. 2:4–6, ECF No. 1046). Shortly thereafter, the FTC filed an Emergency Motion to Enforce the Asset Freeze Order, (ECF No. 1031), asking the Court to restrain El Dorado against any attempts to sell or otherwise dispose of the trailer and permitting the FTC to designate an agent to take custody of it, which the Court granted, (ECF No. 1036). On

November 30, 2016, the Court issued a new Asset Freeze Order, (ECF No. 1099), to appoint a monitor and preserve the value of monitorship assets. In the instant Motion, El Dorado asks the Court to dissolve the Asset Freeze Order with regard to the trailer. (*See generally* Mot. to Dissolve, ECF No. 1038).

## II.     DISCUSSION

El Dorado argues that the Court lacks jurisdiction to enforce the Asset Freeze Order against it. (Mot. to Dissolve 8:1–11:7, ECF No. 1038). In support of its position, El Dorado emphasizes that it is neither a party to the underlying action nor was it named in the Court's Preliminary Injunction Order. (*Id.* 8:15–17). However, federal courts possess broad authority "to issue a variety of 'ancillary relief' measures in [enforcement] actions brought by [federal agencies]." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980); *see also SEC v. Universal Financial*, 760 F.2d 1034, 1038 (9th Cir. 1985) (noting a district court's power to enter a blanket receivership stay "is broader than the court's authority to grant or deny injunctive relief under Fed. R. Civ. P. 65"). "The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest." *Wencke*, 622 F.2d at 1371.

One expression of the Court's inherent authority to fashion equitable relief is the *in rem* injunction. Because "in rem orders [are] particularly vulnerable to disruption by an undefinable class of persons who are neither parties nor acting at the instigation of parties . . . courts must have the power to issue orders . . . tailored to the exigencies of the situation and directed to protecting the court's judgment." *United States v. Hall*, 472 F.2d 261, 266 (5th Cir. 1972); *accord United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992) (noting that orders issued "to preserve property for forfeiture following a RICO conviction . . . closely resemble

remedies such as garnishment or attachment, which may be directed routinely at third-parties, who have no interest in the merits of the underlying litigation").

An order issued to preserve the assets of a receivership estate is a classic example of an *in rem* injunction. *See SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions."); *cf. SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the securities fraud action."). In *Wencke*, an SEC enforcement action, the Ninth Circuit upheld a blanket stay of actions against an equitable receivership and its assets, declaring that "rule 65(d) does not limit the power of a federal court to enter such orders." *Id.* at 1371. The court noted, however, that such orders would be upheld only "upon an appropriate showing of necessity." *Id.* The *Wencke* court found that a blanket stay was "necessary to achieve the purposes of the receivership." *Id.* at 1369.

Here, the receivership was instituted to preserve the assets of the lending defendants named in the underlying action in order to provide redress for defrauded consumers. (*See* Order Appointing Monitor and Freezing Assets 6:6–8, ECF No. 1099). Permitting El Dorado to retain assets that are properly part of the Monitorship Estate would thus thwart the purpose of the receivership. Moreover, requiring the FTC to institute a separate action against any third party holding assets of the receivership estate "would result in a multiplicity of actions in different forums, and would increase litigation costs for all parties while diminishing the size of the receivership estate." *SEC v. Universal Financial*, 760 F.2d 1034, 1038 (9th Cir. 1985); (*see also* Order Appointing Monitor and Freezing Assets 11:7–8) ("This Court shall have exclusive jurisdiction regarding any dispute regarding whether any Asset is included in the Monitorship

Estate."). Accordingly, the Court's Asset Freeze Order is necessary to achieve the purposes of the receivership, and the Court denies El Dorado's request to dissolve any aspect of it.[3]

## III.     CONCLUSION

**IT IS HEREBY ORDERED** that El Dorado's Motion to Dissolve the Court's Asset Freeze Order, (ECF No. 1038), is **DENIED**.

**DATED** this __26__ day of January, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[3] The contested ownership of the asset does not disturb this conclusion. El Dorado admits that Level 5 paid for the trailer, and, as a result, there is no dispute that Level 5 has at least some degree of interest in the trailer. (*See* Mot. to Dissolve 12:25–27). Due to this interest, the trailer is subject to the Court's Asset Freeze Order notwithstanding the competing interests of El Dorado and Bruce Transporters. (*See* Order Appointing Monitor and Freezing Assets 6:12–21) ("'**Asset**' means . . . any legal or equitable interest in, right to, claim to, any . . . personal . . . property wherever located, including, but not limited to, chattel.").