# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

\*\*\*

FEDERAL TRADE COMMISSION,

Plaintiff,

vs.

AMG SERVICES, INC., *et al.*,

Defendants.

Case No. 2:12-cv-00536-GMN-VCF

### REPORT AND RECOMMENDATION

MOTION FOR ATTORNEY'S FEES AND COSTS [ECF NO. 1127]

Before the Court is Monitor Thomas McNamara's Motion for Attorney's Fees and Costs Incurred as a Result of Contempt by El Dorado Trailer Sales, LLC; E.T.S. Ventures, LLC; and Dale E. Becker. (ECF No. 1127). For the reasons stated below, the Monitor's motion should be granted in part.

## BACKGROUND

The FTC brought this case against several defendants regarding violations of federal law including the FTC Act. (ECF No. 386). On March 31, 2016, after the FTC obtained summary judgment on several causes of action (ECF No. 584), the Court ordered an asset freeze against Level 5 and other defendants (ECF No. 960 at 14-20). Among Level 5's assets was a trailer. (ECF No. 1031 at 1-2).

A dispute arose between Level 5 and third parties claiming ownership in the trailer: El Dorado Trailer Sales, LLC; E.T.S. Ventures, LLC; and Dale E. Becker (collectively "El Dorado"). (*Id.*). On August 25, 2016, the Court entered an Order Enforcing Asset Freeze Order. (ECF No. 1036). The Court stated that the trailer was subject to the asset freeze order and ordered El Dorado to "comply with all responsibilities of Asset Holders with respect to the Trailer until further order of this Court." (*Id.* at 1).

On August 29, 2016, El Dorado filed a motion to dissolve the Order Enforcing Asset Freeze Order, arguing the Court lacked jurisdiction over El Dorado and El Dorado owned the trailer. (ECF No. 1038 at

8, 11). El Dorado did not confine litigation over the trailer to this case. On October 17, 2016, El Dorado began an action in Ohio state court seeking quiet title to the trailer. (ECF No. 1115-1 at 2, ECF No. 1160 at 2).

On November 30, 2016, the Monitor was appointed in this case to "preserve the value of assets under the Asset Freeze." (ECF No. 1099 at 16). On January 24, 2017, the Monitor filed an emergency motion for contempt against El Dorado based on El Dorado instigating the Ohio case and attempt to sell the trailer. (ECF No. 1106). Two days later, El Dorado moved for a default judgment in the Ohio case. (ECF No. 1109-1 at 3). That same day, the Court denied El Dorado's motion to dissolve the Order Enforcing Asset Freeze Order. (ECF No. 1108). The Court's decision has since been affirmed by the Ninth Circuit Court of Appeals. (ECF No. 1172).

On February 14, 2017, Magistrate Judge Ferenbach recommended that the motion for contempt be granted. (ECF No. 1123). Magistrate Judge Ferenbach found El Dorado violated the Court's order by listing the trailer for sale and instigating the Ohio case. (*Id.* at 6-7). On September 29, 2017, District Judge Navarro accepted the Report and Recommendation's findings and granted the motion for contempt. (ECF No. 1160).

The Monitor originally filed its motion for attorney's fees and costs related to El Dorado's contempt while Magistrate Judge's Report and Recommendation was pending. (ECF No. 1127). In the order granting the motion for contempt, District Judge Navarro ordered the parties to submit briefs "relating to the monetary sanctions that the Court should award." (ECF No 1160). This Report and Recommendation will cover all briefing submitted by the parties on this issue. (ECF Nos. 1127, 1131, 1135, 1162, 1163, 1165).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**DISCUSSION**

**I.    Awarding Fees and Costs in Contempt Cases**

The Monitor argues it should be compensated "for any actual damages suffered and resources wasted as a result of [El Dorado's] contumacious acts relating to the trailer." (ECF No. 1127 at 3). The Monitor asserts El Dorado's pattern of "repeatedly and willfully" violating the Court's orders while attempting to re-litigate issues "is one of many reasons why the Monitor's fees have grown." (*Id.* at 5; ECF No. 1135 at 1. The Monitor asks that "El Dorado, E.T.S. Ventures and Dale E. Becker be held jointly and severally liable for th[e] compensatory award." (ECF No. 1162 at 3).

El Dorado attempts to reargue the points made in opposition to the Monitor's motion for contempt: "El Dorado is not subject to personal jurisdiction by this Court. Furthermore, El Dorado never disobeyed a 'specific and definite' order of this Court." (ECF No. 1131 at 9). El Dorado also asserts the Monitor failed to act properly in this case and the Ohio case, resulting in a contempt motion that "accomplished exactly nothing." (*Id.* at 9, 13; ECF No. 1163 at 3, 6).

"An award of attorney's fees for civil contempt is within the discretion of the district court." *Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994). "Sanctions for civil contempt may be imposed to…compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). The courts have "emphasize[d] that attorneys' fees are an appropriate component of a civil contempt award." *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003).

The Monitor should be awarded compensatory sanctions for El Dorado's contempt. The Monitor has been forced to engaged in substantial litigation in response to El Dorado's disregard for the Court's orders. While El Dorado argues the Monitor was damaged by its own failure to act in this case and the

Ohio case, El Dorado cannot use the Monitor's motion for fees and costs to re-litigate the Court's contempt findings. The Court is not persuaded by El Dorado's assertion that it "in good faith, believed it was not in violation of any of this Court's orders prior to the issuance of the January 26, 2017 Order denying El Dorado's motion to dissolve and clarifying that El Dorado must treat the Trailer as an asset of the Monitorship Estate." (ECF No. 1163 at 8). Even if true, such good faith belief does not preclude an award of attorney's fees. "[C]ivil contempt need not be willful to justify a discretionary award of fees and expenses as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702, 704 (9th Cir. 1985). In addition, the Court's Order Enforcing Asset Freeze Order was clear that the trailer was subject to the asset freeze order and El Dorado must "comply with all responsibilities of Asset Holders with respect to the Trailer until further order of this Court." (ECF No. 1036 at 1).

## II.    Amount of Fees and Costs

In its latest briefings, the Monitor asserts "the current total actual fees and expenses incurred by the Monitorship amount to $81,155.58." (ECF No. 1162 at 3). These fees are related to the briefings and oral argument regarding the motion for contempt, El Dorado's objections to the contempt Report and Recommendation, and the first set of briefings on the motion for attorney's fee. (*Id.*). The Monitor argues the amount of time spent on the matter and rates for the various attorneys associated with it are reasonable taking into account the complexity of the matter, the Monitor's experience and ability. (ECF No. 1135 at 3-8).

El Dorado argues the Monitor's rates and hours are unreasonable because the issues in the case are not complicated and the motion for contempt "produced no results for the Monitor other than running up the fees incurred by the Monitor's own law firm." (ECF No. 1131 at 14). El Dorado also asserts that the Court should not award fees or costs for "any time that was spent on preparing or analyzing the Trailer dispute itself; the Monitor would have to do that work no matter what regardless of the Ohio Action."

4

(ECF No. 1163 at 14).  Finally, El Dorado argues "all time after January 27, 2017, when El Dorado agreed to do exactly what the Monitor was asking, should not be billed as part of the 'contempt.'" (*Id.* at 15).

"Compensatory awards are limited to 'actual losses sustained as a result of the contumacy.'" *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)).  The courts "have previously suggested twelve factors which should be considered by the district court in awarding attorney's fees," *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986), in *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir.1975):

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

"[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984)).

The parties dispute over the fees and costs the Court should award centers on (1) whether the work was necessary in addressing El Dorado's contempt and (2) the customary fee or prevailing hourly rate for attorney's fees.  El Dorado also makes brief arguments regarding the results obtained and the difficulty of the questions involved.  (ECF No. 1163 at 9-10).  However, it is clear that the Monitor obtained a positive outcome in the litigation and the issues in this case, whether difficult or not, required effort across multiple jurisdictions to address.

### A. Work Related to Contempt

Reviewing the Monitor's itemization of fees and costs (ECF Nos. 1162-1, 1162-2, 1163-3), the Court finds that all entries are related to El Dorado's contempt. They are all after October 17, 2016, the date El Dorado began the Ohio case. They all relate to the Monitor's efforts to communicate with El Dorado's counsel, prepare for filing the motion for contempt, and litigating the motion for contempt. While El Dorado argues some entries are associated solely with ownership of the trailer, which would be litigated regardless of any contempt, there is no support for El Dorado's assertion. The entries generally cover "review docket entries in preparation for motion re: trailer." (ECF No. 1162-1 at 2). Based on the timing of these entries, they appear to be in preparation for the motion for contempt. Reviewing docket entries would be important to determine when the Court issued its orders and when El Dorado had notice of the orders.

In addition, the Court is not persuaded by El Dorado's arguments regarding January 27, 2017 as a cutoff date for fees and costs. El Dorado asserts that on that date it "wrote to the Monitor, agreeing…to stop marketing the Trailer and to request a stay in the Ohio Action against Level 5 pending clarification from this Court." (ECF No 1131 at 6-7). However, this only happened after the Monitor filed its motion for contempt and the Court issued its order denying El Dorado's motion to dissolve the Order Enforcing Asset Freeze Order. (ECF Nos. 1106, 1108). El Dorado should not be able to avoid sanctions by choosing to comply with the Court's orders after the Monitor was forced to file a motion to compel and the Court had to, once again, reiterate that its orders applied to El Dorado.

While all the current entries in the Monitor's itemization of fees and costs are appropriate, the Court should be wary of future amounts the Monitor seeks to claim. Specifically, the Court should not award the Monitor fees or costs associated with the briefs filed after District Judge Navarro's September 29, 2017 order granting the motion for contempt. (ECF No. 1160, 1162, 1165). The Monitor had already,

arguably prematurely, filed a motion for attorney's fees related to El Dorado's contempt. (ECF Nos. 1127, 1135). The later briefs echoed much of the work done with the initial briefs. Therefore, awarding costs and fees for these later briefs would allow for a double-recovery.

**B. Hourly Rate**

The Monitor has calculated its attorney's fees at the following rates: $500/hour for Daniel Benjamin (partner), $350/hour for Edward Chang, $175/hour for Shira Weingarten, $425/hour for Sara O'Connell, and $375/hour for Thomas McNamara. (ECF No. 1162-1 at 5). El Dorado argues that the proper rate would be $450/hour for partners and $275/hour maximum for the other attorneys. (ECF No. 1131 at 16).

Both the Monitor and El Dorado have submitted a declaration regarding the standard rates for attorneys. (ECF No. 1131-1 at 1-2; ECF No. 1135-4 at 3-4). The Monitor also relies on this Court's Order Granting Monitor's Application for Fees and Expenses (ECF No. 1125) and a discovery commissioner's report and recommendation regarding fees and costs from an unrelated case (ECF No. 1135-12). El Dorado cites cases stating, "Rate determinations in other cases in the District of Nevada have found hourly rates as much as $450 for partners and $250 for an experienced associate to be the prevailing market rate in this forum." *Liguori v. Hansen*, No. 2:11-CV-00492-GWF, 2017 WL 627219, at *11 (D. Nev. Feb. 15, 2017) (quoting *Perrigo v. Premium Asset Servs., LLC*, 2015 WL 4597569, *10 (D. Nev. July 28, 2015)); *see also CLM Partners LLC v. Fiesta Palms, LLC*, 2013 WL 6388760, *5 (D. Nev. Dec. 5, 2013) (refusing to calculate hourly rates between $650 and $400, instead calculating using an hourly rate of $450 for partner and $250 for experienced associates).

The Court does not recommend granting the Monitor its attorney's fees at the Monitor's claimed rates. The Court is persuaded by the cases El Dorado cites. They indicate a general practice by the courts to allow rates up to $450 for partners and $250 for associates in a variety of settings. The Monitor's

evidence is not persuasive.  The discovery commissioner's report and recommendation does not explicitly address the rates the discovery commissioner found to be reasonable.  This Court's Order Granting Monitor's Application for Fees and Expenses (ECF No. 1125) related to an unopposed application for fees (ECF No. 1112).  In addition, the FTC and Defendants had the chance to review the Monitor's "rates of compensation set forth in the Monitor's verified application" before stipulating to appoint the Monitor. (ECF No. 1095-1 at 14).  In granting the Monitor's Application for Fees and Expenses, the Court was not evaluating the reasonableness of the Monitor's rates in the context of sanctioning a party that had not previously approved of the Monitor's rates.  Therefore, the Court should use El Dorado's proposed hourly rates in awarding fees.

ACCORDINGLY, and for good cause,

IT IS RECOMMENDED that Motion for Attorney's Fees and Costs (ECF No. 1127) be GRANTED IN PART.  The Court should award the Monitor $55,835.58 based on the adjustment of fees outlined above.

DATED this 7th day of February, 2018.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE